UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Jose Arnulfo Guerrero Orellano** )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>**Patricia Hyde**, Acting Director of Boston Field )<br>Office, U.S. Immigration and Customs Enforcement )<br>**Todd Lyons**, Acting Director, U.S. )<br>Immigration and Customs Enforcement; )<br>**Kristi Noem**, Secretary of the )<br>U.S. Department of Homeland Security; )<br>)<br>)<br>Respondents. )<br>_____ ) | Case No. 1:25-cv-12664<br><br>**PETITION FOR WRIT OF**<br>**HABEAS CORPUS**<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

## **INTRODUCTION**

1. Petitioner Jose Arnulfo Guerrero Orellano (Mr. Guerrero) is an thirty-year-old Salvadoran citizen who is eligible for relief from removal in the form of cancellation of removal pursuant to INA §240A(b)(1).

2. Mr. Guerrero entered the United States without inspection in June 2013 and was never encountered by Border Patrol. On September 18, 2025, he was detained while he was working.

3. He has no criminal issues anywhere in the world.

4. He is the father of a 1 year old USC daughter.

5. He had been at liberty in the United States for over 12 years prior to this detention.

6. Accordingly, to vindicate Petitioner's statutory, constitutional and regulatory rights, this

Court should grant the instant petition for a writ of habeas corpus to ensure his continued freedom. Petitioner asks this Court to find that the physical detention of the Petitioner is unlawful and order ICE to release him.

## JURISDICTION

7. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

9. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

10. Venue is proper because Petitioner is in the custody of the Immigration and Customs Enforcement in Burlington, Massachusetts, which is within the jurisdiction of this District.

11. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States and Petitioners reside in this District no real property is involved in this action; also a substantial part of the events or omissions giving rise to their claims occurred in this District. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

12. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

13. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

14. Petitioner Jose Arnulfo Guerrero Orellano is a native and citizen of El Salvador. He entered the United States on June 13, 2013 without inspection or parole. He was encountered and detained by immigration authorities on September 18, 2025 and has been detained by ICE at the Boston Field Office in Burlington, MA. When he is placed in removal proceedings, he will be eligible for cancellation of removal pursuant to INA §240A(b)(1).

15. Respondent Patricia Hyde is sued in her official capacity as the Acting Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has authority to release him.

16. Respondent Todd M. Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. In this capacity, Respondent Lyons is the head of the federal agency responsible for all immigration enforcement in the United States. Respondent Lyons is a legal custodian of the Petitioner.

17. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of the Petitioner.

## STATEMENT OF FACTS

18. Petitioner Jose Arnulfo Guerrero Orellano is a native and citizen of El Salvador. He entered the United States on June 13, 2013 without inspection or parole. He was encountered and detained by immigration authorities on September 18, 2025 and has been detained by ICE at the Boston Field Office in Burlington, MA. When he is placed in removal proceedings, he will be eligible for cancellation of removal pursuant to INA §240A(b)(1).

19. Cancellation of removal is available to nonpermanent residents who (a) have been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (b) have been persons of good moral character during such period; (c) have not been convicted of certain disqualifying offenses;

(d) establishes that removal would result in exceptional and extremely unusual hardship to their spouse, parent, or child who is a citizen or lawful permanent resident.

20. Mr. Guerrero meets all eligibility requirements, namely, (a) he has been physically present for a continuous period of 12 years; (b) he is a person of good moral character; (c) he has never been charged or convicted of any criminal offenses anywhere in the world; (d) his one-year old United States Citizen daughter would suffer exceptional and extremely unusual hardship in his absence.

21. Mr. Guerrero is currently in the custody of ICE, as he is detained at the Boston Field Office in Burlington, MA.

22. Aside from his entry into the United States without inspection, Mr. Guerrero has not violated any laws or ordinances; he has not been cited, arrested or detained for any criminal charge.

23. In the United States, Mr. Guerrero has worked to support himself and his family, most recently as a landscaper.

## LEGAL FRAMEWORK

24. The Immigration and Nationality Act ("INA") prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

25. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an Immigration Judge ("IJ"). *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged

with, or convicted of certain crimes are subject to mandatory detention until their removal proceedings are concluded, *see* 8 U.S.C. § 1226(c).

26. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals "seeking admission" referred to under § 1225(b)(2).

27. Third, the INA also provides for detention of noncitizens who have received a final order of removal from the United Staes. *See* 8 U.S.C. § 1231(a)-(b).

