UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE ARNULFO GUERRERO ORELLANA, on behalf of himself and others similarly situated, </br></br>Petitioner-Plaintiff,</br></br>v.</br></br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; DAVID WESLING, Acting Field Office Director; TODD LYONS, Acting Director, U.S. Immigrations and Customs Enforcement; SIRCE OWEN, Acting Director, Executive Office For Immigration Review; PAMELA BONDI, U.S. Attorney General; and KRISTI NOEM, U.S. Secretary of Homeland Security,</br></br>Respondents-Defendants. | Case No. 25-12664-PBS |

**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND CLASS ACTION COMPLAINT**

1. Over the last two months, the U.S. Department of Homeland Security ("DHS") and the U.S. Department of Justice ("DOJ") have abruptly and unlawfully reversed decades of settled immigration practice in order to deny immigration bond hearings to potentially millions of people in immigration proceedings nationwide, including to potentially thousands of people in Massachusetts.

2. Specifically, DHS and DOJ are systemically misclassifying people arrested inside the United States. These people are generally subject to the detention provisions of 8 U.S.C. § 1226, which usually allow for release on bond and conditions during the pendency of immigration proceedings. It has been this way for decades. DHS and DOJ are now misclassifying these people

1

as being subject to 8 U.S.C. § 1225, which does not allow for release on bond. This misclassification is contrary to almost 30 years of settled law and practice, and it is unlawfully premised solely upon the manner in which the person initially entered the country—in some cases, decades ago.

3. As of early September, this misclassification policy has been uniformly adopted by DHS and DOJ, and it is being applied to all civil immigration detainees and in all Immigration Courts, including people arrested, detained, and/or in immigration proceedings in Massachusetts.

4. As a result, DHS is currently arresting numerous people within Massachusetts and unlawfully detaining them in jails without any possibility of release and without any due process protections even though they are legally required to receive a bond hearing and are eligible for release on bond.

5. The unlawful actions of DHS and DOJ have resulted in an enormous proliferation of individual lawsuits to protect the rights of detained noncitizens. In those cases, numerous federal judges in Massachusetts and elsewhere have already ruled that DHS and DOJ are breaking the law. *See, e.g.*, Memorandum and Order (D.E. 22), *Hilario Rodriguez v. Moniz*, No. 25-12358 (D. Mass. Sept. 18, 2025) (Joun, J.); *Sampiao v. Hyde*, No. 25-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (Kobick, J.); *Doe v. Moniz*, No. 25-12094, 2025 WL 2576819 (D. Mass. Sept. 5, 2025) (Talwani, J.); Order (D.E. 16), *Encarnacion v. Moniz*, No. 25-12237 (D. Mass. Sept. 5, 2025) (Sorokin, J.), *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (Murphy, J.); *Diaz Martinez v. Hyde*, No. 25-11613, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025) (Murphy, J.); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025) (Kobick, J.); *see also Pizarro Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025) (collecting cases).

6. Nevertheless, DHS and DOJ continue to violate the law and detain people without due process in violation of their statutory, regulatory, and constitutional rights.

7. In recent days, there has been a surge of immigration arrests in Massachusetts, and dozens of habeas litigants have come before the district court seeking relief from this same unlawful interpretation. Many more habeas petitions are likely to follow if a class-wide resolution is not obtained. And many more people will be unable access the Court, either because they lack the legal resources to present a claim, or because they will be quickly boarded onto vans and planes and sent to far-off locations before they have a chance to seek help.

8. Accordingly, Petitioner-Plaintiff ("Petitioner") brings this action on behalf of himself and others similarly situated in an effort to prevent the government from unlawfully depriving them of liberty in violation of the law and without due process of law.

## **LEGAL BACKGROUND**

9. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

10. This fundamental principle of our free society is enshrined in the Fifth Amendment's Due Process Clause, which specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V.

11. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law").

12. "Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 678.

13. The Supreme Court, thus, "has repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

14. For decades, the immigration system has implemented this balance through a network of three mutually exclusive detention statutes.

