**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

JOSE ARNULFO GUERRERO ORELLANA,   )
on behalf of himself and others similarly situated,   )
   )
           Petitioner-Plaintiff,   )
   )    Case No. 25-12664-PBS
v.   )
   )
ANTONE MONIZ, Superintendent, Plymouth   )    **Expedited Opposition Requested**
County Correctional Facility, et al.,   )
   )
           Respondents-Defendants.   )
_____)

<u>**MOTION FOR PRELIMINARY INJUNCTION
REQUIRING BOND HEARING FOR PETITIONER INDIVIDUALLY
AND INCORPORATED MEMORANDUM OF LAW**</u>

Roughly two months ago, the government began to systemically misclassify immigration detainees in order to deny them bond hearings. This practice is contrary to decades of settled law and policy. On September 5, the government cemented the practice through the Board of Immigration Appeals's ("BIA") decision in *Matter of Yajure Hurtado*, 29 I. &. N. Dec. 216 (B.I.A. 2025) ("*Matter of Hurtado*"). That decision unlawfully compels all Immigration Judges to uniformly refuse to provide bond hearings to anyone who originally entered the country without permission. As far as counsel can determine, every federal court to have considered this issue has ruled that the government is wrong.

The impact on the immigrant community from *Matter of Hurtado* can hardly be overstated. In Massachusetts alone, many thousands of people are suddenly facing the prospect of being illegally detained for months or years with no bond hearing at all. In the two weeks since *Matter of Hurtado* was decided, dozens of people seeking help have filed habeas petitions in this District. These numbers will only continue to grow as ICE surges its enforcement activities in

1

Massachusetts. Because this huge and growing group of cases all challenge a uniform policy, a collective resolution would be less burdensome to the individuals, would ensure consistent adjudication for all people, and would promote the efficient use of resources for all involved.

Mr. Guerrero Orellana filed an individual habeas petition a few days ago. He has lived in Massachusetts for over a decade. He currently resides here with his wife and young daughter, who is a U.S. citizen. He has no criminal record. He is eligible for cancellation of removal, which he will pursue in the Immigration Court. Nobody seems to contend that he is dangerous or a flight risk. But the government alleges he originally entered the country without admission or parole, and so he is facing prolonged no-bond detention under the exact illegal practice described above. The Immigration Court will not provide him with the legally required bond hearing, absent an order from this Court.

Mr. Guerrero Orellana is willing to help promote a uniform resolution of this problem by serving as a representative for a class of similarly situated detainees. Such a case will almost certainly take longer to finally resolve than a typical individual habeas petition. At the same time, it is important that Mr. Guerrero Orellana receive individual access to a bond hearing without delay. Accordingly, he is moving for a preliminary injunction requiring a bond hearing individually, to ensure his rights are adequately protected while the larger case unfolds. Because this relief is preliminary in nature, Mr. Guerrero Orellana's case will not be moot, and the final resolution of his case will still be controlled by the Court's ultimate judgment. Thus, his interests will remain aligned with the class at all times. This was deemed a fair approach in at least two highly similar class actions currently pending in the Western District of Washington and the District of Nevada. *See Maldonado Vazquez v. Feeley*, No. 25-1542, 2025 WL 2676082, at *22-23 (D. Nev. Sept. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash.

2025), *class subsequently certified at* 349 F.R.D. 333 (W.D. Wash. 2025).  Mr. Guerrero Orellana respectfully requests that the Court adopt the same approach here and enter a preliminary injunction requiring that he be released unless he is provided a bond hearing with all required procedural protections within seven days of the Court's order.

Additionally, because Mr. Guerrero Orellana is unlawfully jailed, and because this motion raises essentially the same issues that Respondents were already ordered to brief this week, Mr. Guerrero Orellana respectfully requests that the Court order any opposition to this motion be filed no later than Friday, September 26.

## FACTUAL BACKGROUND CONCERNING INDIVIDUAL RELIEF

Mr. Guerrero Orellana resides in Massachusetts.  *See* Declaration of Annelise Araujo, Esq. ("Araujo Decl.") ¶4.   He has resided in the United States since at least 2013.  *See id.*  He has no criminal record.  *See id.* ¶8.  He lives with his wife and their one-year-old U.S. citizen daughter. *See id.* ¶4.  It appears that he has never had any prior contact with the immigration authorities.  *See id.* ¶7.

