UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSE ARNULFO GUERRERO ORELLANO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-122664-PBS |
| | ) | |
| ANTONE MONIZ, et al. | ) | |
| | ) | |
| Respondents. | ) | |

# DECLARATION OF IRENE C. FREIDEL

I, Irene C. Freidel, declare the following under penalty of perjury:

1. My name is Irene C. Freidel. I am an attorney licensed in the Commonwealth of Massachusetts. Based upon my experience practicing removal defense for detained noncitizens in the New England region, I submit this declaration to describe the amount of time that detained removal proceedings can take and the impacts that the government's abrupt change in the law regarding mandatory detention has had on noncitizens detained by Immigration and Customs Enforcement ("ICE").

2. I graduated from the University of Michigan Law School in 1991. Between 1991 and 2017, I was an attorney at the law firm K&L Gates, LLP, most recently as a partner in the firm's litigation practice. I began providing pro bono legal services to individuals detained by U.S. Immigration and Customs Enforcement ("ICE") in 2017. Since 2018, I have been employed by the Political Asylum/Immigration Representation (PAIR) Project in Boston, Massachusetts. The mission of the PAIR Project is to provide pro bono legal services to indigent asylum applicants, noncitizens detained by ICE, and others seeking humanitarian relief. My current role at the PAIR Project is Detention Program Manager.

3. Our Detention Program conducts intakes and provides consultations to individuals in ICE custody at the Plymouth County Correctional Facility in Plymouth, Massachusetts ("PCCF") and the Wyatt Detention Facility in Central Falls, Rhode Island. We also receive referrals for individuals detained at the ICE/ERO Boston Field Office in Burlington, Massachusetts. We represent some detained noncitizens directly, and we match others with pro bono counsel whose cases we mentor and supervise.

4. When an individual is placed in ICE custody, they already may have been ordered deported or, alternatively, they may be in the process of seeking immigration relief through the Immigration Court or US Citizenship and Immigration Services ("USCIS"). One form of

immigration relief, for example, is asylum. Others have not yet sought any type of relief through the Immigration Court or USCIS.

5. The Chelmsford Immigration Court in Chelmsford, MA usually hears the immigration cases for noncitizens detained in Massachusetts and other New England states. When an individual in removal proceedings is detained at PCCF, for example, they typically are scheduled for an initial hearing with the Immigration Court. These initial hearings are called "Master Calendar Hearings." At the initial Master Calendar Hearing, the Immigration Judge may ask the noncitizen if they wish to have more time to find an attorney if they are unrepresented and/or will provide certain advisals required under the governing regulations.

6. At the Master Calendar Hearing, the Immigration Judge will usually make a determination as to whether the noncitizen is removable from the United States and, if so, the Immigration Judge will ask the noncitizen certain screening questions to determine whether they might seek certain forms of immigration relief, such as asylum or adjustment of status. If a noncitizen has potential relief and submits an application, the Immigration Judge will then schedule the case for an "Individual Calendar Hearing," commonly called an Individual Hearing.

7. At the Individual Hearing, the Immigration Judge will hear evidence and testimony to support the noncitizen's application for immigration relief. The US Department of Homeland Security ("DHS") also may cross-examine witnesses, present evidence, and challenge evidence. Depending on the length of the noncitizen's testimony and the number of fact or expert witnesses who may testify, the Individual Hearing may take a number of hours or even several days to complete. At the conclusion of or following the hearing, the Immigration Judge will issue an oral or written decision to which either party has the right to appeal.

8. Many individuals in ICE custody at Plymouth are currently in removal proceedings in the Chelmsford Immigration Court in Chelmsford, MA. Of those in removal proceedings, many are seeking some form of immigration relief, such as asylum, withholding of removal, protection under the Convention Against Torture, termination of removal proceedings, adjustment of status, cancellation of removal, or voluntary departure, among others.

9. Most cases for individuals detained at Plymouth that are awaiting resolution on the merits are heard and resolved by a single Immigration Judge at the Chelmsford Immigration Court in Chelmsford, MA.

10. Individuals who are seeking substantive immigration relief through the Chelmsford Immigration Court are often detained for a lengthy period while awaiting final resolution of their cases. Based on observations we have made, the time it takes for a typical asylum case, for example, to proceed from the initiation of the noncitizen's detention, which occurs when DHS files a Notice to Appear in the Immigration Court, until a decision is made by the Immigration Judge is currently and routinely at least six months and can sometimes take a year. And these past observations are likely to underestimate the current length of

time, given the recent increase in enforcement activity and the recent staffing reductions at the Immigration Court (discussed further below).

