UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE ARNULFO GUERRERO ORELLANA, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>ANTONE MONIZ, Superintendent, Plymouth )<br>County Correctional Facility, et al., )<br>)<br>Respondents. )<br>) | Case No. 25-12664-PBS |

## AFFIDAVIT OF ANNELISE ARAUJO, ESQ.

I, Annelise M. Jatoba de Araujo do hereby swear and affirm:

1. The following statements are based on my personal observation or knowledge.

2. I am a member in good standing of the Massachusetts bar and am counsel for Mr. Jose Arnulfo Guerrero Orellana in this action and in the Immigration Court. I have been practicing routinely in the Immigration Court since 2007.

3. In the course of my representation of Mr. Guerrero Orellana, I have collected and reviewed documents and other information relating to his immigration case.

4. It is my understanding that Mr. Guerrero Orellana has resided in the United States for over 12 years, since 2013. He presently resides in Massachusetts. He lives with his wife and their one-year-old U.S. citizen daughter.

5. Mr. Guerrero Orellana was arrested by federal agents acting on behalf of U.S. Immigration and Customs Enforcement ("ICE") on or about September 18, 2025. My understanding is that he was arrested while riding as a passenger in a vehicle that was stopped by ICE. I have not seen any records indicating that he was a target of the arrest operation.

1

6. Mr. Guerrero Orellana is presently being held in civil immigration detention by ICE at the Plymouth County Correctional Facility ("PCCF"). PCCF is a state-operated house of correction.

7. As far as I can determine, there is no record of any prior contact between Mr. Guerrero Orellana and the immigration authorities prior to his arrest by ICE on or about September 18, 2025.

8. The government has not provided me with any records indicating that Mr. Guerrero Orellana has ever been charged with or convicted of any crime. As far as I have been able to determine in my preliminary investigation of his case, he appears to have no criminal record.

9. Mr. Guerrero Orellana appears to be eligible for cancellation of removal for non-lawful permanent resident under INA 240A(b). This is a form of relief from removal that can be pursued in his removal proceeding in the Immigration Court.

10. Mr. Guerrero Orellana has been served a Notice to Appear ("NTA") for removal proceedings before the Chelmsford Immigration Court and has a Master Calendar Hearing scheduled for October 2, 2025. The NTA alleges that he was not previously admitted or paroled into the United States, and that he is present in the United States without a valid entry document. The government also served Mr. Guerrero Orellana with a Warrant of Arrest pursuant to INA 236 (which is codified at 8 U.S.C. § 1226). A true and accurate copy of the NTA and Warrant, as retrieved from the Immigration Court's filing system, and with certain personal information redacted, is attached hereto as Exhibit A.

11. Prior to *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025), people arrested inside the United States and placed in removal proceedings were generally eligible for a bond hearing, even if (as in Mr. Guerrero Orellana's case) the government alleged the person had entered the

country without being admitted or paroled. Given Mr. Guerrero Orellana's lack of criminal history, length of residence in the United States, family circumstances, and eligibility for relief from removal, it is highly likely he would be granted release on a bond and/or conditions if he received a bond hearing.

12.     However, after *Matter of Hurtado*, there has been a very significant change in the operation of the Immigration Courts. The Immigration Judges that I have appeared before have all taken the position that an individual who entered without inspection cannot have a bond hearing before the Immigration Court because the court lacks jurisdiction to hear such a request. It is my understanding that the Immigration Judges are required to take this position in all cases as a result of *Matter of Hurtado*.

13.     This change has had an enormous impact on all my clients who entered without inspection, regardless of how long they have been in the United States. Some people charged with civil immigration violations have elected to forgo their applications for relief because they fear prolonged detention. Many others have had to file petitions in federal court to attempt to secure a bond hearing, which often comes with significant legal expense and extended detention.

14.     I have also observed the impact on their family members who are emotionally devastated when a person remains detained. The detained person is often an important source emotional support, income, and childcare for their family. The separation and months of detention create terrible hardship for many families, and I have seen many detained noncitizens reduced to tears by the seemingly insurmountable obstacle and hardship created by the government's new policy under *Matter of Hurtado*.

15.     For many people, this situation is made worse because ICE appears to have adopted a practice of routinely transferring people to detention facilities outside of Massachusetts, often

the same day they are arrested. Between the arrest and the person's transfer out of state, ICE generally does not allow them to communicate with their counsel. Consequently, it is sometimes impossible to file a petition for writ of habeas corpus before the person has left the state. When the person arrives in their destination state, it is often difficult for them to access legal resources to file a habeas petition there, and consequently they may have no practical ability to seek relief from an unlawful bond hearing denial under *Matter of Hurtado*.

16. To litigate an application for relief in removal proceedings for a detained client it often takes over six months before the Immigration Judge. If the application is denied and the client appeals, the appeal will also take many months to conclude, during which time the client generally remains detained. Similarly, if the application is allowed, the government may appeal and is often asserting authority to detain the client for the pendency of its appeal process. On a recent detained case my office handled, the initial removal proceedings before the Immigration Judge took nine months, the matter is now being appealed, and the appeal has already been pending for four months.

Signed under the pains and penalties of perjury, this 23rd day of September 2025,

*/s/ Annelise Araujo*

Annelise M.J. de Araujo, Esq.