# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOSE ARNULFO GUERRERO ORELLANA,          )
on behalf of himself and others similarly situated,          )
                                                                                          )
                                  Petitioner-Plaintiff,          )
                                                                                          )          Case No. 25-12664-PBS
v.                                                                                       )
                                                                                          )
ANTONE MONIZ, Superintendent, Plymouth          )
County Correctional Facility, et al.,          )
                                                                                          )
                                  Respondents-Defendants.          )
_____          )

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    I.    Legal Framework and DHS's New No-Bond Policy ........................................... 3

    II.   Petitioner's Factual Background ........................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    LEGAL STANDARD ............................................................................................ 8

    II.   THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(A) ........... 9

       A.   The Proposed Class Satisfies the Numerosity Requirement ........................... 9

       B.   The Proposed Class Satisfies the Commonality Requirement ...................... 11

       C.   The Proposed Class Satisfies the Typicality Requirement ........................... 13

       D.   The Proposed Class Satisfies the Adequacy Requirement ........................... 14

    III.  THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(B) ............. 16

CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................................15

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)..................................................................................14, 15

*Brito v. Barr*,
    395 F. Supp. 3d 135 (D. Mass. 2019) ............................................................ *passim*

*Chafla v. Scott*,
    No. 25-437, 2025 U.S. Dist. LEXIS 184909 (D. Me. Sept. 21, 2025) ................5, 10

*In re Credit Suisse-AOL Secs. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008)..............................................................................13

*Connor B. ex rel. Vigurs v. Patrick*,
    278 F.R.D. 30 (D. Mass. 2011)..............................................................................11

*DHS v. Thuraissigiam*,
    591 U.S. __ (2020)................................................................................................17

*Diaz v. Mattivelo*,
    No. 25-12226, 2025 U.S. Dist. LEXIS 166667 (D. Mass. Aug. 27, 2025) ..........10

*Doe v. Moniz*,
    No. 25-12094, 2025 U.S. Dist. LEXIS 173360 (D. Mass. Sept. 5, 2025) ...........5, 10, 17

*Doe v. Tompkins*,
    11 F.4th 1 (1st Cir. 2021).......................................................................................4

*Dos Santos v. Noem*,
    No. 25-12052, 2025 U.S. Dist. LEXIS 157488 (D. Mass. Aug. 14, 2025) ...........10

*Encarnacion v. Moniz*,
    No. 25-12237 (D. Mass. Sept. 5, 2025), Order (D.E.16)...................................5, 10

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)...................................................................................9

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................................13

*Gomes v. Acting Sec'y, United States Dep't of Homeland Sec.*,
    561 F. Supp. 3d 93 (D.N.H. March 5, 2021) ........................................................11

*Gomes v. Hyde*,
    No. 1:25-CV-11571-JEK, 2025 U.S. Dist. LEXIS 128085 (D. Mass. July 7,
    2025) ....................................................................................................................5, 10

*Gordon v. Johnson*,
    300 F.R.D. 28 (D. Mass. 2014) ............................................................................8, 9

*Hernandez-Lara v. Lyons*,
    10 F.4th 19 (1st Cir. 2021) ........................................................................................4

*Hilario Rodriguez v. Moniz*,
    No. 25-12358 (D. Mass. Sept. 18, 2025) (Joun, J.) ...................................................5

*Matter of Yajure Hurtado*,
    29 I. & N. Dec. 216 (BIA 2025) ...................................................................... *passim*

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ...............................................................................................3, 4

*Jimenez v. FCI Berlin*, No. 25-cv-326-LM-AJ, 2025 U.S. Dist. LEXIS 176165
    (D.N.H. Sept. 8, 2025) .............................................................................................10

*Jimenez v. Mayorkas*,
    No. 18-10225-MLW, 2025 U.S. Dist. LEXIS 8909 (D. Mass. Jan. 16, 2025) .........8

*Lema Tamay v. Scott*,
    No. 24, 2:25-cv-438-SDN (D. Me. Sept. 21, 2025) (J. Neumann) .........................10

*Lopez-Arevalo v. Ripa*, 2025 WL 2691828, at *7-10 (W.D. Tex. Sept. 22, 2025) .......17

*Martinez v. Hyde*,
    No. 25-11613, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025).....................4, 5, 10

*McCuin v. Secretary of Health and Human Services*,
    817 F.2d 161 (1st Cir. 1987) .....................................................................................9

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ...................................................................................11, 12

*Orr v. Trump*,
    No. 1:25-cv-10313-JEK, 2025 U.S. Dist. LEXIS 115198 (D. Mass. June 17,
    2025) ........................................................................................................................16

*Pereira Moreira v. Hyde*, 1:25-cv-12573-BEM (D. Mass. Sept. 22, 2025) ................10

*Pizarro Reyes v. Raycraft*,
  No. 25-12546, 2025 U.S. Dist. LEXIS 175767 (E.D. Mich. Sept. 9, 2025) ............................5

*Quadrelli v. Moniz*,
  No. 20-CV-10685-ADB, 2020 U.S. Dist. LEXIS 99456 (D. Mass. June 8,
  2020) ..................................................................................................................................12

