# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOSE ARNULFO GUERRERO ORELLANA,

        Petitioner-Plaintiff,

        v.

ANTONE MUNIZ, Superintendent, Plymouth Correctional Facility;

        Respondents-Defendants.

Civil Action No. 1:25-cv-12664-PBS

Leave to file excess pages granted on September 29, 2025 (ECF No. 42)

# DEFENDANTS' OPPOSITION TO PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  LEGAL BACKGROUND ON IMMIGRATION DETENTION................................2

    A.  Detention under 8 U.S.C. 1225. .....................................................................2

    B.  Detention under 8 U.S.C. 1226(a). .................................................................4

III. FACTUAL BACKGROUND ..................................................................................4

IV.  ARGUMENT ........................................................................................................6

    A.  The Court Lacks Juristdiction to Intervene in Petitoner's Removal Proceedings. ..............7

    B.  Petitioner Is Unlikely To Succeed on the Merits. ...........................................9

        1.  Under the Plain Text of 1252(b)(2), Petitoner is Subject to Mandatory Detention without Bond. ..........................................................10

        2.  Petitioner's due process challenge fails on the merits.  ..........................17

        3.  There is no APA Violation.......................................................................21

    C.  The Balance of Harms Favors the United States. ...........................................23

    D.  The Court Should Order That Petitioner Post Bond. .......................................25

V.   CONCLUSION .....................................................................................................25

ii

## <u>TABLE OF AUTHORITIES</u>

*Abi v. Barr*,
  2019 WL 2463036 (D. Minn. 2019) ................................................................ 23, 24

*Aguilar v. U.S. Immigr. & Customs Enf't*,
  510 F.3d 1 (1st Cir. 2007) ........................................................................ 1, 25

*Akebia Therapeutics, Inc. v. Azar*,
  443 F. Supp. 3d 219 (D. Mass. 2020) .................................................................. 6

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998) ................................................................................ 14

*Alvarenga Pena v. Hyde*,
  No. 25-cv-11983-NMG, 2025 WL 2108913 (D. Mass. Jul. 28, 2025) ........................ 10, 12, 18

*Amanullah v. Nelson*,
  811 F.3d 1 (1st Cir. 1987) .......................................................................... 18

*Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc.*,
  794 F.3d 168 (1st Cir. 2015) ........................................................................ 9

*Barton v. Barr*,
  590 U.S. 222 (2020) ................................................................................ 14

*Blackie's House of Beef v. Castillo*,
  659 F.2d 1211 (D.C. Cir. 1981) ..................................................................... 24

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024) .................................................................................... 9

*Brown v. Hot, Sexy and Safer Prods., Inc.*,
  68 F.3d 525 (1st Cir. 1995) ........................................................................ 19

*Centro Medica del Turabo, Inc. v. Feliciano de Melecia*,
  406 F.3d 1 (1st Cir. 2005) ......................................................................... 19

*Chavez v. Noem*,
  No. 3:25-CV-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025) ........................... 11, 12

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ................................................................................ 22

*Dambrosio v. McDonald, Jr.*,
  No. 25-CV-10782-FDS, 2025 WL 1070058 (D. Mass. Apr. 9, 2025) ........................... 18

iii

*Demore v. Kim*,
  538 U.S. 510 (2003)........................................................... 1, 17, 18, 19, 20

*Depoutot v. Rafaelly*,
  424 F.3d 112 (1st Cir. 2005)............................................................ 19

*Dep't of Homeland Sec. v. Thuraissigiam*,
  591 U.S. 103 (2020)............................................................... 16, 19

*Dep't of State v. Muñoz*,
  602 U.S. 899 (2024)..................................................................... 18

*EEOC v. Astra USA, Inc.*,
  94 F.3d 738 (1st Cir. 1996)............................................................. 23

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016).................................................................... 22

*Florida v. United States*,
  660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023)............................................ 11

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022)..................................................................... 6

*Glob. Naps, Inc. v. Verizon New England, Inc.*,
  489 F.3d 13 (1st Cir. 2007)............................................................ 25

*Gomes v. Hyde*,
  No. 25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. Jul. 7, 2025) ......................... 12

*Gonzalez-Droz v. Gonzalez-Colon*,
  660 F.3d 1 (1st Cir. 2011)............................................................. 19

*Hernandez-Lara v. Lyons*,
  10 F.4th 19 (1st Cir. 2021)........................................................ 20, 24

*Housatonic River Initiative v. U.S. EPA*,
  75 F.4th 248 (1st Cir. 2023)........................................................... 22

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)........................................................... 3, passim

*JGG v. Trump*,
  604 U.S. 670 (2025).................................................................... 21

iv

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................... 7

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ...................................................................... 24

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .............................................................. 15, 22

*Lopez Reyes v. Bonnar*,
    No 18-cv-07429-SK, 2018 WL 7474861 (N.D. Cal. Dec. 24, 2018) ...................................... 23

*Lowenthal v. Massachusetts*,
    No. 14-cv-13631, 2014 WL 5285615 (D. Mass. Oct. 14, 2014) ............................... 6

*Maldonado v. Bostock*,
    No. 23-cv-00760, 2023 WL 5804021 (W.D. Wash. Aug. 8, 2023) ...................... 15

*Marasco & Nesselbush, LLP v. Collins*,
    6 F.4th 150 (1st Cir. 2021) ....................................................... 20

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ...................................................................... 17

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374, 384 (1992) .......................................................... 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...................................................................... 20

*Munaf v. Geren*,
    553 U.S. 674 (2008) .................................................................... 6

*Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*,
    100 F.4th 1 (1st Cir. 2024) .................................................... 20, 21

*Narragansett Indian Tribe v. Guilbert*,
    934 F.2d 4 (1st Cir. 1991) ......................................................... 23

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003) ..................... 21

