## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————
)
JOSE ARNULFO GUERRERO ORELLANA,   )
on behalf of himself and others   )
similarly situated,   )
)
     Petitioner-Plaintiff,   )
)
v.   )     Civil Action
)     No. 25-cv-12664-PBS
ANTONE MONIZ, Superintendent,   )
Plymouth County Correctional   )
Facility, et al.,   )
)
     Respondents-Defendants.   )
—————————————————————————)

### MEMORANDUM AND ORDER

October 3, 2025

Saris, J.

### INTRODUCTION

Petitioner-Plaintiff Jose Arnulfo Guerrero Orellana was detained by U.S. Immigration and Customs Enforcement ("ICE") on September 18, 2025. The U.S. Department of Homeland Security ("DHS") subsequently initiated removal proceedings against Guerrero Orellana on the basis that he is present in the United States without being admitted or paroled. Before his arrest, Guerrero Orellana resided in Massachusetts with his wife and their one-year-old U.S. citizen daughter. He has worked to support himself and his family, including as a landscaper, and has no

criminal record. He intends to apply for cancellation of removal during his removal proceedings.

Despite Guerrero Orellana's longstanding residence in the United States and his lack of criminal history, DHS has asserted that he -- and all other noncitizens apprehended while residing in the United States who were not admitted or paroled and who are not subject to expedited removal -- must be detained without a bond hearing throughout their removal proceedings as "applicants for admission" under 8 U.S.C. § 1225(b)(2)(A).[1] The Board of Immigration Appeals ("BIA") adopted this interpretation of the statute in a precedential decision issued on September 5, 2025. See Matter of Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Guerrero Orellana filed this petition for writ of habeas corpus and putative class action complaint to challenge his detention without a bond hearing and the government's policy of subjecting this group of noncitizens to mandatory detention. He argues that his detention without a bond hearing is unlawful for three reasons: 1) the government has misclassified him as subject to mandatory detention under § 1225(b)(2)(A) when he is actually subject to discretionary detention under § 1226(a); 2) his detention violates his constitutional right to due process; and 3) the BIA's decision in Matter of Hurtado is contrary to law and

---

[1] The Court uses the terms "noncitizen" and "alien" interchangeably.

arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 <u>et seq.</u> Guerrero Orellana now moves for a preliminary injunction requiring the government to provide him with a bond hearing in immigration court. The government opposes the motion.

After hearing, the Court **<u>ALLOWS</u>** Guerrero Orellana's motion for a preliminary injunction (Dkt. 14).

**<u>BACKGROUND</u>**

The following facts are undisputed. Guerrero Orellana, a citizen of El Salvador, entered the United States without inspection in June 2013. He lives in Massachusetts with his wife and their one-year-old U.S. citizen daughter. He has no criminal record and has worked to support himself and his family, most recently as a landscaper.

On September 18, 2025, Guerrero Orellana was taken into ICE custody during a traffic stop. Shortly after his arrest, DHS served Guerrero Orellana with a Form I-200 arrest warrant. The warrant is addressed to "[a]ny immigration officer authorized pursuant to section 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act ["INA"] . . . to serve warrants of arrest for immigration violations." Dkt. 16-1 at 6. DHS also served Guerrero Orellana with a notice to appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole and under 8 U.S.C.

§ 1182(a)(7)(A)(i) for lacking valid entry documents. Guerrero Orellana intends to apply for cancellation of removal during his removal proceedings.

Guerrero Orellana has been detained since his arrest at the Plymouth County Correctional Facility in Massachusetts. The government asserts that it is detaining Guerrero Orellana as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A). Based on the government's position, Guerrero Orellana is subject to mandatory detention and ineligible for a bond hearing before an immigration judge under the BIA's decision in Matter of Hurtado. Because of Guerrero Orellana's categorical ineligibility for release under BIA precedent, he has not requested a bond hearing.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Sosa v. Mass. Dep't of Corr., 80 F.4th 15, 25 (1st Cir. 2023) (quoting Me. Forest Prods. Council v. Cormier, 51 F.4th 1, 5 (1st Cir. 2022)). To secure a preliminary injunction, the moving party "'must establish' the following four factors: 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Id. (quoting Dist. 4 Lodge of the Int'l Ass'n of Machinists Loc. Lodge 207 v. Raimondo, 40 F.4th 36, 39 (1st Cir. 2022)). The moving party's likelihood of success on

the merits is "the 'sine qua non' for preliminary injunctive relief." Cormier, 51 F.4th at 5 (quoting Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020)).

