**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOSE ARNULFO GUERRERO
ORELLANA,

         Petitioner-Plaintiff,

         v.

ANTONE MONIZ, Superintendent,
Plymouth Correctional Facility;

         Respondents-Defendants.

Civil Action No. 1:25-cv-12664-PBS

Leave to file excess pages granted on
October 8, 2025 (ECF No. 63)

**RESPONDENTS' OPPOSITION TO PETITIONER'S**
**MOTION FOR CLASS CERTIFICATION**

i

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL BACKGROUND ON IMMIGRATON DETENTION .........................................2

III.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................5

IV.    ARGUMENT .......................................................................................................6

    A.  8 U.S.C. § 1252(e)(1)(B) Bars Class Certification ..................................8

    B.  The Proposed Class Does Not Meet the Requirements for an Injunctive-Relief Class Under Rule 23(b)(2).........................................................................8

        1.  Section 1252(f)(1) Prohibits Classwide Relief Restraining the Government's Operation of 1225(b)(2)'s Detention Authority..................9

        2.  The Relief Petitoners Seek Will Not Appropriately Address the Alleged Injuries of the Classes as a Whole. ..........................................................13

    C.  Petitioner's Proposed Class Does Not Satisfy Rule 23(a)'s Requirement. ...........17

        1.  Material Factual Variations Among Putative Class Members' Circumstances Defeat Commonality ........................................................17

        2.  Petitioner's Claim Is Not Typical of the Claims of the Proposed Class Members. ...............................................................................................23

        3.  Petitoner is Not an Adequate Representative of the Proposed Class.........24

    D.  Individual Habeas Actions, Not a Class Action, are the Correct Vehicles to Resolve Class Members' Claims. ........................................................25

    E.  If the Court Certifies any Class, the Court Should Decline to Direct Identification of Class Members and Notice. ............................................................26

CONCLUSION....................................................................................................27

## TABLE OF AUTHORITIES

*A.A.R.P. v. Trump*,
  145 S. Ct. 1034 (2025) ........................................................................... 25

*Al Otro Lado v. Exec. Off. for Immigr. Review,*
  120 F.4th 606 (9th Cir. 2024) ............................................................... 11

*Alli v. Decker*,
  650 F.3d 1007 (3d Cir. 2011) ................................................................ 16

*AmChem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 8, 24

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985) ................................................................. 24

*Ashbourne v. Hansberry*,
  894 F.3d 298, 302 (D.C. Cir. 2018) ...................................................... 14

*Biden v. Texas*,
  597 U.S. 785 (2022) .............................................................................. 12

*Brito v. Garland*,
  22 F.4th 240 (1st Cir. 2021) ............................................................ 11, 12

*Calderon v. Ashmus*,
  523 U.S. 740 (1998) ........................................................................ 13, 15

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................ 1, 7

*Clukey v. Town of Camden*,
  717 F.3d 52 (1st Cir. 2013) ............................................................. 16, 21

*Cooper v. Fed. Rsrv. Bank of Richmond*,
  467 U.S. 867 (1984) .............................................................................. 14

*Davis v. Brady*,
  2007 WL 1106140 (D. Mass. Apr. 9, 2007) .......................................... 27

iii

*Dellums v. Powell,*
566 F.2d 216 (D.C. Cir. 1977) ................................................................. 25

*Demore v. Kim,*
538 U.S. 510 (2003) ................................................................................. 21

*DHS v. Thuraissigiam,*
591 U.S. 103 (2020) ................................................................................. 20

*East Tex. Motor Freight Sys., Inc. v. Rodriguez,*
431 U.S. 395 (1977) ........................................................................... 24, 25

*Fusco v. Grondolsky,*
No. 17-1062, 2019 WL 13112044 (1st Cir. June 18, 2019) ............... 13, 15

*Garcia v. E.J. Amusements of New Hampshire, Inc.,*
98 F. Supp. 3d 277 (D. Mass. 2015) ........................................................ 24

*Garland v. Aleman Gonzalez,*
596 U.S. 543 (2022) ........................................................... 1, 10, 11, 12

*Gen. Tel. Co. of Southwest v. Falcon,*
457 U.S. 147 (1982) ............................................................................. 7, 17

*Hamama v. Adducci,*
912 F.3d 869 (6th Cir. 2018) ................................................................... 12

*Hernandez-Lara v. Lyons,*
10 F.4th 19 (1st Cir. 2021) ...................................................................... 21

*Horn & Hardart Co. v. Nat'l Rail Passenger Corp.,*
843 F.2d 546 (D.C. Cir. 1988) ................................................................ 16

*In re Nexium Antitrust Litigation,*
777 F.3d 9 (1st Cir. 2015) ....................................................................... 23

*Jennings v. Rodriguez,*
583 U.S. 281 (2018) ...................................................................... 3, 4, 16, 21

*JGG v. Trump,*
604 U.S. 670 (2025) ................................................................................. 22

iv

*Kale v. Combined Ins. Co. of America*,
 924 F.2d 1161 (1st Cir. 1991) ............................................................... 14

*Lepe v. Andrews*,
 No. 1:25-CV-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025) ...................................... 20

*LoBue v. Christopher*,
 82 F.3d 1081 (D.C. Cir. 1996) ............................................................... 15

*Loef v. First Am. Title Ins. Co.*,
 281 F.R.D. 58 (D. Me. 2012) ............................................................... 27

*M.M.V. v. Garland*,
 1 F.4th 1100 (D.C. Cir. 2021) ............................................................... 9

*Martinez v. Hyde*,
 No. 25-cv-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025) ...................................... 18

*Monk v. Sec. of Navy*,
 793 F.2d 364 (D.C. Cir. 1986) ............................................................... 15

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ............................................................... 27

*Rafsky v. Smallbizpros, Inc.*,
 No. 20-cv-11148-TSH, 2024 WL 1178375 (D. Mass. Mar. 19, 2024) ...................................... 14

*Steele v. United States*,
 144 F.4th 316, 324 (D.C. Cir. 2025) ............................................................... 14

