**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                    )
JOSE ARNULFO GUERRERO ORELLANA,     )
on behalf of himself and others     )
similarly situated,                 )
                                    )
          Petitioner-Plaintiff,     )
                                    )
v.                                  )        Civil Action
                                    )        No. 25-cv-12664-PBS
ANTONE MONIZ, Superintendent,       )
Plymouth County Correctional        )
Facility, et al.,                   )
                                    )
          Respondents-Defendants.   )
_____ )
```

**MEMORANDUM AND ORDER**

October 30, 2025

Saris, J.

**INTRODUCTION**

This case concerns the scope of the government's authority to detain noncitizens pending their removal proceedings without the opportunity for release on bond under 8 U.S.C. § 1225(b)(2)(A). In recent months, the government has asserted that all noncitizens who entered the United States without inspection and are later apprehended inside the country must be detained without a bond hearing during their removal proceedings, regardless of how long they have resided in the United States or whether they have a criminal history. Specifically, the government has taken the position that such noncitizens remain "applicants for admission"

and, thus, are subject to mandatory detention throughout their removal proceedings under § 1225(b)(2)(A) rather than discretionary detention under 8 U.S.C. § 1226(a). The Board of Immigration Appeals ("BIA") adopted this interpretation of the statute in a precedential decision issued on September 5, 2025. See Matter of Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Petitioner Jose Arnulfo Guerrero Orellana, the proposed class representative, entered the United States without inspection in 2013. On September 18, 2025, he was detained by U.S. Immigration and Customs Enforcement ("ICE") and placed into removal proceedings. He subsequently filed this petition for writ of habeas corpus and putative class action complaint to challenge his detention without a bond hearing and the government's recent interpretation of the scope of § 1225(b)(2)(A). He argues that his detention without a bond hearing is unlawful for three reasons: 1) the government has misclassified him as subject to mandatory detention under § 1225(b)(2)(A) when he is actually subject to discretionary detention under § 1226(a); 2) his detention violates his constitutional right to due process; and 3) the BIA's decision in Matter of Hurtado is contrary to law and arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

On October 3, 2025, the Court issued a preliminary injunction requiring the government to release Guerrero Orellana unless it

2

provided him with a bond hearing. See Guerrero Orellana v. Moniz, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2809996, at *10]. The Court concluded that Guerrero Orellana was likely to succeed in demonstrating that the government lacked statutory authority to detain him without a bond hearing under § 1225(b)(A)(2). See id. at __ [2025 WL 2809996, at *9]. He has since been released on bond by an immigration judge.

Guerrero Orellana now moves for class certification under Federal Rule of Civil Procedure 23. He seeks to certify a class of noncitizens subject to mandatory detention under the government's recent interpretation of § 1225(b)(2)(A) who are either detained within Massachusetts or subject to the jurisdiction of an immigration court in Massachusetts. The government opposes the motion.

After hearing, the Court **ALLOWS** Guerrero Orellana's motion for class certification (Dkt. 31).

**BACKGROUND**

## I.    **Statutory Framework**

As the Court has previously explained, "[t]he crux of this case is a question of statutory interpretation involving the interplay between 8 U.S.C. §§ 1225 and 1226." Id. at __ [2025 WL 2809996, at *2]. The former provision establishes procedures for inspection of an "applicant for admission," that is, a noncitizen "present in the United States who has not been admitted or who

arrives in the United States." 8 U.S.C. § 1225(a)(1). After inspection by an immigration officer, certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum. See id. § 1225(b)(1)(A)(i); see also Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108-11 (2020) (describing expedited removal). Otherwise, § 1225(b)(2)(a) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings. 8 U.S.C. § 1225(b)(2)(A). A noncitizen detained under this provision may be paroled "for urgent humanitarian reasons or significant public benefit." Id. § 1182(d)(5)(A); see Jennings v. Rodriguez, 583 U.S. 281, 300 (2018). In all other cases where § 1225(b)(2)(A) applies, the provision "mandate[s] detention of applicants for admission until [removal] proceedings have concluded." Jennings, 583 U.S. at 297.

Section 1226 permits the government "to detain certain aliens already in the country pending the outcome of removal proceedings." Id. at 289. Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The government then "may continue to detain the

4

arrested" noncitizen during removal proceedings or "may release" the noncitizen on bond or conditional parole. <u>Id.</u> § 1226(a)(1)-(2). A noncitizen whom the government decides to detain under this discretionary provision may seek review of that decision via a bond (<u>i.e.</u>, custody redetermination) hearing before an immigration judge. <u>See</u> 8 C.F.R. § 236.1(d)(1); <u>Johnson v. Guzman Chavez</u>, 594 U.S. 523, 527 (2021); <u>Hernandez-Lara v. Lyons</u>, 10 F.4th 19, 26 (1st Cir. 2021). At that hearing, the immigration judge must release the noncitizen unless the government establishes either "by clear and convincing evidence that [he] poses a danger to the community" or "by a preponderance of the evidence that [he] poses a flight risk." <u>Hernandez-Lara</u>, 10 F.4th at 41.

