# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOSE ARNULFO GUERRERO
ORELLANA,

        Petitioner-Plaintiff,

        v.

ANTONE MONIZ, Superintendent,
Plymouth Correctional Facility;

        Respondents-Defendants.

Civil Action No. 1:25-cv-12664-PBS

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF
RESPONDENTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

i

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

II.    LEGAL BACKGROUND ON IMMIGRATION DETENTION ...................................2

    A.    The Pre-IIRIRA Framework Gave Preferential Treatment to Aliens
       Unlawfully Present in the United States ...................................................2

    B.    IIRIRA Eliminated the Preferential Treatment of Aliens Unlawfully in the
       United States and Mandated Detention of all "Applicants for
       Admission."...........................................................................................3

    C.    DHS and EOIR Concluded That Section 1225(b)(2) Requires Detention of
       All Applicants for Admission ................................................................8

III.   FACTUAL AND PROCEDURAL BACKGROUND ..........................................9

IV.    ARGUMENT ..............................................................................................11

    A.    The Court Lacks Jurisdiction Over Class Challenges to 1225(b)(2) Detention
       Pending Removal Proceedings...............................................................11

    B.    The Class Members Are Properly Detained Under § 1225(b)(2) ...................13

       1.    Class Members are Applicants for Admission Subject to Mandatory
          Detention Pending Removal Proceedings .............................................14

       2.    Section 1225(b)(2)(A)'s reference to "seeking admission" does not
          narrow its scope...............................................................................15

       3.    Detention under § 1225 does not render § 1226(c) superfluous...........20

       4.    Congress did not intend to give preferential treatment to those who
          enter unlawfully ..............................................................................23

       5.    The Supreme Court's decision in Jennings supports the
          Government's interpretation ..............................................................24

    C.    A Declaratory Judgment that Requires Government Compliance Would
       Violate § 1252(f)(1)..............................................................................25

    D.    Notice, Reporting, and Identification of Class Members is Not Warranted or
       Proper..................................................................................................27

**V.    CONCLUSION** ...............................................................................................................**30**

**CERTIFICATE OF SERVICE** ..........................................................................................**32**

# **TABLE OF AUTHORITIES**

## **CASE LAW**

*Aleman-Gonzalez*,
  596 U.S. n.2 543 (2022)..............................................................................25, 26, 29

*Altamiro Ramos v. Lyons*,
  2:25-cv-09785, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025)........................13, 14

*Att'y Gen. of United States v. Wynn*,
  104 F.4th 348 (D.C. Cir. 2024)................................................................................15

*Barrios Sandoval v. Acuna*,
  No. 25-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025)..................................13

*Barton v. Barr*,
  590 U.S. 222 (2020)..........................................................................................17, 23

*BFP v. Resol. Tr. Corp.*,
  511 U.S. 531 (1994)................................................................................................18

*Brito v. Barr*,
  395 F. Supp. 3d 135 (D. Mass. 2019) ....................................................................29

*Brito v. Barr*,
  415 F. Supp. 3d 258 (D. Mass. 2019) ....................................................................29

*Brito v. Garland*,
  22 F.4th 240 (1st Cir. 2021)..............................................................................24, 29

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982)................................................................................................26

*Carson v. American Brands, Inc.*,
  450 U.S. 79 (1981)..................................................................................................26

*Chavez v. Noem*,
  No. 25-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025)................................13

*Cirrus Rojas v. Olson*,
  No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025)........................13, 16

*Cortes Alonzo v. Noem*,
No. 1:25-cv-01519, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025) ........................................ 13

*CoxCom, Inc. v. Chaffee*,
536 F.3d 101 (1st Cir. 2008) .................................................................................................... 29

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .............................................................................................................. 2, 5

*Direct Marketing Assn. v. Brohl*,
575 U.S. 1 (2015) ...................................................................................................................... 25

*Fraihat v. U.S. ICE*,
2020 WL 2758553 (C.D. Cal. May 15, 2020) ......................................................................... 28

*Hamama v. Adducci*,
912 F.3d 869 (6th Cir. 2018) .................................................................................................... 26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .................................................................................................................... 16

*Heyman v. Cooper*,
31 F.4th 1315 (11th Cir. 2022) ................................................................................................. 17

*Hing Sum v. Holder*,
602 F.3d 1092 (9th Cir. 2010) ............................................................................................ 2, 3, 4

*Hose v. I.N.S.*,
180 F.3d 992 (9th Cir. 1999) ...................................................................................................... 2

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020) .................................................................................................................. 18

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) .................................................................................................. 11

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........................................................................................................... *passim*

*King v. Burwell*,
576 U.S. 473 (2015) ............................................................................................................ 23, 24

*Kleber v. CareFusion Corp.*,
914 F.3d 480 (7th Cir. 2019) .................................................................................................... 15

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998) ................................................................................................... 14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ................................................................................................. 14

*Martinez v. Att'y General of U.S.*,
   693 F.3d 408 (2012) ................................................................................................... 3

*Mejia Olalde v. Noem*,
   No. 25-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) ................................. 13

*Microsoft Corp. v. I4I Ltd. P'ship*,
   564 U.S. 91 (2011) ................................................................................................... 23

*Montoya Cabanas v. Bondi*,
   4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025) ............................... 13

*New York State Dep't of Soc. Servs. v. Dublino*,
   413 U.S. 405 (1973) ........................................................................................... 23, 24

*Orr v. Trump*,
   786 F. Supp. 3d 397 (D. Mass. 2025) ..................................................................... 28

*Powell v. McCormack*,
   395 U.S. 486 (1969) ................................................................................................. 26

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ................................................................................................. 22

*Reno v. Am.-Arab Anti-Discrimination Comm.* ("AADC"),
   525 U.S. 471 (1999) ................................................................................................. 11

*Rimini St., Inc. v. Oracle USA, Inc.*,
   586 U.S. 334 (2019) ................................................................................................. 17

*Ruiz v. Mukasey*,
   552 F.3d 269 (2d Cir. 2009) .................................................................................... 11

*Shelton v. Bledsoe*,
   775 F.3d 554 (3d Cir. 2015) .................................................................................... 28

*Silva Oliveira v. Patterson*,
   No. 25-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025) ................................... 13

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
    576 U.S. 519 (2015) ................................................................................. 15

*Torres v. Barr*,
    976 F.3d 918 (9th Cir. 2020) ..................................................................... 3

*United States v. Bronstein*,
    849 F.3d 1101 (D.C. Cir. 2017) ................................................................ 17

*Vargas Lopez v. Trump*,
    No. 25-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025) ......................... 13

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ................................................................... 15

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................... 28

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972) ................................................................... 28

## ADMINSTRATIVE DECISIONS

*Matter of Lemus-Losa*,
    25 I&N Dec. 734 (BIA 2012) ..................................................................... 15

*Matter of Yajure Hurtado (*"Hurtado"*)*,
    29 I&N Dec. 216 (BIA 2025) .............................................................. *passim*

*Matter of Z-*,
    20 I. & N. 707 (BIA 1993) ......................................................................... 2

## STATUTES

8 U.S.C. § 1101(a)(13) ................................................................................... 2

8 U.S.C. § 1101(a)(13)(A) ......................................................................... 4, 14

8 U.S.C. § 1101(a)(13)(C) ............................................................................. 16

8 U.S.C. § 1125(b)(2)(A) .............................................................................. 14

8 U.S.C. § 1182 .............................................................................................. 7

8 U.S.C. § 1182(a)(6)(A) .................................................................................................... 7, 22

