# UNITED STATES COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE ARNULFO GUERRERO ORELLANA, on behalf of himself and others similarly situated,<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, et al.,<br><br>Respondents-Defendants. | Case No. 25-12664-PBS |

## DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Respondents-Defendants (herein, Defendants) hereby submit the following Statement of Facts in Support of their Cross-Motion for Partial Summary Judgment and respond to Plaintiff's LR 56.1 Statement of Uncontroverted Facts in Support of Motion for Partial Summary Judgment (Doc. No. 92).

## I.    DEFENDANTS' STATEMENT OF FACTS

1.    Petitioner/Plaintiff, Jose Arnulfo Guerrero Orellana, is a native and citizen of El Salvador. Declaration of Keith M. Chan ("Chan Decl.") (ECF No. 47) ¶ 6.

2.    Mr. Guerrero Orellana is not a citizen of the United States. Chan Decl. ¶ 6; *see also* Am. Petition (ECF No. 10) ¶ 26.

3.    Mr. Guerrero Orellana entered the United States without inspection, admission,

or parole by an immigration officer. Am. Petition (ECF No. 10) ¶ 27; Declaration of Annelise Araujo ("Araujo Decl.") (ECF No. 16) ¶ 7; Chan Decl. ¶¶ 6-7.

4.  Mr. Guerrero Orellana has not been admitted to the United States. Chan Decl. ¶¶ 7-8.

5.  U.S. Immigration and Customs Enforcement (ICE) encountered Mr. Guerrero Orellana on September 18, 2025, in Everett, Massachusetts, determined he was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I), served him with a notice to appear in removal proceedings under 8 U.S.C. § 1229a, and detained him pursuant to its authority under 8 U.S.C. § 1225(b)(2).  Chan Decl. ¶ 8; 8 U.S.C. § 1229(a); 8 C.F.R. §§ 239.1, 1239.1; Araujo Decl. Ex. A (Form I-862).

6.  The Notice to Appear explains: "[y]ou were not . . . admitted or paroled after inspection by an Immigration Officer." Araujo Decl. Ex. A (Form I-862).

7.  On September 22, 2025, ICE filed the Notice to Appear with the immigration court in Chelmsford, Massachusetts. Chan Decl. ¶ 10.

8.  Mr. Guerrero Orellana is in removal proceedings under 8 U.S.C. § 1229a. Araujo Decl. ¶ 10 & Ex. A.

9.  Plaintiff's first hearing in his removal proceedings was held on October 2, 2025. *See id.*; Chan Decl. ¶ 10.

10. Mr. Guerrero Orellana intends to seek discretionary cancellation of removal under 8 U.S.C. § 1229b(b), or other relief or protection from removal, in his removal proceedings. *See* Araujo Decl. ¶ 9.

II. **DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

    A. **Defendants' Historical Practice and New Policy[1]**

1.    The Immigration and Nationality Act (INA) provides for the detention of certain noncitizens, including, as relevant to this case, under 8 U.S.C. § 1226(a) and § 1225(b)(2)(A).

    a.  8 U.S.C. § 1226(a); *id.*, § 1225(b)(2)(A).

**Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. To the extent a response is required, this statement is partially disputed. Defendants dispute that 8 U.S.C. § 1226(a) is relevant to this case, but admit that the Immigration and Nationality Act provides for the detention of certain aliens, including under 8 U.S.C. § 1226(a) and § 1225(b)(2)(A), and admit that 8 U.S.C. § 1225(b)(2)(A) is relevant to this case.**

2.    Detention under 8 U.S.C. § 1226(a) allows for release on bond by immigration authorities, *see* 8 C.F.R. 236.1(c)(8), and a "custody redetermination"—also known as a bond hearing—before an immigration judge (IJ) in the event the immigration authorities deny bond, *see* 8 C.F.R. § 1236.1(d).

    a.  8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(8), 1236.1(d).

**Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. Defendants respectfully direct the Court to the cited statutes for a true and accurate representation of their contents and deny to the extent Plaintiff's descriptions are inconsistent therewith. To the extent a response is required, Defendants admit.**

3.    By contrast, detention under 8 U.S.C. § 1225(b)(2)(A) is mandatory and provides no right to a bond hearing. A person detained pursuant to this subparagraph may only be released if an immigration officer grants humanitarian parole under 8 U.S.C. § 1182(d)(5).

    a.  8 U.S.C. § 1225(b)(2)(A); *id.* § 1182(d)(5).

---

[1] Defendants repeat Plaintiff's headings for ease of reference, but these require no response. To the extent a response is required, Defendants dispute the statements in the first heading.

**Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. Defendants respectfully direct the Court to the cited statutes for a true and accurate representation of their contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith. To the extent a response is required, Defendants admit.**

4.      Prior to a May 22, 2025, unpublished Board of Immigration Appeals (BIA or Board) decision and a July 8, 2025 Immigration and Customs Enforcement's (ICE) detention directive, Defendants Department of Homeland Security (DHS) and ICE considered noncitizens who entered the United States without inspection and who were not apprehended while arriving at the border and continuously detained to be detained under 8 U.S.C. § 1226(a), unless that person was subject to the expedited removal provisions of 8 U.S.C. § 1225(b)(1) or the detention provisions of § 1226(c) or § 1231.

      a. Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); 8 C.F.R. § 1003.19(h)(2); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 803-04 (B.I.A 2020); Exhibit A to Hart Decl. (unpublished BIA decisions applying § 1226(a) to persons who entered without inspection).

**Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. To the extent a response is required, Defendants dispute this statement. *See, e.g.*, 8 C.F.R. § 235.3(b)(1)(ii); Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10355 (Mar. 6, 1997); *Maldonado v. Bostick*, No. 2:23-cv-760-LK-BAT, 2023 WL 5804021, at \*3-4 (W.D. Wash. Aug. 8, 2023) (rejecting DHS's prior position that "DHS may 'choose,' pursuant to its 'prosecutorial discretion,' to detain a noncitizen under Section 1226(a) by issuing an NTA and arrest warrant").**

5.      This interpretation has been consistent during the nearly thirty years that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) has been in effect.

      a. Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); 8 C.F.R. § 1003.19(h)(2); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 803-04 (B.I.A 2020); Exhibit A to Hart Decl. (unpublished BIA decisions applying § 1226(a) to persons who entered without inspection).

**Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. To the extent a response is required, Defendants dispute this statement. *See, e.g.*, 8 C.F.R. § 235.3(b)(1)(ii); Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10355 (Mar. 6, 1997); *Maldonado v. Bostick*, No. 2:23-cv-760-LK-BAT, 2023 WL 5804021, at \*3-4 (W.D. Wash. Aug. 8, 2023) (rejecting DHS's prior position**

**that "DHS may 'choose,' pursuant to its 'prosecutorial discretion,' to detain a noncitizen under Section 1226(a) by issuing an NTA and arrest warrant").**

6.   It was also true for the law in effect prior to IIRIRA. Under that preceding removal and detention scheme, any person physically inside the United States who faced removal (unless the person had been paroled at the border) was placed in "deportation" proceedings and was considered detained under 8 U.S.C. § 1252(a) (1994), which provided authority to release on bond. Separately, "exclusion" proceedings covered those who arrived at U.S. ports of entry and had never entered the United States These proceedings had their own detention scheme. *See* 8 U.S.C. § 1225 (1994); *id*. § 1226 (1994).

   a.   8 U.S.C. § 1225 (1994); *id*. § 1226 (1994); 62 Fed. Reg. 10312; *Martinez v. Hyde*, No. 25-11613, 2025 U.S. Dist. LEXIS 141724, at *12 n.9 (D. Mass. July 24, 2025).

