## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                     )
JOSE ARNULFO GUERRERO ORELLANA,      )
on behalf of himself and others      )
similarly situated,                  )
                                     )
         Petitioner-Plaintiff,       )
                                     )
v.                                   )          Civil Action
                                     )          No. 25-cv-12664-PBS
ANTONE MONIZ, Superintendent,        )
Plymouth County Correctional         )
Facility, et al.,                    )
                                     )
         Respondents-Defendants.     )
_____)
```

## MEMORANDUM AND ORDER

December 19, 2025

Saris, J.

## INTRODUCTION

This class action concerns the scope of the government's authority to detain noncitizens pending their removal proceedings without the opportunity for release on bond under 8 U.S.C. § 1225(b)(2)(A). Since July 2025, the U.S. Department of Homeland Security ("DHS") has asserted that all noncitizens who entered the United States without inspection and are later apprehended inside the country must be detained without a bond hearing during their removal proceedings, regardless of how long they have resided in the United States or whether they have a criminal history. Specifically, DHS has taken the position that such noncitizens

remain "applicants for admission" and, thus, are subject to mandatory detention throughout their removal proceedings under § 1225(b)(2)(A) rather than discretionary detention under 8 U.S.C. § 1226(a). The Board of Immigration Appeals ("BIA") adopted this interpretation of the statute in a precedential decision issued on September 5, 2025. See Matter of Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

DHS's recent application of § 1225(b)(2)(A) and the BIA's decision in Matter of Hurtado are contrary to the longstanding agency interpretation that mandatory detention under § 1225(b)(2)(A) applies only to noncitizens seeking admission at the border or a port of entry. The Seventh Circuit and most district courts to have addressed the issue have rejected the government's new, more expansive interpretation of § 1225(b)(2)(A). See Castañon-Nava v. U.S. Dep't of Homeland Sec., ___ F.4th ___, ___ (7th Cir. 2025) [2025 WL 3552514, at *8-10] (addressing the issue on a motion to stay pending appeal); Barco Mercado v. Francis, ___ F. Supp. 3d ___, ___ (S.D.N.Y. 2025) [2025 WL 3295903, at *4 & nn.22-23, *13-14] (collecting district court decisions).

Petitioner-Plaintiff Jose Arnulfo Guerrero Orellana, the class representative, entered the United States without inspection in 2013. He has no criminal record. On September 18, 2025, he was detained by DHS and placed into removal proceedings. He

2

subsequently filed this petition for writ of habeas corpus and class action complaint to challenge his detention without a bond hearing and the government's recent interpretation of the scope of § 1225(b)(2)(A). He alleges that his and the class members' detention without a bond hearing is unlawful for three reasons: 1) the government has misclassified them as subject to mandatory detention under § 1225(b)(2)(A) when the statute only authorizes their discretionary detention under § 1226(a) (Count I); 2) their detention violates their constitutional right to due process (Counts II-IV); and 3) the BIA's decision in Matter of Hurtado is contrary to law and arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. (Count V).

On October 3, 2025, the Court issued a preliminary injunction requiring the government to release Guerrero Orellana unless it provided him with a bond hearing. See Guerrero Orellana v. Moniz (Guerrero Orellana I), __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2809996, at *10]. The Court found that Guerrero Orellana was likely to succeed on the merits of Count I, namely that the government lacked statutory authority to detain him without a bond hearing under § 1225(b)(A)(2) and that he was subject to the government's discretionary detention authority in § 1226(a). See id. at __ [2025 WL 2809996, at *9]. He was subsequently released on bond by an immigration judge. The Court then certified a class

of noncitizens subject to mandatory detention under the government's recent interpretation of § 1225(b)(2)(A) who are either detained within Massachusetts or subject to the jurisdiction of an immigration court in Massachusetts. See Guerrero Orellana v. Moniz (Guerrero Orellana II), __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 3033769, at *14].

The parties have now filed cross-motions for partial summary judgment on Count I. After hearing and for the reasons explained below, the Court agrees with Guerrero Orellana that § 1225(b)(2)(A) does not authorize the mandatory detention of the class members without a bond hearing. Accordingly, the Court **ALLOWS** Guerrero Orellana's motion for partial summary judgment (Dkt. 90) and **DENIES** the government's cross-motion for partial summary judgment (Dkt. 94).

