UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSE ARNULFO GUERRERO ORELLANA,
on behalf of himself and others similarly
situated,

                Petitioner-Plaintiff,

v.

ANTONE MONIZ, Superintendent, Plymouth
County Correctional Facility, et al.,

                Respondents-Defendants.

Case No. 25-12664-PBS

**PETITIONER-PLAINTIFF'S OPPOSITION TO**
**MOTION TO ALTER OR AMEND THE FINAL JUDGMENT**

The government has been violating these class members' rights since last summer. The results have been catastrophic. People who should have been released are being confined in jail, where they are separated from their homes, their families, their livelihoods, and their liberty.

The government has had ample—indeed, overwhelming—notice that its conduct was illegal. The government's manufactured "re-interpretation" of the immigration detention statutes was contrary to decades of established law and practice. It flew in the face of the Supreme Court's construction of the law. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018) (stating 8 U.S.C. § 1225(b)(2) applies at "borders and ports of entry," and § 1226 applies "inside the United States") (Alito, J.). Hundreds of federal judges specifically *told* the government that it was breaking the law. *See Barco Mercado v. Francis*, No. 25-6582, 2025 WL 3295903, at *4, 13 (S.D.N.Y. Nov. 26, 2025) (government's new position rejected in 350 cases decided by over 160 federal judges sitting in about 50 different courts); Kyle Cheney, "More than 220 judges have now rejected the

1

Trump admin's mass detention policy," Politico (Nov. 28, 2025), https://www.politico.com/news/2025/11/28/trump-detention-deportation-policy-00669861.

This Court has now unequivocally declared the rights of these class members: They are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and they are eligible for bond hearings under § 1226(a). *See* Dec. 19, 2025 Mem & Order (D.E. 112) at 26-27. The Court also ordered reasonable notice requirements, including written notice to class members currently in detention, written notice to newly arrested class members when they are processed, and telephone access within one hour after notice to allow for contact with counsel, including with class counsel at a designated telephone number. *See id.* at 28-31. All parties requested that the Court's final order be entered as a partial final judgment. *See* Pl. SJ Mot. (D.E. 90) at 1; Def. Opp. & Cross Mot. (D.E. 95) at 27 (Government: "[I]f the Court were to enter relief for either Petitioner or the class on Count One, Respondents agree that the judgment should be entered as a partial final judgment under Rule 54(b)."). The Court granted the parties' request, and final judgment on these issues has entered. *See* Partial Final Judgment (D.E. 113).

The government has manifestly failed to make the showing necessary to alter, amend, or modify that final judgment. The government relies on Rules 59(e) and 60(b)(1) & (6). But a motion under Rule 59(e) "must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference." *See Ing v. Tufts University*, 81 F.4th 77, 85 (1st Cir. 2023) (internal quotation marks omitted). The government does not argue any error of law, and evidence of the government's own operations cannot possibly be "newly discovered" from the government's point of view. Rule 59(e) cannot apply.

In the alternative, the government relies on Rule 60(b)(1) and (6), but those rules are similarly inapposite. "[R]elief under Rule 60(b) is extraordinary in nature," and the party seeking

such relief "must establish, at the very least, 'that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, [the party] has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.'" *See Rivera-Velazquez v. Hartford Steam Boiler Inspection and Ins. Co.*, 750 F.3d 1, 3-4 (1st Cir. 2014) (quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002)). Rule 60(b)(1) applies in cases of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(6) applies for "any reason not encompassed within the previous five clauses," *see id.* at 4, subject to important limitations: First, Rule 60(b)(6) "'may not be used as a vehicle for circumventing clauses (1) through (5),'" and therefore does not apply when a party's "asserted basis for relief falls squarely within" those subsections. *See id.* (quoting *Cotto v. United States*, 993 F.2d 274, 278 (1st Cir. 1993). And, second, Rule 60(b)(6) requires "extraordinary circumstances." *See Kemp v. United States*, 596 U.S. 528, 533 (2022). Here, the government never explains exactly what part of Rule 60(b) supposedly applies or why, except for passing references to Rule 60(b)(6). Mem. (D.E. 117) at 4, 6. But none of the circumstances articulated by the government could qualify as "extraordinary" such that relief under Rule 60(b)(6) could be justified. *See BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211-12 (2025) (holding Rule 60(b)(6) "is available only in narrow circumstances, requires "extraordinary circumstances," and generally requires that the movant be "faultless[]").

