# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

JOSE ARNULFO GUERRERO
ORELLANA,

       Petitioner-Plaintiff,

       v.

ANTONE MONIZ, Superintendent,
Plymouth Correctional Facility;

       Respondents-Defendants.

Civil Action No. 1:25-cv-12664-PBS

**MEMORANDUM IN SUPPORT OF RESPONDENTS-DEFENDANTS' MOTION TO
DISMISS COUNTS TWO THROUGH FIVE OF THE PETITION**

i

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL BACKGROUND ON IMMIGRATION DETENTION ........................... 2

III.  FACTUAL AND PROCEDURAL BACKGROUND............................................ 7

IV.   ARGUMENT ...................................................................................................... 10

   A.   The Court Lacks Jurisdiction to Review Decisions to Detain Pending Removal. 10

   B.   Resolution of the Constitutional Claims Is Unnecessary and Thus the Court Should

        Dismiss Counts Two Through Four...................................................................... 11

   C.   Count Five Must be Dismissed at the Threshold. ................................................. 16

V.    CONCLUSION.................................................................................................... 20

ii

## TABLE OF AUTHORITIES

### CASES

*Addington v. Texas*,
   441 U.S. 418 (1979) ........................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 10

*Bennett v. Spear*,
   520 U.S. 154 (1997) ........................................................................................... 20

*D.A.M. v. Barr*,
   486 F. Supp. 3d 404 (D.D.C. 2020) ................................................................... 20

*Dambrosio v. McDonald, Jr.*,
   No. 25-CV-10782-FDS, 2025 WL 1070058 (D. Mass. Apr. 9, 2025) ................... 14

*Davis v. Grimes*,
   9 F. Supp. 3d 12 (D. Mass. 2014) ...................................................................... 11

*Demore v. Kim*,
   538 U.S. 510 (2003) ................................................................................ 13, 14, 15

*Dep't of State v. Muñoz*,
   602 U.S. 899 (2024) ........................................................................................... 14

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020) ........................................................................................... 15

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ........................................................................................... 18

*Harper v. Werfel*,
   118 F.4th 100 (1st Cir. 2024) ............................................................................. 20

*Hernandez Lara v. Lyons*,
   10 F.4th 19 (1st Cir. 2021) ....................................................................... 6, 12, 16

*Illinois v. Fed. Emergency Mgmt. Agency*,
   No. CV 25-206 WES, 2025 WL 2716277 (D.R.I. Sept. 24, 2025) ...................... 19

iii

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ................................................................ 10

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018).................................................................... 4, 16

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988)................................................................... 12

*Marasco & Nesselbush, LLP v. Collins*,
    6 F.4th 150 (1st Cir. 2021)................................................. 11, 12

*Mathews v. Diaz*,
    426 U.S. 67 (1976)..................................................................... 13

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)................................................................... 15

*Matter of Yajure Hurtado*,
    29 I. & N. Dec. 216 (BIA 2025) ................................... passim

*Morales v. Bondi*,
    No. 1:25-CV-1472, 2025 WL 3525488 (W.D. Mich. Dec. 9, 2025)..................... 17

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003)................................................................... 20

*New Hampshire Lottery Comm'n v. Rosen*,
    986 F.3d 38 (1st Cir. 2021)........................................................ 17

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006)...................................................... 10

*Ortega-Cervantes v. Gonzales*,
    501 F.3d 1111 (9th Cir. 2007) ..................................................... 5

*Pena v. Hyde*,
    No. 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025)..................... 14

*Reid v. Donelan*,
    17 F.4th 1 (1st Cir. 2021)........................................................ 16

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)................................................................ 10

iv

*Reno v. Flores*,
  507 U.S. 292 (1993) .................................................................................................... 15

*Ruiz v. Mukasey*,
  552 F.3d 269 (2d Cir. 2009) ....................................................................................... 11

*Sony BMG Music Entm't v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011) ...................................................................................... 11

*South Carolina v. United States*,
  No. 1:16-CV-00391-JMC, 2017 WL 976298 (D.S.C. Mar. 14, 2017) .................................... 12

*Torres v. Barr*,
  976 F.3d 918 (9th Cir. 2020) ........................................................................................ 2

*Trump v. J.G.G.*,
  604 U.S. 670 (2025) .................................................................................................... 17

