**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSE ARNULFO GUERRERO ORELLANA, on behalf of himself and others similarly situated,<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, et al.,<br><br>Respondents-Defendants. | Case No. 25-12664-PBS |

**RESPONSE TO COURT'S INQUIRY AT**
**APRIL 10, 2026 STATUS CONFERENCE**

At the Status Conference on April 10, 2026, the Court inquired about the article "How Trump Purged Immigration Judges to Speed Up Deportations," which was published by the New York Times on April 9.[1] Among other things, that article reports that significantly fewer people are being granted bond in Immigration Court bond hearings and that Immigration Judges are under "overt" pressure to deny bond, including reporting requirements to "a supervisor" and direct inquiries from the Chief Immigration Judge. These concerns have subsequently been echoed by reporting from Michigan Public Radio, which found a steep increase in bond denials beginning last January, often based solely on unexplained summary findings of flight risk.[2]

[1] Nicholas Nehamas, et al., "How Trump Purged Immigration Judges to Speed Up Deportations," New York Times (Apr. 9, 2026), https://www.nytimes.com/2026/04/09/us/politics/trump-miller-immigration-judges-purge.html.

[2] Dustin Dwyer, et al., "Judges ruled immigrants 'unlawfully detained' in Michigan. But many still can't get out." Michigan Public Radio (Apr. 13, 2026), https://www.michiganpublic.org/criminal-justice-legal-system/2026-04-13/judges-ruled-immigrants-unlawfully-detained-in-michigan-but-many-still-cant-get-out.

At the Status Conference, the Court asked the government if Immigration Judges had received any directives to deny bond, and the government's counsel represented that they were not aware of such a directive. The Court requested that they inquire. The Court could consider now ordering the government to report on the results of its inquiry. The Court also allowed Petitioner's counsel to file a written response to the article, which is below.

There is good reason to be concerned about the potential compromise of judicial independence and neutrality in Immigration Court proceedings. Immigration Judges exercise enormous power and discretion over immigration detainees, including the power to determine in many cases whether they will be free or jailed while the Immigration Court decides whether or not deportation is justified. *See* 8 C.F.R. §§ 1003.19, 1236.1(d). Where custody is ordered for the pendency of removal proceedings, it can last for a very long time. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 30 (1st Cir. 2021) (stating that civil immigration detention for removal proceedings is "frequently prolonged" and citing findings in *Pereira-Brito v. Barr*, 415 F. Supp. 3d 258 (D. Mass. 2019), that, for people ordered detained under 8 U.S.C. § 1226 in New England, "one in four was incarcerated for two years or longer"). Therefore, although Immigration Judges are employees of the Department of Justice's Executive Office for Immigration Review ("EOIR"), both the governing regulations and due process principles require that they be permitted to exercise "independent judgment" as neutral adjudicators. *See* 8 C.F.R. § 1003.10(b); *R.R.C. v. Streeval*, No. 25-525, 2026 WL 734999, at *2 (M.D. Ga. Mar. 16, 2026) (explaining that "the independent neutrality of the EOIR process is essential for satisfying the due process requirements of the Constitution"); *cf. United States v. Salerno*, 481 U.S. 739, 750 (1987) (holding Bail Reform Act permissibly authorizes pre-trial detention of certain persons alleged to have committed federal crimes in part due to access to detention hearing before a "neutral decisionmaker").

In this very case, there has been strong evidence that the authority of Immigration Judges to make independent legal and factual judgments in individual cases has been compromised. After this Court and others issued final declaratory judgments that class members are properly categorized as § 1226(a) detainees and therefore must receive bond hearings upon request, Chief Immigration Judge Teresa L. Riley sent an email ordering the Immigration Judges to ignore such declaratory judgments and to deny bond hearings in accordance with the BIA's administrative decision in *Matter of Yajure Hurtado* instead. *See* Request for Status Conf. (D.E. 134) Ex. A (email). When one Immigration Judge in Massachusetts nevertheless continued providing bond hearings to class members, the government abruptly removed the Immigration Judge from hearing all detained cases. *See* Warren Decl. (D.E. 149) ¶¶ 5-12; Gagarin Decl. (D.E. 150); Araujo Decl. (D.E. 151) ¶¶ 3-5. The government's pressure tactics were effective: by the end of January, the Court found that there was "new, undisputed information that class members are being denied bond hearings as provided in the Court's declaratory judgment ruling." *See* Jan. 29, 2026 Order (D.E. 162) (the "Order") at 1-4.