28. Petitioner's case concerns the important distinctions between § 1226(a) and § 1225(b)(2). Those provisions were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996. Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226 was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

29. Following the enactment of the IIRIRA, the Executive Office for Immigration Review ("EOIR") drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

30. Thus, in the decades that followed, most people who entered without inspection and were thereafter arrested and placed in standard removal proceedings were considered for release on bond and also received bond hearings before an IJ, unless their criminal history rendered

them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who had entered the United States, even if without inspection, were entitled to a custody hearing before an IJ or other hearing officer. In contrast, those who were stopped at the border were only entitled to release on parole. *See* 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

31. In recent months, Defendants adopted an entirely new interpretation of the statute, concluding that all noncitizens who entered the United States without admission or parole are considered applicants for admission, and are therefore ineligible for bond hearings before an Immigration Judge under 8 U.S.C. § 1225(b)(2)(A). Around the same time, ICE "in coordination with the Department of Justice" announced a corresponding policy that rejected the well-established understanding of the statutory and regulatory framework and reversed decades of practice. That policy claims that all persons who entered the United States without inspection shall now be deemed to be subject to mandatory detention under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, the section of law under which they were previously released and affects those who have resided in the United States for years.

32. Cementing the policy and making it binding on all IJs, the Board of Immigration Appeals ("BIA") recently issued a precedent decision: *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). In *Hurtado*, the BIA found that any noncitizen who is present in the United States without having been inspected and admitted is subject to detention under 8 U.S.C. §1225(b)(2), not §1226(a).

33. ICE and the DOJ have adopted this new and unprecedented position even though federal courts have rejected this exact conclusion. Most recently, Judge Kobick in the District of Massachusetts explicitly disagreed with *Hurtado*. *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025). This follows an increasingly long line of decisions in this District rejecting ICE and DOJ's ever-expanding view of mandatory detention under §1225. *See Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ---- 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Doe v. Moniz*, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Romero v. Hyde*, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Martinez v. Hyde*, 2025 WL 2084238 (D. Mass. July 24, 2025); *dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).

34. The Western District of Washington has also agreed. In the Tacoma, Washington, immigration court, IJs previously stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, reasoning such people are subject to mandatory detention under § 1225(b)(2)(A). There, in granting preliminary injunctive relief, the U.S. District Court for the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, No. 3:25-CV-05240-TMC, --- F. Supp. 3d ---, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025)

35. DHS's and DOJ's interpretation defies the INA. As the *Sampiao* and *Rodriguez Vazequez* courts explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Mr. Guerrero.

36. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

37. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Just this year, Congress enacted subparagraph (E) in the Laken Riley Act to exclude certain noncitizens who entered without inspection from § 1226(a)'s default bond provision. Subparagraph (E)'s reference to persons inadmissible under § 1182(6)(A), i.e., persons inadmissible for entering without inspection, makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez*, 2025 WL 1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

38. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who very recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A); *see also Diaz Martinez*, 2025 WL 2084238, at *8 ("'[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.'" (quoting *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958))).

Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

39. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were detained.

## CLAIMS FOR RELIEF

### Count I: Violation of the Fifth Amendment Due Process Clause

40. Petitioner incorporates by reference the above paragraphs.

41. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law."

42. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Moreover, "[t]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Id*. at 693.

43. Respondents' mandatory detention of Petitioner without consideration for release on bond or access to a bond hearing violates his due process rights.

**Count II: Violation of 8 U.S.C. § 1226(a) Unlawful Denial of Release on Bond**

44. Petitioner incorporates by reference the above paragraphs.

45. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being detained by Defendants. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

46. Nonetheless, the Department of Justice has issued a decision binding on all IJs, rendering Mr. Guerrero ineligible for a bond hearing. Given the clear language in the *Hurtado* decision, there is no question that an IJ will find he or she does not have jurisdiction to consider Mr. Guerrero for release on bond.

**Count III: Violation of the Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1 and 1003.19 Unlawful Denial of Release on Bond**

47. Petitioner incorporates by reference the above paragraphs.

48. In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) *will be eligible for bond and bond redetermination*." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear

that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

49. The application of 1225(b)(2) to Petitioner, who should be bond eligible, unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

### Count IV: Violation of the Administrative Procedure Act Contrary to Law and Arbitrary and Capricious Agency Policy

50. Petitioner incorporates by reference the above paragraphs.

51. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

52. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Defendants. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

53. Nonetheless, the DHS and the Immigration Court will apply § 1225(b)(2) to Petitioner.

54. The application of that section to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. *See* 5 U.S.C. § 706(2).

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Order that Defendants not remove Petitioner from the State of Massachusetts;

(4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment as well as the relevant statute and regulations governing detention of noncitizens;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7) Grant any further relief this Court deems just and proper.

                                                Respectfully Submitted
                                                Jose Arnulfo Guerrero Orellano, Petitioner
                                                By and through:

                                                s/ Annelise M. Jatoba de Araujo
                                                _____
                                                Annelise M. Jatoba de Araujo
                                                Araujo & Fisher, LLC
                                                75 Federal St, Ste 910
                                                Boston, MA 02110
                                                T: 617-716-6400
                                                C: 419-494-3051
                                                F: 617-716-6403
                                                Counsel for Petitioner

Dated: September 18, 2025

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Jose Arnulfo Guerrero Orellano and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 18th day of September, 2025.

s/*Annelise M. Jatoba de Araujo*

Annelise M. Jatoba de Araujo