15. First, at the border, individuals "seeking admission" who are placed into removal proceedings are subject to detention without a bond hearing under 8 U.S.C. § 1225(b)(2).[1] *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (describing § 1225 as relating to "borders and ports of entry"). These individuals may request release through humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

16. Second, individuals arrested inside the United States are generally placed into removal proceedings under 8 U.S.C. § 1229a, during which an Immigration Judge (an "IJ")—and later potentially the Board of Immigration Appeals (the "BIA") and a U.S. Court of Appeals—will decide whether or not the person should be deported. During these proceedings, a noncitizen may

---

[1] Separately, there is also a limited subset of individuals in and around the border who may be placed into the Expedited Removal process and are subject to mandatory detention under 8 U.S.C. § 1225(b)(1). *See Make the Road N.Y. v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

apply for various forms of relief from deportation, such as asylum, withholding of removal, cancellation of removal, and adjustment of status. The IJ usually holds a series of hearings to determine if the person is eligible for deportation and, even if so, whether to grant some form of relief from deportation. This process can take months or even years. While this process is ongoing, the individuals are generally subject to the detention authority of 8 U.S.C. § 1226. *See Jennings*, 583 U.S. at 288-89 (describing § 1226 detention as relating to people "inside the United States" and "present in the country"). Most of these individuals are eligible for release on bond and conditions under § 1226(a), and they are consequently entitled to a custody redetermination (colloquially called a "bond hearing") before an IJ to decide whether they should be detained or released. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). A bond hearing with strong procedural protections is not mere regulatory grace; it is the baseline Due Process requirement for § 1226 detainees. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment). The Supreme Court and First Circuit have recognized only one exception to this constitutional requirement for a bond hearing for § 1226 detainees: In 2003, in *Demore v. Kim*, the Court held that, under 8 U.S.C. § 1226(c), there is a narrow category of people who can be held in mandatory detention for a brief period of time, if the person has conceded removability and has been convicted of certain crimes following all of the due process afforded by a criminal adjudication.[2] *See* 538 U.S. 510, 513 (2003).

---

[2] "Convictions" for immigration purposes includes both formal adjudications of guilt and certain factual admissions of guilt made during the judicial process, such as the Massachusetts procedure for admitting to sufficient facts in order to secure a continuance without a finding ("CWOF"). *See* 8 U.S.C. § 1101(a)(48)(A); *De Vega v. Gonzalez*, 503 F.3d 45, 48-49 (1st Cir. 2007).

17. Third, if an individual completes their removal proceedings and all appeals, and is ordered removed, the person is subject to detention under 8 U.S.C. § 1231 while the government attempts to remove them. That statute provides for 90 days of mandatory detention called the "removal period," followed by discretionary detention within certain limits. *See Zadvydas*, 533 U.S. at 699-700 (holding § 1231 detention may not continue if removal is not reasonably foreseeable).

18. This system—in which people arrested inside the United States are generally eligible for a bond hearing and release during immigration proceedings—has existed essentially in its current form since Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, § 3003, 110 Stat. 3009-546, 3009-585 to 3009-587 (codified at 8 U.S.C. § 1226). According to IIRIRA's legislative history, § 1226(a) was intended to "restate[] the [then-]current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (quoting H.R. Rep. No. 104-469, at 229 (1996)). It also reflected nearly a century of law in the United States of allowing people inside the country to seek release while the government decided whether or not to deport them. *See* 34 Stat. 904-05, § 20 (1907) (providing for release on bond for noncitizens alleged to have entered the United States unlawfully); 39 Stat. 874, 890-91, §§ 19, 20 (1917) (similar); 66 Stat. 163, §§ 241(a)(2), 242(a) (1952) (last codified at 8 U.S.C. § 1252(a)(1) (1994)) (providing for release on bond, including for noncitizens alleged to have entered the United States without inspection).

19. This eligibility for a bond hearing and potential release has applied to people arrested in the United States, regardless of whether they initially entered the country with permission. Indeed, shortly after IIRIRA's enactment, the former Immigration and Naturalization Service and the

Executive Office for Immigration Review ("EOIR," which houses the Immigration Courts and BIA) issued an interim rule to implement the statute that expressly stated: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

20. Thus, for almost 30 years, all participants in the immigration system have understood that people arrested inside the United States generally fall within § 1226 for detention purposes and are therefore required to receive a bond hearing upon request—even if they initially entered the country without permission. *See Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at \*4 n.9 (D. Mass. July 24, 2025) (citing the United States Solicitor General's representation to the Supreme Court at oral argument that "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended").

21. However, around late 2022, the Immigration Court in Tacoma, Washington began misclassifying § 1226 detainees arrested inside the United States as mandatory detainees under § 1225(b)(2), solely because they initially entered the country without permission. *See Rodriguez*, 779 F. Supp. 3d at 1244. The U.S. District Court for the Western District of Washington ruled that this practice was likely illegal in April 2025 and ordered a bond hearing for a wrongfully detained litigant. *See id.* at 1263.