Federal agents acting on behalf of U.S. Immigration and Customs Enforcement ("ICE") arrested Mr. Guerrero Orellana in Massachusetts on September 18, 2025.  *See id.* ¶5.  The agents stopped a vehicle in which Mr. Guerrero Orellana was riding as a passenger.  *See id.*  It does not appear he was a target of the arrest operation.  *See id.*

Mr. Guerrero Orellana is currently being held in ICE's custody at the Plymouth County Correctional Facility.  *See id.* ¶6.  He is eligible for relief from removal, including cancellation of removal.  *See id.* ¶9.  He therefore has strong incentives to appear for all immigration proceedings, and the government does not appear to contend that he is dangerous or a flight risk.

The government has served Mr. Guerrero Orellana with a Notice to Appear alleging that he was not previously admitted or paroled into the United States, and that he is present in the United States without a valid entry document.  *See id.* Ex. A.

As a person arrested inside the United States and held in civil immigration detention for pending removal proceedings, Mr. Guerrero Orellana is subject to detention, if at all, pursuant to 8 U.S.C. § 1226.  *See, e.g., Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *1, 8-18 (D. Mass. Aug. 19, 2025) (Murphy, J.) (collecting cases).  Indeed, the government generated a warrant at the time of his arrest stating that this statute was the basis for his detention.  *See* Araujo Decl. Ex. A (warrant stating detention was pursuant to INA § 236, which is codified at § 1226).  Because he lacks any criminal predicates that could subject him to mandatory detention under 8 U.S.C. § 1226(c), he is subject to detention, if at all, under 8 U.S.C. § 1226(a).  As a person detained under 8 U.S.C. § 1226(a), he must, upon his request, receive a bond hearing with strong procedural protections.  *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment); 8 C.F.R. §§ 236.1(d), 1236.1, 1003.19(a)-(f).

However, under *Matter of Hurtado*, the responsible administrative agency has predetermined that Mr. Guerrero Orellana will be denied a bond hearing solely because he allegedly entered the country without being admitted more than a decade ago.  The government is unlawfully holding Mr. Guerrero Orellana under the purported authority of 8 U.S.C. § 1225(b)(2), under which he will never receive a bond hearing.

Unless the Court intervenes, Mr. Guerrero Orellana's unlawful detention without due process is likely to last for a very long time.  Completing the process in the Immigration Court alone could take six months.  *See* Araujo Decl. ¶16; Declaration of Irene Freidel, Esq. ("Freidel

Decl.") ¶10.  And if an appeal is required, the period of unlawful detention could last much longer. *See* Araujo Decl. ¶16; Freidel Decl. ¶14.

## **LEGAL STANDARD**

Preliminary injunctions are available to individual habeas petitioners.  Although there is no set of rules that governs all aspects of habeas practice under 28 U.S.C. § 2241, the Court has authority to apply the preliminary injunction standards from civil practice.  *See* Rules Governing Section 2254 Cases 1(b) (rules can be applied to non-2254 petitions), 12 (civil practice rules can be applied); Fed. R. Civ. P. 81(a)(4) (federal civil rules can be applied in habeas cases); *see also Arrazola-Gonzalez v. Noem*, No. 25-1789, 2025 WL 2379285, at *3 (C.D. Cal. Aug. 15, 2025) (ordering bond hearings through temporary restraining order); *Rodriguez*, 779 F. Supp. 3d at 1263 (ordering bond hearing through preliminary injunction).  The Court may also enter preliminary individual relief pursuant to its inherent equitable habeas powers. *See Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); *see also Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (explaining that habeas corpus is, "above all, an adaptable remedy" in which the court's role is "most extensive in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention").

In deciding whether to issue a preliminary injunction, the Court considers the balance of four factors: "a likelihood of success on the merits; whether and to what extent the movants will suffer irreparable harm in the absence of preliminary injunctive relief; the balance of relative hardships; and the effect, if any, that either a preliminary injunction or the absence of one will have on the public interest."  *See Me. Forest Prods. Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022) (citation modified).