11. The time that it takes an individual to have their first Master Calendar Hearing with the Immigration Court following the commencement of their detention in ICE custody often is as long as eight weeks or more. A client of my organization was detained at PCCF in April 2025. He was not served with a Notice to Appear until June 5, 2025, and the Notice to Appear set his first Master Calendar Hearing for October 8, 2025. The length of detention before our client was scheduled to see an Immigration Judge caused him severe stress and he decided to abandon his case rather than remain in the prison setting where he slept in a cell behind bars and had limited ability to communicate with individuals outside of prison.

12. There is often a significant delay of three to four months between the Master Calendar Hearing at which the Individual Hearing is scheduled and the Individual Hearing itself. In addition, when individual hearings occur, they are often not completed in the short time allowed by the Court. Individual hearings are frequently allotted only 90 minutes to be completed. If the hearing is not completed, it will be continued to the next available date on the Immigration Judge's docket, which often is 1-3 months hence. One of my clients had an Individual Hearing that took five (5) months to complete. Following two appeals, he was detained for nearly two years before he was finally released after a successful outcome.

13. We currently have a client who has now been detained for one full year despite being granted asylum. He was first detained on July 27, 2024. He was granted asylum on May 23, 2025, following an individual hearing that took two sessions to complete, with the first session on March 21, 2025, and the second session on May 23. DHS filed an appeal with the Board of Immigration Appeals ("Board") on June 18, 2025, and the appeal is now briefed and awaiting decision. ICE has refused to release our client, despite his asylum grant and long-standing ICE policy favoring releasing individuals who have been granted asylum even where an appeal is pending. It could easily take another year for the appeal and case to be finally resolved. In the meantime, DHS has transferred the client from the Wyatt facility where we first encountered the client, to PCCF, and then later to a federal prison in Berlin, NH back to PCCF.

14. Any appeal of the Immigration Judge's decision must be filed with the Board within 30 days. The Board sits within the Department of Justice. In my experience from 2018 to 2024, it has taken increasingly longer for the Board to resolve a merits appeal for a detained noncitizen. Within the last year, the time period has grown to approximately six months from the time the notice of appeal is filed. However, based on statistical information published by the Executive Office for Immigration Review ("EOIR"), I understand that the Board currently has a significantly larger backlog of appeals— recently reported as more than 185,000 (detained and non-detained) up from approximately 160,000 just last quarter —than has been the case in prior years. *See* Fig. 1. Currently, even when our client is detained, we have waited as long as two months

simply to receive a briefing schedule from the Board.

| Fiscal Year | Appeals Filed | Appeals Completed | Appeals Pending (End of FY) |
|---|---|---|---|
| 2015 | 29,347 | 34,240 | 37,304 |
| 2016 | 30,227 | 33,241 | 34,235 |
| 2017 | 33,564 | 31,820 | 35,829 |
| 2018 | 49,649 | 29,790 | 55,478 |
| 2019 | 63,235 | 26,271 | 91,952 |
| 2020 | 58,838 | 40,393 | 110,550 |
| 2021 | 31,242 | 30,727 | 110,955 |
| 2022 | 38,901 | 31,763 | 118,044 |
| 2023 | 50,861 | 35,883 | 133,149 |
| 2024 | 50,419 | 44,785 | 138,680 |
| 2025 (Third Quarter) | 72,200 | 23,889 | 186,473 |

Figure 1: EOIR Adjudication Statistics: All Appeals Filed, Completed, and Pending (as of July 31, 2025)[1]

15. A successful appeal for a noncitizen ordinarily will result in a remand to the Immigration Judge for further proceedings to conclude the matter. On occasion, remanded proceedings can result in a second appeal. During the appeal process with the Board, the noncitizen cannot be removed from the United States, but they usually remain detained.

16. We currently represent another noncitizen who has been detained by ICE for over one year. He is a gay man from Kenya who suffered persecution and torture in Kenya, where same sex relationships are criminalized. He was denied asylum but granted withholding of removal on February 7, 2025. We appealed the denial of asylum to the Board. On September 8, 2025, the Board issued a decision remanding the case to the Immigration Court for a new decision. Despite that the only event that needs to occur is the rendering of a new oral decision by the Immigration Judge, as of September 22, 2025, the first available date offered for a new Individual Hearing for our client was December 12, 2025. At such time, there could be a second appeal, which could easily result in our client's detention for two years.