*Reid v. Donelan*,
  297 F.R.D. 185 (D. Mass. 2014) ................................................................................. *passim*

*Rodriguez v. Bostock*,
  349 F.R.D. 333 (W.D. Wash. 2025) ...................................................................11, 12, 14, 16

*Romero v. Hyde*,
  No. 25-11631, 2025 U.S. Dist. LEXIS 160622 (D. Mass. Aug. 19, 2025) ...................5, 9, 10

*Sampiao v. Hyde*,
  No. 25-11981, 2025 U.S. Dist. LEXIS 175513 (D. Mass. Sept. 9, 2025) ...................5, 10, 17

*Savino v. Souza*,
  453 F. Supp. 3d 441 (D. Mass. 2020) ..................................................................12, 13, 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ...............................................................................................................8

*Swack v. Credit Suisse First Boston*,
  230 F.R.D. 250 (D. Mass. 2005) .....................................................................................13, 14

*Tenesaca Lema v. Scott*,
  No. 21, 2:25-cv-00439 (D. Me. Sept. 21, 2025) (J. Neumann) ..............................................10

*Torrezani v. VIP Auto Detailing, Inc.*,
  318 F.R.D. 548 (D. Mass. 2017) ...........................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................11, 12, 15

**Statutes**

5 U.S.C. § 706 .........................................................................................................................2, 11

8 U.S.C. § 1182(d)(5)(A) ...............................................................................................................2

8 U.S.C. § 1225 ..............................................................................................................................3

8 U.S.C. § 1225(b)(1) ..................................................................................................................2, 3

8 U.S.C. § 1225(b)(1)(B)(ii) ..........................................................................................................2

8 U.S.C. § 1225(b)(2) ........................................................................................ *passim*

8 U.S.C. § 1225(b)(2)(A) ...............................................................................11

8 U.S.C. § 1226 ................................................................................................. *passim*

8 U.S.C. § 1226(a) ............................................................................3, 4, 5, 7, 16

8 U.S.C. § 1226(c) ..................................................................................3, 4, 7

8 U.S.C. § 1231 ..............................................................................................3

8 U.S.C. § 1231(a) ..........................................................................................3

8 U.S.C. § 1231(b) ..........................................................................................3

**Rules**

8 C.F.R. § 1003.19(a) ....................................................................................4

8 C.F.R. § 1236.1(d) .......................................................................................4

Fed. R. Civ. P. 23 .......................................................................................8, 17

Fed. R. Civ. P. 23(a) .................................................................................... *passim*

Fed. R. Civ. P. 23(b) ...................................................................................3, 8

Fed. R. Civ. P. 23(b)(2)................................................................................ *passim*

**Other Authorities**

1 Newberg & Rubenstein on Class Actions; Joseph M. McLaughlin, 1
    McLaughlin on Class Actions: Law & Practice § 4:2 (21st ed. Oct. 2024
    update)........................................................................................................16

62 Fed. Reg. 10312 (Mar. 6, 1997)...............................................................4

Interim Guidance Regarding Detention Authority for Applicants for Admission,
    https://www.aila.org/ice-memo-interim-guidance-regarding-detention-
    authority-for-applications-for-admission .................................................5

## INTRODUCTION

On behalf of himself and the class he seeks to represent, Named Petitioner-Plaintiff Jose Arnulfo Guerrero Orellana (hereinafter "Petitioner" or "Mr. Guerrero Orellana") challenges Respondents-Defendants' ("Respondents") systematic misclassification of immigration detainees to deny them consideration for release on bond.  Two months ago, contrary to law and decades of practice of providing bond hearings for alleged noncitizens arrested inside the United States, the Department of Homeland Security ("DHS") adopted a new policy of misclassifying all noncitizens arrested inside the United States as ineligible for bond if they originally entered the country without permission (in many cases, years or decades prior).  About three weeks ago, the Board of Immigration Appeals formally adopted this misclassification as a uniform policy for all Immigration Courts in *Matter of Yajure Hurtado*, 29 I. &. N. Dec. 216 (BIA 2025) ("*Matter of Hurtado*").  As a consequence, all IJs—including those in the Massachusetts immigration courts—are now compelled to deny bond hearings to noncitizens arrested inside the United States solely because the government alleges they originally entered the United States without inspection.  The named Petitioner, Mr. Guerrero Orellana, is one such individual.

Respondents' systematic misclassification of detainees and denial of bond hearings pursuant to *Matter of Hurtado* have stripped from an identifiable class of thousands of noncitizens the ability to seek release on bond, instead subjecting them to mandatory detention.  This new policy has deprived, and will continue to deprive, Petitioner and other similarly situated detained noncitizens of their statutory and constitutional rights.  Because *Matter of Hurtado* has made clear that Respondents will uniformly misclassify all noncitizens who entered the United States without inspection as subject to mandatory detention, Petitioner seeks relief here not only for himself, but

on behalf of a class of similarly situated individuals detained in Massachusetts or with cases in the Massachusetts immigration courts.