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) .................................................................... 22

v

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................ 6, 24

*Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*,
969 F.3d 12 (1st Cir. 2020)............................................................. 9

*Ortega-Cervantes v. Gonzales*,
501 F.3d 1111 (9th Cir. 2007) ....................................................... 4

*Peoples Fed. Sav. Bank v. People's United Bank*,
672 F.3d 1 (1st Cir. 2012)............................................................... 6

*Perrier-Bilbo v. United States*,
954 F.3d 413 (1st Cir. 2020)........................................................... 20

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
("AADC"), 525 U.S. 471 (1999) ................................................... 8

*Rivera v. Sessions*,
903 F.3d 147 (1st Cir. 2018)........................................................... 20

*Roberts v. Sea-Land Servs., Inc.*,
566 U.S. 93 (2012).......................................................................... 13

*Rotkiske v. Klemm*,
140 S. Ct. 355 (2019)..................................................................... 2

*iQuartic, Inc. v. Simms*,
15-cv-13015, 2015 WL 5156558 (D. Mass. 2015)........................ 25

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)........................................................................ 15

*Succar v. Ashcroft*,
394 F.3d 8 (1st Cir. 2005)............................................................... 16

*Torres v. Barr*,
976 F.3d 918 (9th Cir. 2020) ......................................................... 16

*United States v. Gambino-Ruiz*,
91 F.4th 981 (9th Cir. 2024) .......................................................... 16

*United States v. Martinez-Fuerte*,
428 U.S. 543 (1976)........................................................................ 24

*URI Student Senate v. Town of Narragansett,*
   631 F.3d 1 (1st Cir. 2011) ............................................................................ 19

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ..................................................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ........................................................................................... 6

*Wong Wing v. United States,*
   163 U.S. 228 (1896) ....................................................................................... 1

## <u>ADMINISTRATIVE DECISIONS</u>

*Matter of Guerra,*
   24 I. & N. Dec. 37 (BIA 2006) ....................................................................... 4

*Matter of Yajure Hurtado,*
   29 I. & N. Dec 216 (BIA 2025). .............................................................. 22, 23

*In Re Lemus,*
   25 I & N 734 (BIA 2012) .............................................................................. 14

*Matter of Q. Li,*
   29 I. & N. Dec. 66 (BIA 2025) ....................................................................... 3

## <u>STATUTES</u>

5 U.S.C. § 704 .................................................................................................. 21

8 U.S.C. § 1225 .................................................................................................. 2

8 U.S.C. § 1225(a)(1) ........................................................................... 1, 2, 10, 14

8 U.S.C. § 1225(a)(3) .......................................................................................... 3

8 U.S.C. § 1225(a)(4) ........................................................................................ 14

8 U.S.C. § 1225(b) .............................................................................................. 1

8 U.S.C. § 1225(b)(2) ............................................................................... 1, 5, 10

8 U.S.C. § 1225(b)(2)(A) ............................................................... 3, 10, 11, 14

8 U.S.C. § 1226(a) .............................................................................................. 4

vii

8 U.S.C. § 1226(a)(1) ........................................................................................ 9

8 U.S.C. § 1226(c) ........................................................................................... 17

8 U.S.C. § 1229a(3) ......................................................................................... 14

8 U.S.C. § 1229b(b) ........................................................................................... 5

8 U.S.C. § 1252 .................................................................................................. 7

8 U.S.C. § 1252(b)(9) ........................................................................................ 7

8 U.S.C. § 1252(f)(1) ......................................................................................... 6

8. U.S.C. § 1252(g) ........................................................................................... 7

8 U.S.C. § 1182(a)(6) ....................................................................................... 10

8 U.S.C. § 1182(a)(6)(A)(i) ................................................................................ 5

8 U.S.C. § 1182(a)(7)(i)(I) ...............................................................................10

8 U.S.C. § 1182(d)(5) .......................................................................................12

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 65(c) ........................................................................................ 25

## REGULATIONS

8 C.F.R. § 236.1(c)(8) ........................................................................................4

8 C.F.R. § 1236.1(d)(1) ..................................................................................... 4

8 C.F.R. § 212.5(b) .......................................................................................... 12

8 C.F.R. § 235.3(c) .......................................................................................... 12

8 C.F.R. § 236.1(d)(1) ....................................................................................... 4

8 C.F.R. § 1236.1(d)(1) ..................................................................................... 4

8 C.F.R. § 1003.19(d)(1) ................................................................................... 4

62 Fed. Reg. 10312 (Mar. 6, 1997) ............................................................. 22, 23

viii

## I.     INTRODUCTION

Congress provided that mandatory detention pending removal proceedings is the norm—not the exception—for those who enter the country without inspection and who lack documents sufficient for admission or entry. *See* 8 U.S.C. § 1225(b)(2). And for good reason: detention pending removal proceedings is the historical norm and in this context reflects the reality that aliens have avoided inspection by sneaking into the United States. *See Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Wong Wing v. United State*s, 163 U.S. 228, 235 (1896)).  When Congress enacted 8 U.S.C. § 1225(b) as part of the immigration reforms of 1996, it determined that treating all unadmitted aliens similarly in terms of detention and removal eliminated unintended consequences and perverse incentives that pervaded the prior system, under which undocumented aliens who entered without inspection received more procedural protections—including the ability to seek release on bond—than those who presented themselves for inspection at ports of entry. In essence, the pre-1996 law privileged those that entered the U.S. illegally and clandestinely, which Congress sought to end. Through mandatory detention, Congress further ensured that the Executive Branch can give effect to the provisions for removal of aliens. *See Demore*, 538 U.S. at 531; *see also Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 22 (1st Cir. 2007).