## DISCUSSION

### I.   Likelihood of Success on the Merits

The Court begins with Guerrero Orellana's likelihood of success on the merits. The Court first describes the statutory provisions in the INA that undergird the parties' dispute over the lawfulness of Guerrero Orellana's detention without a bond hearing. The Court then determines that Guerrero Orellana has shown that he is likely to prevail in establishing that his detention is unlawful.

### A.   Statutory Framework for Detention During Removal Proceedings

The crux of this case is a question of statutory interpretation involving the interplay between 8 U.S.C. §§ 1225 and 1226. The former provision establishes procedures for inspection of an "applicant for admission," that is, a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). After inspection by an immigration officer, certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum. See id. § 1225(b)(1)(A)(i); see also Dep't of

5

<u>Homeland Sec. v. Thuraissigiam</u>, 591 U.S. 103, 108-11 (2020) (describing expedited removal). Otherwise, § 1225(b)(2)(a) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings. 8 U.S.C. § 1225(b)(2)(A). A noncitizen detained under this provision may be paroled "for urgent humanitarian reasons or significant public benefit." <u>Id.</u> § 1182(d)(5)(A); <u>see</u> <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 300 (2018). In all other cases where § 1225(b)(2)(A) applies, the provision "mandate[s] detention of applicants for admission until [removal] proceedings have concluded." <u>Jennings</u>, 583 U.S. at 297.

Section 1226 permits the government "to detain certain aliens already in the country pending the outcome of removal proceedings." <u>Id.</u> at 289. Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The government then "may continue to detain the arrested" noncitizen during removal proceedings or "may release" the noncitizen on bond or conditional parole. <u>Id.</u> § 1226(a)(1)-(2). A noncitizen whom the government decides to detain under this discretionary provision may seek review of that decision via a bond (<u>i.e.</u>, custody redetermination) hearing before an immigration

judge. <u>See</u> 8 C.F.R. § 236.1(d)(1); <u>Johnson v. Guzman Chavez</u>, 594 U.S. 523, 527 (2021); <u>Hernandez-Lara v. Lyons</u>, 10 F.4th 19, 26 (1st Cir. 2021). At that hearing, the immigration judge must release the noncitizen unless the government establishes either "by clear and convincing evidence that [he] poses a danger to the community" or "by a preponderance of the evidence that [he] poses a flight risk." <u>Hernandez-Lara</u>, 10 F.4th at 41.

Section 1226(c), however, "'carves out a statutory category of aliens who may <u>not</u> be released' during removal proceedings, outside of certain limited circumstances." <u>Reid v. Donelan</u>, 17 F.4th 1, 4 (1st Cir. 2021) (quoting <u>Jennings</u>, 583 U.S. at 289); <u>see</u> 8 U.S.C. § 1226(a) (authorizing discretionary detention "[e]xcept as provided in subsection (c)"). This mandatory detention provision applies to noncitizens who are inadmissible or deportable on certain criminal or terrorist grounds. See <u>Johnson</u>, 594 U.S. at 527 n.2; <u>Reid</u>, 17 F.4th at 4.

**B.  Analysis**

Guerrero Orellana argues that his detention without a bond hearing is unlawful for three reasons: 1) the government has misclassified him as subject to mandatory detention under § 1225(b)(2)(A) when he is actually subject to discretionary detention under § 1226(a); 2) his detention violates his constitutional right to due process; and 3) the BIA's decision in <u>Matter of Hurtado</u>, which subjects him to mandatory detention under

§ 1225(b)(2)(A), is contrary to law and arbitrary and capricious in violation of the APA. The Court agrees with Guerrero Orellana's statutory argument that § 1225(b)(2)(A) does not authorize the government to detain him without a bond hearing and, thus, need not address Guerrero Orellana's remaining arguments.

### 1. Jurisdiction

The government raises a threshold contention that the Court lacks jurisdiction over Guerrero Orellana's claims. The government asserts that Guerrero Orellana's claims and his request for a preliminary injunction are "a collateral attack on his removal proceedings dressed up as a request for a bond hearing." Dkt. 46 at 16. Multiple provisions of the INA, the government continues, strip the Court of jurisdiction to adjudicate such a collateral attack on a noncitizen's removal proceedings.