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ............................................................... 22, 23

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025) ............................................................... 22

*United States v. SCRAP*,
 412 U.S. 669 (1973) ............................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................. 1, passim

## ADMINISTRATIVE DECISIONS

*Matter of Q. Li*,
  29 I. & N. Dec. 66 (BIA 2025) ..................................................................... 4

## STATUTES

5 U.S.C. § 704 ......................................................................................................... 22

5 U.S.C. § 705 ......................................................................................................... 13

5 U.S.C. § 706(2) .................................................................................................... 13

8 U.S.C. § 1101(a)(15)(U) ..................................................................................... 21

8 U.S.C. § 1182(d)(5)(A) ......................................................................................... 7

8 U.S.C. § 1182(d)(6)(A)(i) ..................................................................................... 5

8 U.S.C. § 1182(d)(7)(A)(i)(I) ................................................................................. 5

8 U.S.C. § 1184(p) ................................................................................................. 21

8 U.S.C. § 1225 ................................................................................................... 2, 5

8 U.S.C. § 1225(a)(1) ...................................................................................... 2, 3, 18

8 U.S.C. § 1225(a)(3) ...................................................................................... 2, 3, 18

8 U.S.C. § 1225(b)(1) ............................................................................................... 6

8 U.S.C. § 1225(b)(1)(A)(i) ................................................................................... 2, 3

8 U.S.C. § 1225(b)(1)(A)(ii) .................................................................................... 3

8 U.S.C. § 1225(b)(1)(A)(iii) ................................................................................ 2, 3

8 U.S.C. § 1225(b)(1)(B)(ii) ................................................................ 6

8 U.S.C. § 1225(b)(2) ....................................................................... 5

8 U.S.C. § 1225(b)(2)(A) ......................................................... 3, 4, 18

8 U.S.C. § 1226 ...................................................................... 2, 5, 13

8 U.S.C. § 1226(a) ........................................................................... 4

8 U.S.C. § 1226(c) ........................................................................... 7

8 U.S.C. § 1229a ..................................................................... 2, 3, 4

8 U.S.C. § 1229b(b) .................................................................. 5, 20

8 U.S.C. § 1229b(b)(1) .................................................................... 5

8 U.S.C. § 1231 .......................................................................... 2, 7

8 U.S.C. § 1231(a)(6) ..................................................................... 10

8 U.S.C. § 1237 ............................................................................... 5

8 U.S.C. § 1237(a) ........................................................................... 4

8 U.S.C. § 1252(e)(1)(B) ............................................................. 1, 8

8 U.S.C. § 1252(e)(3) ....................................................................... 9

8 U.S.C. § 1252(e)(3)(A)(i) .............................................................. 9

8 U.S.C. § 1252(e)(3)(A)(ii) ............................................................. 9

8 U.S.C. § 1252(f)(1) ......................................................... 10, 12, 24

28 U.S.C. § 2202 ........................................................................... 15

28 U.S.C. § 2241(a) ....................................................................... 15

28 U.S.C. § 2242 ........................................................................... 26

vii

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(a) ................................................................................................ 8

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 23

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 24

Fed. R. Civ. P. 23(b)(2) .............................................................................. 1, 8, 9, passim

Fed. R. Civ. P. 23(c)(2) ........................................................................................... 27

Fed. R. Civ. P. 23(c)(2)(A) ...................................................................................... 27

Fed. R. Civ. P. 23(d) ............................................................................................... 27

## REGULATIONS

8 C.F.R. § 236.1(c)(8) .............................................................................................. 4

## I.     INTRODUCTION

This habeas case does not qualify for the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Class treatment here is legally improper: in 8 U.S.C. § 1252(e)(1)(B), Congress expressly precluded certification of classes that challenge the implementation of § 1225(b) and instead allowed for challenges in the District of Columbia. And in § 1252(f)(1), Congress expressly prohibited lower courts from issuing orders that restrain detention on a classwide basis—which is precisely what Petitioner asks the Court to do here. *See Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). And any non-coercive declaratory relief the Court could possibly grant would be improper given that Petitioner seeks to challenge the legality of the detention of class members, a core habeas claim that must be raised via the writ of habeas corpus, where it is well established that declaratory relief is improper. Thus, assuming Petitioner were to prevail on the merits, the Court can at most provide relief to Petitioner. It cannot provide effective relief to all members of the proposed class as is required by Federal Rule of Civil Procedure 23(b)(2), and class certification would preclude those class members from splitting their claims by bringing individual habeas relief based on the issues raised by Petitioner. Class certification is also not proper in habeas cases, full stop, as habeas relief addresses the legality of an individual's detention, a necessarily individualized inquiry, and if successful results in individualized non-declaratory relief—an order requiring the individual's release from illegal custody.  Further, the broad prospective class that Petitioner seeks to certify includes individuals who have yet to suffer an injury or threatened injury, which would violate

Article III's standing requirements. Petitioner's appeal to judicial efficiency is unavailing: a desire for efficiency cannot overcome either Article III's limits or Congress's clear mandate against classwide relief of the type Petitioner seeks.

Even leaving aside these hurdles, Petitioner's proposed class fails to satisfy Rule 23(a)'s typicality and commonality requirements. Respondents maintain that all applicants for admission are necessarily seeking admission, and their detention is governed by § 1225(b)(2)(A). However, even under Petitioner's interpretation of the statute (which this Court adopted), there are material factual questions that do not give rise to common answers: questions as to whether Petitioner was examined for inadmissibility, what forms were issued to him, how long he has been present in the United States, and whether he is seeking admission. These questions required an investigation into the particular facts of Petitioner's case to determine his individual entitlement to relief—as they will in the case of each class member. Petitioner thus fails to identify truly common questions capable of driving the resolution of the litigation as to each class member under Petitioner's interpretation of the law, and his claims are not typical of those of the class.