Section 1226(c), however, "'carves out a statutory category of aliens who may <u>not</u> be released' during removal proceedings, outside of certain limited circumstances." <u>Reid v. Donelan</u>, 17 F.4th 1, 4 (1st Cir. 2021) (quoting <u>Jennings</u>, 583 U.S. at 289); <u>see</u> 8 U.S.C. § 1226(a) (authorizing discretionary detention "[e]xcept as provided in subsection (c)"). This mandatory detention provision applies to noncitizens who are inadmissible or deportable on certain criminal or terrorist grounds. <u>See</u> <u>Johnson</u>, 594 U.S. at 527 n.2; <u>Reid</u>, 17 F.4th at 4.

## II.  **Factual Background**

The following facts are undisputed. Guerrero Orellana, a citizen of El Salvador, entered the United States without

inspection in June 2013. He lives in Massachusetts with his wife and their one-year-old U.S. citizen daughter. He has no criminal record and has worked to support himself and his family, most recently as a landscaper.

On September 18, 2025, Guerrero Orellana was taken into ICE custody during a traffic stop. Shortly after his arrest, the U.S. Department of Homeland Security ("DHS") served Guerrero Orellana with a Form I-200 arrest warrant. DHS also served Guerrero Orellana with a notice to appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole and under 8 U.S.C. § 1182(a)(7)(A)(i) for lacking valid entry documents. Guerrero Orellana intends to apply for cancellation of removal during his removal proceedings.

Guerrero Orellana was detained following his arrest at the Plymouth County Correctional Facility in Massachusetts. The government asserted that it had been detaining Guerrero Orellana as an "applicant for admission" under § 1225(b)(2)(A). Based on the government's position, Guerrero Orellana was subject to mandatory detention and ineligible for a bond hearing before an immigration judge under the BIA's decision in Matter of Hurtado.

## III. Procedural History

On September 18, 2025, Guerrero Orellana filed a habeas petition under 28 U.S.C. § 2241 to challenge the legality of his ongoing detention without a bond hearing. He subsequently filed an

amended complaint and habeas petition asserting both individual and class claims.

On October 3, 2025, the Court issued a preliminary injunction requiring the government to release Guerrero Orellana unless he was provided with a bond hearing before an immigration judge within seven business days. See Guerrero Orellana, __ F. Supp. 3d at __ [2025 WL 2809996, at *10]. The Court rejected the government's position that any noncitizen who entered the United States without inspection is subject to mandatory detention pending removal proceedings under § 1225(b)(2)(A). See id. at __ [2025 WL 2809996, at *4-9]. The Court concluded that the government's authority to detain Guerrero Orellana rested instead on § 1226(a) and, thus, that Guerrero Orellana had a right to a bond hearing in immigration court. See id. at __ [2025 WL 2809996, at *9]. On October 9, 2025, an immigration judge held a hearing and ordered Guerrero Orellana released on bond. Guerrero Orellana posted bond the following day and was released from custody.

In parallel with briefing on his motion for a preliminary injunction, Guerrero Orellana also moved for class certification under Rule 23. Guerrero Orellana seeks to certify the following class:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the

jurisdiction of an Immigration Court located in Massachusetts, where:

    (a)    the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);

    (b)    for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;

    (c)    the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c); and

    (d)    the person is not subject to post-final order detention under 8 U.S.C. § 1231.

Dkt. 31 at 1. In a supplemental filing, Guerrero Orellana proposed the addition of the following exclusion from the class definition: "(e) the person is not a person whose most recent arrest occurred at the physical border while they were arriving in the United States and has been continuously detained thereafter." Dkt. 78 at 2.

## LEGAL STANDARD

A class may be certified pursuant to Rule 23 only if the plaintiff shows that the following four prerequisites are met:

    (1)    the class is so numerous that joinder of all members is impracticable;

> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). The plaintiff must also establish that the class satisfies one of the prongs of Rule 23(b). See Comcast Corp., 569 U.S. at 33; Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). Here, Guerrero Orellana seeks certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[1] Fed. R. Civ. P. 23(b)(2).

These requirements for class certification are not "a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Rather, a plaintiff "seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23" via "evidentiary proof." Comcast Corp., 569 U.S. at 33 (quoting Wal-Mart, 564 U.S. at 350). This analysis may "entail 'overlap with

---

[1] For at least certain types of class actions, the First Circuit requires that the class members be "ascertainable" from the class definition. In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015); see Orr v. Trump, 786 F. Supp. 3d 397, 413 (D. Mass. 2025). The government does not argue that the proposed class cannot be certified because its membership is not ascertainable.

the merits of the plaintiff's underlying claim.'" <u>Id.</u> at 33-34 (quoting <u>Wal-Mart</u>, 564 U.S. at 351); <u>see</u> <u>Amgen Inc. v. Conn. Ret.</u> <u>Plans & Tr. Funds</u>, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied.'" <u>Comcast</u> <u>Corp.</u>, 569 U.S. at 33 (quoting <u>Wal-Mart</u>, 564 U.S. at 350-51).

## DISCUSSION

Guerrero Orellana seeks to certify the proposed class for all three of his claims. For the reasons discussed below, certification is warranted with respect to the claim that the government lacks statutory authority to subject noncitizens who entered the United States without inspection and are detained while residing inside the country to mandatory detention under § 1225(b)(2)(A). The Court will address whether the class should be certified with regard to Guerrero Orellana's due process and APA claims at a later stage should it become necessary to do so to resolve this case.