8 U.S.C. § 1182(a)(6)(A)(i) ...................................................................................................... 9,
8 U.S.C. § 1182(a)(6)(C) ..................................................................................................... 7, 22

8 U.S.C. § 1182(a)(7) ............................................................................................................ 7, 22

8 U.S.C. § 1182(a)(7)(A)(i)(I) ..................................................................................................... 9

8 U.S.C. § 1182(a)(9) ................................................................................................................ 18

8 U.S.C. § 1182(d)(5)(A) ................................................................................................. 6, 10, 22

8 U.S.C. § 1221-1231 ................................................................................................................ 25

8 U.S.C. § 1225 ........................................................................................................................... 5

8 U.S.C. § 1225(a) ...................................................................................................................... 2

8 U.S.C. § 1225(a)(1) ......................................................................................................... 4, 9, 14

8 U.S.C. § 1225(a)(3) ........................................................................................................... 4, 15

8 U.S.C. § 1225(a)-(b) ................................................................................................................ 3

8 U.S.C. § 1225(b) .................................................................................................................. 8, 12

8 U.S.C. § 1225(b)(1) ................................................................................................................ 10

8 U.S.C. § 1225(b)(1)-(2) ............................................................................................................ 4

8 U.S.C. § 1225(b)(1)(A)(i) .................................................................................................... 5, 18

8 U.S.C. § 1225(b)(1)(A)(ii) ....................................................................................................... 5

8 U.S.C. § 1225(b)(1)(A)(iii)(II) ............................................................................................... 19

8 U.S.C. § 1225(b)(1)(B)(ii) ................................................................................................. 10, 19

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................................................................................... 5

8 U.S.C. § 1225(b)(2) .......................................................................................................... *passim*

8 U.S.C. § 1225(b)(2)(A) ..................................................................................................... *passim*

8 U.S.C. § 1226 ............................................................................................... 6

8 U.S.C. § 1226(a) .............................................................................. 1, 3, 8, 21

8 U.S.C. § 1226(a)(1)-(2) ................................................................................ 6

8 U.S.C. § 1226(c) ...................................................................................... 7, 11

8 U.S.C. § 1226(c)(1) ....................................................................................... 8

8 U.S.C. § 1226(c)(1)(A) ................................................................................ 22

8 U.S.C. § 1226(c)(1)(A)-(E) ......................................................................... 21

8 U.S.C. § 1226(c)(1)(B)-(C) ......................................................................... 21

8 U.S.C. § 1226(c)(1)(D) ................................................................................ 21

8 U.S.C. § 1226(c)(1)(E) ........................................................................... 7, 21

8 U.S.C. § 1226(c)(4) ................................................................................ 7, 22

8 U.S.C. § 1226(c)(E)(i)-(ii) .......................................................................... 22

8 U.S.C. § 1227 ................................................................................................ 8

8 U.S.C. § 1227(a) .......................................................................................... 21

8 U.S.C. § 1229a ............................................................................................ 18

8 U.S.C. § 1229b(c)(2)(A) .............................................................................. 20

8 U.S.C. § 1229b(c)(4) .................................................................................... 20

8 U.S.C. § 1229b(b) .......................................................................................... 9

8 U.S.C. § 1229b(b)(1) ................................................................................ 9, 20

8 U.S.C. § 1229c ............................................................................................. 18

8 U.S.C. § 1231 ......................................................................................... 11, 18

8 U.S.C. § 1251 ................................................................................................ 2

8 U.S.C. § 1252(a)(1) ............................................................................................. 3

8 U.S.C. § 1252(a)(5) ........................................................................................... 11

8 U.S.C. § 1252(b)(2)(A) ...................................................................................... 15

8 U.S.C. § 1252(b)(9) ........................................................................................... 11

8 U.S.C. § 1252(g) ................................................................................................ 12

8 U.S.C. § 1252(e)(3) ............................................................................................ 13

8 U.S.C. § 1252(e)(3)(A) ...................................................................................... 12

8 U.S.C. § 1252(f)(1) ............................................................................................ 26

8 U.S.C. § 1252(g) ................................................................................................ 12

28 U.S.C. § 1292(a)(1) .......................................................................................... 26

28 U.S.C. § 1341 ................................................................................................... 26

## FEDERAL REGULATIONS

8 C.F.R. § 1.2 ....................................................................................................... 17

8 C.F.R. § 235.1 ................................................................................................... 20

8 C.F.R. § 235.3(b)(1)(ii) .............................................................................. 6, 8, 10

8 C.F.R. § 235.3(b)(1)(iii) ...................................................................................... 5,

8 C.F.R. § 235.5(b)(4)(ii) ........................................................................................ 5

8 C.F.R. § 236.1(c)(8) ............................................................................................. 7

8 C.F.R. § 236.1(d) ................................................................................................. 7

8 C.F.R. § 236.1(d)(1) ........................................................................................... 6,

8 C.F.R. § 1003.19 .................................................................................................. 7

8 C.F.R. § 1235.1 ................................................................................................... 22

8 C.F.R. § 1236.1(d)(1) .......................................................................................... 7

## FEDERAL REGISTER

62 Fed. Reg. 10312 ............................................................................................. 18

62 Fed. Reg. 10355 ............................................................................................. 18

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23 .............................................................................................. 28

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 28

## PUBLIC LAW

Pub. L. No. 104-208 ............................................................................................ 3

Pub. L. No. 119-1 ................................................................................................. 7

## MISCELLANEOUS

9 A.L.R.2d 984 .................................................................................................. 27

Federal Practice & Procedure § 4044 ................................................................ 27

# I.     INTRODUCTION

Before 1996, the federal immigration laws generally required the detention of aliens who presented at a port of entry but allowed aliens who were unlawfully in the United States—including those who had entered illegally and evaded immigration inspection—to obtain release pending deportation proceedings. Congress overhauled that system in 1996 with the passage of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), to put inadmissible aliens who entered unlawfully on the same legal footing as those who presented at ports of entry. Those amendments provided that every alien present in the United States without having been admitted would be treated as an "applicant for admission," and likewise provided that such applicants for admission, unless entitled to be admitted, must be detained pending removal proceedings. Detaining aliens who entered unlawfully pending their removal proceedings is in line with the text and purpose of IIRIRA's amendments to the Immigration and Nationality Act ("INA").

By contrast, accepting Petitioner's arguments that he and others who evaded inspection by immigration authorities should be granted more procedural protections with respect to their detention than those who presented at ports of entry would thwart that statutory text and Congressional purpose. For these reasons, the Court should deny Petitioner's motion for summary judgment on his claim that he and members of the certified class are entitled to a bond hearing 8 U.S.C. § 1226(a) and grant summary judgment to Respondents on that claim.

# II.     LEGAL BACKGROUND ON IMMIGRATION DETENTION

## A.     The Pre-IIRIRA Framework Gave Preferential Treatment to Aliens Unlawfully Present in the United States.

The INA, as amended, contains a comprehensive framework governing the regulation of aliens, including the creation of proceedings for the removal of aliens unlawfully in the United

States and requirements for when the Executive is obligated to detain aliens pending removal.