   **Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement.  To the extent a response is required, this statement is partially disputed. Defendants dispute the first sentence. *See, e.g.*, 8 C.F.R. § 235.3(b)(1)(ii), Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10355 (Mar. 6, 1997). Defendants admit the remaining sentences, and note that one purpose of IIRIRA was to fix this difference in treatment whereby people who surreptitiously cross the border receive more procedural protections in deportation proceedings than people who arrive at the port of entry and were subject to exclusion proceedings. *See, e.g.*, *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).**

7.   According to IIRIRA's legislative history, 8 U.S.C. § 1226(a) was intended to "restate[] the [then-] current provisions in [8 U.S.C. § 1252(a)(1) (1994)] regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-469, at 229 (1996).

   a.   H.R. Rep. No. 104-469, at 229 (1996).

   **Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. To the extent a response is required, Defendants dispute the characterization of the House Report and of Congressional intent, and respectfully direct the Court to the cited report. Defendants admit that the quoted language is contained in a House Report relating to the legislative process that culminated in IIRIRA, but dispute that this language is relevant, because one of the primary purposes of IIRIRA's amendments to the Immigration and Nationality Act was to render "whether or not the alien has been lawfully admitted" the "pivotal factor in determining the alien's status" and thus to "treat[] persons present in the United States without authorization as not admitted."  H.R. Rep. No. 104-469, pt. 1 at 226.**

5

8.  The Immigration and Naturalization Service (INS) and Executive Office for Immigration Review (EOIR) reiterated this understanding shortly after IIRIRA's enactment: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

    a.  Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

    **Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement. To the extent a response is required, Defendants dispute the characterization of the understanding of the INS and EOIR. *See, e.g.*, 8 C.F.R. § 235.3(b)(1)(ii), Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10355 (Mar. 6, 1997). Defendants admit that the quoted language appears in the preamble to regulations promulgated to implement IIRIRA shortly after IIRIRA's enactment.**

9.  On July 8, 2025, the Acting Director of ICE, Todd Lyons, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," describing how DHS had, "in coordination with the Department of Justice (DOJ), revisited its legal position on detention and release authorities."

    a.  Ex. B to Hart Decl. (July 8, 2025 ICE Memorandum).

    **Response: Defendants admit the existence of the July 8, 2025 guidance document, but dispute the characterization of the guidance document, which speaks for itself and is the best evidence of its contents.**

10. Pursuant to this new policy, it is the "position of DHS" that anyone "who has not been admitted" is "subject to detention under [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by [8 U.S.C. § 1182(d)(5)] parole."

    a.  Ex. B to Hart Decl. (July 8, 2025 ICE Memorandum).

    **Response: Defendants admit the existence of the July 8, 2025 guidance document, but dispute the characterization of the guidance document, which speaks for itself and is the best evidence of its contents.**

11. According to Defendants, the result of this new position is that only noncitizens "admitted to the United States and chargeable with deportability under [8 U.S.C. § 1227]" are entitled to bond hearings, and that anyone who has not been admitted is "ineligible for a custody redetermination hearing ('bond hearing')

before an [IJ] and may not be released for the duration of their removal proceedings absent a parole by DHS." This means that any person who entered the United States without inspection is considered subject to 8 U.S.C. § 1225(b)(2)(A), regardless of how long the person has lived in the United States. Such persons will not be considered for release on bond.

   a.  Ex. B to Hart Decl. (July 8, 2025 ICE Memorandum).

**Response: Defendants admit the existence of the July 8, 2025 guidance document, but dispute the characterization of the guidance document, which speaks for itself and is the best evidence of its contents.**

12.   On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a precedential decision, *Matter of Yajure Hurtado* ("Hurtado"), which makes this policy legally binding on all IJs. 29 I. & N. Dec. 216 (B.I.A. 2025).

   a.  *Matter of Yajure Hurtado* ("*Matter of Hurtado*"), 29 I. & N. Dec. 216 (B.I.A. 2025).