**BACKGROUND**

I.    **Statutory Framework**

As the Court has previously explained, "[t]he crux of this case is a question of statutory interpretation involving the interplay between 8 U.S.C. §§ 1225 and 1226." Guerrero Orellana I, __ F. Supp. 3d at __ [2025 WL 2809996, at *2]. The former provision establishes procedures for inspection of an "applicant for admission," that is, a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). After inspection by an immigration officer,

certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum. See id. § 1225(b)(1)(A)(i); see also Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108-11 (2020) (describing expedited removal). Otherwise, § 1225(b)(2)(a) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings. 8 U.S.C. § 1225(b)(2)(A). A noncitizen detained under this provision may be paroled "for urgent humanitarian reasons or significant public benefit." Id. § 1182(d)(5)(A); see Jennings v. Rodriguez, 583 U.S. 281, 300 (2018). In all other cases where § 1225(b)(2)(A) applies, the provision "mandate[s] detention of applicants for admission until [removal] proceedings have concluded." Jennings, 583 U.S. at 297.

Section 1226 permits the government "to detain certain aliens already in the country pending the outcome of removal proceedings." Id. at 289. Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The government then "may continue to detain the arrested" noncitizen during removal proceedings or "may release"

the noncitizen on bond or conditional parole. Id. § 1226(a)(1)-(2). A noncitizen whom the government decides to detain under this discretionary provision may seek review of that decision via a bond (i.e., custody redetermination) hearing before an immigration judge. See 8 C.F.R. § 236.1(d)(1); Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021); Hernandez-Lara v. Lyons, 10 F.4th 19, 26 (1st Cir. 2021). At that hearing, the immigration judge must release the noncitizen unless the government establishes either "by clear and convincing evidence that [he] poses a danger to the community" or "by a preponderance of the evidence that [he] poses a flight risk." Hernandez-Lara, 10 F.4th at 41.

Section 1226(c), however, "'carves out a statutory category of aliens who may not be released' during removal proceedings, outside of certain limited circumstances." Reid v. Donelan, 17 F.4th 1, 4 (1st Cir. 2021) (quoting Jennings, 583 U.S. at 289); see 8 U.S.C. § 1226(a) (authorizing discretionary detention "[e]xcept as provided in subsection (c)"). This mandatory detention provision applies to noncitizens who are inadmissible or deportable on certain criminal or terrorist grounds. See Johnson, 594 U.S. at 527 n.2; Reid, 17 F.4th at 4.

## II.  **Factual Background**

The following facts are undisputed. Guerrero Orellana, a citizen of El Salvador, entered the United States without inspection in 2013. He lives in Massachusetts with his family,

including his one-year-old U.S. citizen daughter. He has no criminal record.

On September 18, 2025, DHS arrested Guerrero Orellana during a vehicle stop in Everett, Massachusetts, which is not at the border. Shortly after his arrest, DHS served Guerrero Orellana with a notice to appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole and under 8 U.S.C. § 1182(a)(7)(A)(i) for lacking valid entry documents. Guerrero Orellana intends to apply for cancellation of removal during his removal proceedings.

Guerrero Orellana was detained following his arrest at the Plymouth County Correctional Facility in Massachusetts. The government asserted that it was detaining Guerrero Orellana as an "applicant for admission" under § 1225(b)(2)(A). Based on the government's position, Guerrero Orellana was subject to mandatory detention and ineligible for a bond hearing before an immigration judge under the BIA's decision in <u>Matter of Hurtado</u>.

### III. **Procedural History**

On the day of his arrest, Guerrero Orellana filed a habeas petition under 28 U.S.C. § 2241 to challenge the legality of his ongoing detention without a bond hearing. He subsequently filed an amended complaint and habeas petition asserting both individual claims and claims on behalf of a class of noncitizens subject to mandatory detention under the government's interpretation of

§ 1225(b)(2)(A). He alleges that his and the class members' detention without a bond hearing is unlawful for three reasons: 1) the government has misclassified them as subject to mandatory detention under § 1225(b)(2)(A) when they are actually subject to discretionary detention under § 1226(a) (Count I); 2) their detention violates their constitutional right to due process (Counts II-IV); and 3) the BIA's decision in Matter of Hurtado is contrary to law and arbitrary and capricious in violation of the APA (Count V).