Factually, as well, the government has failed to show any reason to disturb the judgment, particularly where delaying notice would prejudice the class members.

*First*, the government attacks the "telephone access requirement" in Paragraph 6 of the Court's judgment, specifically the requirement that telephone access be provided "within one hour after the noncitizen receives the notice." However, the government offers no support for this

3

argument other than a hypothetical situation at an unspecified detention facility in which eight detainees are trying to use two telephones. *See* Wesling Decl. ¶5. A hypothetical cannot possibly show "extraordinary circumstances" under Rule 60(b)(6). *See BLOM Bank*, 605 U.S. at 211-12.

Beyond that, the hypothetical is factually inapposite. Most people receiving the notice over time will be new arrestees. The notice will be served upon new arrestees during processing, which generally occurs at ICE's Burlington facility where there are ample telephones. *See* Decl. of Kerry E. Doyle ("Doyle Decl.") ¶13-14. There is no reason to extend the time limit for phone access for new arrestees.

Similarly, for class members currently in detention, the government has not offered any actual evidence of how many detainees are in the various facilities, or how many phones they have access to. The government cannot establish "extraordinary" factual circumstances without establishing any facts. *See BLOM Bank*, 605 U.S. at 211-12. And even if there were facts suggesting some extension of the one-hour time-limit is justified for current detainees (there are not), the government has surely not established that the time should be extended all the way to *24 hours*, as opposed to 90 minutes, two hours, or the like. Indeed, even under the government's own hypothetical, the last detainee would receive access to the telephone 61 minutes after receiving the notice. *See* Wesling Decl. ¶5 (six detainees making 20 minute phone calls on two phones would be done in 60 minutes, leaving last two detainees to start at minute 61).

The government cannot possibly justify "extraordinary" relief on this vacant record. *See BLOM Bank*, 605 U.S. at 211-12. And that is particularly true where delays in telephone access would be highly prejudicial to the detainees. It is crucial that new arrestees have immediate phone access. Among other reasons, as part of their processing, new arrestees generally receive a Notice of Custody Determination form, which requires them to check a box stating whether or not they

4

request a bond hearing. *See* Doyle Decl. ¶11 & Ex. A. It is therefore essential that new class members in processing have the ability to consult with counsel as quickly as possible, including so that class counsel or another attorney can inform them of the class judgment and their right to check the box that requests a bond hearing, if they so choose.

Similarly, current detainees should have rapid access to class counsel or another attorney to help them understand the notice and evaluate its potential impact on their rights and their immigration cases. The government has, in many cases, been violating their rights for months on end. These class members are likely currently making important strategic decisions under the misimpression that they will not have access to bond if they pursue relief in their immigration case.

***Second***, the government is asking to modify Paragraph 3 of the judgment, specifically to delay individual notice to class members currently in detention by almost a full month. *See* Mot. at 5. The government states that it must review "1,691 cases to determine whether and how to serve individual notice," particularly with respect to detainees that the government "transferred out-of-state." Mem. at 5-6.[1]

As an initial matter, the burden argument raised by the government is not a basis to modify the judgment because it could have been, and was, raised at summary judgment. The class specifically moved for individual notice within seven days after judgment. *See* Proposed Order (D.E. 90-1). The government opposed based on the burden, among other things. *See* Opp. (D.E. 95) at 27 (arguing against "burdensome notice [and] class-member identification"); Sur-Reply (D.E. 105) at 8 ("[P]roviding individualized notice would impose additional burdens on ICE

---

[1] The government states that it must review cases back to October 30, 2025, D.E. 117 at 5, which was the day of the class certification order, D.E. 81. Class counsel are unclear as to why the government is not looking back to September 22, 2025, the day the putative class filed the Class Action Complaint, D.E. 10. Class counsel reserve all rights and may bring this issue to the Court's attention if the parties cannot resolve it.

officers and other ICE employees."). If the government wished to submit additional evidence or argument to support that argument, it had every opportunity to do so in the ordinary course. A Rule 59(e) or 60(b) motion is not a vehicle for the government to re-open issues it litigated prior to the judgment. *See, e.g.*, *BLOM Bank*, 605 U.S. at 211-12; *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) (Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment"). That is particularly true where it appears the government simply made a strategic choice not to submit evidence with its summary judgment papers that it had already violated the rights of potentially over 1,000 class members, who it was intentionally spreading throughout the country without any mechanism in place to identify them, track their detention location, or timely remedy the harm.[2]