*Viqueira v. First Bank*,
  140 F.3d 12 (1st Cir. 1998) .......................................................................................... 10

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) .................................................................................................... 14

## <u>STATUTES</u>

5 U.S.C. § 704 ................................................................................................................... 17

5 U.S.C. § 706(2) ......................................................................................................... 1, 17

8  U.S.C. § 1225(a)(1) ................................................................................................. 3, 15

8 U.S.C. § 1101(a)(13)(A) ................................................................................................ 2

8 U.S.C. § 1182(d)(5) ........................................................................................................ 6

8 U.S.C. § 1182(d)(5)(A) .................................................................................................. 5

8 U.S.C. § 1225 ................................................................................................................. 2

8 U.S.C. § 1225(b) ............................................................................................................. 6

8 U.S.C. § 1225(b)(1)-(2) ................................................................................................. 3

8 U.S.C. § 1225(b)(2) ........................................................................................................ 6

8 U.S.C. § 1225(b)(2)(A) .................................................................................................... 4, 9

8 U.S.C. § 1226 ..................................................................................................................... 5

8 U.S.C. § 1226(a) ......................................................................................................... passim

8 U.S.C. § 1226(c) ............................................................................................................... 13

8 U.S.C. § 1231(a)(6) ........................................................................................................... 18

8 U.S.C. § 1252(b)(2) ............................................................................................................ 9

8 U.S.C. § 1252(b)(9) .......................................................................................................... 10

8 U.S.C. § 1252(f)(1) ...................................................................................................... 18, 19

8 U.S.C. § 1252(g) ............................................................................................................... 11

8 U.S.C. §§ 1252(a)(5) ........................................................................................................ 10

U.S.C. § 1182(d)(5)(A) .......................................................................................................... 5

U.S.C. § 1231(a)(6) ............................................................................................................. 18

## **REGULATIONS**

8 C.F.R. § 235.3(b)(1)(ii) ...................................................................................................... 4

8 C.F.R. § 236.1(c)(8) ............................................................................................................ 5

8 C.F.R. § 1236.1(d)(1) .......................................................................................................... 5

8 C.F.R. §§ 236.1(d)(1) .......................................................................................................... 5

## **OTHER AUTHORITIES**

Pub. L. 104-208 ..................................................................................................................... 2

## I.    INTRODUCTION

Although he does not deny that he is an "applicant for admission," Petitioner Guerrero Orellana (Petitioner) asserts that Respondents-Defendants (the Government) improperly detained him under 8 U.S.C. § 1225(b)(2)(A), and that he should be detained under 8 U.S.C. § 1226(a) pending his removal proceedings. The Court has already decided this issue of statutory interpretation in Petitioner's favor and has entered final judgment in favor of Petitioner and a certified class for a declaratory judgment on Count One of Petitioner's First Amended Petition and Class Action Complaint ("Petition"). The remaining Counts of the Petition assert constitutional due process claims and a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2). The Government moves to dismiss the remaining Counts under the doctrine of constitutional avoidance and Federal Rule of Civil Procedure 12(b)(6).

The Government maintains that Petitioner's constitutional and APA claims are unavailing as a matter of law, because Congress has expressly provided that aliens like Petitioner are subject to detention without bond pending their removal proceedings, and such detention—particularly where, as here, there are no allegations that could show the detention had been or would be prolonged—suffers from no constitutional infirmities. However, these claims should be dismissed because this Court's final resolution of the habeas claim in Count One adequately resolves Petitioner's claims and can provide him with an adequate habeas remedy. Thus, in accordance with longstanding principles of judicial restraint and constitutional avoidance, the Court should not decide the constitutional claims at this time, and the APA cannot provide for judicial review where an adequate habeas remedy already exists.

1

## II.    LEGAL BACKGROUND ON IMMIGRATION DETENTION

As explained in prior briefing, before 1996, the Immigration and Nationality Act (INA) treated aliens differently based on whether the alien had presented at a port of entry or evaded inspection and illegally entered the United States.  *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222–24 (BIA 2025) (citing 8 U.S.C. §§ 1225(a), 1251 (1994)). Under the pre-1996 INA, aliens who were present without inspection or admission received greater procedural protections in deportation proceedings (including the ability to request release on bond) than those aliens who presented at ports of entry to try to gain entry to the United States. *See* ECF 95 at 2–3.