These are but some of the many ways in which the current administration has reportedly compromised the independence of the Immigration Judges. For example, the government reportedly recently terminated multiple Immigration Judges who ruled in favor of noncitizens in high-profile cases, as well as dozens of other Immigration Judges over the last year.[3] When the government adopted a practice of moving to terminate ongoing removal proceedings in order to facilitate ICE arrests inside the Immigration Court, one former Immigration Judge in

[3] Hamed Aleaziz, et al., "Judges Fired After Blocking Deportations of Pro-Palestinian Students," New York Times (Apr. 11, 2026), https://www.nytimes.com/2026/04/11/us/politics/immigration-judges-deportations-students.html; Simon Rios, "One ex-immigration judge in Mass. recounts her firing," WBUR (Apr. 16, 2026), https://www.wbur.org/news/2026/04/16/trump-immigration-judge-fired-nina-froes-chelmsford.

Massachusetts attested under oath that he was ordered and pressured to grant the government's motions.[4] And, as the government has terminated Immigration Judges, it has been steadily replacing many of them with military JAG officers, many (and probably most) of whom lack experience in immigration law or practice.[5]

With respect to bond hearings in Massachusetts, the enclosed declarations from experienced practitioners report a number of concerning behaviors that tend to undermine the fairness of the proceedings and suggest a lack of neutrality. One repeated concern is that DHS attorneys and Immigration Judges have adopted a practice of finding ultimate relief from deportation to be "speculative," and then consistently find that "speculative" relief equates to risk of flight. *See* Freidel Decl. ¶19; Ladebush Decl. ¶¶8-10; Nice Decl. ¶¶15-16, 23-24, 29, 30. This apparently systemic practice paves the way for either detention or a substantially higher bond (which may be unaffordable) in nearly every case, because relief will almost always be "speculative" at the time of the bond hearing—these hearings usually occur at the beginning of removal proceedings, and the results of any applications for relief will not be known (or knowable) until the end. *See* Freidel Decl. ¶5; Ladebush Decl. ¶7; Nice Decl. ¶30 ("In the most recent bond hearings I have observed, the IJ has found either danger or flight risk every time."). The practice also effectively shifts the burden to the detainee to prove a "nonspeculative" basis for ultimate relief, in violation of the First Circuit's burden-allocation holdings in *Hernandez-Lara*, 10 F.4th at

[4] Decl. of George Pappas, Esq. (D.E. 42), *Lopes Ramiro v. Moniz*, C.A. No. 25-11851 (D. Mass.). As discussed in the motion related to that declaration (D.E. 41), these terminations benefited the government, not the individual, because the government had implemented a practice of bumping up its arrest numbers by moving people out of full removal proceedings and then immediately arresting them inside the courthouse for a new Expedited Removal order.

[5] Nate Raymond, "Trump administration names 33 new immigration judges, most with military background," Reuters (Feb. 5, 2026), https://www.reuters.com/legal/government/trump-administration-names-33-new-immigration-judges-most-with-military-2026-02-05/; Margy O'Herron, "Using Military Lawyers as Immigration Judges is Ill-Advised and Potentially Illegal," Brennan Center for Justice (Sept. 29, 2025), https://www.brennancenter.org/our-work/analysis-opinion/using-military-lawyers-immigration-judges-ill-advised-and-potentially.