22. Nevertheless, three months later, on July 8, 2025, DHS, "in coordination" with DOJ, adopted the Tacoma Immigration Court's unlawful practice nationwide.[3] Pursuant to the July 2025

---

[3] *See* Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

Policy, DHS's representatives in the Immigration Courts began to request that Immigration Judges nationwide misclassify bond-eligible § 1226 detainees as mandatory § 1225(b)(2) detainees and refuse to conduct bond hearings on that basis. Some Immigration Judges agreed. As a result, numerous detainees were illegally denied bond hearings and sought relief in the federal courts. Numerous courts—including many in the District of Massachusetts—rejected DHS's newly invented misclassification as illegal and ordered the detainees to receive a prompt bond hearing. *See Romero*, 2025 WL 2403827, at *1 (collecting cases).

23. As previously noted, the BIA and the Immigration Courts are entities within EOIR, which is part of DOJ. On September 5, 2025, in *Matter of Yajure Hurtado*, 29 I. &. N. Dec. 216 (B.I.A. 2025) ("*Matter of Hurtado*"), the BIA issued a precedential decision that purports to require *all* Immigration Judges to misclassify people in this manner. Although the *Matter of Hurtado* decision is just two weeks old, multiple federal courts have already ruled that the BIA's decision is not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024), and have rejected the BIA's decision as contrary to law. *See, e.g.*, *Chogllo Chafla v. Scott*, No. 25-437, 2025 WL 2688541, at *7 (D. Me. Sept. 21, 2025) ("I find *Yajure Hurtado* to be unavailing . . . ."); Order (D.E. 22), *Hilario Rodriguez*, No. 25-12358, at 4 n.4; *Sampiao*, No. 25-11981, 2025 WL 2607924, at *8 n.11 ("[T]he Court disagrees with the BIA for the reasons given herein."); *Pizarro Reyes*, 2025 WL 2609425, at *7 ("[T]he BIA's decision to pivot from three decades of consistent statutory interpretation and call for [petitioner's] detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation.").

24. Nevertheless, DHS and DOJ are continuing to systemically misclassify people and unlawfully deny them access to bond hearings and release on bond and conditions during the pendency of their immigration proceedings.

**PETITIONER'S FACTS**

25. Petitioner Jose Arnulfo Guerrero Orellana resides in Massachusetts. Although Petitioner's detention is authorized, if at all, by 8 U.S.C. § 1226(a), which entitles him to a bond hearing, ICE is detaining him pursuant to 8 U.S.C. § 1225(b)(2) and, under *Matter of Hurtado*, will not provide him a bond hearing, instead requiring him to be held in no-bond detention.

26. Mr. Guerrero Orellana has no criminal record. He has resided peacefully in the United States for more than a decade. He lives with his wife and their one-year-old U.S. citizen daughter.

27. U.S. Immigration and Customs Enforcement ("ICE") and/or other federal agents acting on ICE's behalf arrested Mr. Guerrero Orellana in Massachusetts on or about September 18, 2025. The arrest occurred when ICE and/or other agents acting on ICE's behalf stopped a vehicle in which Mr. Guerrero Orellana was riding as a passenger. On information and belief, he had had no prior contact with immigration officials and was not a target of the arrest operation.

28. Mr. Guerrero Orellana is currently being held in ICE's custody in the District of Massachusetts pending full removal proceedings. On information and belief, Mr. Guerrero Orellana is eligible for relief from removal, including cancellation of removal.

29. DHS has served Petitioner with a Notice to Appear alleging that he was not previously admitted or paroled into the United States, and that he is present in the United States without immigration status.

30. As a person arrested inside the United States and held in civil immigration detention for pending removal proceedings, Petitioner is subject to detention, if at all, pursuant to 8 U.S.C.

§ 1226. *See, e.g., Romero*, 2025 WL 2403827, at *1, 8-13 (collecting cases). Petitioner lacks any criminal predicates that could subject him to mandatory detention under 8 U.S.C. § 1226(c) and is subject to detention, if at all, under 8 U.S.C. § 1226(a).

31. As a person detained under 8 U.S.C. § 1226(a), Petitioner must, upon his request, receive a bond hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57 (affirming class-wide declaratory judgment); 8 C.F.R. §§ 236.1(d), 1003.19(a)-(f).