## ARGUMENT

A. <u>Mr. Guerrero Orellana is likely to succeed on the merits of his claims.</u>

Mr. Guerrero Orellana has raised essentially three sets of claims in this petition: (1) that he is being misclassified in the statutory/regulatory scheme as a no-bond detainee, when he is actually bond eligible, *see* Am. Pet. (D.E. 10) at Count 1; (2) that his detention without a bond hearing violates constitutional due process protections, *see id.* at Counts 2-4; and (3) that his detention pursuant to *Matter of Hurtado* is unlawful and therefore also violates the Administrative Procedure Act. *See id.* at Count 5. There is every reason to believe that he will prevail on each of these claims, and therefore a preliminary injunction should enter. *See Me. Forest Prods. Council*, 51 F.4th at 5 (referring to likelihood of success on the merits as "the factor that 'weighs most heavily in the preliminary injunction calculus'" and the "'sine qua non' for preliminary injunctive relief").

> 1. *Mr. Guerrero Orellana is likely to show that he is being misclassified in the statutory/regulatory scheme as a no-bond detainee, when he is actually bond eligible.*

As far as counsel can determine, every court to have examined the issue has rejected the government's recent attempts to misclassify people arrested inside the United States—people exactly like Mr. Guerrero Orellana—as § 1225(b)(2) no-bond detainees. *See, e.g.*, Memorandum and Order (D.E. 22), *Hilario Rodriguez v. Moniz*, No. 25-12358 (D. Mass. Sept. 18, 2025) (Joun, J.); *Sampiao v. Hyde*, No. 25-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (Kobick, J.); *Doe v. Moniz*, No. 25-12094, 2025 WL 2576819 (D. Mass. Sept. 5, 2025) (Talwani, J.); Order (D.E. 16), *Encarnacion v. Moniz*, No. 25-12237 (D. Mass. Sept. 5, 2025) (Sorokin, J.), *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (Murphy, J.); *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025) (Murphy, J.); *Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299 (D. Mass. July 7, 2025) (Kobick, J.); *see also Chogllo Chafla v. Scott*, No. 25-437, 2025 WL 2688541, at *5 (D. Me. Sept. 21, 2025) (collecting cases); *Pizarro Reyes v.*

*Raycraft*, No. 25-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025) (collecting cases).[1]

There is therefore a strong likelihood that Mr. Guerrero Orellana will show that he, too, has been

misclassified, and is in fact a § 1226(a) detainee who is entitled to a bond hearing before an

Immigration Judge (an "IJ"). *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1236.1, 1003.19(a)-

(f).

Mr. Guerrero Orellana's statutory and regulatory arguments arise from the intersection of

the three mutually exclusive statutes that create the legal landscape for civil immigration detention:

First, at the border, individuals "seeking admission" who are placed into removal

proceedings are subject to detention without a bond hearing under 8 U.S.C. § 1225(b)(2).[2] *See*

*Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (describing § 1225 as relating to "borders and

ports of entry").

Second, when a person is arrested inside the United States on civil immigration charges,

they are generally subject to the detention authority of 8 U.S.C. § 1226 during the pendency of

their removal proceedings. *See Jennings*, 583 U.S. at 288-89 (describing § 1226 detention as

---

[1] The government has relied on *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025), but the issue does not seem to have been contested in that case, which was focused instead on whether an approved I-130 petition would overcome no-bond detention under § 1225(b)(2). *See Doe*, 2025 WL 2576819, at *5 n.7 (explaining that in *Pena* "the petitioner . . . did not argue that his detention should have been under Section 1226 and the decision does not discuss Section 1226 at all").

[2] These individuals may request release through humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

Separately, there is also a limited subset of individuals in and around the border who may be placed into the Expedited Removal process and are subject to mandatory detention under 8 U.S.C. § 1225(b)(1). *See Make the Road N.Y. v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025). This subset is not pertinent to Mr. Guerrero Orellana for a variety of reasons— including because he has resided in the United States for many years—and the government has not attempted to place him in Expedited Removal.

relating to people "inside the United States" and "present in the country"). Those (like Mr. Guerrero Orellana) who do not have disqualifying criminal history are entitled to a bond hearing before an IJ to decide whether they should be detained or released. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d); 1003.19(a), 1236.1(d). This statute has long been interpreted to apply to people arrested inside the United States, even if they initially entered the country without being admitted. *See, e.g.*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.").

Third, if a person completes their removal proceedings and all appeals, and is ordered removed, the person is subject to detention under 8 U.S.C. § 1231 while the government attempts to remove them. *See generally Zadvydas v. Davis*, 533 U.S. 678 (2001) (discussing limitations on post-final order detention).