17. There have reportedly been significant staffing cuts at both the Immigration Court and the Board. Reportedly, from January 2025 to the present, the Chelmsford Immigration Court has been reduced from 20 Immigration Judges to five Immigration Judges.[2] In April 2025, the EOIR issued an interim final rule that reduced the Board from 28 members to 15

---

[1] Source: https://www.justice.gov/eoir/media/1344986/dl?inline
[2] Source: https://www.bostonglobe.com/2025/07/23/metro/immigration-judge-fired-chelmsford/?event=event12; https://www.justice.gov/eoir/chelmsford-immigration-court#about (list of currently sitting Immigration Judges).

members.[3]  It appears very likely that these staffing reductions will result in even greater delays for noncitizens in immigration proceedings combined with the vast increase of individuals held in mandatory detention, as discussed below, and DHS's recent practice of appealing most if not all cases where immigration relief is granted.

18. Based on my observations under current practice, when an Immigration Judge grants relief to someone who is detained, DHS is more likely than not going to appeal the decision in order to delay the noncitizen's release. We currently represent a man detained at PCCF who has suffered severe torture in his home country and has a very well supported case for asylum. The client's Individual Hearing was not completed in the first session and has been rescheduled to continue in October. The attorney representing DHS has already informed us that if the Immigration Judge grants asylum based on a favorable exercise of discretion, he intends to appeal the decision to the Board. DHS's stated basis for appealing a favorable discretionary decision by the Immigration Judge would be the existence of a misdemeanor criminal charge incurred by the client even though the charge has been dismissed. This client has already been detained for more than six months.

19. The scope of individuals who are required to remain in custody during the pendency of their removal proceedings, and who experience the types of delays described above, has dramatically expanded as a result of the Board's precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) ("*Matter of Hurtado*"). In *Matter of Hurtado*, the Board broke with long-standing agency practice by concluding that individuals who had previously been bond eligible pursuant to 8 U.S.C. § 1226(a) are now subject to mandatory detention pursuant to 8 U.S.C. § 1225. The Board's decision followed a policy statement by ICE in July 2025 to apply mandatory detention to the same category of individuals.[4]

20. The Board's new decision means that the vast majority of individuals who are detained by ICE and who had previously been eligible for bond are now being held in mandatory detention without a bond hearing. As noted, this is a dramatic departure from decades-old practice, and it is impacting large numbers of noncitizens currently detained in Massachusetts.  In the course of screening individuals detained at PCCF, and in the short time since *Matter of Hurtado* was issued by the Board, we have already encountered numerous people who are now deemed ineligible for a bond hearing due to the Board's decision.

21. Between July 1 and August 31, 2025, our organization accepted close to 40 bond cases for individuals detained at PCCF. Since the Board issued *Matter of Hurtado* on September 10, 2025, the number of bond cases we have been able to accept has plummeted due to the fact that many people previously eligible for bond are now categorically ineligible under *Matter of Hurtado*. We have had to pivot to the District Court and file habeas petitions for individuals who were previously bond eligible, which has consumed resources previously devoted to assisting clients in the Immigration Court. Those same individuals are facing a

---

[3] Source: https://www.federalregister.gov/documents/2025/04/14/2025-06294/reducing-the-size-of-the-board-of-immigration-appeals

[4] Source: https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission

    much longer period of time incarcerated while their removal proceedings are underway in the Immigration Court.

22. The impacts of lengthy civil imprisonment on individuals are severe. We have met countless noncitizens who have been arrested by ICE and abruptly taken away from their jobs and their families, including US citizen children. They are often the primary breadwinners for their families and had been working with authorization while their cases are pending in the Immigration Court. We have met many detained individuals who are distraught at being separated from their families and no longer being able to provide for them. For many children, this means no longer having their father at home or having food on the dinner table. I have met fathers detained by ICE who are the sole caregivers for their children; the children are left with older siblings, friends, or neighbors and have to begin fending for themselves. The problems can multiply when children stop going to school or develop behavioral challenges. These disruptions impact not only families but spread to the communities and employers as well.

Dated: September 23, 2025

                                                  */s/ Irene C. Freidel*
                                                  Irene C. Freidel