This case presents three questions: whether Respondents are violating (1) the class members' statutory and regulatory rights under 8 U.S.C. § 1226 and its associated regulations; (2) their due process rights by detaining them without a bond hearing; and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by detaining the class members without a bond hearing pursuant to *Matter of Hurtado*. These questions are all based on a uniform policy that Respondents apply across-the-board to anyone they allege has entered without inspection. The answers will determine the liberty of thousands of similarly situated people arrested inside the United States with cases in the Massachusetts immigration courts. It is difficult to imagine a scenario better suited for class certification and collective resolution. As this Court is aware, since the beginning of September alone, dozens of habeas petitions have been filed raising the exact same legal issues. Collective resolution therefore has the added benefits of ensuring consistent and efficient adjudication of the class members and the conservation of scarce judicial resources.

Accordingly, Petitioner requests that the Court certify the following class and appoint the named Plaintiff as class representative:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:
>
> (a) the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);
>
> (b) for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;

(c) the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c); and

(d) the person is not subject to post-final order detention under 8 U.S.C. § 1231.

The proposed class meets the requirements of Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  The proposed class members currently exceed forty and include a large but indeterminate number of future members subject to misclassification and mandatory detention absent judicial intervention, rendering joinder impracticable.  All members of the class are bound by common questions of law based on a systematic policy of misclassifying this class of detainees, thus subjecting all in the class to the same government action pursuant to a uniform government policy.  Petitioner is a proper class representative because his claims are typical of those of absent class members and his counsel will adequately and vigorously represent the class.  Finally, the proposed class satisfies Rule 23(b)(2) because Respondents have "acted or refused to act on grounds that apply generally to the class" through their no-bond policy misclassifying detainees and subjecting them to mandatory detention.

## **BACKGROUND**

### I.    **Legal Framework and DHS's New No-Bond Policy**

The Immigration and Nationality Act ("INA") distinguishes three forms of detention for noncitizens in removal proceedings: (1) at the border, no-bond detention of noncitizens subject to expedited removal under § 1225(b)(1) or who are "seeking admission" within the meaning of § 1225(b)(2); (2) inside the United States, detention, during the pendency of removal proceedings under § 1226, subject to a bond hearing before an IJ and potential release on bond and/or conditions for detainees under § 1226(a) for detainees without disqualifying criminal history; and (3) detention of noncitizens who have received a final order of removal from the United States, under § 1231(a)-(b).  *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018) (describing § 1225 as

3

relating to "borders and ports of entry," and § 1226 as relating to people "inside the United States" and "present in the country").

After these provisions were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, the immigration system consistently distinguished between Sections 1225(b)(2) and 1226(a), making clear that individuals arrested inside the States were considered subject to § 1226 (not § 1225(b)(2)), even if they originally entered without permission. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); *see also Jennings*, 583 U.S. at 287-89 (distinguishing § 1225(b)(2) and § 1226(a) detention). While individuals at the border "seeking admission" were subject to detention without a bond hearing under § 1225(b)(2), those who entered without inspection and thereafter arrested inside the United States were placed into removal proceedings before an IJ, subject to detention authority of § 1226. *See Jennings*, 583 U.S. at 288-89. While removal proceedings were pending—often over months or even years—individuals who entered without inspection and were arrested inside the United States were required to receive a bond hearing upon request and were eligible for release on bond and/or conditions under § 1226(a), unless they had certain disqualifying criminal history under § 1226(c). *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). For this population of detainees, the bond hearing process has been longstanding practice for nearly thirty years. *See* 62 Fed. Reg. 10312; *Martinez v. Hyde*, No. 25-11613, 2025 U.S. Dist. LEXIS 141724, at *12 n.9 (D. Mass. July 24, 2025). And it is required as a matter of constitutional due process. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (due process requirement for bond hearing with strong procedural protections for § 1226(a) detainees); *Doe v. Tompkins*, 11 F.4th 1,

2 (1st Cir. 2021) (same); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment of same).

DHS, "in coordination with the Department of Justice," abruptly reversed this longstanding practice on July 8, 2025, when it directed its personnel to misclassify bond-eligible detainees under § 1226(a) as mandatory § 1225(b)(2) detainees and deprive them of bond hearings, if they originally entered the country without inspection.[1] This reversal triggered a tidal wave of litigation, as numerous detainees were effectively stripped of their right to a bond hearing and were condemned to months or years of arbitrary incarceration—even if they did not present any conceivable danger or risk of flight. Federal District Judges nationwide, including many in this District, have since rejected the application of DHS's unlawful policy to individual detainees. *See, e.g.*, Memorandum and Order (D.E. 22), *Hilario Rodriguez v. Moniz*, No. 25-12358 (D. Mass. Sept. 18, 2025) (Joun, J.); *Sampiao v. Hyde*, No. 25-11981, 2025 U.S. Dist. LEXIS 175513 (D. Mass. Sept. 9, 2025) (Kobick, J.); *Doe v. Moniz*, No. 25-12094, 2025 U.S. Dist. LEXIS 173360 (D. Mass. Sept. 5, 2025) (Talwani, J.); Order (D.E. 16), *Encarnacion v. Moniz*, No. 25-12237 (D. Mass. Sept. 5, 2025) (Sorokin, J.); *Romero v. Hyde*, No. 25-11631, 2025 U.S. Dist. LEXIS 160622 (D. Mass. Aug. 19, 2025) (Murphy, J.); *Martinez v. Hyde*, No. 25-11613, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025) (Murphy, J.); *Gomes v. Hyde*, No. 25-11571, 2025 U.S. Dist. LEXIS 128085 (D. Mass. July 7, 2025) (Kobick, J.); *see also Chafla v. Scott*, No. 25-437, 2025 U.S. Dist. LEXIS 184909, at *5 (D. Me. Sept. 21, 2025) (collecting cases); *Pizarro Reyes v.*

---

[1] *See* Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

*Raycraft*, No. 25-12546, 2025 U.S. Dist. LEXIS 175767 (E.D. Mich. Sept. 9, 2025) (collecting cases).