The crux of this dispute is one of statutory interpretation. And, under the plain text, the resolution of this case is neither close nor difficult. Section 1225(b)(2) provides for mandatory detention of any alien "who is an applicant for admission." And "applicants for admission" specifically includes all "alien[s] present in the United States who [have] not been admitted" or "who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). It thus does not matter if aliens have

1

successfully evaded U.S. Border Patrol and effected an unlawful entry into the interior of the United States. They remain "applicants for admission" and thus subject to mandatory detention once apprehended unless paroled by the Department of Homeland Security ("DHS").

Petitioner essentially claims that the plain language of § 1225(b)(2) does not matter, because the government has in the past treated certain aliens who enter without inspection but who are arrested in the interior as subject to discretionary detention. But this prior practice has no bearing on the legal issues here, as detention is mandated by the plain language of the statute, and Congress's mandate is supported by eminently reasonable grounds. After all, where—as here— "the words of a statute are unambiguous, this first step of the interpretive inquiry [*i.e.*, construing the statutory text] is [the court's] last." *Rotkiske v. Klemm*, 589 U.S. 8, 13(2019) (citation omitted).

Thus, even assuming the Court has jurisdiction over this veiled challenge to the conduct of removal proceedings, Petitioner is unlikely to succeed on the merits of his claim. Additionally, Petitioner—who has been in immigration detention for less than two weeks as of the time of filing—cannot show irreparable harm, and the public interest lies in ensuring enforcement of the immigration statutes. Preliminary injunctive relief is thus not appropriate.

## II.    LEGAL BACKGROUND ON IMMIGRATION DETENTION

### A.    Detention under 8 U.S.C. § 1225

Section 1225 applies to "applicants for admission," which includes all "alien[s] present in the United States who [have] not been admitted" or "who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission *must* be inspected by immigration officers, 8 U.S.C. § 1225(a)(3), and "fall into one of two categories, those covered by § 1225(b)(1) and those covered

by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). One thing in common with respect to all the provisions of § 1225 is that if the alien seeks to remain in the United States, detention is required while the government considers any request for relief.

Section 1225(b)(1) applies to aliens who arrive in the United States and "certain other" aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii). These aliens are generally subject to expedited removal proceedings, including, if applicable, referral for a credible fear interview. *See* 8 U.S.C. § 1225(b)(1)(A)(i). Aliens processed for expedited removal "shall be detained" during the expedited removal and credible fear process and pending any further consideration of an asylum application. 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV). If the alien does not indicate an intent to apply for asylum, express a fear of prosecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

Section 1225(b)(2) is "broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), an alien "who is an applicant for admission" shall be detained for a removal proceeding under 8 U.S.C. § 1229a "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); 8 C.F.R. § 235.3(b)(3), (c); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("[F]or aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299). Still,

3

DHS has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

### B.       Detention under 8 U.S.C. § 1226(a)

Section 1226 provides for arrest and detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a), DHS may detain an alien during his removal proceedings, release him on bond, or release him on conditional parole.[1] By regulation, immigration officers can release aliens if the alien demonstrates that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). An alien can also request a custody redetermination (i.e., a bond hearing) by an immigration judge ("IJ") at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination, the IJ may continue detention or release the alien on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). IJs have broad discretion in deciding whether to release an alien on bond, but an alien "who presents a danger to persons or property should not be released during the pendency of removal proceedings." *Matter of Guerra*, 24 I. & N. Dec. 37, 38, 39–40 (BIA 2006).

### III.    FACTUAL BACKGROUND

Petitioner Guerrero Orellana is a native and citizen of El Salvador. *See* Declaration of Keith

---

[1] Being "conditionally paroled under the authority of § 1226(a)" is distinct from being "paroled into the United States under the authority of § 1182(d)(5)(A)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007).

M. Chan ("Chan Decl.") ¶ 6. It is unknown when and where petitioner entered the United States, but he entered without inspection, admission, or parole by an immigration officer. *Id*. ¶ 7. Petitioner does not deny that he is an alien who entered the country illegally, nor does he affirmatively allege that he has been admitted into the United States. *See generally* Am. Petition (ECF No. 10) ¶¶ 25-29; ECF No. 16. He likewise does not assert that he is entitled to be admitted to the United States, nor does he deny that he is removable. Instead, he asserts only that he may be eligible for discretionary relief from removal under 8 U.S.C. § 1229b(b) (*see* ECF No. 16 ¶ 9).

On September 18, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner and detained him pursuant to its authority under 8 U.S.C. § 1225(b)(2). Chan Decl. ¶ 8. On September 18, 2025, ICE served Petitioner with Form I-862, Notice to Appear, alleging that he is inadmissible in the United States under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* On September 22, 2025, ICE filed the Notice to Appear with the immigration court in Chelmsford, Massachusetts. Petitioner's first hearing in his removal proceedings is scheduled for October 2, 2025. *Id.* ¶ 10.

On September 18, 2025, Petitioner filed a petition for Writ of Habeas Corpus and then filed an amended petition on September 22, 2025. ECF No. 10. Petitioner claims that his detention without a bond hearing violates the Immigration and Nationality Act (INA) and due process.

On September 23, 2025, Petitioner filed the instant motion, seeking to compel his release from detention unless he is provided a bond hearing before the immigration court. ECF No. 14.[2]

---

[2] Petitioner also argues in his motion that a collective resolution would be appropriate and that he should represent a class. Pls.' Mot. (ECF No. 14) at 1-2. The government opposes class

The Court ordered the government's opposition to the preliminary injunction be filed by September 30, 2025. ECF No. 27.