The Court concludes that none of the jurisdiction-stripping provisions cited by the government apply to Guerrero Orellana's claims. The government first invokes 8 U.S.C. § 1252(b)(9), which provides as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or

nonstatutory), to review such an order or such questions
of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(b)(9)'s purpose is "to
consolidate and channel review of all legal and factual questions
that arise from the removal of an alien into the administrative
process, with judicial review of those decisions vested
exclusively in the courts of appeals." Aguilar v. U.S. Immigr. &
Customs Enf't Div. of the Dep't of Homeland Sec., 510 F.3d 1, 9
(1st Cir. 2007). This provision does not, however, deprive district
courts of jurisdiction over "claims that are independent of, or
wholly collateral to, the removal process, or that bear only a
remote or attenuated connection to the removal of an alien."
Kong v. United States, 62 F.4th 608, 614 (1st Cir. 2023) (cleaned
up).

The First Circuit has held that "[a]mong [the] 'collateral'
claims" that § 1252(b)(9) does not bar are "claims seeking review
of the legality of a [noncitizen]'s detention." Id. (quoting
Aguilar, 510 F.3d at 11). Contrary to the government's argument,
Guerrero Orellana's claims directly challenge the legality of his
ongoing immigration detention without a bond hearing and are not
a collateral attack on his removal proceedings. Nor does Guerrero
Orellana "challeng[e] the decision to detain [him] in the first
place." Jennings, 583 U.S. at 294 (plurality opinion). Section

§ 1252(b)(9) poses no obstacle to the Court's consideration of this lawsuit.

The same is true with regard to 8 U.S.C. § 1252(g). This provision states that:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Id. § 1252(g). "Despite the seeming breadth of the statutory language, the Supreme Court has cautioned against reading th[is] provision to preclude jurisdiction over all claims related to removal." Kong, 62 F.4th at 612. Instead, § 1252(g) only bars "judicial review of the [government]'s discrete acts of commencing proceedings, adjudicating cases, and executing removal orders." Id. (cleaned up). And as with § 1252(b)(9), the First Circuit has held that § 1252(g) does not strip courts of jurisdiction over "challenges to detentions where . . . a noncitizen does not attack the decision to execute the removal order." Id. at 617. Guerrero Orellana's suit raises a challenge to the legality of his ongoing detention without a bond hearing that does not directly implicate any decision to commence proceedings, adjudicate cases, or execute removal orders.

Finally, the government cites 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes judicial review of "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Guerrero Orellana's claims do not, however, challenge a discretionary decision by the government to detain him instead of releasing him. Instead, they "challenge the extent of the [government's] authority under the . . . detention statute[s]," which "is not a matter of discretion." Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

> 2.   *Scope of § 1225(b)(2)(A) and § 1226*

The Court now turns to the merits of Guerrero Orellana's statutory argument.[2] The government does not contend that Guerrero

---

[2] Although the government contends in passing that Guerrero Orellana has failed to administratively exhaust his APA argument by not asking an immigration judge for a bond hearing, the government does not make this same contention in connection with Guerrero Orellana's statutory argument. In any event, the Court waives any exhaustion requirement. See Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 176 (1st Cir. 2016) ("Where, as here, Congress has not mandated exhaustion, federal courts have some leeway to relax this requirement."). The BIA made its position on the scope of § 1225(b)(2)(A) crystal clear in Matter of Hurtado such that "further agency proceedings would be futile," Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 78 (1st Cir. 1997), and, as discussed below, requiring Guerrero Orellana to exhaust administrative remedies would subject him to irreparable harm in the form of his ongoing detention, see Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021) (noting that "exhaustion might not be required if" an individual is "challenging h[is] incarceration or

Orellana is subject to either expedited removal under § 1225(b)(1) or mandatory detention under § 1226(c) on criminal or terrorist grounds. But the government emphasizes that Guerrero Orellana falls squarely within § 1225(a)(1)'s definition of an "applicant for admission" because he was neither admitted nor paroled into the country. The government asserts that mandatory detention under § 1225(b)(2)(A) applies to any "applicant for admission" -- including any noncitizen who entered the United States without inspection, regardless of how long he has been present in the country -- who is not subject to expedited removal.

Guerrero Orellana interprets the statutory provisions differently. He contends that he is entitled to a bond hearing under § 1226(a) because he was apprehended while residing inside the United States. In his view, mandatory detention under § 1225(b)(2)(A) only applies to noncitizens "seeking admission" at a port of entry or by crossing the border, while § 1226's discretionary authority governs the detention of noncitizens arrested within the United States, whether or not they entered the country unlawfully. Guerrero Orellana points out that the government has long applied § 1226 in this manner and only recently took the position that noncitizens in his position are instead subject to mandatory detention under § 1225(b)(2)(A).