## II.    LEGAL BACKGROUND ON IMMIGRATION DETENTION

The INA provides that all "alien[s] present in the United States who [have] not been admitted" or "who arrive[] in the United States" are "applicants for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission must be inspected by immigration officers, 8 U.S.C. § 1225(a)(3), and "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1)'s detention and removal provisions apply to aliens who arrive in the
2

United States and "certain other aliens" "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). This includes aliens, as designated by the Secretary, who have been continuously physically present in the United States for up to two years before the date of their inadmissibility determination. *See* 8 U.S.C. § 1225(b)(1)(A)(iii). These aliens are generally subject to expedited removal proceedings, including, if applicable, referral for a credible fear interview. *See* 8 U.S.C. § 1225(b)(1)(A)(i). If the alien does not indicate an intent to apply for asylum, express a fear of prosecution, or is "found not to have such a fear," he is detained until removed. *Id.* § 1225(b)(1)(A)(i), (B)(iii)(IV). If the alien does demonstrate a credible fear, the alien "shall be detained" for further consideration of an asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii).

Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at 287. It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Under § 1225(b)(2), an alien "who is an applicant for admission" shall be detained for a removal proceeding under 8 U.S.C. § 1229a "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("[F]or aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299). Still, the Department of Homeland Security (DHS) has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent

3

humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Section 1226 provides for arrest and detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This section thus provides authority to detain aliens who do not fall under § 1225(b)(2) because they were previously admitted, but who are placed in removal proceedings under § 1229a for various reasons, including by violating their status, overstaying their visas, or being convicted of certain crimes. *See* 8 U.S.C. § 1237(a). Under § 1226(a), the government may detain an alien during his removal proceedings, release him on bond, or release him on conditional parole. By regulation, immigration officers can release an alien detained under §1226(a) if the alien demonstrates that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

## III. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Guerrero Orellana is a native and citizen of El Salvador. *See* ECF No. 47 (Declaration of Keith M. Chan ("Chan Decl.")) ¶ 6. It is unknown when and where Petitioner entered the United States, but he entered without inspection, admission, or parole by an immigration officer. *Id*. ¶ 7. Petitioner does not deny that he is an alien who entered the country illegally, nor does he affirmatively allege that he has been admitted into the United States. *See generally* Am. Petition (ECF No. 10) ¶¶ 25-29; ECF No. 16. He concedes he is an "applicant for admission" under 8 U.S.C. § 1225(a)(1). He does not deny that he is removable, but asserts that he may be eligible for discretionary *relief* from removal under 8 U.S.C. § 1229b(b). *See* ECF No. 16 ¶ 9. That provision allows the immigration court to "adjust to the status of an alien lawfully admitted for permanent residence" an otherwise inadmissible or deportable alien who makes

4

various showings, including#"exceptional and extremely unusual hardship" to a U.S-citizen or lawful permanent resident spouse, parent, or child. 8 U.S.C. § 1229b(b)(1).

On September 18, 2025, U.S. Immigration and Customs Enforcement ("ICE") conducted a warrantless arrest of Petitioner and detained him pursuant to the authority of 8 U.S.C. § 1225(b)(2). ECF No. 47 at ¶ 8. Also on September 18, 2025, ICE served Petitioner with a Form I-862, Notice to Appear, alleging that he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I), *id.*, explaining "[y]ou were not . . . admitted or paroled after inspection by an Immigration Officer," ECF No. 16-1 at 2. ICE also served on Petitioner a Form I-200, titled "Warrant for Arrest of Alien," issued by an immigration officer authorized to serve "warrants of arrest for immigration violations." *See* ECF 16-1 at 6. On September 22, 2025, ICE filed the Notice to Appear with the immigration court in Chelmsford, Massachusetts. ECF No. 47 at ¶ 10. Petitioner's first hearing in his removal proceedings was held on October 2, 2025. *Id.*

Petitioner filed an amended petition for Writ of Habeas Corpus and complaint under the Administrative Procedure Act (APA) on September 22, 2025. ECF No. 10. On September 23, 2025, Petitioner filed a preliminary injunction motion seeking to compel a bond hearing before the immigration court. ECF No. 14. The Court granted that motion and ordered that the government provide Petitioner a bond hearing within seven business days or release him. ECF No. 54 at 29. The Court concluded Petitioner was likely to succeed on his statutory argument in support of his habeas claim because, it reasoned, Petitioner's detention was governed by § 1226 and not § 1225(b)(2)(A). ECF No. 54 at 8, 15, 26. The Court determined that ICE had detained Petitioner "on a warrant," *id.* at 15–16, and that he was not "'seeking admission' at the time of arrest," *id.* at

5

18. The immigration court scheduled a bond hearing to take place on October 9, 2025.

On September 25, 2025, Petitioner filed the instant motion, seeking to certify a class consisting of:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:
>
> (a) the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);
>
> (b) for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;
>
> (c) the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c); and
>
> (d) the person is not subject to post-final order detention under 8 U.S.C. § 1231.

Mot. for Class Certification (ECF No. 31); *see also* Mem. in support of Mot. (ECF No. 32) at 2–3. Petitioner also asked the Court to direct Respondents to identify and notify any certified class and to maintain unspecified records, but he has made no argument in support of that request. *See* ECF No. 31 at 2; ECF No. 32 at 17–18.

## IV.    ARGUMENT

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 564 U.S. at 348 (quoting *Califano*, 442 U.S. at 700–01). To fall within this narrow exception, Petitioner must "affirmatively demonstrate"

6

compliance with each element of Rule 23—"that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). This is not just a "mere pleading standard." *Id.* "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Petitioner has shown that each requirement of the Rule has been met, *Wal-Mart*, 564 U.S. at 350–51.

Petitioner must first demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the Petitioner are typical of claims or defenses of the class ("typicality"); and (4) the named Petitioner and counsel will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). Additionally, Petitioner must show that the class qualifies for certification under Rule 23(b)(1), (2), or (3). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Petitioner seeks class certification under Rule 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (cleaned up).