## I.    Threshold Issues Regarding Class Certification

### A.    Mootness

The Court begins with a brief comment regarding the effect of Guerrero Orellana's release on bond on the permissibility of class certification. Although the government does not argue that

Guerrero Orellana's release poses an obstacle to class certification, the Court has an independent duty to consider the issue insofar as it implicates mootness. See Brito v. Garland, 22 F.4th 240, 247 (1st Cir. 2021).

A class action "ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." Id. (quoting Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)). But Guerrero Orellana's individual claim is not fully resolved at this stage: his release resulted from the issuance of only preliminary relief, and he "face[s] the threat of re-arrest and mandatory detention" should the Court eventually decline to issue permanent relief. Nielsen v. Preap, 586 U.S. 392, 403 (2019) (plurality opinion). And even if Guerrero Orellana's individual claim were moot, class certification would still be proper under the "inherently transitory" exception to the mootness doctrine, Brito, 22 F.4th at 247 (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 76 (2013)), which courts regularly apply to claims concerning immigration detention during removal proceedings, see Preap, 586 U.S. at 403-04 (plurality opinion); Brito, 22 F.4th at 247.

### B.   8 U.S.C. § 1252(e)(1)(B)

The government raises a threshold argument that 8 U.S.C. § 1252(e)(1)(B) bars the Court from certifying a class in this

case. That provision states that "[w]ithout regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1)(B). 8 U.S.C. § 1252(e)(3)(A), in turn, provides that "[j]udicial review of determinations under section 1225(b) of [Title 8] and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of" the constitutionality or lawfulness of the statutory section, implementing regulations, or written policies or procedures. Id. § 1252(e)(3)(A).[2] The government contends that because Guerrero Orellana is seeking judicial review of a policy implementing § 1225(b)(2)(A), a provision within § 1225(b) that provides for

---

[2] Any systemic challenge brought in the District of Columbia under this statutory subsection "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." 8 U.S.C. § 1252(e)(3)(B). At the class certification hearing, the government stated that "it might be too late" to bring such an action, Dkt. 76 at 26, presumably because DHS issued an internal memorandum in July 2025 that deemed § 1225 to govern the detention of all "applicants for admission." See Romero v. Hyde, __ F. Supp. 3d __, __ & n.19 (D. Mass. 2025) [2025 WL 2403827, at *7 & n.19]. The Court takes no position on this timeliness question but notes that this avenue for judicial review of the government's interpretation of § 1225(b)(2)(A) may be a dead end.

mandatory detention, § 1252(e)(1)(B) prohibits class certification in this case.

Guerrero Orellana responds that the entirety of § 1252(e), including the judicial review provision in § 1252(e)(3)(A), applies only to claims about expedited removal under § 1225(b)(1) and not to claims regarding § 1225(b)(2). While the government emphasizes that § 1252(e)(3)(A) refers to "section 1225(b)" generally, id., Guerrero Orellana points out that § 1252(e) is titled "Judicial review of orders under section 1225(b)(1)," id. § 1252(e) (emphasis added), and that the other provisions within § 1225(e) all specifically refer to "section 1225(b)(1)," id. § 1252(e)(1)(A), (2), (4)(A), (5). He also cites a House of Representatives report stating that § 1252(e)(3) "provides for limited judicial review of the validity of procedures under section 235(b)(1) [i.e., § 1225(b)(1)]." H.R. Rep. No. 104-828, at 220 (1996) (Conf. Rep.).

Although Guerrero Orellana has a strong argument that § 1252(e)(3)(A) only applies to claims about expedited removal, the government raises a strong countervailing point based on the provision's plain language. The Court need not resolve this complicated dispute over statutory construction. In the Court's view, § 1252(e)(3)(A) does not limit judicial review of Guerrero Orellana's claim that the government is unlawfully subjecting him and the other class members to mandatory detention under

§ 1225(b)(2)(A) because the mandatory detention provision does not apply at all. In allowing Guerrero Orellana's preliminary injunction motion, the Court rejected the government's argument that § 1225(b)(2)(A) authorized it to detain Guerrero Orellana without a bond hearing and concluded that Guerrero Orellana's detention was instead governed by the discretionary authority in § 1226(a). See Guerrero Orellana, __ F. Supp. 3d at __ [2025 WL 2809996, at *9]. Because § 1225(b)(2)(A) does not govern the detention of individuals in Guerrero Orellana's position in the first place, he is not seeking judicial review of the "implementation" of § 1225(b).