Before 1996, the INA treated aliens differently based on whether the alien had presented at a port of entry or evaded inspection and entered the United States. *See Matter of Yajure Hurtado ("Hurtado")*, 29 I&N Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a), 1251 (1994)); *Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (same). "Entry" referred to "any coming of an alien into the United States," 8 U.S.C. § 1101(a)(13) (1994), and whether an alien had entered the United States (or not) "dictated what type of [removal] proceeding applied" and whether the alien would be detained pending those proceedings, *Hing Sum v. Holder*, 602 F.3d at 1099.[1]

At the time, the INA "provided for two types of removal proceedings: deportation hearings and exclusion hearings." *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (en banc). An alien who arrived at a port of entry would be placed in "exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole." *Hurtado*, 29 I&N Dec. at 223; *see* 8 U.S.C. § 1225(a)-(b) (1995); *id.* § 1226(a) (1995). In contrast, an alien who evaded inspection and physically entered the United States would be placed in deportation proceedings. *Id.*; *Hing Sum*, 602 F.3d at 1100. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Hurtado*, 29 I&N Dec. at 223 (citing 8 U.S.C. § 1252(a)(1) (1994)).

---

[1] Aliens who entered at a port of entry have technically physically "entered" the United States, but were deemed not to have effected an entry under the prior regime. *See Matter of Z-*, 20 I. & N. 707, 708 (BIA 1993) (explaining that entry required either (i) inspection and admission, or (ii) evasion of inspection and freedom from official restraint); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (explaining that aliens who arrive at a port of entry "are treated for due process purposes as if stopped at the border") (cleaned up).

Thus, the INA's prior framework distinguishing between aliens based on "entry" had

> the 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' *including the right to request release on bond*, while aliens who had 'actually presented themselves to authorities for inspection … were subject to mandatory custody.

*Hurtado*, 29 I&N Dec. at 223 (emphasis added) (quoting *Martinez v. Att'y General of U.S.*, 693 F.3d 408, 413 n.5 (2012)); *see also Hing Sum*, 602 F.3d at 1100 (similar); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") ("illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection").

**B.      IIRIRA Eliminated the Preferential Treatment of Aliens Unlawfully in the United States and Mandated Detention of all "Applicants for Admission."**

Congress discarded that regime through enactment of IIRIRA, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996).  Among other things, that law had the goal of "ensur[ing] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).

To that end, IIRIRA replaced the prior focus on physical "entry" and instead made lawful "admission" the governing touchstone. IIRIRA defined "admission" to mean "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added).  In other words, the immigration laws would no longer distinguish aliens based on whether they had managed to evade detection and enter the country without permission.  Instead, the "pivotal factor in determining an alien's status" would be "whether or not the alien has been *lawfully* admitted." House Rep. at 226 (emphasis added); *Hing*

*Sum*, 602 F.3d at 1100 (similar).  IIRIRA also eliminated the exclusion-deportation dichotomy and consolidated both sets of proceedings into "removal proceedings."  *Hurtado*, 29 I&N Dec. at 223.

IIRIRA effected these changes through several provisions codified in 8 U.S.C. § 1225:

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make lawful "admission," rather than entry, the touchstone. That provision states that an alien "present in the United States who has not been admitted . . . shall be deemed … an applicant for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). "All aliens … who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States" are required to "be inspected by [an] immigration officer[]." *Id*. § 1225(a)(3). The inspection by the immigration officer is designed to determine whether the alien may be lawfully "admitted" to the country or, instead, must be placed in immigration proceedings.

**Section 1225(b):** IIRIRA also provided for both expedited removal and non-expedited "Section 240" proceedings, and mandated that applicants for admission be detained pending those proceedings.  8 U.S.C. §§ 1225(b)(1)-(2).

Section 1225(b)(1) provides for so-called "expedited removal proceedings," *DHS v. Thuraissigiam*, 591 U.S. 103, 109-113 (2020), which may be applied to a subset of aliens—those who (1) are "arriving in the United States," or who (2) have "not been admitted or paroled into the United States" and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i),

(iii). As to these aliens, the immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id*. § 1225(b)(1)(A)(i). In that event, the alien "shall be detained pending a final determination of credible fear or persecution and, if found not to have such fear, until removed." *Id*. § 1225(b)(1)(B)(iii)(IV); *see also* 8 C.F.R. § 235.5(b)(4)(ii). An alien processed for expedited removal who does not indicate an intent to seek relief or protection from removal is likewise detained until removed. 8 U.S.C. § 1225(b)(1)(A)(i), (B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(2)(iii). And an alien found to have a credible fear of persecution "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(b)(ii).

Section 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by [subsection (b)(1)]." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). It requires that those aliens be detained pending Section 240 removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title [Section 240].

8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see also Jennings*, 583 U.S. at 302 (holding that § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just at the moment those proceedings begin"). Contemporaneous regulations reiterated that this catchall mandatory detention provision applies to those applicants for admission who are present in the United States without inspection and admission or parole. 8 C.F.R. § 235.3(b)(1)(ii).

While § 1225(b)(2) does not allow for aliens to be released on bond, the INA grants the Department of Homeland Security ("DHS") discretion to exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent

5

humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).  Parole "shall not be regarded as admission of the alien," *id*.; *Jennings*, 583 U.S. at 288 (discussing parole authority), and when the Secretary determines that "the purposes of such parole … have been served," the "alien shall … be returned to the custody from which he was paroled" and be "dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (versus applicants for admission specifically).  *See* 8 U.S.C. § 1226. This is the only provision that governs the detention of aliens who, for example, were lawfully admitted to the country but overstay or otherwise violate the terms of their visas or engage in conduct that renders them deportable, or are later determined to have been improperly admitted. The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id*. § 1226(a). Detention under this provision is discretionary: the Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. *Id*. § 1226(a)(1)-(2). In practice, DHS makes the initial custody determination. 8 C.F.R. § 236.1(d)(1). The alien may seek custody redetermination (a bond hearing) before an immigration judge and can appeal an immigration judge's negative determination to the Board of Immigration Appeals (Board). 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That "default rule," however, does not apply to certain criminal aliens. *Jennings*, 583 U.S. at 288; *see* 8 U.S.C. § 1226(c). Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain classes of criminal aliens—those who are inadmissible or deportable because they (1) "committed" certain offenses delineated in 8 U.S.C. §§ 1182 and 1227; or (2) engaged in

6

terrorism-related activities. 8 U.S.C. § 1226(c)(1). The Executive must detain these aliens after "the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *Id*. Such aliens may be released only if DHS determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity or similar person— and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id.* § 1226(c)(4).

Congress recently amended § 1226(c) through the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3, (2025), which additionally requires detention of criminal aliens who (1) are inadmissible because they are present in the United States without admission or parole, have committed a material misrepresentation or fraud, or lack required documentation, *see* 8 U.S.C. § 1182(a)(6)(A), (6)(C), (7); and (2) are "charged with, arrested for, [] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of" certain listed offenses. 8 U.S.C. § 1226(c)(1)(E).

C.    **DHS and EOIR Concluded That Section 1225(b)(2) Requires Detention of All Applicants for Admission.**

For many years after IIRIRA, DHS and most immigration judges treated aliens who entered the United States without admission and were later detained away from the border as being subject to discretionary detention under 8 U.S.C. § 1226(a) rather than mandatory detention under 8 U.S.C. § 1225(b)(2). *See Hurtado*, 29 I&N Dec. at 225 n.6. This was true in spite of the regulation providing for mandatory detention under § 1225(b)(2)(A) in this circumstance.  *See* 8 C.F.R. § 235.3(b)(1)(ii). Until this year, however, the Board of Immigration Appeals had not issued any precedential opinion on the appropriate detention authority for such individuals.