**Response: This is a statement of law, not of fact, and is improperly included in this Local Rule 56.1 statement.  To the extent a response is required, Defendants admit.**

13.   Under *Matter of Hurtado*, the BIA has adopted the policy that "aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." The result of this policy is the routine and systematic misclassification of noncitizens as subject to a policy of mandatory detention without right to a bond hearing.

   a.  *Matter of Yajure Hurtado* ("*Matter of Hurtado*"), 29 I. & N. Dec. 216 (B.I.A. 2025).

**Response: This is a statement of law and argument, not of fact, and is improperly included in this Local Rule 56.1 statement.  To the extent a response is required, with respect to the first sentence of this paragraph, Defendants admit the existence of the *Hurtado* decision, but dispute the characterization of the decision, which speaks for itself and is the best evidence of its contents, as a "policy." Defendants dispute the legal arguments in the second sentence of this paragraph.**

### B.  Plaintiff Jose Arnulfo Guerrero Orellana

14.   Mr. Guerrero Orellana resides in Massachusetts.

   a.  Declaration of Annelise Araujo, Esq. Dkt. 16 ("Araujo Decl."), ¶ 4.

**Response: Defendants have no basis to dispute.**

15. Mr. Guerrero Orellana has resided in the United States since 2013.

    a. Araujo Decl., ¶ 4.

**Response: Defendants have no basis to dispute, because Mr. Guerrero Orellana evaded detection by immigration authorities by entering without inspection and thus the government has no way of verifying how long Mr. Guerrero Orellana has been residing illegally in the United States.**

16. Mr. Guerrero Orellana resides in Massachusetts with his family, including his one-year- old daughter who is a United States citizen.

    a. Araujo Decl., ¶ 4.

**Response: Defendants have no basis to dispute.**

17. Mr. Guerrero Orellana has no criminal history.

    a. Araujo Decl., ¶ 8.

**Response: Defendants have no basis to dispute.**

18. Mr. Guerrero Orellana had not had any contact with the immigration authorities prior to his most recent arrest.

    a. Araujo Decl., ¶ 7.

**Response: Admit.**

19. On or about September 18, 2025, Mr. Guerrero Orellana was arrested by immigration authorities inside the United States and taken into ICE custody at the Plymouth County Correctional Facility.

    a. Araujo Decl., ¶¶ 5-6.

**Response: Admit.**

20. The government alleged he entered the United States without inspection or parole.

    a. Araujo Decl., ¶ 10.

**Response: Admit.**

21.    Thereafter, ICE issued him a Notice to Appear, charging him with being
       "present in the United States" without admission or parole.

      a.   Araujo Decl., ¶ 10.

**Response: Admit.**

22.    On September 18, 2025, Mr. Guerrero Orellana filed a habeas petition under 28
       U.S.C.
       § 2241 challenging the legality of his ongoing detention without a bond hearing.

      a.   Dkt. 1.

**Response: Admit.**

23.    On October 3, 2025, the Court issued a preliminary injunction requiring the
       government to release Mr. Guerrero Orellana unless he was provided with a
       bond hearing before an immigration judge within seven business days.

      a.   Dkt. 54.

**Response: Admit.**

24.    On October 9, 2025, an immigration judge held a bond hearing and ordered Mr.
       Guerrero Orellana released on bond of $3,500.

      a.   Dkt. 68-1.

**Response: Admit.**

25.    Mr. Guerrero Orellana posted bond the following day and was released from
       custody.

      a.   Dkt. 68-1.

**Response: Admit.**

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST E. FLENTJE
*Special Counsel*

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation-GLA
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-598-8259
katherine.j.shinners@usdoj.gov

MICHAEL D. ROSS
ANGEL FLEMING
LAURIE WIESNER
*Trial Attorneys*

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine J. Shinners, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.


Dated: November 21, 2025          <u>*/s/ Katherine J. Shinners*</u>
                                            KATHERINE J. SHINNERS
                                            *Senior Litigation Counsel*
                                            U.S. Department of Justice