On October 3, 2025, the Court issued a preliminary injunction requiring the government to release Guerrero Orellana unless he was provided with a bond hearing before an immigration judge. See Guerrero Orellana I, __ F. Supp. 3d at __ [2025 WL 2809996, at *10]. In finding that Guerrero Orellana was likely to succeed on the merits of Count I, the Court rejected the government's position that any noncitizen who entered the United States without inspection is subject to mandatory detention pending removal proceedings under § 1225(b)(2)(A). See id. at __ [2025 WL 2809996, at *4-9]. The Court concluded that the government's authority to detain Guerrero Orellana rested instead on § 1226(a) and, thus, that he had a right to a bond hearing in immigration court. See id. at __ [2025 WL 2809996, at *9]. Six days later, an immigration judge held a hearing and ordered Guerrero Orellana released on

bond. Guerrero Orellana posted bond the following day and was released from custody.

Guerrero Orellana also moved for class certification under Federal Rule of Civil Procedure 23. The Court certified the following class for Count I only:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:
>
> (a)  the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);
>
> (b)  for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;
>
> (c)  the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);
>
> (d)  the person is not subject to post-final order detention under 8 U.S.C. § 1231; and
>
> (e)  the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

Guerrero Orellana II, __ F. Supp. 3d at __ [2025 WL 3033769, at *14]. The parties' cross-motions for partial summary judgment on Count I followed.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one which 'a reasonable jury could resolve . . . in the favor of the non-moving party,' and a material issue is one with the 'potential to affect the outcome . . . under the applicable law.'" Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 108 (1st Cir. 2024) (alterations in original) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). In determining whether to grant summary judgment, a court must construe "the facts in the light most favorable to the non-moving party" and "draw[] all reasonable inferences" in his favor. Id. (quoting Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 408 (1st Cir. 2015)).

This standard does "not change where the parties file cross-motions for summary judgment." Roberge v. Travelers Prop. Cas. Co. of Am., 112 F.4th 45, 51 (1st Cir. 2024). On cross-motions, a court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Johansen v.

Liberty Mut. Grp., 118 F.4th 142, 149 (1st Cir. 2024) (quoting
Anvar v. Dwyer, 82 F.4th 1, 7 (1st Cir. 2023)).

## DISCUSSION

## I.  Jurisdiction

The government first presses various challenges to the
Court's jurisdiction over this action. The government asserts that
8 U.S.C. § 1252(b)(9) and (g) bar Guerrero Orellana's suit because
he contests decisions about immigration detention that are
inextricably tied to, and arise from, the commencement and pendency
of removal proceedings. The government also argues that 8 U.S.C.
§ 1252(e) prohibits class certification in this case and required
Guerrero Orellana to file his class action in the U.S. District
Court for the District of Columbia within sixty days of the
government's implementation of its new policy regarding the scope
of § 1225(b)(2)(A).

The Court rejected identical jurisdictional arguments in its
preliminary injunction and class certification decisions and does
so again here for the same reasons. See Guerrero Orellana I, __ F.
Supp. 3d at __ [2025 WL 2809996, at *3-4]; Guerrero Orellana II,
__ F. Supp. 3d at __ [2025 WL 3033769, at *5-6]. In short, the
First Circuit has held that neither § 1252(b)(9) nor § 1252(g)
strips district courts of jurisdiction over claims like Guerrero
Orellana's that concern "the legality of a petitioner's detention"
and are collateral to removal proceedings or the execution of

11

removal orders. <u>Kong v. United States</u>, 62 F.4th 608, 614-15 (1st Cir. 2023).