Accordingly, the government can hardly be said to be "faultless[]" in this arena, *see BLOM Bank*, 605 U.S. at 211-12, as this purported problem is entirely of the government's own making. The Court certified this class on October 30. *See* Oct. 30, 2025 Order (D.E. 81). By that time, the Court had already rejected the government's misinterpretation of the relevant statutes when it granted the individual preliminary injunction. *See* Oct. 3, 2025 Order (D.E. 54). The Court informed the parties on November 3 that its construction of the statute for the class would likely be consistent with that individual order. *See* Nov. 3, 3035 Tr. at 4. The government at that time

---

[2] The government also makes an apparent strategic choice in its recent declarations not to articulate whether it has used the time since judgment entered to begin reviewing these cases, whether personnel at ERO Boston have actually been assigned to this task, and how much progress, if any, it has made. *See generally* Wesling Decl. (D.E. 118). Surely if the government has failed to begin the process, or is simply choosing to assign its personnel to other tasks, that would cut against the presence of "extraordinary circumstances." Alternatively, if the government has made good progress towards completion, that would also cut against the need for any extension of time. Either way, the government cannot meet its burden by remaining silent on these questions.

6

knew the class definition, to which it has never sought more than minor refinements. *See, e.g.*, Sur-reply (D.E. 105) at 9 (seeking clarification regarding certain noncitizens released on humanitarian parole). Class counsel repeatedly informed the government that the class was seeking identification and notice. *See* Class Cert. Mot. (D.E. 31) (Sept. 25, 2025); SJ Mot. (D.E. 90) (Nov. 7, 2025). The government had more-than-sufficient time to anticipate and find a solution to this supposed difficulty during the pendency of the litigation. It simply didn't.

And in all events, there is nothing "extraordinary" in the government's complaint that it has created too much bureaucracy by engaging in a months-long campaign of illegal detention. To the extent there is any shortage of resources to conduct identification (and the government has not provided any evidence that there is), the government can allocate additional resources to get the job done.

Lastly, if the Court is considering any extension of the individual notice deadline, four weeks of additional time is not justified by evidence and would be highly prejudicial to the class members who will not be notified of their right to a bond hearing even as their removal proceedings progress. As noted above, such class members may make strategic decisions based on an incorrect assumption that bond is not available. The prolonged delay in notice would also prejudice the class members by affording the government far too much time to transfer detainees who may be eligible for a bond hearing away from their counsel, families, witnesses, evidence, and other resources. Although the Court should not extend the deadline at all, if it contemplates any extension, such extension should be no more than one week.

Respectfully submitted,

*/s/ Christopher E. Hart*
Anthony D. Mirenda (BBO #550587)
Christopher E. Hart (BBO # 625031)
Gilleun Kang (BBO #715312)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000
adm@foleyhoag.com
chart@foleyhoag.com
gkang@foleyhoag.com

Jessie J. Rossman (BBO # 670685)
Adriana Lafaille (BBO # 680210)
Daniel L. McFadden (BBO # 676612)
Julian Bava (BBO # 712829)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
dmcfadden@aclum.org
jbava@aclum.org

My Khanh Ngo (admitted *pro hac vice*)
Michael K.T. Tan (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
m.tan@aclu.org

Gilles R. Bissonnette (BBO # 669225)
SangYeob Kim (admitted *pro hac vice*)
Chelsea Eddy (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Phone: 603.333.2081
gilles@aclu-nh.org

sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Carol J. Garvan (admitted *pro hac vice*)
Max I. Brooks (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
(207) 619-8687
cgarvan@aclumaine.org
mbrooks@aclumaine.org

Annelise M. Jatoba de Araujo
(BBO # 669913)
ARAUJO & FISHER, LLC
75 Federal St., Ste. 910
Boston, MA 02110
617-716-6400
annelise@araujofisher.com

Sameer Ahmed (BBO #688952)
Sabrineh Ardalan (BBO # 706806)
HARVARD IMMIGRATION AND
REFUGEE CLINICAL PROGRAM
Harvard Law School
6 Everett Street
Cambridge, MA 02138
T: (617) 384-0088
F: (617) 495-8595
sahmed@law.harvard.edu
sardalan@law.harvard.edu

*Counsel for Petitioner*

Dated: December 31, 2025

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document will be served on counsel for all parties through the Court's CM/ECF system.

Date: December 31, 2025                          */s/ Christopher E. Hart*
                                                                Christopher E. Hart