Congress discarded that prior regime through enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Among other things, that law sought to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). To that end, IIRIRA replaced the prior focus on physical "entry" and instead made lawful "admission" the governing touchstone. IIRIRA defined "admission" to mean "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). In other words, the immigration laws would no longer distinguish aliens based on whether they had managed to evade detection and enter the country without permission. *See* ECF 95 at 3.

IIRIRA effected these changes through several provisions codified in 8 U.S.C. § 1225:

**Section 1225(a)**: Section 1225(a) codifies Congress's decision to make lawful

2

"admission," rather than entry, the touchstone. That provision states that an alien "present in the United States who has not been admitted . . . shall be deemed … an applicant for admission." 8 U.S.C. § 1225(a)(1). "All aliens … who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States" are required to "be inspected by [an] immigration officer[]." *Id*. § 1225(a)(3). The inspection by the immigration officer is designed to determine whether the alien may be lawfully "admitted" to the country or, instead, must be placed in immigration proceedings.

**Section 1225(b):** IIRIRA also provided for both expedited removal and non-expedited "Section 240" proceedings, and mandated that applicants for admission be detained pending those proceedings. 8 U.S.C. § 1225(b)(1)-(2).

Section 1225(b)(1) provides for expedited removal proceedings, which may be applied to a subset of inadmissible aliens—those inadmissible on certain grounds who (1) are "arriving in the United States," or who (2) have "not been admitted or paroled into the United States" and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i), (iii). As to these aliens, the immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id*. § 1225(b)(1)(A)(i). An alien subject to these procedures who indicates an intention to apply for asylum or a fear of persecution is subject to mandatory detention pending a final determination of credible fear of persecution and removal, or, if found to have a credible fear,

3

pending further consideration of the application for asylum. *See id.* § 1225(b)(1)(A)(i), (b)(1)(B)(ii), (b)(1)(B)(iii)(IV); *see also* 8 C.F.R. §§ 235.3(b)(2)(iii), 235.5(b)(4)(ii).

Section 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by [subsection (b)(1)]." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). It requires that those aliens be detained pending Section 240 removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title [Section 240].

8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see also Jennings*, 583 U.S. at 302 (holding that § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just at the moment those proceedings begin"). Contemporaneous regulations reiterated that this catchall mandatory detention provision applies to those applicants for admission who are present in the United States without inspection and admission or parole. 8 C.F.R. § 235.3(b)(1)(ii).

While § 1225(b)(2) does not allow for aliens to be released on bond, the INA grants the Department of Homeland Security ("DHS") discretion to exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole "shall not be regarded as admission of the alien," *id.*; *Jennings*, 583 U.S. at 288 (discussing parole authority), and when the Secretary determines that "the purposes of such parole … have been served," the "alien shall … be returned to the custody from which he was paroled" and be "dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C.

4

§ 1182(d)(5)(A).

**8 U.S.C. § 1226(a):** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (versus applicants for admission specifically). *See* 8 U.S.C. § 1226. This is the only provision that governs the detention of aliens who, for example, were lawfully admitted to the country but overstay or otherwise violate the terms of their visas or engage in conduct that renders them deportable, or are later determined to have been improperly admitted. The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id*. § 1226(a). Detention under this provision is discretionary: the Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. *Id*. § 1226(a)(1)-(2).[1] By regulation, immigration officers can release aliens if the alien demonstrates that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). An alien can also request a custody redetermination (i.e., a bond hearing) by an immigration judge at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination, the IJ may continue detention or release the alien on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). The First Circuit has held that constitutional due process requires certain procedural protections in order to continue to detain an alien pending removal proceedings under § 1226(a): the government must "either (1) prove by clear and convincing evidence that [the alien]

---

[1] Conditional parole under § 1226(a) is distinct from parole under the authority of § 1182(d)(5)(A). *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007).

5

poses a danger to the community or (2) prove by a preponderance of the evidence that [the alien] poses a flight risk." *See Hernandez Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).[2]

For many years after IIRIRA, DHS and most immigration judges treated aliens who entered the United States without admission and were later detained as being subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under 8 U.S.C. § 1225(b)(2). *See Hurtado*, 29 I. & N. Dec. at 225 n.6. Until recently, however, the Board of Immigration Appeals (BIA) had not issued any precedential opinion on the appropriate detention authority for such individuals.