41, and *Brito v. Garland*, 22 F.4th 240, 246 (1st Cir. 2021). Another repeated concern is that Immigration Judges find "clear and convincing evidence" of dangerousness based on manifestly insufficient or unreliable evidence. *See* Freidel Decl. ¶16-17; Ladebush Decl. ¶¶11-13, 18; Nice Decl. ¶10. This practice appears to be a significant contributing factor to the increasing number of motions to enforce habeas orders that required a legally adequate bond hearing—a number of these motions appear to be pending, and several have already been decided in favor of the detainee. *See* Freidel Decl. Exs. A (Apr. 9, 2026 Order, *Li v. Wesling*, No. 26-11601 (D. Mass.)) & B (Apr. 1, 2026 Order, *Adegberno v. Nessinger*, No. 26-110 (D.R.I.)); Ladebush Decl. Ex. A (Mar. 31, 2026 Order, *Miti v. Moniz*, No. 26-11327 (D. Mass.)); *cf. Rosa v. Garland*, 114 F.4th 1, 21 (1st Cir. 2024) (holding, in removal context, that Immigration Court should not give "substantial weight" to police reports "absent a conviction or corroborating evidence of the allegations contained therein"). Whether these apparently systemic practices, or the other concerns raised in the declarations, are the result of orders, instructions, training, or pressure being applied to Immigration Judges and DHS attorneys behind closed doors is, of course, a question that cannot easily be answered by a private litigant in the absence of discovery concerning the government's internal activities.

If Immigration Court bond hearings fail to conform to basic principles of neutrality and independence, or if Immigration Judges are being subjected to secret instructions or pressure tactics concerning their decisions in particular cases, that could bear on the scope of relief the Court would consider if it reaches Petitioner's due process claims (Counts II through IV). For example, the Court might declare not only that class members are entitled to a bond hearing, but also that the bond hearing must meet certain fundamental standards of judicial neutrality and independence. Presently, the government, but not Petitioner, has control over the information that

would prove these concerns true or false. Counsel understand that the Court wishes to be in a position to hear and decide the Due Process claims promptly if resolution becomes necessary, and so the Court might consider allowing discovery on these issues to be accomplished while the parties and the Court await final resolution of the statutory claim in the appellate process. *See* R.R.C., 2026 WL 734999, at *3 (ordering discovery on whether the Immigration Courts are "[s]ystematically denying a meaningful opportunity for release on bond").

Respectfully submitted,

*/s/ Daniel L. McFadden*
Anthony D. Mirenda (BBO #550587)
Christopher E. Hart (BBO # 625031)
Gilleun Kang (BBO #715312)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000
adm@foleyhoag.com
chart@foleyhoag.com
gkang@foleyhoag.com

Jessie J. Rossman (BBO # 670685)
Adriana Lafaille (BBO # 680210)
Daniel L. McFadden (BBO # 676612)
Julian Bava (BBO # 712829)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
dmcfadden@aclum.org
jbava@aclum.org

My Khanh Ngo (admitted *pro hac vice*)
Michael K.T. Tan (admitted *pro hac vice*)

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
m.tan@aclu.org

Gilles R. Bissonnette (BBO # 669225)
SangYeob Kim (admitted *pro hac vice*)
Chelsea Eddy (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Phone: 603.333.2081
gilles@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Carol J. Garvan (admitted *pro hac vice*)
Max I. Brooks (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
OF MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
(207) 619-8687
cgarvan@aclumaine.org
mbrooks@aclumaine.org

Annelise M. Jatoba de Araujo
(BBO # 669913)
ANNELISE ARAUJO LAW
260 Franklin St., Ste 520
Boston, MA 02110
617-716-6400
annelise@annelisearaujolaw.com

Sameer Ahmed (BBO #688952)
Sabrineh Ardalan (BBO # 706806)
HARVARD IMMIGRATION AND
REFUGEE CLINICAL PROGRAM
Harvard Law School
6 Everett Street
Cambridge, MA 02138
T: (617) 384-0088

F: (617) 495-8595
sahmed@law.harvard.edu
sardalan@law.harvard.edu

*Counsel for Petitioner*

Dated: April 17, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on counsel for all parties through the Court's CM/ECF system.

Date: April 17, 2026

*/s/ Daniel L. McFadden*
Daniel L. McFadden