32. Petitioner requests such a bond hearing.

33. Under *Matter of Hurtado*, however, the responsible administrative agency has predetermined that Petitioner will be denied a bond hearing, and the government is holding Petitioner under the purported authority of 8 U.S.C. § 1225(b)(2), under which Petitioner will not receive a bond hearing.

## JURISDICTION, VENUE, AND PARTIES

34. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I § 9, cl. 2 of the U.S. Constitution (Suspension Clause).

35. Venue is proper because Petitioner resides in Massachusetts and is detained in the District of Massachusetts. Venue is also proper under 28 U.S.C. §§ 1391(b)(2), (e). Petitioner and most members of the putative class are or will be arrested and/or detained within this District, and a substantial part of the events giving rise to the claims and relevant facts occurred within this District, including the detention of class members without a bond hearing and the failure of the Immigration Courts located in Massachusetts to provide bond hearings to Petitioner and the class members. Respondent-Defendant ("Respondent") Wesling is located in this District and possesses

day-to-day authority over the custody of Petitioner and others arrested or detained in Massachusetts and New England.

36. Petitioner resides in Massachusetts and is presently detained by ICE at the Plymouth County Correctional Facility.

37. Respondent Antone Moniz is the Superintendent of the Plymouth County Correctional Facility and is Petitioner's immediate custodian.

38. Respondent David Wesling is the Acting New England Field Office Director for U.S. Immigration and Customs Enforcement.

39. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

40. Respondent Sirce Owen is the Acting Director of EOIR and has ultimate responsibility for overseeing the operation of the immigration courts and the Board of Immigration Appeals, including bond proceedings.

41. Respondent Pamela Bondi is the Attorney General of the United States and administers the Department of Justice, including EOIR, the BIA, and the Immigration Courts.

42. Respondent Kristi Noem is the U.S. Secretary of Homeland Security and administers the Department of Homeland Security.

43. All respondents are named in their official capacities. One or more of the respondents is Petitioner's immediate custodian.

## **CLASS ALLEGATIONS**

44. The foregoing allegations are re-alleged and incorporated herein.

45. Petitioner seeks to represent a class comprised of the following people in civil immigration detention:

    a. The person is arrested or detained in Massachusetts; or is detained in a geographical area over which, as of the date of the filing of this amended petition, an Immigration Court located in Massachusetts is the administrative control court;[4] or is otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts; and

    b. The person meets all of the following criteria:

        i. The person is not in any Expedited Removal process and does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1);

        ii. For the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;

        iii. The person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);

        iv. The person is not subject to post-final order detention under 8 U.S.C. § 1231.

44. The members of the class are readily ascertainable through Respondents' records.

45. Petitioner brings this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), and as a representative habeas class action, on behalf of himself and all other similarly situated persons who are members of the class and/or will become members of class in the future upon their arrest by immigration authorities.

---

[4] The Chelmsford Immigration Court is an Administrative Control Court ("ACC") and is presently the ACC with jurisdiction over the DHS District Office in Massachusetts (and any sub-offices) and ICE detention facilities in Massachusetts, New Hampshire, Maine, and Rhode Island. *See* Immigration Court List–Administrative Control, https://www.justice.gov/eoir/immigration-court-administrative-control-list.

46. The class is so numerous that joinder of all members is impracticable. The class is even larger when all future members of the class are included. The government's misclassification of § 1226 detainees as § 1225 mandatory detainees "has been estimated . . . [to] require the detention of millions of immigrants currently residing in the United States," a substantial percentage of whom reside in Massachusetts or are otherwise class members. *See Martinez*, 2025 WL 2084238, at *5. Since *Matter of Hurtado* was decided, dozens of individual habeas corpus petitions challenging its misclassification of bond-eligible detainees have been filed in this District.

47. There are multiple questions of law and fact common to members of the proposed class, including:

   a. Whether Respondents are violating the class members' statutory and regulatory rights under 8 U.S.C. § 1226 and associated regulations by detaining the class members without a bond hearing;

   b. Whether Respondents are violating the class members' due process rights by detaining them without a bond hearing;

   c. Whether Respondents are violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by detaining the class members without a bond hearing pursuant to *Matter of Hurtado*.

48. Petitioner's claim is representative of the proposed class, as Mr. Guerrero Orellana faces the same injury as the class and asserts the same rights and claims as the class. Petitioner is represented by competent class counsel, and will fairly and adequately protect the class's interest.

49. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because class members are subject to a common practice by Respondents; specifically, misclassifying them as § 1225 mandatory detainees and denying them a bond hearing pursuant to *Matter of Hurtado*.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of 8 U.S.C. § 1226(a) and Associated Regulations

49. Petitioner and the putative class members may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

50. Under § 1226(a) and its associated regulations, Petitioner and the putative class members are entitled to a bond hearing. *See* 8 C.F.R. §§ 236.1(d), 1236.1, 1003.19(a)-(f).

51. Petitioner and the putative class members have not been, and will not be, provided with a bond hearing as required by law.

52. Petitioner's and the putative class members' continuing detention is therefore unlawful.

### COUNT TWO
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))

53. Because Petitioner and the putative class members are people subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that they receive a bond hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

54. Petitioner and the putative class members have not been, and will not be, provided with a bond hearing as required by law.

55. Petitioner's and the putative class members' continuing detention is therefore unlawful.

### COUNT THREE
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide an Individualized Hearing for Domestic Civil Detention)

46. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend.

V.

47. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *cf. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens' due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

48. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

49. The Supreme Court, thus, "has repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington,* 441 U.S. at 425; *see also Salerno*, 481 U.S. at 755; *Foucha,* 504 U.S. at 81-83; *Hendricks,* 521 U.S. at 357.

50. Petitioner and the putative class members were or will be held without being provided any individualized detention hearing.

51. Petitioner's and the putative class members' continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT FOUR
### Violation of Fifth Amendment Right to Due Process
### (Substantive Due Process)

53. Because Petitioner and the putative class members are not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*,

15

the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

54. Petitioner's and the putative class members' detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT FIVE
## Violation of Administrative Procedure Act (5 U.S.C. § 706)

55. Petitioner and the putative class members are being detained without a bond hearing pursuant to the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).

56. The BIA's decision in *Matter of Hurtado* is unlawful because it violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law.

57. Petitioner's and the putative class members' detention is therefore unlawful.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the District of Massachusetts;

(3) Declare that Petitioner's detention is unlawful;

(4) Order Petitioner's release on conditions the Court deems just and proper pending adjudication of this petition;

(5) Certify a class as defined above;

(6) Name the Petitioner as the representative of the class, and appoint Petitioner's counsel as class counsel;

(7) Declare that the Petitioner and all class members are or will be detained, if at all, pursuant to 8 U.S.C. § 1226, and are therefore entitled to a bond hearing upon request;

(8) Postpone the effective date of *Matter of Hurtado* pending final resolution of this case under the APA, 5 U.S.C. § 705, and set aside and vacate *Matter of Hurtado* under the APA, 5 U.S.C. § 706(2);

(9) Issue a preliminary injunction and Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, order Respondents to release Petitioner if he is not provided a bond hearing within seven (7) days after the Court's order;

(10) Grant attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504 *et seq.* if applicable; and

(11) Grant any further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO # 670685)
Adriana Lafaille (BBO # 680210)
Daniel L. McFadden (BBO # 676612)
Julian Bava (BBO # 712829)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org
jbava@aclum.org

My Khanh Ngo*
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
m.tan@aclu.org

Gilles R. Bissonnette (BBO # 669225)
SangYeob Kim*

17

Chelsea Eddy*
AMERICAN CIVIL LIBERTIES UNION
OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Phone: 603.333.2081
gilles@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Carol J. Garvan*
Max I. Brooks*
AMERICAN CIVIL LIBERTIES UNION
OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
(207) 619-8687
cgarvan@aclumaine.org
mbrooks@aclumaine.org

Anthony D. Mirenda BBO #550587
Christopher E. Hart BBO #625031
Gilleun Kang BBO #715312
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000
adm@foleyhoag.com
chart@foleyhoag.com
gkang@foleyhoag.com

Annelise M. Jatoba de Araujo
(BBO # 669913)
Araujo & Fisher, LLC
75 Federal St., Ste. 910
Boston, MA 02110
617-716-6400
annelise@araujofisher.com

Sameer Ahmed (BBO #688952)
Sabrineh Ardalan (BBO # 706806)
Harvard Immigration and Refugee Clinical
Program
Harvard Law School
6 Everett Street
Cambridge, MA 02138

                                                T: (617) 384-0088
                                                F: (617) 495-8595
                                                sahmed@law.harvard.edu
                                                sardalan@law.harvard.edu

                                                *Counsel for Petitioner*

Dated: September 22, 2025

*Motion for admission *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document will be served on counsel for all parties through the Court's CM/ECF system.

Date: September 22, 2025                            */s/ Daniel L. McFadden*
                                                       Daniel L. McFadden