The present crisis has arisen because the government is now attempting to unlawfully move thousands of people from one of these categories to the other. Specifically, the government is attempting to misclassify bond-eligible § 1226 detainees arrested inside the United States as no-bond border detainees under § 1225(b)(2). This unlawful practice apparently began in a single Immigration Court in Washington. *See Rodriguez*, 779 F. Supp. 3d at 1244. Last summer, DHS, "in coordination" with DOJ, began making this argument to Immigration Courts nationwide.[3] And finally, about two weeks ago, the Board of Immigration Appeals adopted it as a uniform policy for all Immigration Courts in the *Matter of Hurtado* decision. *See* 29 I. &. N. Dec. 216 (B.I.A. 2025). Under *Matter of Hurtado*, Mr. Guerrero Orellana will be misclassified as a § 1225(b)(2) no-bond

---

[3] *See* Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

detainee and denied a bond hearing, solely because the government alleges he entered the United States without being admitted more than a decade ago.  This is true even though—like many detainees in his position—the government's own records indicate that he is being detained under § 1226.  *See* Araujo Decl. Ex. A (warrant stating detention was pursuant to INA § 236, which is codified at § 1226); *see also, e.g.*, *Romero*, 2025 WL 2403827, at *8 (misclassified despite arrest on 236 warrant); *Gomes*, 2025 WL 1869299, at *1 (same).

Many courts in this District, and many throughout the country, have rejected the government's unlawful reversal of nearly three decades of settled immigration practice.  As one court has explained, the government's "new interpretation is contrary to the agency's own implementing regulations; its published guidance; the decisions of its immigration judges (until very recently); decades of practice; the Supreme Court's gloss on the statutory scheme; and the overall logic of our immigration system." *See Romero*, 2025 WL 2403827, at *9 (citation modified); *see also Rodriguez*, 779 F. Supp. 3d at 1257; *Diaz Diaz v. Mattivelo*, No. 25-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025) (Kobick, J.); *Chogllo Chafla*, 2025 WL 2688541, at *5-9.  The new interpretation also contradicts Congress's clear understanding of the statutory framework as expressed *this year* with the passage of the Laken Riley Act—a new statute that expressly contemplates the inclusion of people who entered without inspection within the scope of § 1226.  *See Romero*, 2025 WL 2403827, at *11; *Sampiao*, 2025 WL 2607924, at *8.

Indeed, applying § 1225(b)(2) to people already inside the country runs directly counter to the plain language of the statute.  *See Romero*, 2025 WL 2403827 at *9.  "[F]or [§] 1225(b)(2) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez*, 2025 WL 2084238, at *2.  A

person apprehended inside the United States is not undergoing an "examination," which "is a specific legal process one undergoes while trying to enter the country." *Romero*, 2025 WL 2403827, at *9 (citing 8 C.F.R. § 235.1). And a person "seeking admission" is necessarily taking a "present-tense action" to attempt to enter the country, not somebody already inside. *See id.* at 9-10. For this reason as well, Mr. Guerrero Orellana is highly likely to show that his no-bond detention is unlawful.

Lastly, to the extent the government might propose deference to *Matter of Hurtado*, there is no longer any requirement to defer to the administrative agency's interpretation, even if the statute were ambiguous. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024). It appears that every court that has examined this issue since the BIA's decision on September 5 has rejected *Matter of Hurtado* as unavailing in light of the contrary conclusion compelled by tools of statutory interpretation. *See, e.g.*, *Chogllo Chafla*, 2025 WL 2688541, at *7 ("I find *Yajure Hurtado* to be unavailing . . . ."); *Sampiao*, 2025 WL 2607924, at *8 n.11 ("[T]he Court disagrees with the BIA for the reasons given herein."); *Pizarro Reyes*, 2025 WL 2609425, at *7 ("[T]he BIA's decision to pivot from three decades of consistent statutory interpretation and call for [petitioner's] detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation.").