Notwithstanding all of this, the Board of Immigration Appeals ("BIA") has issued a precedential decision, *Matter of Hurtado*, which makes this erroneous and unconstitutional policy legally binding on all IJs. There, the BIA held that any noncitizen who is present in the United States without having been inspected and admitted is subject to detention under § 1225(b)(2). 29 I. & N. Dec. at 228. As a result, individuals in the proposed class defined above are routinely and systematically misclassified and detained without any consideration for bond—they are left only with the possibility of obtaining a bond hearing through bringing an individual habeas petition. But this outcome is as unworkable as it is illegal: Individual habeas petitions have surged in district courts, resulting in numerous individual claims seeking the same relief, flooding the system and overwhelming the minimal legal resources available to vindicate these fundamental rights, resulting in the systematic deprivation experienced by members of this proposed class. And of course, many misclassified detainees will never even get to file a petition due to lack of legal counsel and practical obstacles inherent in their detention by an agency such as U.S. Immigration and Customs Enforcement's ("ICE") (including rapid transfer to detention locations outside of this district).[2] *See* Dkt. 16, Declaration of Annelise Araujo, Esq. ("Araujo Decl.") ¶¶15-16;

---

[2] Recent days and weeks have seen a substantial uptick in immigration enforcement activities in Massachusetts. *See* Immigration arrests increase in Massachusetts with new ICE operation, WGHB.org (available at https://www.wgbh.org/news/local/2025-09-08/immigration-arrests-increase-in-massachusetts-with-new-ice-operation) (last accessed Sept. 25, 2025). Meanwhile, immigrants are facing barriers to legal representation and to challenging detention, including as a result of cuts to legal service providers. *See* Acacia Center for Justice Statement on Termination of Critical Legal Access and Representation Programs (Apr. 10, 2025) (available at https://acaciajustice.org/acacia-statement-on-termination-of-critical-legal-access-and-representation-programs/) (last accessed Sept. 25, 2025). The rapid transfer of detainees to locations outside of the district compound these challenges. *See* Immigrants in ICE custody face rapid transfers, limited legal help. Boston.com (Mar. 26, 2025) (available at https://www.boston.com/news/local-news/2025/03/26/immigrants-in-ice-custody-face-rapid-transfers-limited-legal-help/) (last accessed Sept. 25, 2025).

## II.    Petitioner's Factual Background

Mr. Guerrero Orellana has resided in the United States since 2013.  *See* Araujo Decl. ¶4.
The government alleges he entered the United States without inspection or parole and lacks a valid
entry document.  *See id.* ¶10.  Mr. Guerrero Orellana resides in Massachusetts with his family,
including his a one-year-old daughter who is a United States citizen.  *See id.* ¶4.  Mr. Guerrero
Orellana has no criminal history.  *See id.* ¶8.  He has not had any prior contact with the immigration
authorities.  *See id.* ¶7.

On or about September 18, 2025, Mr. Guerrero Orellana was arrested by immigration
authorities and is currently being held in ICE custody at the Plymouth County Correctional
Facility.  *See id.* ¶6.  ICE issued him a Notice to Appear documenting that he is "present in the
United States" and generated a warrant asserting the detention authority of INA § 236 (codified at
§ 1226).  *Id.* Ex. A.  Had Mr. Guerrero Orellana been detained prior to July 2025, ICE would have
considered him detained pursuant to the discretionary detention authority of 8 U.S.C. § 1226(a)
because he was arrested inside the United States, is being held in civil immigration detention
pending removal proceedings, and lacks any criminal history that would subject him to mandatory
detention under § 1226(c).  He thus would have been eligible for release on bond by either ICE or
an IJ.  However, because of Respondents' new policies, Mr. Guerrero Orellana is now
misclassified by Respondents as a § 1225(b)(2) detainee, depriving him of his right to
consideration for bond and depriving him of his liberty without any due process.

That deprivation may last a very long time.  See Araujo Decl. ¶16; Dkt. 15, Declaration of
Irene Freidel ("Freidel Decl.") ¶¶10-18. As a result, Mr. Guerrero, along with countless other
misclassified detainees arrested in or venued in Massachusetts, face months and years of unlawful
detention and custody pending resolution of removal proceedings—proceedings which may well

end with an order allowing him to remain in the United States through cancellation of removal or a grant of some other relief. *See* Araujo Decl. ¶9.