## IV.    ARGUMENT

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party "bears the burden of satisfying each of these four elements." *Akebia Therapeutics, Inc. v. Azar*, 443 F. Supp. 3d 219, 225 (D. Mass. 2020). The last two factors "merge when the Government is the party opposing the preliminary injunction." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Petitioner is not entitled to a preliminary injunction, or to any relief in this matter for two overarching reasons. First, the INA precludes jurisdiction over Petitioner's claims, which challenge his removal proceedings and discretionary decisions, over both of which Congress has specifically precluded district courts from exercising judicial review. *See Lowenthal v. Massachusetts*, No. 14-cv-13631, 2014 WL 5285615, at *2 (D. Mass. Oct. 14, 2014) (jurisdiction required to enter preliminary relief); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008) (doubts

---

certification and will file its opposition in accordance with the Court's scheduling order. However, the INA precludes class-wide restraints on the operation of the immigration detention statutes. *See* 8 U.S.C. § 1252(f)(1); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).

about jurisdiction make success on the merits "more *unlikely* due to potential impediments to even reaching the merits"). Second, Petitioner's claims in any event fail on the merits. Congress has expressly provided that aliens like Petitioner are subject to detention without bond pending their removal proceedings, and such detention—particularly where, as here, it has not been prolonged—suffers from no constitutional infirmities.

### A. The Court Lacks Jurisdiction to Intervene in Petitioner's Removal Proceedings.

Petitioner's motion is a collateral attack on his removal proceedings dressed up as a request for a bond hearing. But Congress has foreclosed exactly this type of challenge. Multiple provisions of 8 U.S.C. § 1252 strip this Court of jurisdiction over Petitioner's request, and Petitioner cannot sidestep that the substance of his claims are barred by § 1252 by restyling them as something else.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, Congress has spoken with unmistakable clarity. Section 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." It further specifies that "no court shall have jurisdiction, by habeas corpus . . . or by any other provision of law," to review such questions except in that context. 8 U.S.C. § 1252(b)(9). Section 1252(g) is equally categorical, barring jurisdiction over "any cause or claim" arising from the government's decision to "commence proceedings," "adjudicate cases," or "execute removal orders." 8 U.S.C. § 1252(g).

Petitioner's claims fall squarely within these prohibitions. He is not challenging the

7

conditions of confinement or the length of detention—issues courts have occasionally recognized as falling outside § 1252(b)(9)'s sweep. *See Jennings*, 583 U.S. at 294 (plurality opinion).[3] Instead, he asks this Court to second-guess whether and how an immigration judge grants bond in the midst of ongoing removal proceedings. That is precisely the sort of interference Congress barred— multiple times over—in section 1252. As *Jennings* explained, habeas cannot be used to "challeng[e] the decision to detain them in the first place." *Id.* The Supreme Court has been explicit: detention pending removal is a "specification of the decision to 'commence proceedings' which . . . § 1252(g) covers." *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 485 n.9 (1999). The First Circuit has likewise emphasized that "Congress knows how to bar claims in the immigration context when it desires to do so," and that § 1252(g) leaves no room for collateral challenges to detention tied to the commencement of removal proceedings. *Aguilar*, 510 F.3d at 11 n.2.

Section 1252(b)(9) is extraordinarily (and intentionally) broad, channeling "*all questions of law and fact*" that "arise from" removal actions into the petition-for-review process. *Id.* at 9.(emphasis added). Courts may retain jurisdiction to hear claims entirely independent of removal, but not those—like Petitioner's—that strike at the heart of the government's authority to detain

---

[3] As Justice Thomas explained in his concurrence in *Jennings*, "Section 1252(b)(9) is a 'general jurisdictional limitation' that applies to 'all claims arising from deportation proceedings' and the 'many decisions or actions that may be part of the deportation process.' Detaining an alien falls within this definition—indeed, this Court has described detention during removal proceedings as an 'aspect of the deportation process.' . . . The phrase 'any action taken to remove an alien from the United States' must at least cover congressionally authorized portions of the deportation process that necessarily serve the purpose of ensuring an alien's removal." *Jennings*, 583 U.S. at 317-18 (Thomas, J., concurring in part and concurring in the judgment) (citations omitted).

during removal proceedings. His challenge is inextricably bound up with the adjudication of his case before the immigration court, and therefore falls directly within the statute's jurisdiction-stripping provisions. In short, Petitioner is inviting this Court to disregard Congress's carefully constructed jurisdictional framework and insert itself into ongoing removal proceedings. Congress could not have been clearer: questions about whether, when, and under what circumstances an alien is detained during removal proceedings must be addressed through the statutory review process, not through habeas collateral attacks. Because §§ 1252(b)(9) and 1252(g) categorically bar this Court from intervening, denial of the motion for preliminary injunction and dismissal for lack of jurisdiction is mandatory.[4]

### B.      Petitioner Is Unlikely To Succeed on the Merits.

Petitioner cannot succeed on the merits, which is the most important factor a court must consider in evaluating a request for a preliminary injunction. *Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 22 (1st Cir. 2020); *Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc.*, 794 F.3d 168, 173 (1st Cir. 2015).

---

[4] Moreover, even assuming Petitioner were correct that the proper detention authority is § 1226(a), 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review of any discretionary decision to continue detaining him rather than release him. Section 1252(a)(2)(B)(ii) precludes review of decisions made discretionary by statute, like § 1226(a), which states that, except when detention is mandatory based on the alien's criminal history, "pending such decision, the Attorney General . . . *may* continue to detain the arrested alien." 8 U.S.C. § 1226(a)(1) (emphasis added); *see, e.g.*, *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) ("As '[t]his Court has repeatedly observed,' 'the word may *clearly* connotes discretion.'" (emphasis in original)). In any event, Petitioner is properly detained under § 1225(b)(2), and any decision to release him on parole likewise rests in the sole discretion of DHS. *See* 8 U.S.C. § 1182(d)(5)(A).

## 1. Under the Plain Text of 1252(b)(2), Petitioner is Subject to Mandatory Detention without Bond.

ICE's determination that Petitioner is subject to detention pursuant to 8 U.S.C. § 1225(b)(2) aligns with the plain text of Section 1225 and the Supreme Court's decision in *Jennings*. Petitioner's arguments that Section 1225(b)(2) does not apply to him as an unadmitted alien present in the United States are unpersuasive. ECF. No. 14 at 6. The relevant statutory text supports ICE's position that Petitioner is an applicant for admission subject to detention under Section 1225(b)(2).