---

the ongoing deprivation of some other liberty interest" (cleaned up)).

The Court does not resolve this dispute on a blank slate. At least six other judges in this district have rejected the government's argument regarding the scope of § 1225(b)(2)(A). See Morales v. Plymouth Cnty. Corr. Facility, No. 25-cv-12602 (D. Mass. Sep. 30, 2025), Dkt. 15 (Burroughs, J.); Inlago Tocagon v. Moniz, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2778023, at *3] (Joun, J.); Sampiao v. Hyde, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2607924, at *8] (Kobick, J.); Encarnacion v. Moniz, No. 25-cv-12237 (D. Mass. Sep. 5, 2025), Dkt. 16 at 5 (Sorokin, J.); Doe v. Moniz, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2576819, at *5] (Talwani, J.); Romero v. Hyde, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2403827, at *1] (Murphy, J.). But see Pena v. Hyde, No. 25-cv-11983, 2025 WL 2108913, at *1 (D. Mass. July 28, 2025) (stating that "[t]he authority of ICE to detain aliens who are present in the country unlawfully derives from 8 U.S.C. § 1225" but not analyzing the relationship between § 1225 and § 1226). So has almost every other district court nationwide that has addressed this issue either on the merits or on a preliminary injunction. See, e.g., Rodriguez v. Bostock, __ F. Supp. 3d __, __ (W.D. Wash. 2025) [2025 WL 2782499, at *27]; Lepe v. Andrews, __ F. Supp. 3d __, __ (E.D. Cal. 2025) [2025 WL 2716910, at *9]; Hasan v. Crawford, __ F. Supp. 3d __, __ (E.D. Va. 2025) [2025 WL 2682255, at *9]; Pablo Sequen v. Kaiser, __ F. Supp. 3d __, __ (N.D. Cal. 2025) [2025 WL 2650637, at *7-8];

Jimenez v. FCI Berlin, Warden, __ F. Supp. 3d __, __ (D.N.H. 2025)
[2025 WL 2639390, at *10]; Lopez-Campos v. Raycraft, __ F. Supp.
3d __, __ (E.D. Mich. 2025) [2025 WL 2496379, at *8]; Francisco
T. v. Bondi, __ F. Supp. 3d __, __ (D. Minn. 2025) [2025 WL 2629839,
at *3-4]; Lopez Benitez v. Francis, __ F. Supp. 3d __, __ (S.D.N.Y.
2025) [2025 WL 2371588, at *3]. But see Chavez v. Noem, __ F. Supp.
3d __, __ (S.D. Cal. 2025) [2025 WL 2730228, at *4-5].

Determining the relationship between § 1225(b)(2)(A) and
§ 1226 reduces to a question of statutory interpretation. When
construing the meaning of a statute, courts "strive 'to effectuate
congressional intent.'" United States v. Freeman, 147 F.4th 1, 13
(1st Cir. 2025) (quoting City of Providence v. Barr, 954 F.3d 23,
37 (1st Cir. 2020)). The analysis "start[s] . . . with the text of
the statute." Bartenwerfer v. Buckley, 598 U.S. 69, 74 (2023)
(quoting Van Buren v. United States, 593 U.S. 374, 381 (2021)).
Courts "assume, absent sufficient indication to the contrary, that
Congress intends the words in its enactments to carry 'their
ordinary, contemporary, common meaning.'" Pub. Int. Legal Found.,
Inc. v. Bellows, 92 F.4th 36, 45 (1st Cir. 2024) (quoting Pioneer
Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380,
388 (1993)). "[T]he words of a statute must be read in their
context and with a view to their place in the overall statutory
scheme." City of San Francisco v. EPA, 604 U.S. 334, 350 (2025)
(quoting Utility Air Regul. Grp. v. EPA, 573 U.S. 302, 320 (2014)).

Courts also "read statutes, whenever possible, to give effect to every word and phrase" and "generally ought not to interpret statutes in a way that renders words or phrases either meaningless or superfluous." City of Providence, 954 F.3d at 37 (quoting Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 26 (1st Cir. 2006) (en banc)). Finally, while "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," agency "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394, 412 (2024).