**A.      8 U.S.C. § 1252(e)(1)(B) Bars Class Certification.**

As a threshold matter, Congress has prohibited this Court from certifying the proposed class under Rule 23, because the class claims challenge the implementation of § 1225(b). Specifically, 8 U.S.C. § 1252(e)(1)(B) provides: "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1)(B). The subsequent paragraph in (e)(3) permits limited judicial review only in the District Court for the District of Columbia of "determinations under section 1225(b) of this title and its implementation." 8 U.S.C. § 1252(e)(3) (emphasis added). Paragraph (e)(3) further confines this limited review to (1) whether § 1225(b) or an implementing regulation is constitutional or (2) whether a regulation or other written policy directive, guideline, or procedure implementing the section violates the law. *See* 8 U.S.C. § 1252(e)(3)(A)(i)-(ii); *see also M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021). Here, Petitioner challenges an alleged "misclassification" policy, set forth in writing by both the Department of Justice and DHS, that aliens who entered the United States without inspection are subject to mandatory detention under § 1225(b)(2). *See*, *e.g.*, Am. Pet. ¶ 2–3, 21–24. Petitioner thus seeks judicial review of a written policy or guideline implementing § 1225(b), which is thus covered by § 1252(e)(3)(A)(ii) and subject to § 1252(e)(1)(B)'s class-certification bar.

**B.      The Proposed Class Does Not Meet the Requirements for an Injunctive-Relief Class Under Rule 23(b)(2).**

Even putting aside Congress's express prohibition on class treatment, Petitioner cannot satisfy the requirements of Rule 23(b)(2). That Rule requires that "final injunctive or declaratory

relief must be appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, there are fundamental flaws with either type of relief. Congress has precluded lower courts from entering classwide relief that restrains the government's operation of the relevant detention statutes—which means habeas relief like that obtained by Petitioner is not "appropriate respecting the class as a whole." Declaratory relief is also not appropriate for the class as a whole because declaratory relief is not appropriate in a habeas action, and the claims at issue are core habeas claims challenging the legality of detention. Finally, even if declaratory relief were permitted, it is not adequate for the class and would preclude class members from splitting claims and seeking release through individual habeas petitions.

> 1.    **Section 1252(f)(1) Prohibits Classwide Relief Restraining the Government's Operation of § 1225(b)(2)'s Detention Authority.**

The Court lacks jurisdiction to enjoin or restrain the government's detention under § 1225(b)(2) on a classwide basis. Section 1252(f)(1) states that:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, *no court (other than the Supreme Court)* shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of Part IV [of subchapter II of the INA], *other than with respect to the application of such provisions to an individual alien* against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1) (emphases added). As the Supreme Court explained, § 1252(f)(1)'s reference to "the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them." *Aleman Gonzalez*, 596 U.S. at 550. Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from

taking actions to enforce, implement, or otherwise carry out" the covered statutory provisions. *Id*. The statutes governing pre-removal-order detention of aliens—including both § 1225(b)(2) and § 1226(a)—are covered statutory provisions. Section 1252(f)(1) thus precludes lower courts from issuing an order telling the government how to carry out these detention provisions on a classwide basis.

There is no doubt that § 1252(f)(1)'s remedial bar applies here. The Supreme Court has weighed in on the issue of classwide relief in an almost identical context. In *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for aliens detained under 8 U.S.C. § 1231(a)(6). 596 U.S. at 550. The Court held that "[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by § 1231(a)(6)." *Id.* at 551. Because "[t]hose injunctions thus interfere with the Government's efforts to operate §1231(a)(6)" in its chosen manner, they were barred by § 1252(f)(1). *Id.; see also Brito v. Garland,* 22 F.4th 240, 250 (1st Cir. 2021) ("[W]e regard the district court's injunction to be what it appears to be: a classwide injunction that restrains the operation of section 1226(a) by requiring something that the statute itself does not require. As such, it must be set aside pursuant to section 1252(f)(1).").

*Aleman Gonzalez* mandates the same result here—the Court lacks authority under § 1252(f)(1) to restrain Respondents from detaining putative class members under § 1225(b)(2) or to require Respondents to provide § 1225(b)(2) detainees with a bond hearing. It does not matter

10

whether Petitioner (or the Court) disagrees about the proper detention authority. As the Supreme Court affirmed, § 1252(f)'s remedial bar is not limited to the enumerated provisions "as *properly interpreted*." *Id.* at 552-54. Put another way, even if this Court ultimately finds that Respondents' invocation of § 1225(b)(2) to detain Petitioner and potential class members is erroneous, § 1252(f)(1) bars the Court from enjoining Respondents' operation of § 1225 on a classwide basis. *See Al Otro Lado v. Exec. Off. for Immigr. Review*, 120 F.4th 606, 627 (9th Cir. 2024). The classwide declaratory and vacatur relief sought here would restrain the government's operation of its immigration detention provisions and thus classwide "injunctive relief or corresponding declaratory relief" is improper, precluding a finding that the proposed class satisfies Rule 23(b)(2).

Petitioner will likely argue that § 1252(f)(1) does not apply because he does not seek classwide injunctive relief but instead declaratory relief or vacatur. *See* Am. Pet.*,* Prayer for Relief, ¶¶ 7-8 (requesting relief declaring that all class members are or will be detained under § 1226 entitling them to a bond hearing and setting aside and vacating *Matter of Hurtado*). But this still runs afoul of § 1252(f)(1) because § 1252(f)(1) is not limited to orders labeled injunctions. Instead, it prohibits lower-court orders that "enjoin or *restrain*" the government's operation of the covered provisions. 8 U.S.C. § 1252(f)(1) (emphasis added). The common denominator of those terms is that they involve coercion. *See* Black's Law Dictionary 529 (6th ed. 1990) ("Enjoin" means to "require," "command," or "positively direct" (emphasis omitted)); *id.* at 1314 ("Restrain" means to "limit" or "put compulsion upon" (emphasis omitted)). Together, they indicate that a court may not impose coercive relief that "interfere[s] with the government's efforts to operate" the covered provisions in a particular way. *Aleman Gonzalez*, 596 U.S. at 551.