The government asserts that this rationale is contrary to the Supreme Court's decision in Garland v. Aleman Gonzalez, 596 U.S. 543 (2022). This Court disagrees. In Aleman Gonzalez, the Supreme Court addressed the scope of 8 U.S.C. § 1252(f)(1), which strips district courts of jurisdiction "to enjoin or restrain the operation of" certain statutory sections in the Immigration and Nationality Act ("INA") on a class-wide basis. 8 U.S.C. § 1252(f)(1). The Supreme Court rejected the argument "that 'the operation' of the covered immigration provisions means the operation of those provisions 'as properly interpreted' and that what § 1252(f)(1) bars are class-wide injunctions that prohibit the Government from doing what the statute allows or commands." Aleman Gonzalez, 596 at 552-54. Put differently, the Supreme Court

14

held that § 1252(f)(1) applies to injunctions barring the government from acting contrary to its statutory authority. See id. In Aleman Gonzalez, however, there was no question that the government had authority to detain the plaintiffs under the statutory provision at issue, 8 U.S.C. § 1231(a); instead, the dispute concerned how the government was enforcing that provision, namely, whether the statute required the government to give bond hearings to the plaintiffs after six months of detention. See id. at 547. Here, by contrast, Guerrero Orellana correctly asserts that § 1225(b) does not apply to individuals in his position at all.

### C.  Class Certification in Habeas Proceedings

The government next contends that Guerrero Orellana's claim at core seeks a writ of habeas corpus and that habeas claims are not suitable to resolution on a class-wide basis. Guerrero Orellana does not dispute that his claim sounds in habeas corpus.

The Supreme Court has left open the question of whether Rule 23 "is applicable to petitions for habeas corpus relief," Schall v. Martin, 467 U.S. 253, 261 n.10 (1984), and two justices in a dissenting opinion recently expressed doubt that habeas claims may be resolved in a class action, see A.A.R.P. v. Trump, 605 U.S. 91, 107-09 (2025) (Alito, J., dissenting). Nonetheless, the broad consensus among the circuit courts is that representative actions akin to a class action may be brought in habeas corpus proceedings.

15

See <u>Betschart v. Oregon</u>, 103 F.4th 607, 615 (9th Cir. 2024);
<u>LoBue v. Christopher</u>, 82 F.3d 1081, 1085 (D.C. Cir. 1996); <u>United
States ex rel. Morgan v. Sielaff</u>, 546 F.2d 218, 220 (7th Cir.
1976); <u>Napier v. Gertrude</u>, 542 F.2d 825, 827 n.2 (10th Cir. 1976);
<u>Bonner v. Cir. Ct.</u>, 526 F.2d 1331, 1335 n.4 (8th Cir. 1975); <u>United
States ex rel. Sero v. Preiser</u>, 506 F.2d 1115, 1125-27 (2d Cir.
1974); <u>cf.</u> <u>Hamama v. Adducci</u>, 912 F.3d 869, 879 (6th Cir. 2018)
("[T]here is nothing barring a class from seeking a traditional
writ of habeas corpus . . . ."). While some circuits have noted
that these representative habeas actions are not technically Rule
23 class actions, those courts use the same factors applicable
under Rule 23 to evaluate whether to permit a representative habeas
action to proceed. <u>See</u> <u>Morgan</u>, 546 F.2d at 221 & n.5; <u>Napier</u>, 542
F.2d at 827 n.2; <u>Sero</u>, 506 F.2d at 1125-27, 1127 n.9.

Based on this uniform circuit precedent, the Court concludes
that habeas claims are suitable for class treatment if the
standards of Rule 23 are met.

### D.  Future Class Members

In its final threshold argument, the government asserts that
the Court cannot certify the proposed class because it encompasses
future members, <u>i.e.</u>, noncitizens who will be arrested and detained
in the future. In the government's view, these future class members
lack an actual or imminent injury sufficient to support Article
III standing. <u>See</u> <u>Castro v. Scanlan</u>, 86 F.4th 947, 951 (1st Cir.

16

2023) (explaining that Article III standing requires, inter alia, an "injury in fact" that is "both concrete and particularized and actual or imminent, not conjectural or hypothetical" (quoting Efreom v. McKee, 46 F.4th 9, 21 (1st Cir. 2022))).

This argument is unavailing. For one, courts do not "require[] every class member to demonstrate standing when a class is certified." In re Asacol Antitrust Litig., 907 F.3d 42, 58 (1st Cir. 2018). The analysis focuses instead on whether a named plaintiff has standing. See Brito, 22 F.4th at 252; see also William B. Rubenstein, Newberg and Rubenstein on Class Actions § 2:3 (6th ed. 2025) [hereinafter "Newberg on Class Actions"] ("[I]n cases seeking injunctive or other equitable relief[,] it is well settled that . . . the standing inquiry focuses solely on the named plaintiff or proposed class representative."). For another, "the inclusion of future class members in a class is not itself unusual or objectionable, because when the future persons referenced become members of the class, their claims will necessarily be ripe." Betschart, 103 F.4th at 616 n.7 (cleaned up); see O.A. v. Trump, 404 F. Supp. 3d 109, 160 (D.D.C. 2019) (deeming it not "unusual or improper for a Rule 23(b)(2) class to include future members"). The future members of the class will suffer an actual injury when they are detained and join the class. The existence of future class members poses no obstacle to certification. See CASA, Inc. v. Trump, __ F. Supp. 3d __, __ (D.

Md. 2025) [2025 WL 2263001, at *14-15] (rejecting comparable argument about future class members).