On July 8, 2025, DHS "revisited its legal position on detention and release authorities" and issued interim guidance that brought the Executive's practices in line with the statute's plain text. ECF 93 (Decl. of Christopher E. Hart, Ex. B). Specifically, DHS's guidance states that all aliens who enter the country without being admitted or who otherwise arrive in the United States are "subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE [U.S. Immigration and Customs Enforcement] custody except by INA § 212(d)(5) parole." *Id.* at 2. As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under the INA § 236(a) are aliens admitted to the United States and chargeable with deportability under INA § 237 [8 U.S.C. § 1227]." *Id.*

On September 5, 2025, the Board of Immigration Appeals issued a published decision in *Hurtado,* holding that § 1225(b)(2)'s mandatory detention regime applies to *all* aliens who entered the United States without inspection and admission:

> Aliens … who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United State for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission."

29 I&N Dec. at 228; *see also id*. at 225 ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens … who are present in the United States without admission").

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Guerrero Orellana is a native and citizen of El Salvador. Defs.' SOF ¶ 1; ECF 47 (Decl. of Keith M. Chan ("Chan Decl.")) ¶ 6. It is unknown when and where Petitioner entered the United States, but he entered without inspection, admission, or parole by an immigration officer. Defs.' SOF ¶ 3; Chan Decl. ¶¶ 6-7. Petitioner does not deny that he is an alien who entered the country illegally, nor does he allege that he has been admitted into the United States. *See*

*generally* Am. Petition (ECF No. 10) ¶¶ 25-29; Defs.' SOF ¶ 4. He concedes he is an "applicant for admission" under 8 U.S.C. § 1225(a)(1). He asserts that he may be eligible for discretionary *relief* from removal under 8 U.S.C. § 1229b(b). *See* ECF 16 (Decl. of Annelise Araujo ("Araujo Decl.")) ¶ 9; Defs.' SOF ¶ 10. That provision allows the immigration court to "adjust to the status of an alien lawfully admitted for permanent residence" an otherwise inadmissible or deportable alien who makes various showings, including "exceptional and extremely unusual hardship" to a U.S-citizen or lawful permanent resident spouse, parent, or child. 8 U.S.C. § 1229b(b)(1).  In other words, in his removal proceedings, Petitioner will be seeking to become "admitted for permanent residence." *Id*.

On September 18, 2025, U.S. Immigration and Customs Enforcement ("ICE") conducted a warrantless arrest of Petitioner and detained him pursuant to the authority of 8 U.S.C. § 1225(b)(2). Defs.' SOF ¶ 5; Chan Decl. ¶ 8; Araujo Decl. Ex. A.  Also on September 18, 2025, ICE served Petitioner with a Form I-862, Notice to Appear, alleging that he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I), explaining "[y]ou were not . . . admitted or paroled after inspection by an Immigration Officer." Defs.' SOF ¶¶ 5-6; Araujo Decl. Ex. A. ICE also served on Petitioner a Form I-200, titled "Warrant for Arrest of Alien," issued by an immigration officer authorized to serve "warrants of arrest for immigration violations." *See* ECF 16-1 at 6. On September 22, 2025, ICE filed the Notice to Appear with the immigration court in Chelmsford, Massachusetts. Defs.' SOF ¶ 7. Petitioner's first hearing in his removal proceedings was held on October 2, 2025. *Id*. ¶ 9.

Petitioner filed an amended petition for Writ of Habeas Corpus and complaint under the Administrative Procedure Act (APA) on September 22, 2025. ECF 10. On September 23, 2025, the Court granted Petitioner's individual motion for a preliminary injunction, concluding that

Petitioner was likely to succeed on his statutory claim asserted in Count One of his Petition because, it reasoned, Petitioner's detention was governed by § 1226 and not § 1225(b)(2)(A). ECF 54 at 8, 15, 26. The Court determined that ICE had detained Petitioner "on a warrant," *id.* at 15–16, and that he was not "'seeking admission' at the time of arrest," *id.* at 18. Petitioner was granted bond at a hearing on October 9, 2025, and released. ECF 68.

On October 30, 2025, the Court certified a class for purposes of Count One of the Amended Petition, consisting of:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:
>
> (a) the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);
>
> (b) for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;
>
> (c) the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);
>
> (d) the person is not subject to post-final order detention under 8 U.S.C. § 1231; and
>
> (e) the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

ECF 81 at 37.

Petitioner filed the instant motion for Partial Summary Judgment on November 7, 2025, seeking summary judgment on Count One of the Amended Petition, which asserts that Petitioner and the class are detained under § 1226(a) and are entitled to bond hearings under that statute and

its implementing regulations.

## IV.    ARGUMENT

### A.    The Court Lacks Jurisdiction Over Class Challenges to 1225(b)(2) Detention Pending Removal Proceedings.

As an initial matter, Respondents respectfully maintain that the Court lacks jurisdiction to review class members' detention pending removal. Under § 1252(b)(9)'s zipper clause, "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC"),* 525 U.S. 471, 483 (1999). Taken together with § 1252(a)(5), which provides that a petition for review is the exclusive means for judicial review of removal proceedings, this means "that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see also id*. at 1035; *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction). Contrary to this Court's conclusion, Petitioner's challenge is not "collateral" to or "independent of" his removal proceedings, *see* ECF 54 at 9, because it attacks the government's authority to detain during removal proceedings and is inextricably bound up with those proceedings.

Section 1252(g) likewise bars "any cause or claim" arising from the government's decision to "commence proceedings," or "adjudicate cases." 8 U.S.C. § 1252(g). Petitioner and the class thus cannot "challeng[e] the decision to detain them in the first place." *Jennings*, 583

U.S. at 294 (plurality opinion). Here, any decision to detain Petitioner or class members, which arise from DHS's decision to commence removal proceedings, is barred from review by § 1252(g).

Additionally, broad challenges to policies and practices implementing 8 U.S.C. § 1225(b), like Petitioner's class challenge, are subject to the INA's class-certification bar and may only be brought in the U.S. District Court for the District of Columbia ("D.D.C.") within sixty days of their implementation. 8 U.S.C. §§ 1252(e)(1)(B), (e)(3)(A). The Court previously held that Plaintiffs' claims do not implicate this class-certification bar because, in the Court's view, § 1225(b)(2)(A) does not govern the class's detention. ECF 81 at 14. Yet through Count One, Petitioner is challenging policies and practices regarding the application of § 1225(b)(2) to class members—indeed, these policies were the basis for class certification and are cited repeatedly through Petitioner's summary judgment motion. ECF 91 at 1, 6, 7, 8, 21. The INA provides that no class can be certified to challenge such matters, and thus the only method to raise systemic challenges to "a written policy directive, written policy guideline, or written procedure" to implement § 1225(b) is through a lawsuit brought in D.D.C. 8 U.S.C. § 1252(e)(1)(B), (e)(3). The Court thus lacks subject matter jurisdiction to decide Count One.