Moreover, § 1252(e)'s restrictions on judicial review -- which apply in relevant part to systemic challenges to "determinations under [§] 1225(b) . . . and its implementation," 8 U.S.C. § 1252(e)(3)(A) -- do "not limit judicial review of Guerrero Orellana's claim that the government is unlawfully subjecting him and the other class members to mandatory detention under § 1225(b)(2)(A) because the mandatory detention provision does not apply at all." <u>Guerrero Orellana II</u>, __ F. Supp. 3d at __ [2025 WL 3033769, at *6]. In other words, since § 1225(b)(2)(A) "does not govern the detention of individuals in Guerrero Orellana's position in the first place, he is not seeking judicial review of the 'implementation' of § 1225(b)." <u>Id.</u> Since this Court first held in its class certification decision that § 1252(e) does not apply to this lawsuit, a number of other district courts have similarly interpreted the scope of that jurisdictional provision. <u>See</u> <u>Barron Moncada v. Noem</u>, No. 25-cv-3354, 2025 WL 3458894, at *1 (W.D. Mo. Dec. 2, 2025); <u>Ardon-Quiroz v. Assistant Field Dir.</u>, No. 25-cv-25290, 2025 WL 3451645, at *2-3 (S.D. Fla. Dec. 1, 2025); <u>Lieogo v. Freden</u>, No. 25-cv-06615, 2025 WL 3290694, at *2 (W.D.N.Y. Nov. 26, 2025); <u>Bautista v. Santacruz</u>, __ F. Supp. 3d __, __ (C.D. Cal. 2025) [2025 WL 3289861, at *4].

The Court therefore has jurisdiction over Count I of Guerrero Orellana's lawsuit. The Court now turns to the merits of that claim.

## II.  Scope of § 1252(b)(2)(A)

Count I of Guerrero Orellana's amended complaint alleges that the government has misclassified the class members as subject to mandatory detention under § 1225(b)(2)(A) instead of discretionary detention under § 1226 in contravention of the relevant statutory provisions. At core, this claim poses a question of statutory interpretation regarding the scope of § 1225(b)(2)(A). "Questions of statutory interpretation are questions of law," Hernández-Miranda v. Empresas Díaz Massó, Inc., 651 F.3d 167, 170 (1st Cir. 2011), so Guerrero Orellana's claim is appropriately resolved on summary judgment, see Brown v. United States, 557 F.3d 1, 3 (1st Cir. 2009) (recognizing that "a question of law" is "grist for the summary judgment mill").

The parties offer dueling constructions of the scope of § 1225(b)(2)(A). That provision states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A). The government argues that this provision applies to any "applicant for admission" -- including any noncitizen who

entered the United States without inspection, regardless of how long he or she has been present in the country -- who is not subject to the expedited removal process under § 1225(b)(1). It is undisputed that the class members are all "applicants for admission" because they were neither admitted nor paroled, see id. § 1225(a)(1), so, under the government's interpretation, they are all subject to mandatory detention under § 1225(b)(2)(A).

Guerrero Orellana interprets the relevant statutory provisions differently. In his view, mandatory detention under § 1225(b)(2)(A) only applies to noncitizens "seeking admission" at a port of entry or by crossing the border, while § 1226(a)'s discretionary authority governs the detention of noncitizens arrested within the United States, whether or not they entered the country unlawfully.

The Court addressed the question of statutory interpretation at the heart of this claim in its preliminary injunction decision in this case. There, the Court agreed with Guerrero Orellana's argument that § 1225(b)(2)(A) only authorizes the detention of noncitizens arriving at a port of entry or crossing the border and does not apply to noncitizens who entered the United States without inspection and are later apprehended while residing in the country. See Guerrero Orellana I, ___ F. Supp. 3d at ___ [2025 WL 2809996, at *4-9]. The Court's conclusion rested on the plain and ordinary meaning of § 1225(b)(2)(A)'s text, namely the requirement that the

noncitizen be "seeking admission"; the presumption against construing the statutory provision in a manner that would render superfluous language in the provision itself and in Congress's recent amendment to § 1226(c); the description of the government's pre-removal order detention authority in the Supreme Court's decision in Jennings, see 583 U.S. at 287-89; and longstanding agency practice. See Guerrero Orellana I, __ F. Supp. 3d at __ [2025 WL 2809996, at *6-9]. Following the Court's preliminary injunction decision, the Seventh Circuit, the only court of appeals to have addressed the issue, held that the government is not likely to succeed in its argument about § 1225(b)(2)(A)'s scope. See Castañon-Nava, __ F.4th at __ [2025 WL 3552514, at *8-10].