On July 8, 2025, DHS issued guidance that brought the Executive's practices in line with the statute's plain text, concluding that aliens who enter the country without being admitted are subject to detention under § 1225(b). Petition ¶ 22. DHS concluded that all aliens who enter the country without being admitted are "subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from [U.S. Immigration and Customs Enforcement (ICE)] custody except by INA § 212(d)(5) parole [8 U.S.C. § 1182(d)(5)]." *See* Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission, cited in Petition ¶ 22 n.3.

The Board of Immigration Appeals adopted this interpretation in *Matter of Yajure Hurtado*, issued on September 5, 2025. *See* Petition ¶ 23. The Board concluded that Section 1225(b)(2)'s

---

[2] The Government disputes this view, but this decision remains the law of the First Circuit.

6

mandatory detention regime applies to *all* aliens who entered the United States without inspection and admission:

> Aliens … who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission."

29 I. & N. Dec. at 228. Thus, under this precedent, "Immigration Judges lack authority to hear bond requests or to grant bond to aliens … who are present in the United States without admission." *Id*. at 225.

### III.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Guerrero Orellana is a native and citizen of El Salvador who entered the United States without inspection and who alleges he has resided unlawfully in the United States for over ten years. *See* Petition ¶¶ 26–27; ECF 47 (Chan Decl.) ¶¶ 6–7.[3] Petitioner was arrested and detained by ICE on September 18, 2025. Petition ¶¶ 27–28. Also on September 18, 2025, ICE served Petitioner with a Notice to Appear in Section 240 removal proceedings before an immigration judge, alleging that Petitioner is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I). Petition ¶ 29; ECF 16-1 (Araujo Decl. Ex. A). Petitioner does not allege that he had either requested or received a bond hearing from the immigration judge before filing his Petition.

---

[3] To provide a more complete background, Defendants refer here to allegations in the Petition as well as evidence submitted by the parties in connection with other motions in this case. However, those additional factual assertions are not necessary to resolution of this motion to dismiss.

7

Petitioner initially filed an individual habeas petition, then amended his petition on September 22, 2025, to assert claims on behalf of a putative class. *See* ECF 10. Petitioner primarily contends that the Government's mandatory detention of him and aliens like him is unlawful, arguing that § 1225(b)(2)(A) does not govern their detention because they are not seeking admission at the border. The operative Petition asserts five counts: Count One, claiming that his detention without a bond hearing violates § 1226(a) and its associated regulations; Count Two, claiming that the Due Process Clause of the Fifth Amendment mandates that Petitioner receive a bond hearing "with strong procedural protections"; Count Three, claiming the Due Process Clause requires an individualized detention hearing; Count Four, which argues that Petitioner's detention violates substantive due process because there is allegedly not a "reasonable relation" between his detention and the purposes of immigration detention; and Count Five, which alleges that the BIA's decision in *Matter of Yajure Hurtado* is arbitrary and capricious or contrary to law in violation of the Administrative Procedure Act (APA). *See* Petition ¶¶ 49–57.

On October 3, 2025, the Court granted Petitioner's individual motion for a preliminary injunction, concluding that Petitioner was likely to succeed on his statutory habeas claim asserted in Count One of his Petition because, the Court reasoned, Petitioner's detention was governed by § 1226 and not § 1225(b)(2)(A). ECF 54 at 8, 15, 26. The Court determined that ICE had detained Petitioner "on a warrant," *id.* at 15–16, and that he was not "'seeking admission' at the time of arrest," *id.* at 18. The Court did not address Petitioner's likelihood of success on his constitutional or APA claims. In accordance with the Court's preliminary injunction, Petitioner received a bond hearing on October 9, 2025, and was subsequently released on bond. ECF 68.

8

On October 30, 2025, the Court granted Plaintiffs' motion for class certification, certifying a class with respect to Count One. ECF 81 at 10, 37. The Court declined to address whether class certification was appropriate for the remaining counts asserting constitutional and APA claims, stating that it could address whether the class should be certified with regard to those counts "should it become necessary to do so to resolve this case." ECF 81 at 37.