> 2. *Mr. Guerrero Orellana is likely to show that his detention without a bond hearing violates constitutional due process protections.*

Even if the government could permissibly interpret 8 U.S.C. §§ 1225 and 1226 to deny Mr. Guerrero Orellana a bond hearing—though it cannot—holding him in custody without providing him any individualized opportunity to seek release on bond still violates due process requirements. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment's

Due Process Clause specifically forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. Due process protections apply to all persons detained within the United States, including noncitizens. *See Zadvydas*, 533 U.S. at 690-93; *Hernandez-Lara*, 10 F.4th at 29; *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). And "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690.  Consequently, the Supreme Court has "repeatedly . . . recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); see also *Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

Here, the due process claim in this case is controlled by the First Circuit's decision in *Hernandez-Lara*. There, the First Circuit considered the case of a noncitizen who "entered the United States . . . without being admitted or paroled" and was later detained in New England, and who alleged that the bond hearing that she had received was constitutionally inadequate because the burden of proof had been placed on her to show that she did not pose a danger to the community or a flight risk in order to be released. *Hernandez-Lara*, 10 F.4th at 23-24. Acknowledging the importance of the liberty interests at stake, the First Circuit held that she was entitled to a bond hearing with certain procedural protections as a matter of constitutional due process. *Id.* at 41. Then, in *Brito v. Garland*, the First Circuit affirmed identical declaratory relief for a class of

detainees held under § 1226(a), *see* 22 F.4th 240 (1st Cir. 2021), which, as properly interpreted at the time, included people who had entered the country without inspection. Indeed, two of the approved class representatives in *Brito* had allegedly entered the country without inspection. *Brito v. Barr*, 395 F. Supp. 3d 135, 140, 141 (D. Mass. 2019) (Mr. Pereira Brito "entered the United States without inspection" and Mr. Avila Lucas entered the United States "without authorization").

Those holdings control. Just like the petitioner in *Hernandez-Lara*, and many of the class members (and two named plaintiffs) at issue in *Brito*, Mr. Guerrero Orellana allegedly "entered the United States . . . without being admitted or paroled" and was subsequently detained while living in the United States. 10 F.4th at 23. The government does not seek to detain him on the force of a bond hearing in which he unlawfully bears the burden to justify his own liberty, but rather to deny him the opportunity for a bond hearing altogether. *Hernandez-Lara* and *Brito* plainly bar this result.

> 3. *Mr. Guerrero Orellana is likely to show that his detention pursuant to* Matter of Hurtado *is unlawful under the Administrative Procedure Act.*

Mr. Guerrero Orellana may not be detained without a bond hearing with strong procedural protections for the additional reason that such detention violates the APA. Agency action found to be arbitrary, capricious, or otherwise not in accordance with law "shall" be held unlawful and set aside. 5 U.S.C. § 706(2). The government is currently holding Mr. Guerrero in detention without the possibility of bond pursuant to the BIA's decision in *Matter of Hurtado*, which instructs all immigration judges to unlawfully misclassify noncitizens like Mr. Guerrero Orellana who have allegedly entered without inspection as mandatory § 1225(b)(2) detainees. As previously explained, Mr. Guerrero Orellana's misclassification as required by *Matter of Hurtado* violates his statutory right to a bond hearing and offends due process. *See, e.g.*, *Maldonado Vazquez*, 2025 WL 2676082 (granting preliminary injunction to putative class representative and rejecting *Matter of*

*Hurtado*); *cf. Brito v. Barr*, 415 F. Supp. 3d 258, 268 (D. Mass. 2019) ("Because the Court has already concluded that the BIA's policy of placing the burden of proof on the alien in § 1226(a) bond hearings is unconstitutional, the Court also holds that the BIA policy is a violation of the APA."), vacated in part on other grounds by *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021). Similarly, Mr. Guerrero Orellana's detention pursuant to *Matter of Hurtado* is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious if the agency fails to "articulate a satisfactory explanation for its action" or "entirely fail[s] to consider an important aspect of the problem"); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agencies may not depart from prior policies without displaying awareness of the change and providing good reasons for it). Mr. Guerrero Orellana's detention pursuant to *Matter of Hurtado* therefore violates the APA.

    B.  <u>In the absence of preliminary relief, Mr. Guerrero Orellana will suffer irreparable harm.</u>

    Mr. Guerrero Orellana will suffer irreparable harm if preliminary relief is withheld. To make a showing of irreparable harm, a plaintiff must demonstrate likely irreparable injury in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "[T]he measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). "District courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." *Id.* at 485 (1st Cir. 2009) (quotation omitted).

    Mr. Guerrero Orellana will face irreparable harm if he remains detained without access to a bond hearing. His irreparable injury is clear: his unconstitutional deprivation of liberty without

due process. "Obviously, the loss of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005). "[T]he interest in being free from physical detention by [the] government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Indeed, "[i]t would be perverse to find that loss of liberty somehow suddenly stops being irreparable harm just because it is being considered in the immigration context." *Romero*, 2025 WL 2403827, at *8.