To address these irreparable and continuing harms, Mr. Guerrero Orellana filed a petition for writ of habeas corpus challenging his unlawful detention, *see* Dkt. 1. On September 22, 2025, he filed his First Amended Petition for Writ of Habeas Corpus and Class Action Complaint. *See* Dkt. 10.[3] Mr. Guerrero Orellana now seeks class certification.

## ARGUMENT

### I.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 creates a "categorical rule entitling a plaintiff whose suit meets the specific criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Thus, class certification is appropriate where the proposed class satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the categories in Rule 23(b). The proposed class here satisfies Rule 23(a) and (b)(2).

Federal courts, including this Court, have routinely certified class actions challenging immigration policies and practices that categorically affect a defined class of noncitizens and their rights. *See, e.g.*, *Brito v. Barr*, 395 F. Supp. 3d 135, 149 (D. Mass. 2019) (certifying statewide classes of individuals challenging bond hearing policies and practices); *Jimenez v. Mayorkas*, No. 18-10225-MLW, 2025 U.S. Dist. LEXIS 8909, at *3 (D. Mass. Jan. 16, 2025) (discussing previously certified regional class of noncitizens challenging detention policy and removal of noncitizens with pending or approved visa petitions); *Reid v. Donelan*, 297 F.R.D. 185, 194 (D.

---

[3] On September 23, 2025, Mr. Guerrero Orellana filed a Motion for Preliminary Injunction Requiring Bond Hearing for Petitioner Individually and Incorporated Memorandum of Law. *See* Dkt. 14.

Mass. 2014) (certifying class of detainees challenging immigration detention practices); *Gordon v. Johnson*, 300 F.R.D. 28, 30 (D. Mass. 2014) (certifying statewide class of noncitizens subject to certain mandatory detention policies). Particularly where class members in immigration cases may not otherwise be equipped to bring individual claims due to lack of counsel, the disadvantages inherent in detention, and potential language barriers, among other reasons, courts in the First Circuit have certified classes of noncitizens challenging immigration policies and practices on constitutional and statutory grounds. *See Reid*, 297 F.R.D. at 187; *Gordon*, 300 F.R.D. at 30.

## II.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(A)

### A.    The Proposed Class Satisfies the Numerosity Requirement

The proposed class satisfies the requirement that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement imposes only a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), such that "a class size of forty or more will generally suffice in the First Circuit." *Reid*, 297 F.R.D. at 189; *Brito*, 395 F. Supp. 3d at 144 n.3. Plaintiffs need not provide a precise number for class certification, as the court "may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Secretary of Health and Human Services*, 817 F.2d 161, 167 (1st Cir. 1987). Where, as here, the class members seek only declaratory relief, the threshold "may be relaxed" because the "inclusion of future members increases the impracticability of joinder." *See Reid*, 297 F.R.D. at 189.

The proposed class meets the numerosity threshold. DHS's no-bond policy, systematically misclassifying and detaining noncitizens under the purported authority of § 1225(b)(2), has been estimated to mandate detention of "millions [ ] of individuals currently residing in the United States," a substantial percentage of whom reside in Massachusetts or are otherwise class members.

*See Romero*, 2025 U.S. Dist. LEXIS 160622, at *1. In Massachusetts immigration courts alone, there were tens of thousands of instances in which the government charged entry without inspection as removability grounds in fiscal year 2024. *See* Declaration of Julian Bava, Esq. ("Bava Decl.") ¶¶6-8. Since *Matter of Hurtado* was decided three weeks ago, there has been a surge in requests for assistance with habeas petitions involving improper denial of bond. *See* Declaration of Christine Rodriguez, Esq. ("Rodriguez Decl.") ¶¶1-3. Eighty-one individual habeas corpus petitions have been filed in this District alone, and more in the Districts of Maine and New Hampshire. *See* Bava Decl. ¶4. Among those filed in this District, at least fifty-two petitioners— well-exceeding the relaxed threshold of forty—have alleged misclassification consistent with *Matter of Hurtado*. *See id.* ¶¶4-5. As of the date of this motion, district courts in the First Circuit have granted at least thirteen petitions addressing the misclassification of noncitizens as § 1225(b)(2) mandatory detainees—which accounts for only a small subset of total impacted individuals represented by counsel.[4] As made evident by the surge in requests for assistance with habeas petitions by detainees, Petitioner estimates that the number of bond-eligible detainees

---

[4] There have been at least nine petitions granted in the District of Massachusetts. *See Pereira Moreira v. Hyde*, 1:25-cv-12573-BEM (D. Mass. Sept. 22, 2025) (petition granted in part by electronic order); *Sampiao v. Hyde*, No. 25-11981, 2025 U.S. Dist. LEXIS 175513 (D. Mass. Sept. 9, 2025) (Kobick, J.); *Doe v. Moniz*, No. 25-12094, 2025 U.S. Dist. LEXIS 173360 (D. Mass. Sept. 5, 2025) (Talwani, J.); Order (D.E. 16), *Encarnacion v. Moniz*, 25-12237 (D. Mass. Sept. 5, 2025) (Sorokin, J.); *Diaz v. Mattivelo*, No. 25-12226, 2025 U.S. Dist. LEXIS 166667 (D. Mass. Aug. 27, 2025) (Kobick, J.); *Romero v. Hyde*, C.A. No. 25-11631, 2025 U.S. Dist. LEXIS 160622 (D. Mass. Aug. 19, 2025) (Murphy, J.); *dos Santos v. Noem*, No. 25-12052, 2025 U.S. Dist. LEXIS 157488 (D. Mass. Aug. 14, 2025); *Martinez v. Hyde*, No. 25-11613, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 25-11571, 2025 U.S. Dist. LEXIS 128085 (D. Mass. July 7, 2025).