8 U.S.C. § 1225(b)(2)(A) mandates detention during the pendency of removal proceedings "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Petitioner falls squarely within the ambit of Section 1225(b)(2)(A)'s mandatory detention requirement.

To start, Petitioner is incontestably an "applicant for admission" to the United States. As described above, an "applicant for admission" is unambiguously defined by Congress to include an alien "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Petitioner is present in the United States, and he concedes that he has not been admitted. *See supra at* p. 5. As Petitioner *cannot* demonstrate to an inspecting immigration officer that he is "clearly and beyond a doubt entitled to be admitted"—because he does not deny he is present in the United States without being admitted or paroled and is inadmissible per 8 U.S.C. §§ 1182(a)(6) and (a)(7)(A)(i)(I)—his detention is mandatory. 8 U.S.C. § 1225(b)(2)(A); *Alvarenga Pena v. Hyde*, No. 25-cv-11983-NMG, 2025 WL 2108913, at *2 (D. Mass. Jul. 28, 2025) ("Because petitioner

remains an applicant for admission, his detention is authorized so long as he is 'not clearly and beyond doubt entitled to be admitted' to the United States"); *Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (rejecting assertion that DHS has discretion to choose to detain an applicant for admission under either § 1225(b) or § 1226(a), which "would render mandatory detention under 8 U.S.C. § 1225(b) meaningless"). Thus, the Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), which mandates that he "shall be" detained. *See Chavez v. Noem*, No. 3:25-CV-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (agreeing with the government that "[p]etitioners [who] do not contest that they are 'alien[s] present in the United States who ha[ve]not been admitted'" are, "[b]y the plain language of § 1225(a)(1), . . . 'applicants for admission' and thus subject to the mandatory detention provisions of 'applicants for admission' under § 1225(b)(2).").

This plain-text construction is supported by the Supreme Court. As explained in *Jennings*, 583 U.S. at 287, applicants for admission fall into one of two categories: those covered by Section 1225(b)(1) and those covered by Section 1225(b)(2). Section 1225(b)(1) applies to aliens arriving in the United States who are initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* 8 U.S.C § 1225(b)(1)(A)(i). Section 1225(b)(2), on the other hand, is "broader" and "serves as a catchall provision that applies to *all* applicants for admission not covered by 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287 (emphasis added). Put another way, while § 1225(b)(1) applies to aliens "arriving" in the United States, § 1225(b)(2) applies to all "other" aliens who are applicants for admission—like Petitioner. Moreover, the Supreme Court has confirmed that this statutory

mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) . . . mandates[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)).[5]

This reasoning was recently adopted by another judge of this Court as well as a district court in the Southern District of California. *See Alvarenga Pena*, 2025 WL 2108913, at *1; *Chavez*, 2025 WL 2730228, at *4. In *Alvarenga Pena*, the petitioner illegally entered the United States in 2005 and was subsequently placed in immigration proceedings that were terminated. *Id.* Approximately 20 years later, ICE encountered Alvarenga Pena following a traffic stop and detained him under Section 1225(b)(2). *Id.* The Court stated that "[b]ecause petitioner remains an applicant for admission, his detention is authorized [under Section 1225(b)(2)(A)] so long as he is not clearly and beyond doubt entitled to be admitted to the United States." *Id.* at *2. As with Petitioner, there was no evidence that Alvarenga Pena was admitted to the United States. *Id*. Thus, the Court determined that not only was petitioner's detention authorized by § 1225(b)(2)(A)—it was mandated by it. *Id.* The same result should obtain here.

Respondents recognize that other courts—including courts within this District—have reached a different conclusion. *See e.g. Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299, at *1 (D. Mass. Jul. 7, 2025). Respectfully, however, this Court should decline to follow these decisions. For example, the Court in *Gomes* concluded that § 1225(b) authorizes the government

---

[5] As explained, the only means of release for an applicant for admission is discretionary parole on a case-by-case basis for urgent humanitarian reasons or a significant public benefit. *See* 8 U.S.C. § 1182(d)(5); *see also* 8 C.F.R. §§ 212.5(b), 235.3(c); *supra* at p. 4.

to detain aliens seeking admission to the country, in the court's view, upon immediate arrival in the country, whereas § 1226(a) authorizes the government to detain certain aliens already in the country. *Id.* But the *Gomes* court ignored that the plain language of § 1225(b) *does not apply just to aliens arriving in the United States*. Again, while § 1225(b)(1) specifically concerns aliens "arriving" in the United States, § 1225(b)(2) is a "catchall" that applies to aliens who are applicants for admission and processed for § 1229a removal proceedings. *Jennings*, 583 U.S. at 837. Simply put, the court in *Gomes* read a temporal limitation into § 1225(b) that is wholly untethered to text or context of the statute. In fact, Congress did put a temporal limitation in one part of § 1225 regarding the scope of expedited removal—§ 1225(b)(1)(iii)(II)—but placed no such temporal limitation as to when it mandated detention in § 1225(b)(2). Because Petitioner cannot and does not point to any temporal limitation in the statute, this Court should be unpersuaded by Petitioner's mention of his entry into the county without being admitted "more than a decade ago," ECF No. 14 at 4, 10, and find, like the *Alvarenga Pena* court, that Petitioner is properly mandatorily detained.