Under the plain language of the statutory provisions, Guerrero Orellana's detention is governed by § 1226(a) rather than § 1225(b)(2)(A). As noted, § 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision, which imposes discretionary detention, describes Guerrero Orellana's circumstances: ICE is detaining him "[o]n a warrant," and his detention is "pending a decision" in his removal proceedings "on whether [he] is to be removed from the United States." Id.; see Sampiao, __ F. Supp. 3d at __ [2025 WL 2607924, at *7].

Section 1226(a) states that the government's authority to detain noncitizens pending removal proceedings is discretionary "[e]xcept as provided in subsection (c)." 8 U.S.C. § 1226(a). Section 1226(c), in turn, imposes mandatory detention on noncitizens who are inadmissible or deportable on various criminal or terrorism grounds. See id. § 1226(c); Johnson, 594 U.S. at 527 n.2; Reid, 17 F.4th at 4. By contrast, § 1226(a) does not mention § 1225(b)(2)(A) as an exception to its discretionary detention authority. The "express exception" to § 1226(a)'s discretionary detention authority in § 1226(c) "implies that there are no other circumstances under which" a noncitizen detained under § 1226 is subject to mandatory detention. Jennings, 583 U.S. at 300; see Rodriguez, __ F. Supp. 3d at __ [2025 WL 2782499, at *17]; Pablo Sequen, __ F. Supp. 3d at __ [2025 WL 2650637, at *7]; Sampiao, __ F. Supp. 3d at __ [2025 WL 2607924, at *7]; see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) (deeming "[t]he fact that Congress has created specific exceptions to" a rule to indicate that the rule otherwise "appl[ies] generally").

Although DHS's issuance of a warrant alone supports the conclusion that Guerrero Orellana is detained under § 1226(a), the Court's holding does not turn on the existence of a warrant or the warrant's language. That is because § 1225(b)(2)(A)'s plain terms do not encompass noncitizens like Guerrero Orellana who entered

16

the United States unlawfully and are apprehended while residing in the country. That provision requires detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). As other courts have explained, "for [§] 1225(b)(2)(A) to apply, several conditions must be met -- in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" Martinez v. Hyde, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2084238, at *2]; see Lopez Benitez, __ F. Supp. 3d at __ [2025 WL 2371588, at *6].

Guerrero Orellana does not dispute that he is an "applicant for admission" as defined in the statute because he is "present in the United States" but has "not been admitted." 8 U.S.C. § 1225(a)(1). As he argues, however, § 1252(b)(2)(A) does not apply to all "applicant[s] for admission." Rather, a noncitizen apprehended while residing in the United States does not satisfy the condition that he be "seeking admission." The word "seeking" is a present participle, which "is used to signal present and continuing action." Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1307 (11th Cir. 2022); see Shell v. Burlington N. Santa Fe Ry. Co., 941 F.3d 331, 336 (7th Cir. 2019). And the

INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

While Guerrero Orellana is treated under the statutory definition as an "applicant for admission" because he never lawfully entered the United States, that does not mean he was "seeking admission" at the time of arrest. See Lepe, __ F. Supp. 3d at __ [2025 WL 2716910, at *5]; Romero, __ F. Supp. 3d at __ [2025 WL 2403827, at *10]; Lopez Benitez, __ F. Supp. 3d at __ [2025 WL 2371588, at *6]. Instead, Guerrero Orellana was detained twelve years after he entered the country and now seeks to remain here. Nor does the fact that Guerrero Orellana is applying for cancellation of removal in his removal proceedings compel a different result. That relief contains a set of statutory eligibility criteria distinct from the question of admissibility. See 8 U.S.C. § 1229b(b)(1). A grant of cancellation of removal would result in his adjustment of status to permanent residence while he remains within the United States, see id., not his lawful entry into the country. Treating Guerrero Orellana as "seeking admission" impermissibly expands the scope of the statute beyond the ordinary meaning of its text.

The government disputes this interpretation of the phrase "seeking admission," arguing that that phrase and the term "applicant for admission" are synonymous (or at least that any

"applicant for admission" is also "seeking admission"). In
support, the government notes that the BIA has construed the
statutory definition of "applicant for admission" as meaning that
"many people who are not <u>actually</u> requesting permission to enter
the United States in the ordinary sense are nevertheless deemed to
be 'seeking admission' under the immigration laws." <u>Matter of
Lemus-Losa</u>, 25 I. & N. Dec. 734, 743 (B.I.A. 2012).