Though the Supreme Court has not specifically addressed the propriety of classwide declaratory relief or APA vacatur, the Court in *Aleman Gonzalez* specified that lower courts cannot issue classwide orders that "interfere with the Government's efforts to operate" the covered provisions. *Id.* at 551; *see also Biden v. Texas*, 597 U.S. 785, 839 (2022) (Barrett, J., dissenting). Therefore, if the relief sought requires the government to take steps (or to refrain from taking action) in order to implement a declaratory judgment regarding § 1225(b), that relief is barred by § 1252(f)(1). *See Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (holding that while "declaratory relief will not always be the functional equivalent of injunctive relief . . . in this case it is the functional equivalent"). Although the First Circuit held in *Brito* that classwide declaratory relief is permissible under § 1252(f)(1), this cannot be the case where the classwide declaration actually serves to "coerce any party or enjoin any future action." *Brito*, 22 F.4th at 251.

Here, the requested declaratory and APA relief would be impermissibly coercive and violate § 1252(f)(1). Petitioner asks this Court "[de]clare that the Petitioner and all class members are or will be detained, if at all, pursuant to 8 U.S.C. § 1226, and are therefore entitled to a bond hearing upon request," and to "[p]ostpone the effective date of *Matter of Hurtado* pending final resolution of this case under the APA, 5 U.S.C. § 705, and set aside and vacate *Matter of Hurtado* under the APA, 5 U.S.C. § 706(2)." Am. Pet., Prayer for Relief ¶¶ 7-8. But in setting aside the *Hurtado* decision and "declaring" all putative class members subject to detention under § 1226(a), the Court would endeavor to compel Respondents to detain putative class members under § 1226(a) and provide them bond hearings. And this necessarily restrains the Government's operation of § 1225(b)(2) because it stymies the Government's implementation of § 1225(b)(2) to

12

detain putative class members.

**2.    The Relief Petitioner Seeks Will Not Appropriately Address the Alleged Injuries of the Class as a Whole.**

Given § 1252(f)(1)'s limitations on classwide relief, any relief the Court might properly order would fall far short of being appropriate relief to the proposed class as a whole. But challenge to the legality of detention is a core habeas claim, and declaratory relief is not appropriate in such habeas cases. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (declaratory judgment action not appropriate to address "validity of a defense the State may, or may not, raise in a habeas proceeding" in part because "the underlying claim must be adjudicated in a federal habeas proceeding"); *Fusco v. Grondolsky*, No. 17-1062, 2019 WL 13112044, at *1 (1st Cir. June 18, 2019) (declaratory judgment action must be dismissed when habeas available). Petitioner's description of the relief sought highlights this point: the declaratory relief for the class would establish that "class members are or will be detained, if at all, pursuant to 8 U.S.C. § 1226, and are therefore entitled to a bond hearing upon request." Am. Pet., Prayer for Relief ¶ 7; *see also* ECF No. 32 at 2 (asserting that the case will "determine the liberty" of class members). In essence, what Petitioner seeks is an order from the Court declaring that the Government's detention of class members under § 1225(b)(1) is unlawful, which is at the core of habeas. And, such an order, if coercive, would run afoul of § 1252(f)(1)'s bar on classwide restraints on the operation of § 1225(b)(2). Because the Court cannot grant such relief to the class as a whole, Petitioners cannot meet the requirements of Rule 23(b)(2).

Indeed, non-injunctive relief would not resolve the class injuries and would leave the class

13

without recourse. If a class were certified and judgment entered in this matter, the class members would be limited to the relief that can be obtained in that class action, as the doctrine of *res judicata* and the rule against claim-splitting would preclude class members from seeking individualized habeas or injunctive relief. This further demonstrates why certifying a class for purposes of granting declaratory relief is inappropriate and why Rule 23(b)(2) is not met here—indeed, certification could raise due process concerns, given that Rule 23(b)(2) class members are not afforded the opportunity to "opt out" of the litigation. *See Wal-Mart*, 564 U.S. at 362.

Generally, parties are limited to "one bite at the litigation apple," *Ashbourne v. Hansberry*, 894 F.3d 298, 302 (D.C. Cir. 2018), and thus must "assert all causes of action arising from a common set of facts in one lawsuit." *Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir. 2025). Once a lawsuit has been initiated but prior to the issuance of a final judgment, the rule against claim-splitting precludes the same parties from bringing additional causes of action that "rest on the same operative facts and legal theories." *Steele*, 144 F.4th at 326; *see also Salvati v. Fireman's Fund Ins. Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019). *Res judicata*, or claim preclusion, precludes subsequent suit where there has been a final judgment on the merits, and where "the causes of action asserted in the earlier and later suits are sufficiently identical or related" because they "derive from a common nucleus of operative facts," and "the parties in the two suits are sufficiently identical or closely related." *Rafsky v. Smallbizpros, Inc.*, No. 20-cv-11148-TSH, 2024 WL 1178375, at *2 (D. Mass. Mar. 19, 2024) (citations omitted). "[A]ll claims which are part of the same cause of action are extinguished, whether or not actually asserted in the original action." *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1164 (1st Cir. 1991) (internal quotation omitted).

14

Following "a judgment in a properly entertained class action," *res judicata* binds "class members in any subsequent litigation." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). For this reason, multiple courts have declined to issue relief where the plaintiffs are members of a certified 23(b)(2) class addressing the same issues. *See, e.g.*, *Ghamelian v. Baker*, No. 25-cv-02106-SAG, 2025 WL 2049981, at *3 (D. Md. July 22, 2025); *Sanchez v. Bondi*, No. 1:25-cv-02287-CNS, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025).

The declaratory judgment exception to the claim preclusion doctrine does not change the analysis for three reasons. First, it cannot be squared with the requirements of Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief" resolve the claims of the class as a whole. This cannot happen if individual injunctive or habeas actions must follow this Court's classwide resolution. *See* 28 U.S.C. § 2202 (additional relief authorized only when "necessary or proper"). Additional individual relief is not "proper" when a class is certified in order to resolve the claims on a classwide basis.