### E.  Class Definition

Before addressing the class certification requirements under Rule 23(a), the Court comments on the proposed class definition. Guerrero Orellana stresses that his proposed "class is <u>not</u> intended to include people whose most recent arrest occurred at the physical border while arriving in the United States and were continuously detained thereafter." Dkt. 78 at 1-2. His proposed class definition, however, does not expressly exclude all such individuals. The Court therefore adds the following exclusion to the class definition as suggested by Guerrero Orellana: "(e) the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter."[3]

The government argues that two phrases in this addition to the class definition -- "at the border" and "while they were arriving" -- are imprecise. The latter phrase clearly refers to individuals coming to the United States from outside the country. With respect to the former phrase, the government contends that "there is no clear line demarcating when an alien who entered

---

[3] Guerrero Orellana's proposed exclusion employs the phrase "physical border." The Court uses the term "border" instead because Guerrero Orellana has not explained the distinction between a "physical" and non-"physical" border.

without inspection stops the process of entering the country." Dkt. 64 at 28. In Thuraissigiam, the Supreme Court addressed the rights of noncitizens "apprehended at or near the border." 591 U.S. at 106; see id. at 107 (holding that a noncitizen "apprehended just 25 yards from the border . . . has no entitlement to procedural rights other than those afforded by statute"). The phrase "at the border" plainly covers anyone at or near the border. The Court need not determine how many feet from the border the noncitizen must be when he is detained. The parties may propose a more specific definition at a later stage in the case, at which point the Court may modify the class definition. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Brown v. Colegio de Abogados de P.R., 613 F.3d 44, 50 (1st Cir. 2010) ("Courts may alter [class] certification orders prior to final judgment . . . .").

## II. **Rule 23(a) Requirements**

Having resolved the government's threshold arguments against class certification, the Court turns to the requirements under Rule 23(a). The government does not contest Guerrero Orellana's contention that the proposed class satisfies numerosity,[4] but it

---

[4] A class that exceeds forty members is generally considered sufficiently numerous, see García-Rubiera v. Calderón, 570 F.3d 443, 460 (1st Cir. 2009), and a court assessing numerosity "may draw reasonable inferences from the facts presented," McCuin v.

does challenge the commonality, typicality, and adequacy requirements. The Court addresses these three requirements in turn.

### A. Commonality

The commonality element requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element may be satisfied via the existence of only one common question. See Wal-Mart, 564 U.S. at 359. "A question is common if it is 'capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Parent/Pro. Advoc. League v. City of Springfield, 934 F.3d 13, 28 (1st Cir. 2019) (quoting Wal-Mart, 564 U.S. at 350).

---

Sec'y of Health & Hum. Servs., 817 F.2d 161, 167 (1st Cir. 1987). In fiscal year 2024, DHS charged over 33,000 noncitizens in Massachusetts immigration courts as removable on the basis that they entered the country without inspection. Many of these individuals would be members of the proposed class. Additionally, during a period of less than two weeks between September 30 and October 10, 2025, judges in this district granted habeas relief to almost forty noncitizens based on the same argument that Guerrero Orellana has raised regarding the scope of § 1225(b)(2)(A). The Court readily infers from these facts that the class contains at least forty members. And joinder of all class members would be impracticable because the specific composition of the class is in constant flux as the government makes additional arrests and class members' removal proceedings conclude. See A.B. v. Haw. State Dep't of Educ., 30 F.4th 828, 838 (9th Cir. 2022) ("[W]hen . . . a class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable."); J.D. v. Azar, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (similar).

Thus, "what really matters to class certification is not the raising of common questions as much as the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation." <u>Id.</u> (cleaned up). Such "common answers typically come in the form of a particular and sufficiently well-defined set of allegedly illegal policies or practices that work similar harm on the class plaintiffs." <u>Id.</u> (cleaned up). At core, commonality asks whether "the class members 'have suffered the same injury.'" <u>Wal-Mart</u>, 564 U.S. at 350 (quoting <u>Gen. Tel. Co. of the Sw. v. Falcon</u>, 457 U.S. 147, 157 (1982)).

The proposed class shares a common question capable of class-wide resolution because its members are all detained without a bond hearing pursuant to the same allegedly unlawful government policy. The government has determined that all noncitizens who qualify as "applicants for admission" are subject to mandatory detention during their removal proceedings under § 1225(b)(2)(A) rather than discretionary detention under § 1226(a). The term "applicant for admission" includes any noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). The members of the proposed class of immigration detainees are all "applicants for admission" because one criterion for membership in the class is that "for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States." Dkt. 31 at 1. The proposed class

also excludes "applicants for admission" who are not injured by the government's policy regarding the scope of § 1225(b)(2)(A) and § 1226(a) because their detention is governed by a different statutory provision (_i.e._, noncitizens ordered removed under § 1231, paroled into the country on humanitarian grounds under § 1182(d)(5)(A), subject to expedited removal proceedings under § 1225(b)(1), or subject to mandatory detention based on their criminal histories under § 1226(c)). Finally, as noted above, the Court modifies the proposed class definition to exclude noncitizens who have been continually detained since being arrested at the border, a set of individuals whom Guerrero Orellana does not dispute may lawfully be detained without a bond hearing under § 1225(b)(2)(A).