**B.    The Class Members Are Properly Detained Under § 1225(b)(2).**

The Court should grant summary judgment to the government on Count One because Petitioner and class members are mandatorily detained under § 1225(b)(2)(A), and thus are not entitled to a bond hearing under the separate detention provision at § 1226(a).

The plain text of § 1225(b)(2)(A) requires DHS to detain all aliens who are present in the United States without admission pending removal proceedings—regardless of how long they have been in the country or how far from the border they ventured. Respectfully, the Court erred in

preliminarily ruling that § 1225(b)(2) does "not encompass noncitizens like Guerrero Orellana who entered the United States unlawfully and are apprehended while residing in the country." ECF 54 at 16–17. As a growing number of district courts have recognized, that reading disregards the statutory text and subverts Congress's manifest purposes in adopting § 1225(b)(2)(A). *See, e.g.*, *Chavez v. Noem*, No. 25-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, No. 25-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Cirrus Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *1 (E.D. Wis. Oct. 30, 2025); *Barrios Sandoval v. Acuna*, No. 25-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Silva Oliveira v. Patterson*, No. 25-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); *Mejia Olalde v. Noem*, No. 25-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Garibay-Robledo v. Noem*, 1:25-cv-00177 (N.D. Tex. 2025); *Montoya Cabanas v. Bondi*, 4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Altamiro Ramos v. Lyons*, 2:25-cv-09785, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); *Cortes Alonzo v. Noem*, No. 1:25-cv-01519, 2025 WL 3208284, at *1 (E.D. Cal. Nov. 17, 2025).

### 1. Class Members are Applicants for Admission Subject to Mandatory Detention Pending Removal Proceedings.

The statute's unambiguous language resolves this case. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020) ("Our analysis begins and ends with the text."). Section 1225(a) defines "applicant for admission" as an alien who either "arrives in the United States" or who is "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). And "admission" under the INA means not just physical entry, but lawful entry after inspection by immigration authorities. 8 U.S.C. § 1101(a)(13)(A). An alien who enters unlawfully is an applicant for admission, regardless of how long the alien has been here, or how far the alien is from the border. *See* 8 U.S.C. § 1225(a)(1). The statute is not limited "to aliens who have been

present in the United States for only some limited period of time, or aliens who were apprehended in the United States within a certain distance from the border." *Altamirano Ramos*, 2025 WL 3199872, at *4.

Section 1225(b)(2) further provides that "an alien who is an applicant for admission" "shall be detained" pending removal proceedings if the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1125(b)(2)(A) (emphasis added). The statute's use of the term "shall" makes clear that detention is mandatory, *see Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). The statute makes no exception for the duration of the alien's presence in the country or where in the country he is located. *See Altamirano Ramos*, 2025 WL 3199872, at *4. Because Petitioner "does not dispute that he is an 'applicant for admission' as defined in the statue," ECF 54 at 17, he and class members like him "shall be detained" for removal proceedings. *See* 8 U.S.C. § 1225(b)(2)(A).

### 2. Section 1225(b)(2)(A)'s reference to "seeking admission" does not narrow its scope.

The statute makes clear that an alien who is an "applicant for admission" is necessarily "seeking admission" within the meaning of § 1225(b)(2)(A). The statutory text and context show that being an "applicant for admission" is a means of "seeking admission"—no additional affirmative step is necessary. Section 1225(a) mandates that "[a]ll aliens … who are applicants for admission *or otherwise* seeking admission or readmission … shall be inspected." 8 U.S.C. § 1225(a)(3) (emphasis added). The word "[o]therwise' means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (quoting Webster's Third New International Dictionary 1598 (1971)); *see also Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 354 (D.C. Cir. 2024) (same); *Villarreal v. R.J. Reynolds*

*Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (en banc) ("or otherwise" means "the first action is a subset of the second action"); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019). Being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that an alien who is an "applicant for admission" *is* "seeking admission" for purposes of § 1252(b)(2)(A). No separate affirmative act is necessary. *See Matter of Lemus-Losa*, 25 I&N Dec. 734, 743 (BIA 2012) ("[M]any people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws"). Every "applicant for admission" is inherently and necessarily "seeking admission."

This reading is consistent with the everyday meaning of the statutory terms. One may "seek" something without "applying" for it. For example, one who is "seeking" happiness is not "applying" for it. But one *applying* for something is necessarily *seeking* it. *Compare* Webster's New World College Dictionary 69 (4th ed.) ("apply" means "To make a formal request (*to someone for* something)"), *with id.* at 1299 ("seek" means "to request, ask for"). A person who is "applying" for admission to a college is "seeking" admission to the college. *See* The American Heritage Dictionary of the English Language 63 (1980) ("American Heritage Dictionary") ("apply" means "[t]o request or *seek* employment, acceptance, or *admission*") (emphasis added). Likewise, an alien who is "applying" for admission to the United States (*i.e.*, an "applicant for admission") is "seeking admission" to the United States.

None of this is to say, however, that "seeking admission" has no meaning beyond "applicant for admission." As § 1225(a)(3) shows, being an "applicant for admission" is only *one* "way or manner" of "seeking admission," *supra* at 15—not the exclusive way. For example, lawful permanent residents seeking to re-enter the United States are generally not deemed

"applicants for admission," but they still may be deemed to be "seeking admission" in some circumstances. *See* 8 U.S.C. § 1101(a)(13)(C). But for purposes of § 1225(b)(2) and its regulation of "applicants for admission," the statute unambiguously provides that an alien who is an "applicant for admission" is "seeking admission," even if the alien is not engaged in some separate, affirmative act to obtain lawful admission.

To be sure, the Government previously operated under a narrower application of 1225(b)(2)(A). *Supra* at 8. But past practice does not justify disregard of clear statutory language. A court must always interpret the statute "as written," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019), and here the statute as written requires detention of *any* applicant for admission, regardless of whether the applicant is taking affirmative steps toward admission. The language "seeking admission" is "simply another way of referring to aliens who are applicants for admission." *Cirrus Rojas*, 2025 WL 3033967, at *8.

A different reading is not justified out of a desire to avoid rendering the term "seeking admission" redundant of the phrase "applicant for admission." *See* ECF 54 at 19–20; ECF 91 at 12. "The canon against surplusage is not an absolute rule." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). "Redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 590 U.S. 222, 223 (2020). Thus, "[t]he Court has often recognized that sometimes the better overall reading of a statute contains some redundancy." *Id.* For that reason, "the surplusage cannon … must be applied with statutory context in mind," *United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017), and "redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 223.

That is the case here. Under a straightforward reading of the statute, being an "applicant for admission" is "seeking admission." Although that reading may lead to some redundancy in § 1225(b)(2)(A), that is "not a license to rewrite" § 1225 "contrary to its text." *Barton*, 590 U.S. at 223; *see Heyman v. Cooper*, 31 F.4th 1315, 1322 (11th Cir. 2022) ("Th[e] principle [that drafters do repeat themselves] carries extra weight where … the arguably redundant words that the drafters employed … are functional synonyms"). And that is especially true, where that re-writing would be so clearly contrary to Congress's objective in passing the law. *See infra* § B.4.