Because the parties' arguments at this stage largely rehash those presented in their preliminary injunction briefing, the Court need not analyze those arguments at length. For the reasons provided in its preliminary injunction decision, the Court concludes that § 1225(b)(2)(A) does not authorize the mandatory detention of noncitizens who entered the United States without inspection and are detained while residing in the country. See Guerrero Orellana I, __ F. Supp. 3d at __ [2025 WL 2809996, at *6-9].

The Court briefly responds to two of the government's arguments that it has not yet addressed. First, the government points to language in an implementing regulation for § 1225(b)

15

providing that "[a]n alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility [_i.e._, is not subject to expedited removal] shall be detained in accordance with [§ 1225(b)(2)]." 8 C.F.R. § 235.3(b)(1)(ii). In the government's view, this language indicates that § 1225(b)(2)(A) applies to all "applicants for admission" not subject to the expedited removal process and is a "contemporaneous[]" agency interpretation "useful in determining [§ 1225(b)(2)(A)]'s meaning." _Loper Bright Enters. v. Raimondo_, 603 U.S. 369, 394 (2024).

Despite the government's reliance on this regulatory language, the Court is ultimately unpersuaded to alter its interpretation of § 1225(b)(2)(A). As an initial matter, questions of statutory interpretation rest with the court, which must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." _Id._ at 395. Additionally, the language cited by the government appears in the subsection of the regulation addressing expedited removal. _See_ 8 C.F.R. § 235.3(b). By contrast, the subsection that actually implements § 1225(b)(2) applies more narrowly to "any _arriving alien_ who appears to the inspecting officer to be inadmissible, and who is placed in [regular] removal proceedings." 8 C.F.R.

16

§ 235.3(c)(1) (emphasis added). An "arriving alien," in turn, is "an applicant for admission coming or attempting to come into the United States." Id. § 1.2. As many other district courts have noted, § 235.3(c)(1) thus "treats 'arriving alien' as roughly interchangeable with an 'applicant . . . seeking admission'" under § 1225(b)(2)(A). Martinez v. Hyde, 792 F. Supp. 3d 211, 219 (D. Mass. 2025) (alteration in original), appeal filed, No. 25-1902 (1st Cir. Sep. 29, 2025); see, e.g., Valencia Zapata v. Kaiser, __ F. Supp. 3d __, __ (N.D. Cal. 2025) [2025 WL 2741654, at *10], appeal filed, No. 25-7472 (9th Cir. Nov. 26, 2025); Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025). This interpretation of § 1225(b)(2)(A) finds further support in longstanding agency practice, which for decades after the enactment of the statutory provision applied § 1226 to noncitizens who entered without inspection and were detained while residing in the United States. See Castañon-Nava, __ F.4th at __ [2025 WL 3552514, at *9 n.13]; Guerrero Orellana I, __ F. Supp. 3d at __ [2025 WL 2809996, at *8]. The government has not, therefore, identified a persuasive agency interpretation that has "remained consistent over time." Loper Bright, 603 U.S. at 394.

Second, the government argues that all "applicants for admission" are by definition "seeking admission" and are, thus, subject to mandatory detention under § 1225(b)(2)(A). The strongest language the government offers on this point is another

17

provision in § 1225 that refers to noncitizens "who are applicants for admission _or otherwise_ seeking admission." 8 U.S.C. § 1225(a)(3) (emphasis added). Yet if all "applicants for admission" are "seeking admission," Congress would not have specified that § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission" _and_ who is "seeking admission." Id. § 1225(b)(2)(A). Adopting the government's construction of the statute would improperly render meaningless the phrase "seeking admission" in § 1225(b)(2)(A). See Castañon-Nava, __ F.4th at __ [2025 WL 3552514, at *9]; Guerrero Orellana I, __ F. Supp. 3d at __ [2025 WL 2809996, at *7]; see also City of Providence v. Barr, 954 F.3d 23, 37 (1st Cir. 2020) ("Courts generally ought not to interpret statutes in a way that renders words or phrases either meaningless or superfluous.").

In sum, the Court holds that § 1225(b)(2)(A) does not authorize mandatory detention pending removal proceedings for noncitizens who enter the United States without inspection and are later apprehended while residing within the country. The detention of any such noncitizen during the pendency of his removal proceedings is instead governed by § 1226(a), unless he is subject to the expedited removal process under § 1225(b)(1), humanitarian parole revocation under § 1182(d)(5)(A), or mandatory detention based on criminal or terrorist grounds under § 1226(c). The Court therefore grants summary judgment to Guerrero Orellana on his claim

that the government lacks statutory authority to subject the class members to mandatory detention without a bond hearing.