Petitioner moved for Partial Summary Judgment on November 7, 2025, seeking summary judgment on the statutory claim in Count One of the Petition. ECF 90. Petitioner sought a declaratory judgment asserting that class members are subject to detention, if at all, under 8 U.S.C. § 1226(a), and that they are entitled to a bond hearing. *See* ECF 90-1. The Court granted that motion, entering a declaratory judgment on behalf of Petitioner and the Class that they are "not subject to detention under 8 U.S.C. § 1252(b)(2)"; "Defendants' policy of subjecting members of the certified class to detention under 8 U.S.C. § 1225(b)(2)(A) without consideration for bond and a custody redetermination (*i.e.*, bond) hearing is unlawful and violates the Immigration and Nationality Act and its regulations"; and that class members "are subject to detention under 8 U.S.C. § 1226(a), including access to consideration for release on bond and/or conditions before immigration officers and Immigration Judges." ECF 112 at 26–27. The Court certified this declaratory judgment as final under Federal Rule Civil Procedure 54(b), finding that "the issuance of a declaration in the class's favor may well obviate the need to address the remaining counts, which allege that the class members' mandatory detention without a bond hearing is unlawful for other reasons." *See* ECF 112 at 21-23. The Court thus entered a separate judgment. ECF 113.

9

## IV.     ARGUMENT

Federal courts are courts of limited jurisdiction, and the party asserting jurisdiction bears the burden of showing it exists. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual material to 'state a claim to relief that is plausible on its face.'" *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A.     The Court Lacks Jurisdiction to Review Decisions to Detain Pending Removal.

The Government respectfully maintains that the INA's judicial-review bars strip the Court of jurisdiction to review class members' detention pending removal. It asserts these jurisdictional bases for dismissal under Rule 12(b)(1) to preserve them, but recognizes that the Court has previously rejected those arguments. *See* ECF 54 at 8–10; ECF 112 at 11–12.  The INA provides at 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) that petitions for review are the sole method for judicial review of removal orders, and that judicial review of all legal issues arising from removal proceedings is consolidated into that petition-for-review process. *See* 8 U.S.C. § 1252(b)(9) ("[J]udicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken or proceeding brought to remove an alien from the United States shall be available only in judicial review of a final order under this section."); *id.* § 1252(a)(5) (providing that a petition for review is the sole means for review of a removal order); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 483 (1999); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031, 1035 (9th Cir. 2016); *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). Petitioner's challenge is to the government's authority to detain during removal proceedings

10

and is inextricably bound up with those proceedings.

Further, the decision to detain Petitioner arises from DHS's decision to commence removal proceedings and is precluded from review by § 1252(g), which bars judicial review of "any cause or claim" arising from the government's decision to "commence proceedings," or "adjudicate cases." 8 U.S.C. § 1252(g).

### B.     Resolution of the Constitutional Claims Is Unnecessary and Thus the Court Should Dismiss Counts Two Through Four

Because the Court has already decided the statutory issue in favor of Petitioner, it should decline to reach the constitutional due process claims presented in Counts Two through Four, at least so long as that holding of this Court has not been overturned on appeal. "[F]ederal courts are not to reach constitutional issues where alternative grounds for resolution are available." *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 178 (1st Cir. 2021). That is, "[u]nder principles of constitutional avoidance and judicial restraint, [courts] should avoid reaching federal constitutional grounds where cases can be disposed of on statutory grounds." *Davis v. Grimes*, 9 F. Supp. 3d 12, 15 (D. Mass. 2014) (citing *Sony BMG Music Entm't v. Tenenbaum,* 660 F.3d 487, 511 (1st Cir. 2011) (reiterating the "long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them")).

Counts Two and Three of the Petition assert that procedural due process requires a bond hearing with certain procedural protections and/or an individualized hearing concerning detention; Count Four asserts that immigration detention without a bond hearing violates substantive due process. However, the Court has already issued a final decision on the merits of Count One, determining that Petitioner is detained under 8 U.S.C. § 1226(a), *see* ECF 112, which means that