For this reason, numerous courts have held that immigration detention without the ability to be released on bond constitutes irreparable harm. *See id.*; *dos Santos v. Noem*, No. 25 -12052, 2025 WL 2370988, at *5 (D. Mass. Aug. 14, 2025) (holding that "loss of liberty" without the ability for release on bond during removal proceedings "constitute[s] irreparable harm"); *Gomes,* 2025 WL 1869299, at *5 (same); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1262 (W.D. Wash. 2025) (holding that Rodriguez "suffers potentially irreparable harm every day that he remains in custody without a [bond] hearing, which could ultimately result in his release from detention"); Order Granting Petitioners' Ex Parte Application for Temporary Restraining Order and Order to Show Cause (D.E. 14) at 9, *Maldonado Bautista v. Santacruz Jr.,* No. 25- 01873 (C. D. Cal. July 28, 2025) (finding that the potential for "continued detention without an initial bond hearing would cause immediate and irreparable injury, as this violates statutory rights afforded under § 1226(a)"). Every day Mr. Guerrero Orellana spends incarcerated is a day he remains stripped of his freedom and separated from his family, including his wife and their one-year-old U.S. citizen daughter. Accordingly, Mr. Guerrero Orellana faces clear irreparable harm absent preliminary relief.

C.  The balance of hardships and the public interest favor preliminary relief.

Both the balance of the equities and the public interest favor preliminary relief.  "These two inquiries merge in a case like this one, where the Government is the party opposing the preliminary injunction." *Devitri v. Cronen*, 289 F. Supp. 3d 287, 297 (D. Mass. 2018).

First, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *New York v. McMahon*, 784 F. Supp. 3d 311, 372 (D. Mass. 2025) (quotation omitted); *see also Neighborhood Ass'n of the Back Bay, Inc. v. Fed. Transit Admin.*, 407 F. Supp. 2d 323, 343 (D. Mass. 2005) ("[T]he public has an important interest in making sure government agencies follow the law").  Indeed, the Supreme Court has confirmed that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952) (affirming district court's preliminary injunction of an illegal executive order even though a wartime president said his order was "necessary to avert a national catastrophe").  Here, there is a significant public interest in ensuring the government obeys the law and provides bond hearings to Petitioner and other noncitizens detained under 8 U.S.C. § 1226(a), as the government has for decades.  *See Bostock*, 779 F. Supp. 3d at 1263 (holding that "the balance of equities tips sharply towards Rodriguez" because "neither equity nor the public's interest are furthered by detaining Rodriguez without the opportunity for release on bond" as he had been unlawfully detained under § 1225(b)(2)).

Second, Petitioner has demonstrated a "high likelihood of success on the merits," which "is a strong indicator that a preliminary injunction would serve the public interest."  *McMahon*, 784 F. Supp. 3d at 372 (quotation omitted); *see also Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734 (D.C. Cir. 2022) ("[T]he Plaintiffs' likelihood of success on the merits lightens the Executive's

stated interests."). On the merits, Petitioner's position is consistent with a plain reading of the INA, the legislative history, and decades of agency practice. It is in the public interest to follow decades of settled law and policy that preceded *Matter of Hurtado* and ICE's new policy change. *See* Freidel Decl. ¶ 20 (noting that *Matter of Hurtado* is "a dramatic departure from decades-old practice, and it is impacting large numbers of noncitizens currently detained in Massachusetts"); *id.* ¶ 21 (stating that immigration attorneys in Massachusetts "have had to pivot to the District Court and file habeas petitions for individuals who were previously bond eligible. Those same individuals are facing a much longer period of time incarcerated while their removal proceedings are underway in the Immigration Court.").

Third, the hardships faced by Mr. Guerrero Orellana and other noncitizens unlawfully detained without a bond hearing weigh strongly in favor of granting preliminary injunctive relief. Detention has separated Mr. Guerrero Orellana from his family and community, likely for a long time if the Court does not act. Araujo Decl. ¶16; *see also* Freidel Decl. ¶ 22 ("The impacts of lengthy civil imprisonment on individuals are severe. We have met countless noncitizens who have been arrested by ICE and abruptly taken away from their jobs and their families, including US citizen children. They are often the primary breadwinners for their families and had been working with authorization while their cases are pending in the Immigration Court."). Courts, therefore, have found the balance of the equities favor detained noncitizens in similar contexts. *See, e.g.*, *Bostock*, 779 F. Supp. 3d at 1263 ("[T]he hardships faced by Rodriguez and the public interest in granting injunctive relief weigh strongly in his favor. Detention has separated Rodriguez from his family, harmed his physical and mental health, and made it harder to access legal representation to defend against removal. In addition to Rodriguez's own hardships, his family has experienced increased financial, caregiving, and emotional burdens in the wake of his detention."); *see also*

16

*McMahon*, 784 F. Supp. 3d at 372 (holding that "the balance of the equities and the public interest strongly favor Plaintiffs" where the "Defendants' actions will have on students, parents, teachers, and core education programs").