There have been at least three petitioners granted relief in the District of Maine, where the cases were joined *sua sponte* and resolved in a single decision, *see Chafla v. Scott*, No. 26, 2:25-cv-00437-SDN (D. Me. Sept. 21, 2025) (J. Neumann); *Lema Tamay v. Scott*, No. 24, 2:25-cv-438-SDN (D. Me. Sept. 21, 2025) (J. Neumann); *Tenesaca Lema v. Scott*, No. 21, 2:25-cv-00439 (D. Me. Sept. 21, 2025) (J. Neumann), and at least one in New Hampshire, *see Jimenez v. FCI Berlin*, No. 25-cv-326-LM-AJ, 2025 U.S. Dist. LEXIS 176165 (D.N.H. Sept. 8, 2025).

misclassified under § 1225(b)(2) will well exceed hundred by the end of the year.  *See* Rodriguez Decl. ¶¶1-3.

Precisely because many, if not most, of the detainees in the proposed class are unrepresented by counsel and lack financial means to file individual claims, joinder is impracticable.  *See Reid*, 297 F.R.D. at 189; *see also Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 554 (D. Mass. 2017).  Joinder is also impracticable because the proposed class will continue to grow: there are unnamed, unknown future class members who will be subjected to the misclassification endorsed in *Matter of Hurtado*, which now compels IJs to deny bond hearings for misclassified detainees.  The current estimate merely comprises "the floor for this numerosity inquiry," and because the existence of future members is indisputable yet their identities are "unforeseen" and date of deprivation "indeterminate," joinder in this action is not just impracticable but "*impossible*." *See* Rodriguez Decl. ¶¶1-3; *Reid*, 297 F.R.D. at 189 (emphasis in original); *see also Rodriguez v. Bostock*, 349 F.R.D. 333, 353 (W.D. Wash. 2025) (finding that numerosity requirement was met for class of immigration detainees wrongly denied bond hearings after being misclassified under § 1225(b)(2)(A) because the class representative "seeks prospective relief affecting future class members").

## B.     The Proposed Class Satisfies the Commonality Requirement

The proposed class satisfies the requirement that there be "questions of law or fact common to the class."  *Gomes v. Acting Sec'y, United States Dep't of Homeland Sec.*, 561 F. Supp. 3d 93, 99 (D.N.H. 2021).  Commonality exists if class members' claims "'depend upon a common contention' and that determining the truth or falsity of that contention 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Connor B. ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 32 (D. Mass. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011)).  The crux of commonality "is not the raising of common 'questions' . . . but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted) (emphasis in original).  Commonality, like numerosity, is a "low bar," *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008), and requires only "a single question of law or fact common to the members of the class." *Wal-Mart*, 564 U.S. at 369.

The proposed class shares several questions of law and fact:  whether Respondents are violating (1) the class members' statutory and regulatory rights under 8 U.S.C. § 1226 and associated regulations by detaining the class members without a bond hearing; (2) the class members' due process rights by detaining them without a bond hearing; and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by detaining the class members without a bond hearing pursuant to *Matter of Hurtado*.  All proposed class members either have been, or will be, subjected to misclassification and detained without a bond hearing, such that a determination that Respondents' practice violated class members' constitutional and statutory rights will necessarily "resolve an issue that is central to the validity" of every class member's misclassification.  *See Wal-Mart*, 564 U.S. at 350.  Where, as here, a plaintiff challenges a single, system-wide policy or practice that "provides the basis for every class member's injury," commonality is satisfied.  *See Savino v. Souza*, 453 F. Supp. 3d 441, 452-53 (D. Mass. 2020); *Quadrelli v. Moniz*, No. 20-CV-10685-ADB, 2020 U.S. Dist. LEXIS 99456, at *15-18 (D. Mass. June 8, 2020); see also *Bostock*, 349 F.R.D. at 354 (finding commonality requirement met because of the common legal question of "whether Defendants' 'policy and practice denying bonds for lack of jurisdiction' violates the INA and the APA").

Moreover, varying circumstances among the proposed class members do not defeat commonality. Here, the common questions raised by the class are "*not* whether any individual detainee is entitled to release" on bond—questions that are "certainly impacted by the factual differences asserted." *See Reid*, 297 F.R.D. at 190 (emphasis in original). Instead, as in *Reid*, "the sole question here is whether an individual detainee has a [ ] right to *argue* for such release." *See id.* (emphasis in original). The question of whether Respondents are violating the proposed class members' statutory and constitutional rights is "one purely of law, resolvable irrespective of distinctions" among class members, that more than meets the "low bar" required of commonality and warrants class-wide relief. *See id.*; *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d at 19.