Petitioner claims there is a conflict between §§ 1225 and 1226 in his argument that § 1226(a) governs his detention instead of § 1225, *see* ECF No. 14 at 7-10. But that putative conflict is illusory and wish-casted. Section 1226(a) authorizes an alien to be "arrested and detained pending a decision" on removal. Section 1225 is an additional detention authority that applies in narrower circumstances—where someone is an "applicant for admission." Thus, even if an alien is arrested based upon a warrant, if the examining officer determines that § 1225(b)(2)(A) applies—that is, for aliens like Petitioner who are present in the United States and have not been

13

admitted—the alien "shall be detained." *Id*. The specific mandatory language of § 1225(b)(2)(A) governs over the general permissive language of § 1226(a). "[I]t is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). These two statutory authorities complement each other, and do not conflict. *See*, *e.g.*, *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) ("'[O]ur task is to fit, if possible, all parts into an harmonious whole.'" (citation omitted)).

Petitioner next incorrectly argues that § 1225(b)(2) applies only to those actively "seeking admission" by taking a present-tense action to enter the country. ECF No. 14 at 10. Again, Petitioner is seeking to insert concepts into the plain text of the statute that simply are not there. Congress defined *all* aliens who are present in the United States without being admitted as "applicant[s] for admission," regardless of when they entered. *See* 8 U.S.C. § 1225(a)(1). When an immigration officer encounters and examines an applicant for admission who seeks to remain in the United States, and that alien (like Petitioner) desires to remain in the United States, he is necessarily "seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2)(A). Otherwise, the alien must "withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). An alien continues to be "seeking admission" while in immigration removal proceedings to determine whether he can "be admitted to the United States." *See* 8 U.S.C. § 1229a(3); *In Re Lemus*, 25 I. & N. Dec. 734, 743 (BIA 2012) (recognizing that "many people who not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws").

Nor do recent amendments to § 1226(c)'s mandatory detention provision undermine or

14

render superfluous § 1225's explicit definition of "alien[s] present in the United States who ha[ve] not been admitted" as "applicants for admission." *See* ECF No. 14 at 9. Those amendments, to the extent they include aliens who are present without inspection, merely reflect a "congressional effort to be doubly sure" that such unlawful aliens are detained, *Barton v. Barr*, 590 U.S. 222, 239 (2020), and cannot change what Congress intended in IIRIRA, *see infra*; *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) ("These later enacted laws, however, are beside the point. They do not declare the meaning of earlier law . . . or a change in the meaning of an earlier statute."). Those amendments also apply to aliens who were previously inspected and admitted and are deportable (and are therefore not applicants for admission once apprehended), and thus serve an important separate purpose. In any event, reading multiple Congressional enactments that overlap and require detention to release is disregarding the law, not applying it.

Lastly, Petitioner's assertion that ICE's determination that he is subject to detention under § 1225(b)(2) is a "reversal of nearly three decades of settled immigration practice" does not change the analysis. ECF. No. 14 at 9. Most importantly, in the context of an interpretation of a legal requirement, prior practice has no relevance. And the weight given to agency interpretations "must always 'depend upon their thoroughness, the validity of their reasoning, the consistency with earlier and later pronouncements, and all those factors which give them power to persuade.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (cleaned up)). But in any event, the agency never stated that § 1225(b)(2) did *not* apply to applicants for admission who entered without inspection. And the agency provided little, if any, analysis to support its prior determination in 1996 that such aliens would nonetheless be

15

eligible for bond or bond redetermination, or its assertions that it could "choose" which detention authority to employ. *See* 62 Fed. Reg. at 10323; *Maldonado v. Bostock*, No. 23-cv-00760, 2023 WL 5804021, at *3-4 (W.D. Wash. Aug. 8, 2023) (noting the agency provided "no authority for the proposition that DHS retains discretion to sidestep or override Section 1225 . . . and choose between Sections 1225 and 1226 when it processes an applicant for admission."). The agency's practice therefore carries little weight. *See Loper Bright*, 603 U.S. at 432–33. To be sure, "when the best reading of the statute is that it delegates discretionary authority to an agency," the Court must "independently interpret the statute and effectuate the will of Congress." *Id.*, 603 U.S at 395 (cleaned up). But "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention for applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297 (cleaned up).

When the plain text of a statute is clear, that meaning is controlling and courts do not "need to discuss legislative history." *Succar v. Ashcroft*, 394 F.3d 8, 31 (1st Cir. 2005). But to the extent legislative history is relevant here, the legislative history of § 1225 "confirm[s] [that] the plain text reading is correct." *See id.* Congress passed IIRIRA to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (noting that immigration laws tried those who arrive at a port of entry the same as those that are caught trying to enter). It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges

16

in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225); *see* 8 U.S.C. § 1225(a)-(b) (1995) (former § 1225 providing that those who sought admission at a port were subject to mandatory detention, with potential release solely by means of § 1182(d)(5) parole). Finding Petitioner entitled to bond would put aliens who crossed the border unlawfully in a better position than those who present themselves for inspection at a port of entry. Aliens who presented at port of entry would be subject to mandatory detention under § 1225, but those who crossed illegally between those ports, like Petitioner, would be eligible for a bond under § 1226(a) when later arrested in the United States. This Court should reject Petitioner's interpretation of his detention authority as his view would "create a perverse incentive to enter at an unlawful rather than a lawful location." *Thuraissigiam*, 591 U.S. at 140.

### 2. Petitioner's Due Process Challenge Fails on The Merits.

Nor does detention under § 1225(b)(2) violate the constitution—particularly where, as here, Petitioner has been detained for less than two weeks. The Supreme Court has held that detention during removal proceedings, even without access to a bond hearing, is constitutional. In *Demore*, the Supreme Court upheld the constitutionality of 8 U.S.C. § 1226(c), which mandates detention during removal proceedings without access to bond hearings. 538 U.S. at 522. The Court "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523. The Court reaffirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. The Court explained that "when the Government deals with deportable

17

aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. The Court recognized as to due process concerns that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (quotations omitted).