The government's argument about the meaning of "seeking
admission" suffers from a number of fatal flaws. Equating the terms
"applicant for admission" and "seeking admission" ignores the
plain meaning of the latter phrase, which again implies some
present action. Such an interpretation also violates multiple
canons of statutory construction. <u>See</u> <u>Lopez Benitez</u>, __ F. Supp.
3d at __ [2025 WL 2371588, at *6]. For one, courts presume that
"[i]n a given statute, . . . different terms usually have
different meanings." <u>Pulsifer v. United States</u>, 601 U.S. 124, 149
(2024). For another, interpreting "seeking admission" as
coextensive with "applicant for admission" would improperly render
the former phrase without effect in § 1225(b)(2)(A). <u>See</u> <u>City of
Providence</u>, 954 F.3d at 37 (explaining that courts "must read
statutes, whenever possible, to give effect to every word and
phrase" (quoting <u>Narragansett Indian Tribe</u>, 449 F.3d at 26)). After
all, § 1225(b)(2)(A) requires that the noncitizen be both an
"applicant for admission" and "seeking admission." 8 U.S.C.

19

§ 1225(b)(2)(A). If the provision "were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." Lopez Benitez, __ F. Supp. 3d at __ [2025 WL 2371588, at *6] (alteration in original); see Jimenez, __ F. Supp. 3d at __ [2025 WL 2639390, at *8] (reasoning that the phrase "seeking admission" should "be given meaning independent of the requirement that the person be an applicant for admission").

Additionally, adopting the government's interpretation of § 1225(b)(2)(A) would impermissibly render superfluous part of Congress's recent amendment to § 1226(c) in the Laken Riley Act. See Sampiao, __ F. Supp. 3d at __ [2025 WL 2607924, at *8]; Lopez Benitez, __ F. Supp. 3d at __ [2025 WL 2371588, at *7]. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." United States v. Quality Stores, Inc., 572 U.S. 141, 148 (2014) (quoting Stone v. INS, 514 U.S. 386, 397 (1995)). The Laken Riley Act created a new category of noncitizens subject to mandatory detention under § 1226(c), namely any noncitizen who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of [8 U.S.C. § 1182(a)]" and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing" certain crimes. Laken Riley Act, Pub. L. No. 199-1, § 2(1)(C), 139 Stat. 3, 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)). One of these inadmissibility grounds

20

-- 8 U.S.C. § 1182(a)(6)(A)(i) -- covers noncitizens "present in the United States without being admitted or paroled."[3]

Yet if, as the government posits, all noncitizens present without admission or parole are subject to mandatory detention under § 1225(b)(2)(A) regardless of criminal history, "there would have been no need for Congress to specify in [the Laken Riley Act] that such noncitizens are subject to mandatory detention" under § 1226(c) when they met certain criminal conduct criteria. Sampiao, __ F. Supp. 3d at __ [2025 WL 2607924, at *8]. While statutes do sometimes contain surplusage and "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text," Barton v. Barr, 590 U.S. 222, 239 (2020), the Court declines to construe § 1225(b)(2)(A) and § 1226, two components of a single statutory scheme, in a manner that would render language in the latter section to be meaningless. See City of Chicago v. Fulton, 592 U.S. 154, 159 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (quoting Yates v. United States, 574 U.S. 528, 543 (2015))).

---

[3] The other inadmissibility grounds listed in the Laken Riley Act apply to noncitizens who procure or try to procure an immigration benefit via fraud or misrepresentation or who lack valid entry documents. See 8 U.S.C. § 1182(a)(6)(C)(i), (7).

Although the Supreme Court's decision in <u>Jennings</u> did not directly address the interplay between § 1225(b)(2)(A) and § 1226, <u>Jennings</u>' description of the statutory provisions is largely consistent with Guerrero Orellana's argument. See <u>Rodriguez</u>, ___ F. Supp. 3d at ___ [2025 WL 2782499, at *23]; <u>Lepe</u>, ___ F. Supp. 3d at ___ [2025 WL 2716910, at *6]; <u>Hasan</u>, ___ F. Supp. 3d at ___ [2025 WL 2682255, at *8]. The Court explained that § 1225 is part of the immigration process "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," and that the statute "authorizes the Government to detain certain aliens seeking admission into the country." <u>Jennings</u>, 583 U.S. at 287, 289. By contrast, the Court noted that § 1226 "authorizes the Government to detain certain aliens already in the country." <u>Id.</u> at 289.