Second, it cannot be squared with habeas, where the relief is an order of release, 28 U.S.C. § 2241(a), not a declaration of legal rights that can later be enforced. *See Calderon*, 523 U.S. at 747 (1998); *Fusco*, 2019 WL 13112044, at *1; *LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996) ("availability of a habeas remedy in another district ousted us of jurisdiction over an alien's effort to pose a constitutional attack . . by means of a suit for declaratory judgment"); *Monk v. Sec. of Navy*, 793 F.2d 364, 366 (D.C. Cir. 1986) ("In adopting the federal habeas corpus statute, Congress determined that habeas corpus is the appropriate federal remedy for a prisoner who claims that he is 'in custody in violation of the Constitution . . . of the United States,' . . . . This

15

specific determination must override the general terms of the declaratory judgment . . . statute.").

Third, the declaratory judgment exception applies "[w]here a party *only* asks for declaratory relief." *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988); *see* Rest. 2d Judg. § 33(d). Here, Petitioner has also requested habeas relief and classwide vacatur (even if that also runs up against § 1252(f)(1)). And applying this exception in the class context would permit an end-run around § 1252(f)(1)'s bar to classwide injunctive relief by permitting each class member to then obtain further injunctive relief on the basis of that declaratory judgment. *See Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting) ("A class-wide declaratory judgment, followed by individual injunctions from every member of the class is, in every consequence that matters, the same as a class-wide injunction.").

The class relief sought would also not be uniform and applicable to all class members as required by Rule 23(b)(2), for two reasons. First, as detailed further below, *infra* § IV.C.1, there are material differences among class members such that no single declaratory judgment would cover all putative class members. Under Petitioner's interpretation of the INA, the Court would need to make individualized determinations of whether an alien is deemed to be "seeking admission" before it could declare that those class members are not subject to § 1225(b)(2)(A)'s mandatory detention authority or set aside the application of *Matter of Hurtado* as to them.

Second, the Court should decline to resolve Petitioner's claims that Respondents' policy violates his rights under the Due Process Clause via a Rule 23(b)(2) class action. *See* Am. Pet. at 14–16. As the Supreme Court has cautioned, courts should consider "whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve [Petitioners'] Due Process Clause

16

claims. Due process is flexible, we have stressed repeatedly, and it calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314 (cleaned up); *see also Clukey v. Town of Camden*, 717 F.3d 52, 59 (1st Cir. 2013). Because Petitioner's proposed class includes dissimilarly situated individuals, a single declaratory judgment is not appropriate to resolve every class member's due process claims.

### C. Petitioner's Proposed Class Does Not Satisfy Rule 23(a)'s Requirements.

#### 1. Factual Variations Among Putative Class Members' Circumstances Defeat Commonality.

The proposed class also does not satisfy Rule 23(a). First, Commonality is lacking because the members of the proposed class do not all have the same legal standing to challenge the detention policy at issue. Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 350 (citation omitted) (emphasis added). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Falcon*, 457 U.S. at 157). Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The commonality requirement "is easy to misread, since any competently crafted class complaint literally raises common questions." *Id.* at 349, 351 (cleaned up). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (cleaned up).

17

Petitioner posits very broad "common" questions, *see* ECF No. 32 at 12, each of which must be broken down into component questions, none of which can generate common answers capable of driving resolution of the litigation (at least, not under Petitioner's legal theories).

First, Petitioner contends that the proposed class members' statutory and regulatory rights under § 1226(a) are violated, and that this is a question and injury common to the class. ECF No. 32 at 12. But to reach that question—or, put another way, to determine whether the class members suffer the same legal injury—the Court must first determine that the class members are *not* subject to mandatory detention under § 1225(b)(2). As the government has already argued, the plain text of the statute is clear—aliens who are present in the United States without having been admitted are properly subject to detention under § 1225(b)(2)(A).[1] But the Court has rejected this argument, at least preliminarily, and has embraced Petitioner's theories as to why § 1225(b)(2)(A) does not apply. But under those theories, whether a putative class member is in fact properly subject to mandatory detention relies on various factors that differ by case. As a result, the answers to the question of whether the class members' rights are violated (under Petitioner's theories) are different depending on individualized circumstances.

Petitioner first contests whether there has been an "examination" when an alien present

_____

[1] Such aliens are deemed "applicants for admission" who "shall be inspected" and, unless subject to expedited removal, "shall be detained for a [removal] proceeding under section 1229a" if "the examining immigration officer determines" that the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(a)(1), (3), (b)(2)(A). This determination is not subject to any temporal or geographic limits.

without inspection is encountered in the interior of the United States. *See* ECF No. 14 at 9–10. Yet if, as other district courts have held, "not every encounter with an immigration officer necessarily constitutes an examination," *Martinez v. Hyde*, No. 25-cv-11613-BEM, 2025 WL 2084238, at *3 (D. Mass. July 24, 2025), then there are factual divergences among the class as to whether the arresting or inspecting officer conducted an examination that are material to any particular alien's success on his or her claim—particularly if DHS components were to alter their arrest procedures in any way in the future. For example, in the *Martinez* case, the court pointed to a form that purportedly authorized the *Martinez* petitioner's release under § 1226(a), indicating, in that court's view, that the petitioner had not been examined for inadmissibility. *See id.* Similarly, this Court held that, because Petitioner was served with a Form I-200, he was arrested "on a warrant" and thus must be subject to § 1226 detention. ECF No. 54 at 15-16. But the class includes all aliens arrested or detained in Massachusetts, regardless of the nature of their encounter with immigration officers (including whether the arrest was on a warrant or was warrantless and whether there is evidence of examination for admissibility) and regardless of which forms were served on the alien. Thus, under Petitioner's (incorrect) theory of the law, there will be material variations among class member's claims as to whether a determination of inadmissibility has been made by "the examining immigration officer" and thus whether they can be subject to § 1225(b)(2) detention. The Court would have to examine each proposed class member's case to determine whether the class member was arrested "on a warrant" or was subject to examination.