Accordingly, the proposed class presents the following common question of law: does § 1225(b)(2)(A) authorize mandatory detention without a bond hearing during removal proceedings for noncitizens who entered the United States without inspection, were arrested while residing inside the country, and who are not subject to the expedited removal process under § 1225(b)(1), parole revocation under § 1182(d)(5)(A), or mandatory detention under § 1226(c)? This "question satisfie[s] the requirements of Rule 23(a)(2) because its adjudication would 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" Reid, 17 F.4th at 10 (quoting Reid v. Donelan, No. 13-cv-30125,

2018 WL 5269992, at *5 (D. Mass. Oct. 23, 2018)). That is, "if the answer" to this common question is "'yes,' each individual would get a [bond] hearing automatically" under § 1226(a), "while a 'no' would leave each person as before." Id.

The government asserts that the proposed class lacks commonality because the Court would have to answer individualized questions to determine whether each class member is properly subject to mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a). As noted, the former provision states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings, 8 U.S.C. § 1225(b)(2)(A), while § 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," id. § 1226(a). The government argues that determining which of these two statutory provisions applies to a given class member would require an individualized determination of 1) whether the person was arrested on a warrant and, if so, what language was on the warrant; 2) whether the person was subject to an "examination" by an immigration officer; and 3) whether the person is "seeking admission."

This effort to defeat commonality is not persuasive. As an initial matter, the Court notes that it has already determined that at least "the existence of a warrant or the warrant's language" does not govern the analysis of whether a noncitizen is detained under § 1225(b)(2)(A) or § 1226(a). <u>Guerrero Orellana</u>, __ F. Supp. 3d at __ [2025 WL 2809996, at *6]. In any event, under the interpretation of § 1225(b)(2)(A) advanced by Guerrero Orellana, the factual differences identified by the government have no bearing on whether § 1225(b)(2)(A) authorizes detention without a bond hearing for the class members. That is because, in Guerrero Orellana's view, § 1225(b)(2)(A) "is all about border processing, and a person arrested inside the United States after entry -- whether lawful or unlawful -- is neither undergoing an 'examination' nor 'seeking admission' at the border." Dkt. 72 at 11. Addressing whether this interpretation of the statutory provision is correct is a common legal question that binds the class together, as an affirmative answer would mean that all class members cannot lawfully be detained under § 1225(b)(2)(A) and, thus, are entitled to bond hearings under § 1226(a).

## B.    Typicality

The typicality requirement calls upon the plaintiff to show that his claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is met when the plaintiff's "claims 'arise[] from the same event or

practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory.'" García-Rubiera v. Calderón, 570 F.3d 443, 460 (1st Cir. 2009) (alterations in original) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996)). The typicality element "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." Bowers v. Russell, 766 F. Supp. 3d 136, 148 (D. Mass. 2025) (quoting In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 78 (D. Mass. 2005)).

For substantially the same reasons discussed in the context of commonality, Guerrero Orellana's proposed class meets the typicality requirement. See Wal-Mart, 564 U.S. at 349 n.5 ("The commonality and typicality requirements of Rule 23(a) tend to merge." (quoting Falcon, 457 U.S. at 157 n.13)). The claims of Guerrero Orellana and the absent class members arise from the same governmental policy subjecting certain noncitizens to mandatory detention without a bond hearing during their removal proceedings. Guerrero Orellana presses the same statutory claim on behalf of himself and the class as a whole. By pressing this claim, Guerrero Orellana is advancing both his own interests and those of the absent class members.

As with commonality, the government argues that typicality is defeated because of factual differences among the class as to whether each member was issued an arrest warrant, was subject to an "examination," and is "seeking admission." This argument fares no better with regard to typicality. Again, Guerrero Orellana's claim posits that such factual differences are immaterial to the applicability of § 1225(b)(2)(a), so his individual claim is identical to those of the rest of the class.

### C.    Adequacy

The adequacy prong demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry is two-fold: 1) "the interests of the representative party" must "not conflict with the interests of any of the class members" and 2) "counsel chosen by the representative party" must be "qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). The government does not contest the adequacy of proposed class counsel, who have extensive experience in complex civil litigation, immigration law, and class actions.

The government does argue that Guerrero Orellana is not an adequate class representative because he seeks a form of individual relief -- an injunction requiring the government to provide him with a bond hearing -- that 8 U.S.C. § 1252(f)(1) prohibits the

26

Court from awarding on a class-wide basis. Section 1252(f)(1) provides as follows:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221-1232], . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such [sections] have been initiated.

8 U.S.C. § 1252(f)(1). This provision "generally prohibits lower courts from entering [class-wide] injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." Aleman Gonzalez, 596 U.S. at 550. Guerrero Orellana does not dispute that § 1252(f)(1) bars the Court from issuing a class-wide version of the injunction he received on an individual basis, i.e., an injunction requiring the government to provide bond hearings to all class members.

"[W]hen a class includes members whose claims are for a different type of relief than the claims of the putative class representatives, it is possible that the differences create a conflict of interest disabling the representative from adequately representing the entire class." Newberg on Class Actions § 3:59; see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 827 F.3d 223, 233 (2d Cir. 2016) (finding conflict between class members "pursuing solely monetary relief" and those "seeking

only injunctive relief"). Rule 23(a)(4) does not, however, mandate "perfect symmetry of interest among the class," and only conflicts among class members that "are fundamental to the suit and go to the heart of the litigation" fall afoul of the adequacy requirement. Cohen v. Brown Univ., 16 F.4th 935, 945-46 (1st Cir. 2021) (cleaned up). A court must ask whether the conflict is "so substantial as to overbalance the common interests of the class members as a whole." Murray v. Grocery Delivery E-Servs. USA Inc., 55 F.4th 340, 346 (1st Cir. 2022) (quoting Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012)). Put differently, "intra-class conflict is unacceptable when it presents an actual and substantial risk of skewing available relief in favor of some subset of class members." Cohen, 16 F.4th at 950.