Petitioner does not provide a viable theory as to what "seeking admission" means in § 1225(b)(2)(A), if it does not encompass all applicants for admission. He suggests that only aliens who present at a port of entry ("arriving aliens" as defined in 8 C.F.R. § 1.2) or who are otherwise arriving in the United States near the physical border can be "seeking admission." *See* ECF 91 at 11, 13, 16–17. There is no textual support for either proposition: Congress did not refer to arriving aliens in § 1225(b)(2) or even use the term "arriving," while several other sections of the INA use the term "arriving alien." *E.g.*, 8 U.S.C. §§ 1182(a)(9), 1229c, 1231. By contrast, the text of § 1225(b)(1) specifically prescribes methods for expedited removal and detention of aliens "arriving" in the United States, among others. *See* 8 U.S.C. § 1225(b)(1)(A)(i). "[W]e generally presume that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020) (quoting *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 537 (1994)). Congress's inclusion of the specific term "arriving" in § 1225(b)(1), as well as other sections of the INA, but not in § 1225(b)(2)(A), is strong evidence that Congress did not intend to limit the term "seeking admission" to those who are "arriving" in the United States. *See Hurtado*, 21 I&N Dec. at 228 (explaining that alien is an applicant for admission regardless of time in the United States).

Further, Petitioner's citation to agency regulations (ECF 91 at 13) conveniently omits that the 1997 regulations implementing IIRIRA also contemplated the application of § 1225(b)(2) to aliens who were present in the United States without admission and who were not amenable to expedited removal. *See* 8 C.F.R. § 235.3(b)(1)(ii), promulgated at 62 Fed. Reg. 10312, 10355 (Mar. 6, 1997) ("An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility *shall be detained in accordance with section 235(b)(2) of the Act [8 U.S.C. § 1225(b)(2)]* for a proceeding under section 240 of the Act [8 U.S.C. § 1229a].")). Additionally, the cited portion of the preamble to those same regulations provides no statutory basis or reasoning to support its assertion that aliens who are present without having been admitted or paroled "will be eligible for bond." *See* ECF 91 at 13 (citing 62 Fed. Reg. at 10323).

Nor can Petitioner's theory be squared with the scope of expedited removal. Congress determined that aliens who have not been admitted or paroled and who have been present in the United States for less than two years at the time of the inadmissibility determination could be subjected to § 1225(b)(1)'s expedited removal and mandatory detention, through the consideration of their application for asylum. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II), (b)(1)(B)(ii). It makes little sense that those same aliens would be eligible for bond if DHS processed them for 240 removal proceedings in lieu of expedited removal. For these same reasons, Petitioner's "clarification" of the class definition to try to define who might be still "arriving" in the United States (and excluded from the class) is too narrow. *See* ECF 91 at 16-17. Even under Petitioner's theory, the class must exclude all those who are "seeking admission" at the time of inspection—and there is no basis to

limit that exclusion to those who are "at the border." *See id*.[2]

And even if "seeking admission" required some separate affirmative conduct, an applicant for admission who attempts to avoid removal from the United States is by any definition "seeking admission." Even if an alien may not have been affirmatively seeking admission during his years of illegal presence, § 1225(b)(2) is not concerned with the alien's pre-inspection conduct. Rather, its use of present tense language ("seeking" and "determines") shows that its focus is a specific point in time—when "the examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility. 8 U.S.C. § 1225(b)(2)(A). At *that* point, the alien is "seeking"—*i.e.*, presently "endeavor[ing] to obtain," American Heritage Dictionary at 1174—admission into the United States. If it were otherwise, the applicant would seek to withdraw his application for admission under § 1225(a)(4), which authorizes an alien to voluntarily "depart immediately from the United States" in lieu of expedited removal or Section 240 proceedings. *See also* 8 C.F.R. §§ 235.1, 1235.1. An applicant (like Petitioner) who forgoes that statutory option and instead endeavors to remain in the United States by participating in Section 240 removal proceedings— proceedings in which the alien has the "burden of establishing that [he] is clearly and beyond a doubt entitled to be admitted" or satisfying the requirements for "relief from removal" (like asylum) that would permit lawful presence and a pathway to admitted status, *id*. § 1229a(c)(2)(A), (c)(4)—is plainly "endeavor[ing] to obtain" admission to the United States. American Heritage

---

[2] Additionally, the class is overbroad even on Petitioner's own view of the statute, because it would include aliens who were encountered upon arriving in the United States (including at ports of entry), were detained under § 1225(b)(2)(A) for a Section 240 proceeding, and were later paroled from detention (but not "at the time of entry"). Such individuals remain properly detained under § 1225(b)(2)(A) once their parole ends or is terminated.

Dictionary at 1174. Petitioner, who asserts that he may be eligible for discretionary *relief* from removal that would allow him, if granted, to "adjust to the status of an alien lawfully admitted for permanent residence," 8 U.S.C. § 1229b(b)(1), falls into this category. *See supra* § III.

### 3.    Detention under § 1225 does not render § 1226(c) superfluous.

The government's interpretation does not render superfluous portions of § 1226, which contains a separate mandatory detention provision for certain inadmissible and criminal aliens. *See* ECF 54 at 20. Although there is now some overlap between Sections 1226(c) and 1225(b)(2) for some aliens, each provision has independent effect. Section 1226(c) has substantial independent effect beyond aliens who entered without admission, and mere overlap is no basis for re-writing clear statutory text.

To begin, there is no colorable argument that the Government's interpretation of § 1225(b)(2)(A) renders § 1226(a)'s discretionary detention authority superfluous.  Section 1226(a) authorizes the Executive to "arrest[] and detain[]" *any* "alien" pending removal proceedings but provides that the Executive also "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a). Section 1226(a) provides the detention authority for the significant group of aliens who are *not* deemed "applicants for admission" subject to § 1225(b)(2)(A)— specifically, aliens who have been admitted to the United States but are now deportable through removal proceedings.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("the specific governs the general"). For example, the detention of any of the millions of aliens who have overstayed their visas will be governed by § 1226(a), because those aliens (unlike Petitioner) *were* lawfully admitted to the United States and are now deportable.

Likewise, the Government's reading of § 1225(b)(2)(A) does not render § 1226(c) superfluous. As described above, § 1226(c) is the exception to § 1226(a)'s discretionary detention

regime.  It requires the Executive to detain "any alien" who is deportable or inadmissible for having committed specified offenses or engaged in terrorism-related actions.  *See* 8 U.S.C. § 1226(c)(1)(A)-(E).  Like § 1226(a), subsection (c) applies to significant groups of aliens *not* encompassed by § 1225(b)(2), such as visa overstayers, those who entered with visas but are later determined to be inadmissible, and even lawful permanent residents.

Most obvious, § 1226(c)(1) requires the Executive to detain aliens who *have been admitted* to the United States and are now "deportable."  *See* 8 U.S.C. § 1226(c)(1)(B)-(C).  By contrast, § 1225(b)(2) has no application to admitted aliens.  Next, although § 1226(c)(1) requires detention of aliens who are "inadmissible" on certain grounds, *see* 8 U.S.C. § 1226(c)(1)(A), (D), (E),  those provisions, too, sweep more broadly than § 1225(b)(2), because they cover aliens who are inadmissible but were previously admitted.  *See* 8 U.S.C. § 1227(a), (a)(1)(A) (providing for the removal of "[a]ny alien … in *and admitted to* the United States," including "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens *inadmissible* by the law existing at the time…." (emphasis added)).  In this respect, § 1226(c)(1) applies to admitted aliens, who are not covered by § 1225(b)(2).  Finally, as noted above, § 1225(b)(2)(A) does "not apply to an alien … who is a crewman" or "a stowaway."  8 U.S.C. 1225(b)(2)(B)-(C). Section 1226(c) would apply to those aliens, too, if they were inadmissible or deportable on one of the specified grounds.