The government does, however, raise one meritorious argument regarding the proper scope of the class. The class definition that the Court certified excludes any noncitizen who, "for [his] most recent entry into the United States, the government has not alleged . . . was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry." Guerrero Orellana II, __ F. Supp. 3d at __ [2025 WL 3033769, at *14]. This exclusion reflects that when a noncitizen's humanitarian parole ends, he "shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Thus, a noncitizen who is detained under § 1225(b)(2)(A) upon entry into the United States, is released on humanitarian parole, and is again detained upon the end of his parole returns to mandatory detention under § 1225(b)(2)(A). As the government points out, this rationale applies to any noncitizen released on humanitarian parole, whether he receives parole "at the time of entry" or subsequently. The Court therefore modifies this aspect of the class definition to exclude any noncitizen who "for [his] most recent entry into the United States, the government has not alleged . . . was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry or after continuous detention upon arrival." See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class

certification may be altered or amended before final judgment.");
Brown v. Colegio de Abogados de P.R., 613 F.3d 44, 50 (1st Cir.
2010) ("Courts may alter [class] certification orders prior to
final judgment . . . .").

## III. **Declaratory Judgment**

Having resolved the merits of Count I in Guerrero Orellana's
favor, the Court turns to the question of remedy. Guerrero Orellana
seeks a declaration that the class members are subject to
discretionary detention under § 1226(a), not mandatory detention
under § 1225(b)(2)(A), and that they are entitled to an initial
custody determination by an immigration officer and, upon request,
a custody redetermination (i.e., bond) hearing before an
immigration judge. See 8 C.F.R. § 236.1(c)(8), (d)(1). Apart from
challenging the merits of Guerrero Orellana's claim, the
government does not contest the language of the proposed
declaratory judgment.

The government does, though, renew its argument that the Court
lacks jurisdiction to issue a class-wide declaratory judgment
because such relief "restrain[s] the operation of" § 1225(b)(2)(A)
in violation of 8 U.S.C. § 1252(f)(1). As the Court explained in
its class certification decision, binding First Circuit precedent
forecloses the government's argument that § 1252(f)(1) bars
declaratory relief. See Guerrero Orellana II, __ F. Supp. 3d at __
[2025 WL 3033769, at *12]; see also Brito v. Barr, 22 F.4th 240,

252 (1st Cir. 2021) ("[D]eclaratory relief remains available under
[§] 1252(f)(1)."). The Court will therefore issue a declaratory
judgment in favor of the class.

## IV.  **Certification of Partial Final Judgment**

Guerrero Orellana next asks the Court to issue partial final
judgment on Count I under Federal Rule of Civil Procedure 54(b).
The government agrees to this relief should the Court conclude, as
it does, that partial summary judgment is warranted in Guerrero
Orellana's favor. Rule 54(b) provides that in an action with "more
than one claim for relief . . . or when multiple parties are
involved, the court may direct entry of a final judgment as to one
or more, but fewer than all, claims or parties only if the court
expressly determines that there is no just reason for delay." Fed.
R. Civ. P. 54(b).

To certify a partial final judgment under this provision, a
court "first must ensure that the ruling underlying the proposed
judgment is final." Nystedt v. Nigro, 700 F.3d 25, 29 (1st Cir.
2012). This "finality requirement is satisfied as long as the
'trial court action underlying the judgment disposed of all the
rights and liabilities of at least one party as to at least one
claim.'" Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18,
28 (1st Cir. 2022) (quoting Credit Francais Int'l, S.A. v. Bio-
Vita, Ltd., 78 F.3d 698, 706 (1st Cir. 1996)). Here, the entry of

partial summary judgment on Count I fully resolves that claim and, thus, is sufficiently final.