11

Petitioner may receive (and did receive) a custody redetermination before the immigration court under that statute and its implementing regulations, *see supra* at 5–6. Moreover, the First Circuit has already held that aliens detained under § 1226(a) are entitled to a bond hearing at which the government bears the burden of proof of proving flight risk and dangerousness. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). It is thus unnecessary—and unwise—for the Court to decide these constitutional claims because there is "no additional relief" that would be warranted as a result of the constitutional claims in Counts Two to Five. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 446 (1988). The statutory claim adequately provides Petitioner with the relief he requests. In this circumstance, a ruling on the constitutional claims is "unnecessary and therefore inappropriate." *Lyng*, 485 U.S. at 446; *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 178–79 (1st Cir. 2021) (declining to address constitutional claims where an APA claim could adequately address the plaintiff's requested remedy); *see also South Carolina v. United States*, No. 1:16-CV-00391-JMC, 2017 WL 976298, at *29 (D.S.C. Mar. 14, 2017) (dismissing constitutional claims under Rule 12(b)(6) based in part on doctrine of constitutional avoidance). Accordingly, dismissal is warranted on this basis.[4]

That said, the Government disagrees with the Court's statutory ruling, has filed an appeal from that ruling in the individual case, and maintains that Petitioner was properly detained without a bond hearing pending his removal proceedings under § 1225(b)(2)(A). If the government prevails on its statutory arguments, the Petition cannot state a due process claim. Detaining

---

[4] Alternatively, the Court could hold the constitutional claims in abeyance pending the filing of a notice of appeal and any resolution of a potential appeal from the partial final judgment.

12

Petitioner without a bond hearing while removal proceedings are pending does not violate due process. The Supreme Court has held that detention during removal proceedings, even without access to a bond hearing, is constitutional. In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of 8 U.S.C. § 1226(c), which mandates detention during removal proceedings without access to bond hearings. 538 U.S. at 522. The Court "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523. The Court reaffirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. The Court explained that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* The Court recognized as to due process concerns that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

Here, Petitioner was detained for the limited purpose of removal proceedings. Petitioner's detention was not punitive or for other reasons than to address his removability from the United States. There is no argument that detention was prolonged or failed to serve the purpose of the statutory scheme. Petitioner does not dispute that he is an alien and an applicant for admission who is properly subject to Section 240 proceedings and some form of immigration detention pending those proceedings. Petitioner's detention under § 1225(b)(2) was also not indefinite, as it would have ended upon the conclusion of his removal proceedings. Those proceedings were moving expeditiously at the time the Court ordered the Government to provide Petitioner with a

13

bond hearing. A limited period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (detention "for a period of less than three months' time … does not amount to an unconstitutional duration."); *Pena v. Hyde*, No. 25-11983-NMG, 2025 WL 2108913, at *2-3 (D. Mass. July 28, 2025) (six-month detention is presumptively constitutional and finding no violation for a detention period of less than a month for an applicant for admission detained under Section 1225(b)(2)).

Whether framed as a substantive or procedural due process claim, the principles set forth in *Demore* govern this case. Substantive due process protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). Petitioner's substantive due process claim fails because "the through line of history" is that the federal government has "sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Id.* at 911-12. And in exercising this "broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521. For more than a century, the Supreme Court has recognized that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

Petitioner cannot succeed under a theory of procedural due process because, at base, his claim is a substantive due process claim. A procedural due process claim takes as a given the substantive determinations that would justify a deprivation of a liberty or property interest, but

14

challenges the "adequacy of the[] procedures" for making those determinations. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also, e.g.*, *Addington v. Texas*, 441 U.S. 418, 431 (1979) (assessing adequacy of procedures for determining whether substantive standards for civil commitment to a mental hospital are met). By contrast, a substantive due process claim challenges the substance of the determinations themselves, arguing that they are inadequate to justify the deprivation "at all." *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Here, Petitioner does not dispute that he is an applicant for admission within the meaning of 8 U.S.C. § 1225(a)(1). Thus, if this Court's statutory ruling were to be reversed, Petitioner presumably would no longer contest that he falls within the category of aliens subject to mandatory detention under § 1225(b)(2)(A), and he does not appear to be claiming that additional procedures are required to determine whether he falls into that category. Instead, presumably, Petitioner would argue that the determination that he is an applicant for admission is insufficient in and of itself to justify his detention. Thus, even though Petitioner is asking in counts Two and Three for additional "procedures" in the form of an individualized bond or detention hearing, his claims are substantive due process claims.