Finally, any hardship to the government is minimal. For decades, the government has provided bond hearings to individuals in Petitioner's exact same circumstances, and the government cannot identify any harm caused by following the correct interpretation of the INA. Indeed, because the government can already detain people whom it shows in the bond hearing pose a danger or a risk of flight, *see Hernandez-Lara*, 10 F.4th at 39, its new misclassification policy serves only to jail people who the government can show no reason to detain—there is no government interest in purposeless detention. *See id.* at 32.

To the extent the government claims that "[j]udicial intervention would only disrupt the status quo," *Bostock*, 779 F. Supp. 3d at 1262, the status quo refers "not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Therefore, it is the government that has disrupted the status quo by its unfounded interpretation of the law, which has deprived a bond hearing to Mr. Guerrero Orellana and many others like him. *See Bostock*, 779 F. Supp. 3d at 1262 (holding that the "harm to the government here is minimal" because the government's "argument ignores the undisputed record that the practice Rodriguez seeks to enjoin is an outlier to the government's longstanding interpretation and enforcement of its immigration laws").

For these reasons, the balance of hardships and the public interest sharply favor Mr. Guerrero Orellana. Accordingly, the Court should find that Mr. Guerrero Orellana is entitled to preliminary relief.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Mr. Guerrero Orellana respectfully requests that the Court enter a preliminary injunction requiring that he be released unless he is provided a bond hearing with all required procedural protections within seven days of the Court's order.

Additionally, Mr. Guerrero Orellana respectfully requests that the Court order that any opposition to this motion be filed no later than Friday, September 26.

Respectfully submitted,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO # 670685)
Adriana Lafaille (BBO # 680210)
Daniel L. McFadden (BBO # 676612)
Julian Bava (BBO # 712829)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org
jbava@aclum.org

My Khanh Ngo*
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
m.tan@aclu.org

Gilles R. Bissonnette (BBO # 669225)
SangYeob Kim*
Chelsea Eddy*
AMERICAN CIVIL LIBERTIES UNION
OF NEW HAMPSHIRE
18 Low Avenue

Concord, NH 03301
Phone: 603.333.2081
gilles@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Carol J. Garvan*
Max I. Brooks*
AMERICAN CIVIL LIBERTIES UNION
OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
(207) 619-8687
cgarvan@aclumaine.org
mbrooks@aclumaine.org

Anthony D. Mirenda BBO #550587
Christopher E. Hart BBO #625031
Gilleun Kang BBO #715312
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000
adm@foleyhoag.com
chart@foleyhoag.com
gkang@foleyhoag.com

Annelise M. Jatoba de Araujo
(BBO # 669913)
Araujo & Fisher, LLC
75 Federal St., Ste. 910
Boston, MA 02110
617-716-6400
annelise@araujofisher.com

Sameer Ahmed (BBO #688952)
Sabrineh Ardalan (BBO # 706806)
Harvard Immigration and Refugee Clinical
Program
Harvard Law School
6 Everett Street
Cambridge, MA 02138
T: (617) 384-0088
F: (617) 495-8595
sahmed@law.harvard.edu
sardalan@law.harvard.edu

*Counsel for Petitioner*

Dated: September 23, 2025

\*Motion for admission *pro hac vice* forthcoming

## **L.R. 7.1 CERTIFICATION**

I hereby certify that counsel for petitioner conferred with counsel for respondents in a good faith effort to narrow or resolve the relief requested by this motion. Counsel for respondents opposes this motion and opposes the request for an expedited opposition.

Date: September 23, 2025                    */s/ Daniel L. McFadden*
                                           Daniel L. McFadden

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on counsel for all parties through the Court's CM/ECF system.

Date: September 23, 2025                    */s/ Daniel L. McFadden*
                                           Daniel L. McFadden