Even in cases where the impact of the government's uniform policy varied among individual class members, this Court has found commonality satisfied, because every class member "suffers exactly the same [] injury" when exposed to a uniform policy or practice that impacts the whole group. *See Savino*, 453 F. Supp. 3d at 452. Therefore, where the Respondent's uniform policy has deprived all class members the right to seek release on bond, commonality is satisfied. *See id.*

### C.  The Proposed Class Satisfies the Typicality Requirement

The typicality requirement mandates that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). It is not necessary that all putative class members share identical claims or defenses. *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Instead, typicality requires that the claims of the class representative "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and are "based on the same legal theory." *See Brito*,

395 F. Supp. 3d at 147 (citation omitted).  While typicality is distinct from commonality, the analysis for commonality and typicality "tend to merge."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Mr. Guerrero Orellana's claims are typical of, if not identical to, the claims of the proposed class, because they arise out of the same systematic policy of denying consideration for bond to noncitizen detainees under the purported authority of § 1225(b)(2).  *See* Araujo Decl. ¶¶ 11-13.  As such, Petitioner's harms are typical of the harms suffered by the proposed class members, and his injuries and the injuries of the proposed class result from the single practice or course of conduct by Respondents.  *See Brito*, 395 F. Supp. 3d at 147 (citation omitted).

Moreover, there is no risk here that the Petitioner's individual claims are likely to be subject to a unique defense that "threatens to become the focus of litigation thereby prejudicing the absent class members."  *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 263-64 (D. Mass. 2005).  Neither the Petitioner's nor the class members' claims rest on the individual merits of their bond hearings or removal proceedings before an IJ—the habeas petition seeks, for all class members, declaratory relief establishing their statutory, regulatory, and constitutional right to be classified properly and receive a bond hearing.  Because the Petitioner seeks the same relief, without regard to the outcome on the merits of his individual bond hearing, he can "fairly and adequately pursue the interests of the absent class members without being sidetracked by [his] own particular concerns."  *See id.* at 264.  The proposed class therefore meets the typicality requirement.  *See, e.g.*, *Bostock*, 349 F.R.D. at 359 (finding typicality satisfied where "Rodriguez arrived in the United States without inspection," "[h]e was later arrested and detained," and "[a]n IJ refused Rodriguez bond because the IJ claimed that they lacked jurisdiction").

### D.     The Proposed Class Satisfies the Adequacy Requirement

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied if the "interests of the representative party will not conflict with the interests of any of the class members," and the "counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). The "common legal questions that apply to the claims of all [misclassified] detainees mean that the named plaintiffs can adequately represent the interests" of current and future individuals subject to the misclassification and mandatory detention pursuant to *Matter of Hurtado*. *See Brito*, 395 F. Supp. 3d at 147. Because the interests of Mr. Guerrero Orellana and putative class members are perfectly aligned—alleging the same injuries, arising from the same conduct by Respondents, and seeking the same declaratory relief—Mr. Guerrero Orellana is an adequate representative of the proposed class.

Mr. Guerrero Orellana has also demonstrated adequacy of class counsel. *See Andrews*, 780 F.2d at 130. He is represented by the American Civil Liberties Union Foundation of Massachusetts and its Maine and New Hampshire affiliates, the American Civil Liberties Union Foundation, firms Foley Hoag LLP and Araujo & Fisher LLC, and the Harvard Immigration and Refugee Clinical Program. Collectively, counsel have significant experience in immigration and constitutional law, civil rights litigation, class action litigation, and habeas corpus actions. *See* Declaration of Jessie J. Rossman, Esq.; Declaration of My Khanh Ngo, Esq.; Declaration of Christopher E. Hart, Esq.; Declaration of Carol Garvan, Esq.; Declaration of Gilles Bissonnette, Esq.; Declaration of Sabrineh Ardalan, Esq.; *see also Brito*, 395 F. Supp. 3d at 147-48. Counsel also have "devoted significant resources to this case" and demonstrated commitment to adequately prosecute the class action before this Court, and "no evidence suggests that their level of commitment will diminish."

15

*See Reid*, 297 F.R.D. at 194.  Counsel meet the adequacy requirement and should be appointed as class counsel.

### III.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(B)

In addition to meeting the four requirements of Rule 23(a), the petitioner "must show that the proposed class falls into one of the three defined categories of Rule 23(b)."  *Id.* at 192.  Here, the petitioner seeks certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Civil rights cases, like this one, "where a party charges that another has engaged in unlawful behavior towards a defined group, are 'prime examples' of Rule 23(b)(2) classes." *Reid*, 297 F.R.D. at 193 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). Certification under Rule 23(b)(2) is especially appropriate where "a single injunction or declaratory judgment would provide relief to each member of the class."  *Id.*; *Wal-Mart*, 564 U.S. at 360-61.