Here, Petitioner is detained for the limited purpose of removal proceedings. He concedes removability, therefore admitting that he is subject to removal from the United States absent discretionary relief. Petitioner's detention is not punitive or for other reasons than to address his removability from the United States. His detention under § 1225(b)(2) is also not indefinite, as it will end upon the conclusion of his removal proceedings. Those proceedings are moving expeditiously, with a hearing scheduled for this week. A brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (detention "for a period of less than three months' time … does not amount to an unconstitutional duration."); *Alvarenga Pena,* 2025 WL 2108913, at *2-3 (due process clause prohibits the unduly prolonged detention of an alien, but finding no violation for a detention period of less than a month for an applicant for admission detained under Section 1225(b)(2)); *see also Amanullah v. Nelson*, 811 F.3d 1, 9 (1st Cir. 1987) (detention incident to seeking admission does not violate due process).

Whether framed as a substantive or procedural due process claim, the principles set forth in *Demore* govern this case. Substantive due process protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-

21 (1997)). Petitioner's substantive due process claim fails because "the through line of history" is that the federal government has "sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Id.* at 911-12. And in exercising this "broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521. For more than a century, the Supreme Court has recognized that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

Nor can Petitioner succeed on a procedural due process claim. To establish a procedural due process violation, an individual "must first" show that the government has infringed on a "protected" liberty or property interest. *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011). Only then should courts consider "whether the process leading to that deprivation passes constitutional muster." *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011). A protected liberty or property interest "may arise from two sources—the Due Process Clause itself and the laws of the states [or federal government]." *Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 535 (1st Cir. 1995) *abrogated on other grounds by Depoutot v. Rafaelly*, 424 F.3d 112, 118 n.4 (1st Cir. 2005); *see also Centro Medica del Turabo, Inc. v. Feliciano de Melecia*, 406 F.3d 1, 8 n. 4 (1st Cir. 2005) (noting that to invoke a protected interest, a plaintiff must identify a right recognized by state law).

The procedural due process claim fails because, where Congress has substantively mandated detention pending removal proceedings, Petitioner cannot displace that *substantive* choice with a *procedural* due process claim. As discussed, aliens are not entitled to bond hearings

19

as a matter of substantive due process. *See Demore*, 538 U.S. at 523-29. Under *Demore*, Congress may reasonably determine—as they did here—to subject aliens who were never inspected or admitted to this Country to detention without bond while the government determines their removability. And "an alien in [Plaintiff's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Congress has not created any procedural rights to a bond hearing for Applicants for Admission (like Petitioner). *See Jennings*, 583 U.S. at 297. "Read most naturally," § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The statute says nothing "whatsoever about bond hearings." *Id.*

Contrary to Petitioner's argument, the First Circuit's decision in *Hernandez-Lara* does not "control" the analysis. ECF No. 14 at 12. That case involved "the discretionary detention provision" under § 1226(a). *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). The individual therefore had a protected "liberty interest" in a bond hearing because she was "detained under section 1226(a)," which provided for bond hearings. *Id.* at 29. Only that allowed the court to consider whether bond hearings that put the burden of proof on the alien comply with procedural due process. *Id.* at 23, 28–35. But unlike *Hernandez-Lara*, this case involves detention of an applicant for admission under § 1225. And applicants for admission have no right to a bond hearing under § 1225(b)(2)(A) (or to be in the United States at all). *See Jennings*, 583 U.S. at 297. A procedural due process claim "requires that a '*cognizable* liberty...interest be at stake,' and none is present here." *Perrier-Bilbo v. United States*, 954 F.3d 413, 434 (1st Cir. 2020) (emphasis added) (quoting *Rivera v. Sessions*, 903 F.3d 147, 150–51 (1st Cir. 2018)).

20

### 3.      There is no APA Violation.

The Board of Immigration Appeals' (BIA) precedential decision in *Matter of Hurtado* merely conforms with Congress's mandate and is not arbitrary and capricious under the Administrative Procedure Act ("APA"). "The scope of review under the 'arbitrary and capricious' standard is narrow[,] and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under this "highly deferential standard," *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 172 (1st Cir. 2021), the agency need only show that it has "considered the relevant factors and articulated a rational connection between the facts found and the choice made," *Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 100 F.4th 1, 12 (1st Cir. 2024) (internal quotation omitted).

There are a few fundamental justiciability flaws that preclude evaluating the alleged APA claim.  As an initial matter, as explained above, this Court's jurisdiction has been limited by Congress, limitations that squarely apply to an APA claim, just as they do to habeas.  And if this Court rejects those review limitations, it is a habeas claim, not an APA claim, that can be pursued here because Petitioner is challenging the legality of his detention, a core habeas claim. *JGG v. Trump*, 604 U.S. 670, 673 (2025); *see* 5 U.S.C. § 704.  Second, the challenge is not ripe, there is no final agency action in his case, and he has not exhausted his administrative remedies.  Instead, Petitioner is seeking to hold an agency decision arbitrary and capricious before it has been applied to him. Petitioner has been detained for two weeks. His immigration proceedings have only just commenced. He has not alleged that he has requested a bond hearing nor that any Immigration Judge or the Board has applied the *Hurtado* decision to a request for bond in his case. Indeed, if

the Court grants the relief Petitioner requests—release from immigration detention unless he is provided a bond hearing with procedures required by 1226(a)— the *Hurtado* decision will not be applied to his case. As such, his APA claim is not ripe, there is no final agency action, and he has not exhausted his remedies. *Cf. Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (a regulation is not ordinarily considered the type of agency action ripe for APA review until applied to the claimant's situation "in a fashion that harms or threatens to harm him").