Lastly, construing § 1226 rather than § 1225(b)(2)(A) to apply to noncitizens while residing inside in the United States aligns with longstanding agency practice. See <u>Rodriguez</u>, ___ F. Supp. 3d at ___ [2025 WL 2782499, at *25]; <u>Hasan</u>, ___ F. Supp. 3d at ___ [2025 WL 2682255, at *9]; <u>Lopez Benitez</u>, ___ F. Supp. 3d at ___ [2025 WL 2371588, at *8]. Congress enacted the current statutory scheme in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996. See Pub. L. No. 104-208, §§ 302-03, 110 Stat. 3009, 3009-579 to -587 (1996). When the Department of Justice issued implementing regulations months after passage of IIRIRA,

the agency explained that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Until changing their positions this year, the relevant agencies consistently applied § 1226, not § 1225(b)(2)(A), to noncitizens who entered without inspection and were later apprehended within the country. See Rodriguez, __ F. Supp. 3d at __ [2025 WL 2782499, at *24]; Hasan, __ F. Supp. 3d at __ [2025 WL 2682255, at *9]; Martinez, __ F. Supp. 3d at __ [2025 WL 2084238, at *4, *8].

The government does not dispute the existence of this established agency practice but argues that it carries no weight in the analysis. This Court, of course, "must exercise [its] independent judgment in deciding whether [the government] has acted within its statutory authority." Loper Bright, 603 U.S. at 412. Still, "the longstanding practice of the government" that § 1226 governs the detention of noncitizens in Guerrero Orellana's position "can inform a court's determination of what the law is." Id. at 386 (cleaned up). While not conclusive, the government's longstanding position that noncitizens who entered without inspection and were later apprehended within the country were subject to detention under § 1226 rather than § 1225(b)(2)(A)

23

supports the Court's interpretation of the scope of the government's statutory authority.[4]

The government's remaining arguments are unpersuasive. Recognizing that the circumstances of Guerrero Orellana's detention fall within the plain language of § 1226(a), the government asserts that § 1225(b)(2)(A) is a more specific provision that trumps § 1226(a)'s general detention authority. The government is correct that when "a general permission or prohibition is contradicted by a specific prohibition or permission" in a statute, "the specific provision is construed as an exception to the general one." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012). But at least in the context of a noncitizen apprehended inside the United States, the two provisions do not conflict. Rather, for the reasons discussed above, § 1226 applies, and § 1225(b)(2) does not. See Sampiao, __ F. Supp. 3d at __ [2025 WL 2607924, at *8] ("Section 1225(b)(2) is not 'more specific' than [§] 1226(a); these provisions simply apply in different circumstances.").

The government further contends that its interpretation of § 1225(b)(2)(A) better aligns with Congress's purpose in enacting

---

[4] The government does not dispute that the Court need not defer to the BIA's recent interpretation of the law in Matter of Hurtado. See Loper Bright, 603 U.S. at 413. For the reasons explained in this opinion, the Court does not find the BIA's analysis of the issue to be persuasive.

IIRIRA. Specifically, some courts have held that one aim of IIRIRA was to replace the concept of "entry" with "admission" in order to put noncitizens who entered the country unlawfully in the same position as those who were attempting to lawfully enter the country. See Torres v. Barr, 976 F.3d 918, 927-28 (9th Cir. 2020); Martinez v. Att'y Gen., 693 F.3d 408, 413 n.5 (3d Cir. 2012). This resort to IIRIRA's "[p]urpose cannot override [the] text" of the statute. Waithaka v. Amazon.com, Inc., 966 F.3d 10, 25 (1st Cir. 2020). In any event, the legislative history suggests that Congress did not intend to alter the detention authority for noncitizens who entered the country unlawfully. A congressional report issued during the debate over IIRIRA indicates that the new version of § 1226(a) "restates the current provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-828, at 210 (1996); see H.R. Rep. No. 104-469, pt. I, at 229 (1996) (explaining the same for an earlier iteration of the legislation). Under the pre-IIRIRA statutory scheme, noncitizens who entered the country unlawfully were subject to discretionary detention with the possibility of release. See 8 U.S.C. § 1252(a)(1) (1994); Rodriguez, __ F. Supp. 3d at __ [2025 WL 2782499, at *23]; Jimenez, __ F. Supp. 3d at __ [2025 WL 2639390, at *9].

Accordingly, the Court concludes that Guerrero Orellana is likely to succeed on the merits of his claim that the government is unlawfully detaining him under § 1225(b)(2)(A) without a bond hearing rather than under § 1226(a) with the right to a bond hearing.