Petitioner also argues that "seeking admission" applies to only those who are in the process of attempting to enter the country. ECF No. 14 at 10. The government respectfully maintains that

19

this is incorrect, and the statute and regulations provide no basis to limit the act of "seeking admission" to the time of physical entry into the United States. *See* ECF No. 46 at 10–17. But even under Petitioner's interpretation of the statute, there is no clear line demarcating when an alien who entered without inspection stops the process of entering the country. *See*, *e.g.*, *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (noting that alien detained 25 yards from the border after an attempted unlawful entry "cannot be said to have effected an entry"). Petitioner's proposed class thus lacks commonality because it includes any aliens who physically entered the United States without being admitted—regardless of how recently they crossed the northern, southern, or coastal borders—so long as they are arrested or detained in Massachusetts. It thus includes aliens who, under the Court's interpretation of the statute, may be considered to be "seeking admission" at the time of inspection, as well as those who are not. As there is no clear demarcation of who is seeking admission, the allegedly common questions cannot generate common answers that will drive the resolution of the litigation as to the class, making class-based resolution improper.

Indeed, Petitioner offers no viable theory as to when an alien would be deemed to no longer be "seeking admission" after a physical, unlawful entry. The Court previously held that Petitioner cannot be viewed "as 'seeking admission'" even though he intends to apply for cancellation of removal in his removal proceedings, ECF No. 54 at 18, despite the fact that, if successful, this would result in an adjustment of Petitioner's status to that of an "alien lawfully *admitted* for permanent residence." 8 U.S.C. § 1229b(b) (emphasis added); *see also Lepe v. Andrews*, No. 1:25-CV-01163, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025) ("'Seeking' means 'asking for' or 'trying to acquire or gain.'"). But even if the Court deems Petitioner not to be "seeking admission"

20

at the time of his arrest despite his desire to obtain status as someone admitted for permanent residence, *see* ECF No. 54 at 18, this would not necessarily be true of other putative class members. Some of those aliens may have, at the time of their arrest, *already* sought a pathway to admission to the United States. Petitioner has no explanation for what efforts to remain in the United States count, and which do not count, as "seeking admission."  Thus, under the Court's view of the phrase "seeking admission," there are differences among class members' circumstances that would affect the applicability of § 1225(b)(2)(A).

Petitioner's due process habeas claims suffer from the same commonality defects as the statute-based claims, because they hinge solely on the assumption that the proposed class are not subject to mandatory detention under § 1225(b)(2)(A). *See* ECF No. 32 at 12, 17. Where Congress has not provided for any bond hearing pending removal, the analysis set forth in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), is inapplicable. Additionally, even assuming Congress had not mandated detention, each proposed class member's liberty interest and due process protections would need to be weighed on a case-by-case basis—taking into account various, individualized factors such as the connection to the United States and projected length of removal proceedings— precluding any classwide due process ruling. *See Jennings*, 583 U.S. at 314 (directing lower court to reconsider class certification because "[d]ue process is flexible, and it calls for such procedural protections as the particular situation demands.") (cleaned up); *Clukey*, 717 F.3d at 59 (due process safeguards required will "vary with the particulars of the case."); *Demore v. Kim,* 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring).

Petitioner's APA claim challenging the Board of Immigration Appeals' decision in *Matter*

*of Yujare Hurtado* suffers from the same barriers to class treatment as his statutory habeas claims. Even assuming that these core habeas claims could proceed under the APA (they cannot, *see* ECF No. 46 at 21 (citing *JGG v. Trump*, 604 U.S. 670, 673 (2025) and 5 U.S.C. § 704)), the *Hurtado* decision cannot be arbitrary and capricious as applied to those who are properly subject to § 1225(b)(2)(A) detention for the reasons stated above. And under Petitioner's interpretation of the statute, the determination of the proper detention authority requires individualized inquiries. Additionally, not all class members' claims challenging this decision are ripe for APA review, because the class definition is not limited to those who have actually had the *Hurtado* decision applied to their request for bond or for a bond hearing. *See* ECF No. 46 at 21. Indeed, Petitioner himself has not had the *Hurtado* decision applied to his case. *See id.*

Even leaving aside these commonality defects that prevent classwide resolution of each of Petitioner's legal claims, Petitioner's proposed class is fatally overbroad and lacks commonality for the additional reason that it is prospective and indeterminate. It includes individuals who may be encountered and arrested by ICE or others in the future but who cannot show any imminent injury from immigration detention. *See* Am. Pet. ¶ 45. A person may sue in federal court—whether as an individual or a class member—only if he has standing, which requires an "injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *cf. Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (requiring that injunctions be no "broader than necessary to provide complete relief to each plaintiff *with standing to sue*" (emphasis added)). The proposed class includes not only those who have already entered the United States and will later be arrested and detained, but also anyone who later enters without inspection and is

22

arrested and detained (other than those processed for expedited removal or otherwise subject to mandatory criminal-alien detention). By definition, aliens who are not currently or imminently subject to immigration detention have suffered no actual or imminent injury. *See United States v. SCRAP*, 412 U.S. 669, 688-89 (1973) (plaintiff must allege "that he has been or will in fact be perceptibly harmed by the challenged agency action," "not that he can imagine circumstances in which he could be affected by agency action"). Therefore, a court may not certify a class that would sweep in such uninjured absent class members. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431 (internal quotation marks omitted). This constitutional impediment is only exacerbated by the fact that absent putative class members who are currently *uninjured*, but *may* be affected in the future, will, as Petitioner argues, likely outnumber known putative class members who have actually been detained under § 1225(b)(2). ECF 32 at 10–11; *cf. In re Nexium Antitrust Litigation*, 777 F.3d 9, 21 (1st Cir. 2015) (class cannot be certified if more than a *de minimis* number of absent class members lack a cognizable injury).

> ### 2. Petitioner's Claim Is Not Typical of the Claims of the Proposed Class Members.