The fact that § 1252(f)(1) bars class-wide injunctive relief does not create a fundamental conflict between Guerrero Orellana and the absent class members. Guerrero Orellana and the absent class members all have suffered or will suffer the same injury from the government's uniform policy imposing mandatory detention without a bond hearing on them during their removal proceedings. And Guerrero Orellana seeks a class-wide declaratory judgment that this policy violates the INA, a remedy that, as discussed in more depth below, is permitted by § 1252(f)(1). See infra Section III. There is no risk that Guerrero Orellana's ability to seek injunctive relief on an individual basis will conflict with the

28

class's interest in securing a declaratory judgment. The difference in the form of equitable relief that the Court can issue for Guerrero Orellana individually and for the class as a whole does not outweigh the common interest among the entire class in challenging the government's uniform policy.

### III. Rule 23(b)(2)

The Court next addresses whether the proposed class satisfies Rule 23(b)(2). This provision permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The crux of this requirement is "the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Wal-Mart, 564 U.S. at 360 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). It follows that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Id.

Guerrero Orellana's proposed class satisfies Rule 23(b)(2). The government has adopted a uniform interpretation of § 1225(b)(2)(A) that imposes detention without a bond hearing

during removal proceedings on all noncitizens who entered the United States without inspection, are apprehended while residing inside the country, and are not subject to parole revocation under § 1182(d)(5)(A) or mandatory detention under § 1225(b)(1) or § 1226(c). This policy prevents all members of the proposed class from seeking release from detention from an immigration judge at a bond hearing. Guerrero Orellana asks for a class-wide declaratory judgment that the government's imposition of mandatory detention under § 1225(b)(2)(A) on this category of noncitizens is unlawful and that those noncitizens are entitled to bond hearings in immigration court. This "single . . . declaratory judgment would provide relief to each member of the class." Wal-Mart, 564 U.S. at 360.

The government raises a slew of counterarguments to this straightforward conclusion. First, the government asserts that 8 U.S.C. § 1252(f)(1) bars the class-wide declaratory relief that Guerrero Orellana seeks because that relief would "restrain" the operation of § 1225(b)(2)(A). As noted, § 1252(f)(1) provides as follows:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221-1232], . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such [sections] have been initiated.

8 U.S.C. § 1252(f)(1). Although the Supreme Court has held that § 1252(f)(1) prohibits certain class-wide injunctions, it has not addressed whether the provision also bars a district court from issuing declaratory relief in connection with a class claim concerning the operation of one of the covered statutory sections. See Aleman Gonzalez, 596 U.S. at 550, 551 n.2. The First Circuit, however, has resolved this question, holding that § 1252(f)(1) does not prohibit such class-wide declaratory relief. See Brito, 22 F.4th at 252. The government disputes this interpretation of the statute, but this Court is bound by (and agrees with) the First Circuit's holding. See Eulitt ex rel. Eulitt v. Me., Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."), abrogated on other grounds by, Carson ex rel. O.C. v. Makin, 596 U.S. 767 (2022).[5]

Second, the government contends that declaratory relief is not a permissible remedy in habeas proceedings. Insofar as the

---

[5] Guerrero Orellana argues that § 1252(f)(1) also does not bar courts from vacating agency action under the APA or issuing class-wide habeas relief. Because the permissibility of class-wide declaratory relief is sufficient to certify the class under Rule 23(b)(2), the Court need not address at this stage whether § 1252(f)(1) permits these other remedies or whether these remedies are appropriate in this case.

government argues that the only remedy available in a habeas case is an order of release, it is wrong. See Trump v. J.G.G., 604 U.S. 670, 672 (2025) (per curiam) ("[I]mmediate physical release is not the only remedy under the federal writ of habeas corpus." (cleaned up)); Boumediene v. Bush, 553 U.S. 723, 779 (2008) (explaining that in a habeas proceeding "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted"). And the cases the government cites in its brief establish only narrower limitations on the use of declaratory judgment actions as substitutes for habeas proceedings. See Calderon v. Ashmus, 523 U.S. 740, 746-49 (1998) (holding that a prisoner cannot use a declaratory judgment action to adjudicate an affirmative defense that could arise in a habeas proceeding challenging his conviction); Fusco v. Grondolsky, No. 17-1062, 2019 WL 13112044, at *1 (1st Cir. June 18, 2019) (rejecting a federal prisoner's attempt to challenge his conviction or sentence via a declaratory judgment action); LoBue, 82 F.3d at 1082 (holding that a petitioner cannot use a declaratory judgment action to secure judicial review of his detention in a district other than where he is detained); Monk v. Sec'y of Navy, 793 F.2d 364, 366, 368 (D.C. Cir. 1986) (declining to allow an individual convicted via court-martial to challenge his conviction via a declaratory judgment action rather than a habeas petition). None of these cases hold that a court cannot award a declaratory judgment in a properly

filed habeas proceeding. Indeed, the First Circuit has affirmed a portion of a class-wide declaratory judgment in a similar lawsuit challenging the government's immigration detention policies. See Brito, 22 F.4th at 256-57.

Third, the government contends that certification of a class is impermissible because, after receiving a class-wide declaratory judgment, each class member would have to file an individual habeas petition to secure an order requiring the government to provide a bond hearing in his or her specific case. The government's contention appears to be that this prospect of future individual habeas petitions means that the class does not satisfy Rule 23(b)(2)'s requirement that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). But it provides no support for the notion that a Rule 23(b)(2) class action is improper under such circumstances. A final declaratory judgment establishing a right to a bond hearing would be appropriate on a class-wide basis, and each class member could then secure a coercive remedy enforcing that right in an individual action. Rule 23(b)(2) squarely permits this procedure. See Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (explaining that "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief" (emphasis added)).

Fourth, the government argues that a declaratory judgment would not provide effective relief to the class members because principles of res judicata would bar them from pursuing individual habeas petitions after this case concludes. The premise of this argument -- that class members would not be able to seek individual relief if the Court issues a declaratory judgment -- is incorrect. The Declaratory Judgment Act specifically provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202; see Unión de Empleados de Muelles de P.R., Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO, 884 F.3d 48, 59 (1st Cir. 2018) (explaining that this provision allows courts to issue additional relief "pursuant to the [declaratory] judgment, even if such relief was not requested in the complaint"). Moreover, the rule barring a plaintiff from bringing a second action based on the same transaction does not apply if "[t]he plaintiff was unable . . . to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain . . . demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action . . . to seek that remedy or form of relief." Restatement (Second) of Judgments § 26(1)(c) (A.L.I. 1982); see Marrese v. Am.

34

<u>Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 382 (1985) (recognizing this exception to claim preclusion); <u>see also</u> <u>Foss v. E. States Exposition</u>, 67 F.4th 462, 469 (1st Cir. 2023) (describing the Restatement "as the preeminent authority on issues of claim preclusion" (cleaned up)); <u>Havercombe v. Dep't of Educ.</u>, 250 F.3d 1, 4 (1st Cir. 2001) (noting that the First Circuit's "approach to res judicata . . . follows the Restatement"). Class members may therefore file individual actions to seek relief that § 1252(f)(1) strips the Court of jurisdiction to issue on a class-wide basis.

Lastly, the government points again to the individualized questions it argues are material to determining whether a noncitizen is properly detained under § 1225(b)(2)(A) or § 1226(a) and asserts that there is therefore no single class-wide declaratory judgment the Court can issue. The government specifically stresses the individualized question of whether each class member is "seeking admission." Yet if, as Guerrero Orellana argues, none of the class members are "seeking admission" because § 1225(b)(2)(A) applies solely to noncitizens apprehended at the border and the class definition expressly excludes such individuals, the Court can declare unlawful the government's application of that statutory provision as to all the class members. Of course, the government may argue on the merits that certain categories of noncitizens arrested within the United States are "seeking admission." Should the Court agree with the

government on that point, it will modify the class definition to exclude such individuals before issuing a declaratory judgment.

**IV.  <u>Notice</u>**

Finally, the parties disagree as to whether the Court should order that notice be provided to members of the certified class. When a court certifies a Rule 23(b)(2) class, it may, but normally need not, direct notice to the class members. <u>See</u> Fed. R. Civ. P. 23(c)(2)(A); <u>Wal-Mart</u>, 564 U.S. at 363; <u>In re Google Inc. Cookie Placement Consumer Priv. Litig.</u>, 934 F.3d 316, 323 (3d Cir. 2019). For such classes, "courts generally limit certification notice . . . to exceptional situations involving due process concerns." <u>Newberg on Class Actions</u> § 8:3. Providing notice to the class members at this point is premature, but the Court will revisit the question of notice when it issues class-wide relief. <u>Cf.</u> <u>Brito v. Barr</u>, 415 F. Supp. 3d 258, 271 (D. Mass. 2019) (ordering the government to provide a copy of the Court's declaratory judgment and permanent injunction to all class members), <u>aff'd in part, vacated in part</u>, 22 F.4th 240 (1st Cir. 2021).

**ORDER**

For the foregoing reasons, Guerrero Orellana's motion for class certification (Dkt. 31) is **<u>ALLOWED</u>**. The Court certifies the following class for the statutory claim (Count I):

All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:

(a)   the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);

(b)   for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;

(c)   the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);

(d)   the person is not subject to post-final order detention under 8 U.S.C. § 1231; and

(e)   the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

The Court appoints the following counsel as class counsel under Federal Rule of Civil Procedure 23(g): Foley Hoag LLP; the American Civil Liberties Union Foundation of Massachusetts, Inc.; the American Civil Liberties Union Foundation; the American Civil Liberties Union of New Hampshire; the American Civil Liberties

Union of Maine Foundation; Araujo & Fisher, LLC; and the Harvard
Immigration and Refugee Clinical Program.

SO ORDERED.

                              /s/ PATTI B. SARIS
                              Hon. Patti B. Saris
                              United States District Judge