Contrary to Petitioner's assertion (ECF 91 at 12), nothing in the Laken Riley Act changes the analysis. That law requires mandatory detention of certain criminal aliens who are "inadmissible" under 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7). *See* 8 U.S.C. § 1226(c)(E)(i)-(ii). It is true that the Laken Riley Act's application to aliens who are inadmissible under §1182(a)(6)(A)—for being "present … without being admitted or paroled"—overlaps with

§ 1225(b)(2)(A). Both statutes mandate detention of "applicants for admission" who fall within the specified grounds of inadmissibility. But again, "[r]edundancies are common in statutory drafting" and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 223; *supra* at 17.  That is particularly true here, where this portion of the Laken Riley Act overlaps with § 1225(b)(2)(A) even under *Petitioner's* reading, which recognizes that applicants for admission who are "seeking admission" must be detained under § 1225(b)(2)(A). *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute").

Besides, § 1226(c) does independent work, despite the overlap, by narrowing the circumstances under which aliens may be *released* from mandatory detention. Recall that, for aliens subject to mandatory detention under § 1225(b)(2), DHS may "temporarily" parole them "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Section 1226(c)(1) takes that option off the table for aliens who have also committed the offenses or engaged in the conduct specified in § 1226(c)(1)(A)-(E). As to those aliens, § 1226(c) *prohibits* there parole and authorizes their release only if "necessary to provide protection to" a witness or similar person "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).

In fact, Congress's desire to further limit the parole power with respect to criminal aliens was one of the principal reasons that it enacted the Laken Riley Act. The Act was adopted in the wake of a heinous murder committed by an inadmissible alien who was "paroled into this country through a shocking abuse of that power," 171 Cong. Rec. at H278 (daily ed. Jan. 22, 2025) (Rep.

McClintock), and an abdication of the Executive's "fundamental duty under the Constitution to defend its citizens," 171 Cong. Rec. at H269 (Rep. Roy). The Act thus reflects a "congressional effort to be double sure," *Barton*, 590 U.S. at 239, that unadmitted criminal aliens are not paroled into the country.

### 4. Congress did not intend to give preferential treatment to those who enter unlawfully.

Petitioner's reading of the statute not only lacks textual support, it also subverts IIRIRA's express goal of eliminating preferential treatment for aliens who enter the country unlawfully, *supra* § II.B. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (rejecting interpretation that would lead to result "that Congress designed the Act to avoid"); *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes."). One of IIRIRA's express objectives was to dispense with the perverse pre-1996 regime under which aliens who entered the United States unlawfully were given "equities and privileges in immigration proceedings that [were] not available to aliens who present[ed] themselves for inspection" at the border, including the right to secure release on bond. House Rep. at 225; *supra* § II.B. Petitioner's interpretation would restore the regime Congress sought to discard: It would require detention for those who present themselves for inspection at the border in compliance with law, yet grant bond hearings to aliens who evade immigration authorities, enter the United States unlawfully, and remain here unlawfully for years or even decades until an involuntary encounter with immigration authorities. That is *exactly* the preferential treatment for illegal entrants that IIRIRA sought to eradicate.  This Court should reject any interpretation that is so transparently subversive of Congress's stated objective.  *King*, 576 U.S. at 492.

23

5.    **The Supreme Court's decision in *Jennings* supports the Government's interpretation.**

The Government's interpretation is consistent with the Supreme Court's decision in *Jennings*, 583 U.S. 281 (2018). *See* ECF 54 at 22. The Supreme Court recognized that § 1225(b) "serves as a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Jennings*, 583 U.S. at 287. Although elsewhere the Court notes § 1226 "authorizes the Government to detain certain aliens already in the country," that language does not suggest § 1226 is the sole detention authority of "aliens already in the country." The Government's interpretation is perfectly consistent with that language:  it allows that § 1226 is the exclusive source of detention authority for the substantial category of aliens who are were admitted into the United States (and so are "in the country") but are now  deportable. Indeed, the passage's use of the word "certain" conveys the opposite.  At a minimum, the quoted language is ambiguous and such uncertain language is insufficient to displace the statute's plain text and the manifest congressional purpose, especially as no part of the holding in *Jennings* required it to decide the precise scope of Sections 1225(b) and 1226.

The Court should grant summary judgment for the Government on Count One.

**C.    A Declaratory Judgment that Requires Government Compliance Would Violate § 1252(f)(1).**

If the Court does grant summary judgment for Petitioner, it should decline to issue a class-wide declaratory judgment. As the Court is aware, the government's position is that class-wide declaratory relief cannot be issued consistent with § 1252(f)(1). While the First Circuit has held otherwise, *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021), it did so before the Supreme Court addressed § 1252(f)(1) in *Aleman Gonzalez* and without the benefit of argument from the Government. *See Brito*, 22 F.4th at 250.  Section 1252(f)(1) says "no court (other than the Supreme

Court) shall have jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–1231 on a class-wide basis.  The Supreme Court did not expressly address whether § 1252(f)(1) permits relief that is "practically similar to an injunction, including class-wide declaratory relief," *Aleman-Gonzalez*, 596 U.S. at 551 n.2, but the Court's decisions strongly suggest it precludes a class-wide declaratory judgment like the one sought here.  For example, the Court defined the word "restrain" as having "a 'broad meaning' that refers to judicial orders that 'inhibit' particular actions." *Id.* at 549 (quoting *Direct Marketing Assn. v. Brohl*, 575 U.S. 1, 12–13 (2015)). The Court has also held that language very similar to the text of § 1252(f)(1) prohibits declaratory relief. Thus, the Tax Injunction Act—which provides in relevant part that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law," 28 U.S.C. § 1341—bars declaratory relief when such a declaratory judgment "in every practical sense operate[s]" like an injunction. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). Likewise, 28 U.S.C. § 1292(a)(1)—which gives the courts of appeals jurisdiction over interlocutory appeals from certain orders pertaining to "injunctions"—also confers appellate jurisdiction over other orders having the "practical effect" of an injunction, in cases that further the statute's purpose of allowing appeals from orders "of serious, perhaps irreparable, consequence." *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981). This is consistent with the Sixth Circuit view that § 1252(f)(1) likely prohibits declaratory relief that is the "functional equivalent" and has the "practical effect" of a class-wide injunction. *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018).

The declaratory judgment sought here would operate to restrain the operation of the relevant provisions on a class-wide basis—indeed, that is the entire purpose of this lawsuit proceeding as a class action. *See* ECF 91 at 14-15. Petitioner has been quite clear that he intends

to rely on any class-wide declaratory judgment to restrain the operations of DHS and the Executive Office for Immigration Review ("EOIR"). *Id*. at 14 (government must "faithfully execute the law as [this] [C]ourt's declaration determines it"). Alternatively, Petitioner anticipates this Court's declaration will be preclusive in subsequent litigation in other courts, so as to bind the government to this Court's class-wide declaration of the law. *Id*. at 15; *see Powell v. McCormack*, 395 U.S. 486, 499 (1969) (declaratory judgment can be used by individual class members "as a predicate to further relief, including an injunction").[3]  But this class-wide preclusive effect is among the restraints that § 1252(f)(1) is designed to prevent: a single district court imposing its view of the law on the government with respect to an entire class of aliens subject to the covered statutory provisions. *See Aleman Gonzalez,* 596 U.S. at 549 ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action").[4]  Thus, this Court lacks jurisdiction or

---

[3] In many circumstances, a declaratory judgment will have preclusive effect as between the parties in future litigation. *See* Restatement (Second) of Judgments § 33; ECF 91 at 15. But the treatises recommend caution in imposing res judicata based on a declaratory judgment that remains subject to appeal. *See* 9 A.L.R.2d 984 ("both the rule under which the operation of a judgment as res judicata is, and the one under which it is not, affected by the pendency of an appeal, have very unfortunate consequences"). Not applying res judicata will result in delay of applying the final judgment. But by applying res judicata during the pendency of an appeal, the "evil result[]" is that if the first judgment is ultimately reversed, it could meanwhile lead to another judgment "from which it may be impossible to obtain relief notwithstanding such reversal." *Id*.; *see also* Federal Practice & Procedure § 4044 ("Awkward problems can result from the rule that preclusive effects attach to the first judgment" while that judgment is subject to an appeal). In the circumstances here, and particularly given § 1252(f)(1), it would not be proper to impose res judicata effect on a class-wide basis while the declaratory judgment is pending on appeal. *See* 9 A.L.R.2d 984 (the "only one safe way of avoiding conflicting judgments on the same cause . . . [is for] the final decision on the merits of the second suit should be delayed until the decision on appeal has been rendered"). Instead, as Respondents have stressed, guidance must stem from a precedential ruling from an appellate court.

[4] Respondents explained in their opposition to class certification why the certification of the class would preclude future litigation by class members—including efforts to "enforce" the

authority to issue the class-wide declaratory relief sought by Petitioner. However, if the Court were to enter relief for either Petitioner or the class on Count One, Respondents agree that the judgment should be entered as a partial final judgment under Rule 54(b). *See* ECF 91 at 17.

### D.    Notice, Reporting, and Identification of Class Members is Not Warranted or Proper.

If this Court orders class relief, it should not order the burdensome notice, class-member identification, and transfer reporting that Petitioner requests. First, notice is "optional" for a Rule 23(b)(2) class. *Orr v. Trump*, 786 F. Supp. 3d 397, 414 (D. Mass. 2025). Because of the mandatory nature of Rule 23(b)(2) class actions, "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care." *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003); *see also Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (explaining that class members cannot opt out of Rule 23(b)(2) classes). Should the Court require notice, however, the posting of notice in a "place visited by many class members" is sufficient. *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003); *see also* ECF 91 at 19–20 (citing *Fraihat v. U.S. ICE*, 2020 WL 2758553, at *3 (C.D. Cal. May 15, 2020), which found notice could be accomplished "by posting notice in designated common areas of detention facilities."). "[N]otice calculated to reach a significant number of class members often will protect the interests of all[,]" including "informal methods." *See id.* Thus, if the Court is inclined to require some form of notice, the individualized notice that Petitioner requests is not required. *See* ECF 90-1 at 2. Instead, notice posted at relevant detention and holding facilities would be sufficient to inform

---

declaratory judgment in individual habeas cases.  *See* ECF 64 at 13-17. While this Court did not accept the government's arguments in granting class certification, we anticipate raising the same arguments in individual cases and preserve them for purposes of appeal of this Court's judgment.

class members of any declaratory judgment.

Second, the Court should not require Defendants to provide ongoing identification of class members or to report on class member transfers. Such identification efforts should be unnecessary for a Rule 23(b)(2) class. The nature of a proper Rule 23(b)(2) class and remedy is such that "a remedy obtained by one class member will naturally affect the others" and class members need not be identified. *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (a 23(b)(2) class is "uniquely suited to civil rights actions in which the members of the class are often 'incapable of specific enumeration"), Moreover, Petitioner seeks ongoing identification of class members to facilitate monitoring of relief to the class, which is incompatible with declaratory relief. *See* ECF 91 at 20 (asserting that reports of class members identities will allow class counsel to "assess compliance with the declaration"). Petitioner cannot have it both ways—if, as Petitioner argues, the declaratory relief he seeks on behalf of the class does not "enjoin or restrain" the operation of the detention statutes under § 1252(f)(1) (*see* ECF 72 at 9–10), then there is no basis for Class Counsel or the Court to monitor, or facilitate the monitoring of, the status of each class member's detention, bond hearing or potential transfer. Further, Petitioner's request for identification and Respondents "notify class counsel 24 hours prior to transfer," ECF 91 at 20, is also itself coercive and injunctive in nature and therefore cannot be squared with § 1252(f) (not to mention the substantial problems it will cause for detention operations). And Petitioner does not provide any reason why the Court should order advance notice to Class Counsel of transfer of class members if those class members are already required to be identified or when those transferred class members remain class members even after a transfer. There is no prohibition on transfer of detainees, nor could the Court properly order such a prohibition. Finally, Petitioner demands detailed information about each class member—including their bond history and their counsel's

28

name—that would require burdensome manual compilation. *See* ECF 90-1.

Petitioner's reliance on *Brito* to argue that class-member identification is warranted is misplaced. ECF 91 at 20. This Court in *Brito* ordered identification of members of one of the two certified classes as a form of final injunctive relief on the merits. *See Brito v. Barr*, 415 F. Supp. 3d 258, 270-71 (D. Mass. 2019), *injunction and portion of declaratory judgment vacated*, 22 F. 4th 240 (1st Cir. 2021). Specifically, in *Brito*, after ruling in favor of the plaintiffs as to the burden and standard of proof at § 1226(a) bond hearings and issuing a declaratory judgment to that effect, this Court also issued a permanent injunction requiring the government to identify to class counsel members of the "Post-Hearing Class," which consisted of aliens who had previously received bond hearings under a different burden and standard of proof. *Id.* at 270-71; *Brito v. Barr*, 395 F. Supp. 3d 135, 149 (D. Mass. 2019). The Court had previously held that aliens in the Post-Hearing Class could only receive a new bond hearing by filing individual habeas actions and demonstrating prejudice. *See Brito*, 415 F. Supp. 3d at 270; *Brito*, 395 F. Supp. 3d at 148. Notably, the Court did *not* order notice to or identification of class members who had not yet received a bond hearing (like putative class members here). Further, *Brito* precedes *Garland v. Aleman Gonzalez*, 596 U.S. 543, 546 (2022), where the Court held that § 1252(f)(1) deprives district courts of jurisdiction over requests for class-wide injunctive relief like the order requiring notification of transfers—which effectively limits DHS's ability to transfer detainees—that Petitioner requests here. But even if the injunction Petitioner seeks were permissible under § 1252(f)(1), Petitioner has made no attempt to meet his burden to show that an injunction is warranted. *See CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008).

## V.    CONCLUSION

The Court should deny Petitioner's Motion for Partial Summary Judgment and grant

summary judgment to Defendants on Count I.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST E. FLENTJE
*Special Counsel*

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation-GLA
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-598-8259
katherine.j.shinners@usdoj.gov

MICHAEL D. ROSS
ANGEL FLEMING
LAURIE WIESNER
*Trial Attorneys*

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine J. Shinners, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: November 21, 2025                    /s/ Katherine J. Shinners
                                            KATHERINE J. SHINNERS
                                            *Senior Litigation Counsel*
                                            U.S. Department of Justice