Rule 54(b) also requires the court to find that "there is no just reason for delay" in entering judgment on the resolved claims. Fed. R. Civ. P. 54(b); see Amyndas, 48 F.4th at 28. This standard calls for "an individualized assessment of the desirability and effect of an immediate appeal." Quinn v. City of Boston, 325 F.3d 18, 26 (1st Cir. 2003). The court must bear in mind the "long-settled and prudential policy against the scattershot disposition of litigation." Amyndas, 48 F.4th at 28 (quoting Spiegel v. Trs. of Tufts Coll., 843 F.2d 38, 42 (1st Cir. 1988)). Other relevant factors include "whether the disputed ruling raises legal or factual issues that overlap with any claims that remain pending in the district court" and "how the equities and efficiencies of piecemeal review would compare to those in a single proceeding." Britton v. Maloney, 196 F.3d 24, 27 n.2 (1st Cir. 1999).

The Court concludes that there is no just reason for delay in entering judgment on Count I. Guerrero Orellana's victory on this count and the issuance of a declaration in the class's favor may well obviate the need to address the remaining counts, which allege that the class members' mandatory detention without a bond hearing is unlawful for other reasons. See Quinn, 325 F.3d at 27 (explaining that such circumstances "mean[] that, in all probability, there will be no significant duplication of effort in

litigating one set of claims to a conclusion and then addressing the remaining set of claims"). More importantly, Guerrero Orellana has "establish[ed] a compelling reason for accelerated appellate review." _Amyndas_, 48 F.4th at 29. This action implicates the liberty interests of the class members. Delaying entry of judgment while the Court resolves all the claims brought by Guerrero Orellana would force class members to endure ongoing irreparable harm as they continue to be unlawfully subject to mandatory detention without a bond hearing. _See_ _Guerrero Orellana I_, __ F. Supp. at __ [2025 WL 2809996, at *9]; _see also_ _Ferrara v. United States_, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury."). Put differently, "the nature of the rights at issue here . . . factors in favor of speedier review." _Amyndas_, 48 F.4th at 29.

Having concluded that there is no just reason for delay, the Court will enter partial final judgment on Count I.

V.    **Notice and Identification of Class Members**

Finally, Guerrero Orellana requests that the Court order the government to 1) provide individualized notice to class members of the action and their right to seek release from detention; 2) identify to class counsel all present members of the class and then identify new class members on a weekly basis; and 3) notify class counsel of the transfer of any class member out of Massachusetts, Maine, Rhode Island, Vermont, or New Hampshire at

least twenty-four hours prior to transfer or, if such notice is not reasonably practicable, within twenty-four hours of initiation of the transfer. The government opposes these requests.

A district court has discretion to "require -- to protect class members and fairly conduct the action -- giving appropriate notice to some or all class members of . . . any step in the action." Fed. R. Civ. P. 23(d)(1)(B)(i); see id. advisory committee's note to 1966 amendment (noting that this provision "does not require notice at any stage, but rather calls attention to its availability and invokes the court's discretion"). The Court concludes that simply posting notice of the declaratory judgment in detention facilities, as the government suggests, would not adequately ensure that class members are informed of their rights in light of DHS's ability to transfer class members between facilities and the fact that many class members may not speak English or have counsel. Thus, individualized notice of the declaratory judgment is also warranted at this stage. Cf. Brito v. Barr, 415 F. Supp. 3d 258, 271 (D. Mass. 2019) (ordering the government to provide a copy of the court's declaratory judgment and permanent injunction to all class members in a case concerning immigration detention), aff'd in part, vacated in part, 22 F.4th 240 (1st Cir. 2021). The government argues that identifying the applicable detention authority for each immigration detainee -- and, thus, determining who should receive individualized notice as

a class member -- is an onerous undertaking for DHS. Accordingly, the Court orders the government to give notice to all noncitizens whom the government reasonably believes may be members of the class.

At the hearing on the cross-motions for summary judgment, the parties extensively debated the feasibility and burden of requiring Defendants to identify to class counsel information about class members and the transfers of any class member outside the region. Based on the current record, the Court lacks adequate information on these topics to determine what identification and reporting obligations to class counsel, if any, are appropriate. At this stage, then, the Court does not impose any identification and reporting obligations on the government. The parties shall file supplemental briefs on this issue by January 7, 2026, and are encouraged in the interim to confer to see if they can reach any agreement.

**ORDER**

For the foregoing reasons, Guerrero Orellana's motion for partial summary judgment (Dkt. 90) is **ALLOWED**, and the government's cross-motion for partial summary judgment (Dkt. 94) is **DENIED**.

The Court modifies the class definition to read as follows:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the

jurisdiction of an Immigration Court located in Massachusetts, where:

(a)    the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);

(b)    for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry or after continuous detention upon arrival;

(c)    the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);

(d)    the person is not subject to post-final order detention under 8 U.S.C. § 1231; and

(e)    the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

By January 7, 2026, the parties shall file supplemental briefs of no more than ten pages on any identification or reporting obligations the Court should impose.

The Court issues the following declaratory judgment and will enter a separate partial final judgment on Count I.

## DECLARATORY JUDGMENT

The Court declares that the members of the certified class are not subject to detention under 8 U.S.C. § 1225(b)(2).

Defendants' policy of subjecting members of the certified class to detention under 8 U.S.C. § 1225(b)(2)(A) without consideration for bond and a custody redetermination (i.e., bond) hearing is unlawful and violates the Immigration and Nationality Act and its regulations. The members of the certified class are subject to detention under 8 U.S.C. § 1226(a), including access to consideration for release on bond and/or conditions before immigration officers and Immigration Judges. After joining the class, the member of the certified class shall remain subject to this order notwithstanding any subsequent change in their location, facility of detention, or venue of immigration proceeding.

    The Court also orders that:

1.    The notice of the declaratory judgment that Defendants are ordered to give shall be in the form attached in the appendix hereto. Defendants shall forthwith translate the notice into, at minimum, Spanish, Portuguese, and Haitian Creole.

2.    Within seven days, Defendants shall post the notice in English, Spanish, Portuguese, and Haitian Creole in common areas of any facility holding immigration detainees in Massachusetts or in any geographic area over which, as of September 22, 2025, an Immigration

Court located in Massachusetts is the administrative control court.

3.  Within fourteen days, Defendants shall serve the notice on all noncitizens already in immigration detention who Defendants reasonably believe may be members of the class. The notice shall be in a language the noncitizen understands. Should Defendants not have the notice translated into a language the noncitizen understands, they shall secure an interpreter to translate the notice as soon as feasible.

4.  Starting no later than seven days after the date of this order, Defendants shall promptly serve the notice on all noncitizens who are newly arrested or detained by immigration officers and who Defendants reasonably believe may be members of the class. The notice shall be given at the time the noncitizen is processed in a language the noncitizen understands. Should Defendants not have the notice translated into a language the noncitizen understands, they shall secure an interpreter to translate the notice as soon as feasible.

5.  Defendants shall record the service of each notice and retain a copy of each such notice served.

6.  Defendants shall provide the noncitizen with access to a telephone to call an attorney within one hour after the noncitizen receives the notice.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

## APPENDIX

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

```
_____
                                       )
JOSE ARNULFO GUERRERO ORELLANA,        )
on behalf of himself and others        )
similarly situated,                    )
                                       )
          Petitioner-Plaintiff,        )
                                       )
v.                                     )      Civil Action
                                       )      No. 25-cv-12664-PBS
ANTONE MONIZ, Superintendent,          )
Plymouth County Correctional           )
Facility, et al.,                      )
                                       )
          Respondents-Defendants.      )
_____)
```

### CLASS ACTION NOTICE

You may be a member of a class that has been certified by the United States District Court for the District of Massachusetts in Guerrero Orellana v. Moniz, No. 25-cv-12664 (D. Mass. 2025). On December 19, 2025, the District Court issued a ruling that certain immigration detainees may be unlawfully detained and may seek release on bond or conditional parole under 8 U.S.C. § 1226(a). Therefore, you may be entitled to request release on bond or conditional parole by immigration officers; you may also be entitled to a bond hearing upon your request to the Immigration Court. At the bond hearing, the Immigration Judge may determine that you are eligible to be released on bond while your removal proceedings are pending.

If you have questions about your potential membership in the class or your rights under the District Court's ruling, you may call the attorneys representing the class at (857) 347-5502.


Served on date: _____

Served at location: _____

Name of person served: _____

Alien number of person served: _____

Name of officer serving notice: _____

ID number of officer serving notice: _____

Signed by serving officer: _____