As discussed, aliens are not entitled to bond hearings as a matter of substantive due process. *See Demore*, 538 U.S. at 523-29. Under *Demore*, Congress may reasonably determine—as they did here—to subject aliens who were never inspected or admitted to this Country to detention without bond while the government determines their removability. Detention of such aliens pending removal bears a reasonable relationship to the legitimate purposes of immigration detention identified in *Demore*. And "an alien in [Plaintiff's] position has only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103,

15

140 (2020). Congress has not created any procedural rights to a bond hearing for applicants for admission (like Petitioner). *See Jennings*, 583 U.S. at 297. "Read most naturally," § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The statute says nothing "whatsoever about bond hearings." *Id.*

Contrary to Petitioner's prior argument (*see* ECF No. 14 at 12), the First Circuit's decision in *Hernandez-Lara* does not "control" the analysis of § 1225(b)(2)(A) detention. *See Reid v. Donelan*, 17 F.4th 1, 9 (1st Cir. 2021) (*Hernandez-Lara* does not govern the constitutionality of mandatory detention under 8 U.S.C. § 1226(c)). In that case, the government agreed that "the discretionary detention provision" under § 1226(a) applied. *Hernandez-Lara*, 10 F.4th at 24, 26. The only question was who bore the burden of proof at a bond hearing and what standards of proof should apply. *Id.* at 27. The individual therefore had a protected interest in receiving an individualized assessment of dangerousness and flight risk because she was "detained under section 1226(a)," which provides for bond hearings. *Id.* at 29. Only that allowed the court to consider whether bond hearings that put the burden of proof on the alien comply with procedural due process. *Id.* at 23, 28–35. But unlike *Hernandez-Lara*, the government detained Petitioner as an applicant for admission under § 1225(b)(2). And applicants for admission have no statutory right to seek release on bond under § 1225. *See Jennings*, 583 U.S. at 297.

C.    **Count Five Must be Dismissed at the Threshold.**

Finally, Petitioner seeks in Count Five to have the Court set aside the Board of Immigration Appeals' precedential decision in *Matter of Yajure Hurtado* under 5 U.S.C. § 706(2) of the APA. *See* Petition ¶¶ 55-57, Prayer for Relief ¶ 8. As an initial matter, the Government preserves its

16

argument that the BIA's decision merely conforms with Congress's mandate in § 1225(b)(2)(A). But even leaving aside the merits of that decision, Petitioner cannot sustain a claim challenging a BIA detention decision under the APA. There are a few fundamental justiciability flaws that preclude evaluating the alleged APA claim. As an initial matter, this Court's jurisdiction has been limited by Congress, limitations that squarely apply to an APA claim, just as they do to habeas. *See supra* § IV(A). And although this Court has rejected the applicability of those review limitations here, APA review is also precluded by the APA's own terms.

**There is an adequate habeas remedy, precluding APA review.** Judicial review under the APA is only available for actions made reviewable by statute or final agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, judicial review of Petitioner's claim of unlawful detention is available through the adequate remedy of the writ of habeas corpus, and APA review is thus unavailable. *See New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 62 (1st Cir. 2021) (vacating judgment on APA claim under § 706(2) where declaratory remedy was adequate). As the Supreme Court recently held, where the claims for relief, as here, "necessarily imply the invalidity of [the plaintiffs'] confinement" those claims may be "brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (cleaned up) (internal quotation marks and citation omitted). Here, Petitioner can challenge his detention without a bond hearing and obtain the remedy he seeks through habeas. Accordingly, "habeas corpus, not the APA, is the proper vehicle." *J.G.G.*, 604 U.S. at 1007 (Kavanaugh, J., concurring); *see also Morales v. Bondi*, No. 1:25-CV-1472, 2025 WL 3525488, at *8 (W.D. Mich. Dec. 9, 2025) (declining to consider an APA challenge to *Matter of Yajure Hurtado* on this ground).

17

To the extent Petitioner argues that he seeks additional relief beyond habeas relief through his APA claim—in the form of vacatur of the BIA's precedential opinion in *Matter of Yajure Hurtado*—Petitioner is incorrect. Vacatur of that decision could not provide the Petitioner with any additional relief beyond the habeas relief he may obtain on his statutory claim (which he has already obtained as a preliminary matter). And no class has been certified with respect to this claim. But even assuming a class could be certified on the APA claim (which Defendants dispute), APA vacatur of the decision is either unavailable under 8 U.S.C. § 1252(f)(1) or would not provide any additional relief to a class than has already been afforded.

*First*, if Petitioner claims that APA vacatur would withdraw ICE or immigration judges' authority to detain any class members under § 1225(b)(2)(A), such relief would impermissibly enjoin or restrain the government's operation of the detention statutes on a class-wide basis in contravention of 8 U.S.C. § 1252(f)(1). In *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for aliens detained under 8 U.S.C. § 1231(a)(6). *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The Court held that "[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by § 1231(a)(6)." *Id.* at 551. Because those orders "thus interfere[d] with the Government's efforts to operate §1231(a)(6)" in its chosen manner, they were barred by § 1252(f)(1). Likewise, to the extent Petitioner claims that APA vacatur of *Matter of Yajure Hurtado* would compel immigration judges to provide bond hearings, such an order would

18

clearly run afoul of § 1252(f)(1). Section 1252(f)(1) is not limited to orders labeled injunctions. Instead, it prohibits lower-court orders that "enjoin or *restrain*" the government's operation of the covered provisions. 8 U.S.C. § 1252(f)(1) (emphasis added). The common denominator of those terms is that they involve coercion. *See* Black's Law Dictionary 529 (6th ed. 1990) ("Enjoin" means to "require," "command," or "positively direct" (emphasis omitted)); *id.* at 1314 ("Restrain" means to "limit" or "put compulsion upon" (emphasis omitted)). Together, they indicate that a court may not impose coercive relief that "interfere[s] with the government's efforts to operate" the covered provisions in a particular way, regardless of how the order is labeled. *Aleman Gonzalez*, 596 U.S. at 551.

*Second*, APA vacatur of the BIA's precedential decision without any accompanying injunction or coercive effect would not provide meaningful additional relief, as it would not prevent ICE or immigration judges from determining that § 1225(b)(2)(A) governs putative class members' detention. Assuming universal vacatur of an agency action is permitted by § 706(2), its effect would be to "nullif[y] the agency action and remove[] its legal force." *Illinois v. Fed. Emergency Mgmt. Agency*, No. CV 25-206 WES, 2025 WL 2716277, at *15 (D.R.I. Sept. 24, 2025). Before *Matter of Yajure Hurtado*, the BIA had not previously issued any precedential decision on the applicable detention authority for aliens like Petitioner. *See supra* at 6. Accordingly, setting aside the precedential decision might nullify the legal effect of *Hurtado*, but it would not establish any particular legal rule, and it would thus do nothing to alter DHS or immigration judges' underlying ability to determine the proper statutory detention authority when making custody determinations. Nor would vacatur alone provide additional retrospective relief to

19

individuals to whom the *Hurtado* decision was previously applied. *See D.A.M. v. Barr,* 486 F. Supp. 3d 404, 414 (D.D.C. 2020) ("[A] judicial order vacating an agency rule does not *automatically* void every decision the agency made pursuant to the invalid rule.").

**Petitioner's APA challenge is in any event not ripe for decision.** "To be considered 'final,' agency action must satisfy two conditions": it "must mark the 'consummation' of the agency's decisionmaking process" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). Petitioner challenges the BIA's decision in *Matter of Yajure Hurtado*, but that decision has not had legal consequences as to him, because it was not directly applied to him. Petitioner never requested a bond hearing from an immigration judge; instead, he received preliminary habeas relief before exhausting those remedies. Indeed, based on the Court's prior rulings in this case, Petitioner will *never* have the *Hurtado* decision applied to his case unless this Court's decisions are overturned on any potential appeal. As such, Petitioner's APA claim is not ripe, there is no final agency action, and he has not exhausted his administrative remedies. *Cf. Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (a regulation is not ordinarily considered the type of agency action ripe for judicial review under the APA until applied to the claimant's situation "in a fashion that harms or threatens to harm him").

## V.    CONCLUSION

Wherefore, Defendants respectfully request that the Court dismiss Counts Two to Five of the Complaint and enter judgment as to the case as a whole based on Count One.

20

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST E. FLENTJE
*Special Counsel for Immigration Litigation*

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-598-8259
katherine.j.shinners@usdoj.gov

MICHAEL D. ROSS
ANGEL FLEMING
LAURIE WIESNER
*Trial Attorneys*

*Attorneys for Defendants*

21

<u>**CERTIFICATE OF SERVICE**</u>

I, Katherine J. Shinners, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated: January 16, 2026                          <u>/s/ Katherine J. Shinners</u>
                                                 KATHERINE J. SHINNERS
                                                 U.S. Department of Justice
                                                 Office of Immigration Litigation

22