This action meets the requirements of Rule 23(b)(2).  Pursuant to their new policies, Respondents have subjected, or will subject, all class members to the same policy of denying consideration for bond under the purported authority of § 1225(b)(2), even though they were arrested within the United States and were not "seeking admission" at the border, and thus should be detained pursuant to § 1226(a).  Respondents have "thus consistently and, . . . incorrectly applied [§ 1225(b)(2)] to the entire class."  *See Reid*, 297 F.R.D. at 193.  Moreover, the named Petitioner and proposed class members seek identical relief to declare them detained, if at all, pursuant to § 1226 and therefore entitled to consideration for bond, including a bond hearing before an IJ upon request.  Because an appropriate declaration will provide relief on a class-wide basis,

the proposed class should be certified under Rule 23(b)(2).[5]  *See id.* ("Critically, the entire class

seeks the same remedy, placing it firmly in the Rule 23(b)(2) category."); *see also Bostock*, 349

F.R.D. at 363 (finding requirements of Rule 23(b)(2) met because "the declaratory relief

requested—a ruling that the policy violates the INA—would provide the entire class with relief").

Further, the proposed class members' claims under the Due Process Clause do not require

individualized analysis of each class member's circumstances on the merits.  *See Brito*, 395 F.

Supp. 3d at 148; *Savino*, 453 F. Supp. 3d at 452.  The proposed class members' due process claim

rests solely and centrally on the Respondents' uniform misclassification of detainees to deny them

a bond hearing, and relief does not hinge on individual circumstances of each class member.  *See*

*id.* at 386.  Where the proposed class members challenge Respondents' policy that "impacts all

putative class members" by denying their opportunity to seek release on bond, and thus seek

declaratory relief that applies to the class as a whole, Rule 23(b)(2) is satisfied.[6]

## CONCLUSION

For the foregoing reasons, Petitioner respectfully asks the Court to certify this action as a

class action pursuant to Rule 23, appointing Petitioner as class representative and undersigned

---

[5]  Because Petitioner seeks certification under Rule 23(b)(2), and the class does not require individualized notice, he is not required to show ascertainability.  *See Orr v. Trump*, No. 1:25-cv-10313-JEK, 2025 U.S. Dist. LEXIS 115198, at *27 (D. Mass. June 17, 2025) (citing 1 Newberg & Rubenstein on Class Actions § 3:7; Joseph M. McLaughlin, 1 McLaughlin on Class Actions: Law & Practice § 4:2 (21st ed. Oct. 2024 update)) ("[T]he [ascertainability] requirement does not apply to all Rule 23(b)(2) classes seeking declaratory or injunctive relief" unless individualized notice is due to class members).  Even if required, the Court in *Brito* has previously noted that class members arrested and detained by ICE "are easily ascertainable through ICE's detention records."  *See Brito*, 398 F. Supp. 3d at 144 n.2.

[6]  The Due Process claim in the instant request is also consistent with the Supreme Court's decision in *DHS v. Thuraissigiam*, 591 U.S. 103 (2020).  There, the Court considered the more limited due process rights of a noncitizen arrested just yards from the border, apparently moments after crossing, and who was therefore still "at the threshold of initial entry." 591 U.S. at 107, 140. *Thuraissigiam* is no bar to class certification here.  *See, e.g.*, *Doe v. Moniz*, 2025 WL 2576819, at *8-9; *Sampiao*, WL 2607924, at *9; *Lopez-Arevalo v. Ripa*, 2025 WL 2691828, at *7-10 (W.D. Tex. Sept. 22, 2025).

counsel as class counsel, and to order Respondents to identify and give notice to all class members and maintain records sufficient to allow for adequate and effective notice to all class members.

Respectfully submitted,

*/s/ Christopher E. Hart*
Anthony D. Mirenda BBO #550587
Christopher E. Hart BBO #625031
Gilleun Kang BBO #715312
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000
adm@foleyhoag.com
chart@foleyhoag.com
gkang@foleyhoag.com

Jessie J. Rossman (BBO # 670685)
Adriana Lafaille (BBO # 680210)
Daniel L. McFadden (BBO # 676612)
Julian Bava (BBO # 712829)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org
jbava@aclum.org

My Khanh Ngo*
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
m.tan@aclu.org
Gilles R. Bissonnette (BBO # 669225)
SangYeob Kim (admitted *pro hac vice*)
Chelsea Eddy (admitted *pro hac vice*)

American Civil Liberties Union Of New
Hampshire
18 Low Avenue
Concord, NH 03301
Phone: 603.333.2081
gilles@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Carol J. Garvan*
Max I. Brooks*
AMERICAN CIVIL LIBERTIES UNION
OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
(207) 619-8687
cgarvan@aclumaine.org
mbrooks@aclumaine.org

Annelise M. Jatoba de Araujo
(BBO # 669913)
Araujo & Fisher, LLC
75 Federal St., Ste. 910
Boston, MA 02110
617-716-6400
annelise@araujofisher.com

Sameer Ahmed (BBO #688952)
Sabrineh Ardalan (BBO # 706806)
Harvard Immigration and Refugee Clinical
Program
Harvard Law School
6 Everett Street
Cambridge, MA 02138
T: (617) 384-0088
F: (617) 495-8595
sahmed@law.harvard.edu
sardalan@law.harvard.edu

*Counsel for Petitioner*


*Motion for admission *pro hac vice*
forthcoming

Dated: September 25, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document will be served on counsel for all parties through the Court's CM/ECF system.

Date: September 25, 2025                    *<u>/s/ Gilleun Kang</u>*
                                                                    Gilleun Kang