Even if it were appropriate to consider an APA claim, the BIA's decision is not arbitrary and capricious. Petitioner fails to articulate a theory as to why the decision is allegedly arbitrary. He points to prior agency practice as allegedly undermining this interpretation, *see* ECF No. 14 at 8, but under *Loper Bright*, it is the plain language of the statute, not prior agency practice or reasoning, which controls. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225–26 (BIA 2025); *supra* at pp. 10-17. In overturning *Chevron*, the Supreme Court recognized that courts often change precedents and "correct[] our own mistakes" *Loper Bright*, 603 U.S. at 411 (2024) (overturning *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). So too for administrative agencies. Moreover, the BIA had never issued a precedential decision directly addressing the question before *Matter of Hurtado*, and thus it did not depart from its own prior reasoning in this regard. *See Matter of Hurtado*, 29 I. & N. Dec. at 225 n.6. Here, the BIA has corrected any prior practice of DHS, its predecessor agency the Immigration and Naturalization Service (INS), or the immigration courts by issuing a decision that conforms to the proper interpretation of the relevant detention statutes. In all events, prior practice cannot change the plain statutory text mandating detention under § 1225(b)(2). *See Loper Bright Enters.*, 603 U.S. at 385-

86; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (stating that "no amount of policy-talk can overcome a plain statutory command").

Further, even assuming, arguendo, that the BIA's decision is subject to APA review, and even assuming the BIA had previously taken a different prior position on the applicability of § 1225(b)(2), an agency is free to "change its existing position … 'as long as [it] provide[d] a reasoned explanation for the change.'" *Housatonic River Initiative v. U.S. EPA*, 75 F.4th 248, 270 (1st Cir. 2023) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)). And even assuming this rule concerning changes in agency policy could apply to the BIA's statements of law, the standard would be met here. In issuing *Matter of Hurtado*, the BIA acknowledged prior immigration court and DHS/INS practice, including the interim guidance published at 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). *See* 29 I. & N. Dec. at 225 n.6. It also includes thorough reasoning supporting the reason for its announced position. *Id.* at 221–22. The BIA analyzed the statutory text, context, and legislative history and concluded that the plain language of § 1225(b)(2) encompasses aliens who entered without inspection and have been residing in the United States, *id.* at 220-223, and that rewarding aliens who entered unlawfully with bond hearings while subjecting those presenting themselves at the border to mandatory detention would be an "incongruous result" unsupported by the plain language "or any reasonable interpretation of the INA," *id.* at 228. It explained that "the long-standing practice of the government" cannot "change, or even eviscerate, explicit statutory text that is contrary to that practice." *Id.* at 226. Thus, the BIA acknowledged prior contrary practice by immigration judges and DHS (and INS) and provided a thorough explanation for its disagreement with that practice. The APA requires no more.

## C. The Balance of Harms Favors the United States.

Petitioner has not shown that he will suffer irreparable harm in the absence of a preliminary injunction. *See EEOC v. Astra USA, Inc.,* 94 F.3d 738, 743 (1st Cir. 1996). "[I]rreparable harm is not assumed; it must be demonstrated." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991). Petitioner's generalized complaints of family separation are not enough to warrant injunctive relief. ECF No. 14. Because the type of harm Petitioner alleges "is essentially inherent in detention, the Court cannot weigh this strongly in favor of" Petitioner. *Lopez Reyes v. Bonnar*, 2018 WL 7474861 at *10 (N.D. Cal. Dec. 24, 2018). Indeed, "if detention during removal proceedings constitutes irreparable harm in and of itself, nearly all habeas petitioners would be entitled to injunctive relief." *Abi v. Barr*, 2019 WL 2463036, at *2 (D. Minn. 2019). Nor has Petitioner alleged any harm of a constitutional dimension. *See supra* § VI.C.2. Given the absence of any irreparable harm that would befall Petitioner if he is not afforded a bond hearing, there is no basis to enter preliminary injunctive relief.

The balance of equities and public interest weigh against granting a preliminary injunction. It is well settled that the public and governmental interest in enforcement of the United States' immigration laws is extremely significant. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 551-58 (1976); *Blackie's House of Beef v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant.") (citing cases); *cf. Nken*, 556 U.S. at 436 ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permits and

24

prolongs a continuing violation of United States law.") (internal quotation omitted); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("[I]t must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature."). As the First Circuit has recognized, the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32. This strong governmental interest in ensuring appearance for removal proceedings and prompt removal through mandatory detention pending removal proceedings thus outweighs the Petitioner's alleged hardships. Indeed, "[a]ny interference with . . . family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country." *Aguilar*, 510 F.3d at 22. Thus, even assuming Petitioner were likely to succeed on the merits of his claims (he is not), the balance of the equities weighs heavily in favor of the government, and the Court should decline to enter any injunction.

> **D.     The Court Should Order That Petitioner Post Bond**

If the Court decides to grant preliminary injunctive relief, the Court should order Petitioner to post a bond under Federal Rule of Civil Procedure 65(c). Under that Rule, the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c); *see also iQuartic, Inc. v. Simms*, 15-cv-13015, 2015 WL 5156558, at *6 (D. Mass. 2015); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 21–22 (1st Cir. 2007).

> **V.     CONCLUSION**

Wherefore, Defendants respectfully request that the Court deny Petitioner's Motion.

25

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST E. FLENTJE
*Special Counsel for Immigration Litigation*

ELIANIS PEREZ
*Assistant Director*

NICOLE P. GRANT
*Senior Litigation Counsel*

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation-GLA
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-598-8259
katherine.j.shinners@usdoj.gov

MICHAEL D. ROSS
ANGEL FLEMING
BRIAN SCHAEFFER
LAURIE WIESNER
*Trial Attorneys*

*and*

LEAH B. FOLEY
United States Attorney

ANUJ KHETARPAL
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200

26

Boston, MA 02210
Tel.: 617-748-3658
Email: Anuj.Khetarpal@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Katherine J. Shinners hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 30, 2025

By: */s/ Katherine J. Shinners*
Katherine J. Shinners
Senior Litigation Counsel