## II. **Remaining Preliminary Injunction Factors**

The remaining preliminary injunction factors also weigh in Guerrero Orellana's favor.[5] Guerrero Orellana persuasively argues that he will suffer irreparable harm in the absence of preliminary relief based on his ongoing detention without a bond hearing. Guerrero Orellana intends to apply for cancellation of removal during his removal proceedings. According to declarations submitted by Guerrero Orellana, it typically takes an immigration judge between six months and a year to adjudicate an application for relief from removal in a detained case. Any appeal that follows the immigration judge's decision may last six more months.

Guerrero Orellana thus faces a prolonged period of mandatory detention without a bond hearing, likely in violation of the statutory scheme. During this time, he would be separated from his wife and child, whom he supports financially. The toll of this detention and family separation was evident at the preliminary injunction hearing, where Guerrero Orellana became emotional. This

---

[5] The government does not argue that a preliminary injunction is an improper form of relief in this case.

loss of liberty in the absence of preliminary injunctive relief would constitute irreparable harm. See Sampiao, __ F. Supp. 3d at __ [2025 WL 2607924, at *6]; Romero, __ F. Supp. 3d at __ [2025 WL 2403827, at *8]; see also Ferrera v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury.").

The remaining preliminary injunction factors -- the balance of equities and the public interest -- "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009); see Devitri v. Cronen, 289 F. Supp. 3d 287, 297 (D. Mass. 2018). The government argues that granting Guerrero Orellana preliminary injunctive relief would interfere with its important interest in enforcing the immigration laws and executing removal orders. The First Circuit has, however, repeatedly rejected similar arguments about executive power where, as here, the government is likely acting unlawfully. See New York v. Trump, 133 F.4th 51, 71 (1st Cir. 2025); New Jersey v. Trump, 131 F.4th 27, 40-41 (1st Cir. 2025). Relatedly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." Rhode Island v. Trump, __ F.4th __, __ (1st Cir. 2025) [2025 WL 2621593, at *10] (quoting Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 76 (1st Cir. 2025)).

Moreover, Guerrero Orellana asks the Court to order the government to provide him with a bond hearing before an immigration

judge, not to release him from detention outright. Providing bond hearings to noncitizens in Guerrero Orellana's position was the government's consistent practice until very recently, so a preliminary injunction here merely returns the parties to that status quo. And the government may continue to detain Guerrero Orellana if it shows at this bond hearing either "by clear and convincing evidence that [Guerrero Orellana] poses a danger to the community" or "by a preponderance of the evidence that [he] poses a flight risk." Hernandez-Lara, 10 F.4th at 41. The government's ability to continue to detain Guerrero Orellana if it proves detention is justified reduces any harm that preliminary injunctive relief would inflict on the government's ability to enforce the immigration laws and execute removal orders. Cf. id. at 32 ("The government fails to explain why its proffered interest in securing appearance at removal proceedings and for deportation holds sway where a noncitizen is not a flight risk.").

Guerrero Orellana has therefore shown that the irreparable harm, balance of equities, and public interest factors favor issuance of a preliminary injunction.

## III. **Injunction Bond**

Finally, the government asks the Court to require Guerrero Orellana to post a bond under Federal Rule of Civil Procedure 65(c). That rule authorizes a court to "issue a preliminary injunction or a temporary restraining order only if the movant

gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This provision is "not mandatory," and "a district court retains substantial discretion to dictate the terms of an injunction bond." Pineda v. Skinner Servs., Inc., 22 F.4th 47, 57 (1st Cir. 2021) (quoting Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc., 925 F.2d 6, 9 (1st Cir. 1991)). The Court concludes that an injunction bond is not warranted here because Guerrero Orellana seeks to vindicate an important statutory right that implicates his liberty, the injunction will not cause the government any financial loss, and requiring security may interfere with Guerrero Orellana's right to judicial review of the government's actions. See Ass'n of Am. Univs. v. Dep't of Def., __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2022628, at *28]; Schiff v. U.S. Off. of Pers. Mgmt., 784 F. Supp. 3d 380, 400-01 (D. Mass. 2025).

**ORDER**

For the foregoing reasons, Guerrero Orellana's motion for a preliminary injunction (Dkt. 14) is **ALLOWED**. The Court **ORDERS** that the government release Guerrero Orellana unless he is provided a bond hearing that complies with the standards outlined in Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), within seven business days of the date of this order.

SO ORDERED.

                                    /s/ PATTI B. SARIS
                                    Hon. Patti B. Saris
                                    United States District Judge