Rule 23 also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The commonality prong tends to merge with the requirement of typicality under Rule 23(a)(3), *see Wal-Mart*, 564 U.S. at 349 n.5, because the central inquiry in assessing whether a proposed class has "typicality" is "whether the class representatives' claims have the same essential characteristics as the claims of the other

members of the class." *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015). Here, under Petitioner's legal theories, Petitioner's claim that his detention should be governed by § 1226(a) is not typical of members of the class who are in different positions than him with respect to the evidence of examination for admissibility, actions they have taken to seek admission, and timing of entry to the United States. *See supra* § IV.C.1.

### 3. Petitioner Is Not an Adequate Representative of the Proposed Class.

The proposed class also fails Rule 23(a)(4)'s adequacy requirement because the putative class representative seeks relief that fundamentally conflicts with the remedies available to the putative class. To certify a class, the representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires a showing that the representative's interests are aligned with those of the class and that he seeks the same form of relief. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625. But here, Petitioner's requested habeas relief—compelling his release or an immediate bond hearing—cannot be granted to the class as a whole under 8 U.S.C. § 1252(f)(1). *See supra* § IV.B.1. That disconnect is fatal.

Petitioner's demand for individualized injunctive relief—his own release or a bond hearing—underscores that he seeks a personal remedy, not one that uniformly applies to all members of the putative class. His interest in obtaining an injunction that this Court cannot lawfully issue to others creates a direct conflict with the class's interests. Because the class cannot

24

possibly obtain the same injunctive relief through this litigation that Petitioner has sought and received, he cannot "possess the same interest and suffer the same injury" as the members he proposes to represent. *East Tex. Motor Freight Sys.*, 431 U.S. at 403 (internal quotation marks omitted). This fundamental misalignment deprives him of adequacy under Rule 23(a)(4) and makes certification improper.[2] Even worse, certifying a class would preclude class members from obtaining individual habeas relief, meaning they could never benefit from a habeas release order and highlighting the conflict between Petitioner and putative class members. *See supra* at 14-15.

### D. Individual Habeas Actions, Not a Class Action, are the Correct Vehicles to Resolve Class Members' Claims.

While Petitioner styles his petition as both a habeas petition and an APA complaint, his claim sounds in habeas corpus—that is, his allegation that he is being held in mandatory detention unlawfully. The Court should be especially hesitant to grant class certification here because habeas petitions are generally unfit for class actions, particularly in circumstances where the court cannot order release for the class.[3] The purpose of class actions is to "create an efficient mechanism for trying claims that share common questions of law or fact when other methods of consolidation are impracticable." *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977). Habeas, however, has been an individualized writ from its inception. The federal habeas statute is designed for individual

---

[2] Respondents do not challenge the adequacy of counsel.

[3] Respondents acknowledge that class actions have been brought pursuant to habeas corpus. However, the Supreme Court "has never held that class relief may be sought in a habeas proceeding." *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1036 (2025) (Alito, J., dissenting). This case is an example of why habeas corpus is an inappropriate vehicle for class actions.

petitioners; it requires that an "[a]pplication for a writ of habeas corpus [] be in writing signed and verified *by the person for whose relief it is intended or by someone acting in his behalf*" and "shall allege the facts concerning the *applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority*, if known." 28 U.S.C. § 2242 (emphasis added). The issuance of the writ is then "directed *to the person having custody of the person detained*" and may require the custodian to "produce at the hearing *the body of the person detained*." *Id.* § 2243 (emphasis added). That is an individualized process and inquiry, not one amenable to classwide resolution.

Petitioner's motion demonstrates this point. Both before and after this case was filed, putative class members have brought separate habeas suits seeking similar, *individualized* habeas relief in this district. *See, e.g.*, ECF No. 32-1 at ¶ 4; ECF No. 53. Even if the Court were to certify the class and provide declaratory relief, declaratory relief would not truly address the class members' alleged injury—unless that declaratory relief restrained the government by requiring it to provide a bond hearing to every member of the class. And that is what § 1252(f)(1) prohibits.

**E.    If the Court Certifies any Class, the Court Should Decline To Direct Identification of Class Members and Notice.**

Petitioner requests in his motion that the Court direct Respondents to identify and provide notice to class members, but he does not identify the basis for his request or provide any argument or explanation in support. For this reason alone, his request should be denied. L.R. 7.1(b)(1) ("A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted."); *Davis v. Brady*, 2007 WL 1106140,

26

at *2 (D. Mass. Apr. 9, 2007) (rejecting request where memorandum failed to cite or discuss controlling law). Further, notice of class certification is not required for a Rule 23(b)(2) class, *see* Fed. R. Civ. P. 23(c)(2)(A); *Wal-Mart*, 564 U.S. at 363, and Petitioner himself argues that individual class members need not be identified for purposes of this class action, *see* ECF No. 32 at 17 n.5. Petitioner does not explain why identification of class members and notice of the existence of class claims would nonetheless be warranted. But even if identifying and notifying class members were warranted, the "general rule" is that "the representative plaintiff should perform" the "particular tasks necessary to send the class notice." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978) (addressing Fed. R. Civ. P. 23(d)); *see also Loef v. First Am. Title Ins. Co.*, 281 F.R.D. 58, 62 (D. Me. 2012) (addressing Fed. R. Civ. P. 23(c)(2)).

## V.    CONCLUSION

The Court should deny Petitioner's Motion for Class Certification. If the Court grants class certification, however, it should decline to order Respondents to identify and provide notice to class members.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST E. FLENTJE
*Special Counsel for Immigration Litigation*

ELIANIS PEREZ
*Assistant Director*

27

NICOLE P. GRANT
*Senior Litigation Counsel*

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation-GLA
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-598-8259
katherine.j.shinners@usdoj.gov

MICHAEL D. ROSS
ANGEL FLEMING
BRIAN SCHAEFFER
LAURIE WIESNER
*Trial Attorneys*

## CERTIFICATE OF SERVICE

I, Katherine J. Shinners, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.


Dated: October 9, 2025
/s/ Katherine J. Shinners
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice