**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Jose Arnulfo Guerrero Orellana, on behalf of himself and others similarly situated,<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>Antone Moniz, Superintendent, Plymouth County Correctional Facility, et al,<br><br>Respondents-Defendants. | Civil Action No. 25-cv-12664-PBS |

**DECLARATION OF ACTING DEPUTY FIELD OFFICE DIRECTOR JOHN CHARPENTIER**

I, John Charpentier, declare as follows:

1. I am an Acting Deputy Field Office Director (aDFOD) with the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), in the Boston Field Office (ERO Boston). I have held this position since February 24, 2025. I am based in Burlington, Massachusetts. I oversee the Sub-Offices within ERO Boston, which is responsible for oversight of aliens detained in Massachusetts, New Hampshire, Rhode Island, Connecticut, Maine, and Vermont.

2. I am aware of the above-captioned lawsuit. I am familiar with the Plaintiff's September 19, 2026, Response to Court Order, including the attached declaration of John T. Sackton (Sackton Declaration), and the District Court's September 22, 2026, Order. My declaration is based upon my personal and professional knowledge and information, belief, reasonable inquiry, and review of information obtained from various records, systems, databases, and through speaking with other DHS employees.

3. Upon arresting an individual whom ERO Boston identifies as a Guerrero Orellana class member, ERO Boston generally serves those class members with a Form I-286, Notice of Custody Determination on the same day they are processed following the arrest. Arrest processing typically occurs on the same day as the arrest. There may be limited circumstances where processing occurs the following day, such as when the individual is transferred within one of the six states in ERO Boston's area of responsibility before processing is completed. In those limited circumstances, service of the Form I-286 would generally occur when the individual is processed. The Form I-286 notifies the class member of ERO Boston's custody decision and that the class member may request a custody re-determination (bond) hearing before an Immigration Judge. Thereafter, the Form I-286 is uploaded into the Executive Office for Immigration Review (EOIR) Courts & Appeals System (ECAS) for EOIR to review and schedule the bond hearing. Under current practices, this uploading occurs regardless of whether the detainee is transferred outside the area of responsibility.
4. ERO Boston may transfer ICE detainees out of its area of responsibility after arrest processing, including service of the Form I-286. ERO Boston requires flexibility to determine which members of the detained population must be transferred at any given time. Transfer numbers fluctuate depending on bedspace demands and operational needs.
5. ERO Boston processes and identifies bedspace for ICE detainees on an expedited basis, considering many factors, including but not limited to the number of locally available beds, the detainees' health needs, the detainees' sex, the detainees' risk factors (including behavioral issues and/or criminal history), and available transportation logistics.
6. The bedspace request process is performed in accordance with ICE's policies and procedures; it is not conducted for the purpose of denying detainees any process, retaliating against detainees, or divesting a U.S. District Court of jurisdiction over a habeas petition, otherwise properly filed in the correct venue.

7. Typically, ERO Boston can identify bedspace and transportation within a short time frame, not to exceed 12 hours.

8. Bedspace within ERO Boston's area of responsibility is a finite resource and such space is not always available for new arrestees. The housing assignments available outside the Field Office (that is, Field Offices outside ERO Boston's area of responsibility) are time-sensitive and provided on a first-come, first-served basis depending upon operational needs. When local bedspace is at or near capacity, ERO Boston must seek alternative housing through coordination with other ICE Field Offices. Once bedspace outside ERO Boston is approved, ERO Boston generally initiates the transfer of the detainee(s) to the other Field Office as soon as possible and without delay. If ERO Boston fails to transfer cases in a timely manner, the bedspace is often given to another ICE Field Office, requiring ERO Boston to restart the process of seeking bedspace for the detainee(s).

9. In addition, if a local ICE-contracted detention facility notifies ERO Boston that it rejects an initial bedspace request or that it can no longer detain a particular detainee at any time after placement, ERO Boston cannot override the local facility's determination and must immediately identify new housing for that detainee—sometimes with another Field Office.

10. The District Court's September 22, 2026, Order requiring ICE to provide 72-hours of notice of a future transfer is imposing an operational burden on ERO Boston. This requirement forces ERO Boston to hold detainees for at least an additional three days, which imposes a burdensome delay in the transfer process. This requirement prolongs the detention of a broad category of detainees in a temporary holding facility by at least an additional three days and places additional strain on the limited bedspace available in this area of responsibility. For example, for a class member who has been granted voluntary departure, the transfer notification process requires the class member to remain in ICE custody for at least an additional three days before ERO Boston can ensure the class member's attendance on their departure flight and ultimate release from ICE custody. Similarly, for a class member with pending removal proceedings, ERO cannot notify EOIR of the class member's

change of address until the transfer has been completed. Thus, EOIR's change of venue and scheduling of a subsequent hearing will be delayed for at least an additional three days, which further postpones the timely completion of the class member's removal proceedings. As previously stated, housing assignments outside the area of responsibility are time sensitive and provided on a first-come, first-served basis. Delay in transfer due to the 72-hour notice requirement likely will result in the loss of bedspace resulting in an additional operational strain on ERO to constantly repeat the bedspace request process. The District Court's September 22, 2026, Order, also does not provide flexibility for ERO Boston to immediately transfer the detainees, who may require urgent and immediate transfer on a case-by-case basis to accommodate their needs.

11. Presently, given the language of the Court's September 22, 2026 Order, ERO Boston is providing class counsel with the transfer notice for all class members it intends to transfer out of the First Circuit, regardless of whether they have requested a bond hearing. At this time, this includes class members who have already received a substantive bond hearing, as the language of the Order does not expressly exclude such class members. ERO Boston is also providing class counsel with the transfer notice for class members who have withdrawn their request for a bond hearing, because they also could be described as "any class member who requests a bond hearing." ERO Boston is also currently providing class counsel with the transfer notice for class members who have accepted Voluntary Departure with their continued detention imposed as a safeguard to ensure their timely departure from the United States, because they also could be described as "any class member who requests a bond hearing." Finally, ERO Boston is also providing class counsel with the 72-hour transfer notice for class members it intends to transfer out of the First Circuit who have yet to request a bond hearing, because they could make such request at any point during the transfer process, which would prohibit ERO Boston from completing their timely transfer, while simultaneously requiring ERO Boston to begin the bedspace identification process anew.

12. The 72-hour hold and notice requirement may, at times, also force ERO Boston to hold class members in temporary holding facilities longer than necessary without the resources and accommodations of a long-term detention facility. ERO Boston's Field Office in Burlington, Massachusetts has a hold room, which is the most common temporary holding facility in this area of responsibility where detainees are likely to be held for the duration of the 72-hour time period. The hold room in ERO Boston's Field Office is a short-term, temporary space to hold detainees, pending processing, transfer, or release.

Given the limitations of the hold room, ERO Boston makes every effort to process transfers to long-term housing placements as quickly as possible. An additional three-day delay in processing the transfer is imposing an operational burden on ERO Boston to divert limited staffing resources to perform additional detention functions at the hold room, rather than processing, transfer, or release functions that the hold room is intended to fulfill.

13. The 72-hour notice requirement also generally imposes an operational burden in excess of the 72-hours due to the logistics of serving class counsel. To accomplish service on class counsel, ERO Boston must identify bedspace, complete the Detainee Transfer Notification form, serve the form on the detainee in person, serve the executed form on their attorney (if known) via email, and then coordinate with the Office of Immigration Litigation (OIL) at the Department of Justice through agency counsel to ensure that class counsel is properly notified. Only at that time (the time class counsel is notified) does the 72-hour notice period start. This logistical effort typically requires an additional 24 hours or more, depending on the availability of all participants in the service process, extending the notice period beyond the 72-hour period.

14. The District Court's September 22, 2026, Order's transfer-notice requirement also does not provide flexibility for ERO Boston to immediately transfer class members who require immediate transfer, such as women, those with medical or behavioral concerns, or juveniles, who may be included in the District Court's definition of "any class member who requests a bond hearing." Local ICE-

contracted detention facilities may not be equipped to accommodate the needs of every detainee who is identified as a class member. When a local bedspace is unavailable for particular detainees, including detainees with special needs or requirements, ERO Boston must identify bedspace across the nationwide network of detention facilities to meet the detainees' individual needs while in ICE custody. The September 22, 2026, Order frustrates the timely transfer of these class members because it mandates ERO Boston to hold detainees without permitting flexibility for case-by-case review for at least an additional 72 hours before transferring them to a detention facility that is properly equipped to accommodate their needs. In the case of class members identified at the time of arrest, the practical effect of the September 22, 2026, Order is that all class members may have to remain in the hold room of ERO Boston's Field Office for 72 or more hours to provide the required notice, regardless of their individual needs or ERO Boston's case-by-case review.

15. For women detained in ICE custody, ERO Boston typically must seek a housing placement within the nationwide network of detention facilities because their placement cannot typically be accommodated locally. There is extremely limited local bedspace available for women in this area of responsibility. As a result, ERO Boston needs to initiate transfers for women on a routine and regular basis. ERO Boston normally limits the time that a woman would need to be housed in the hold room and processes her transfer to a long-term housing placement as timely as possible. However, the September 22, 2026, Order requires ERO Boston to delay her timely transfer outside of its area of responsibility, regardless of transfer destination.

16. There is no local bedspace for juveniles. To comply with the *Flores* Settlement Agreement, juveniles are transferred out of this area of responsibility almost immediately and into the care of the appropriate department or housing placement. Acquiring bed space for unaccompanied alien children (UACs) is handled through the Department of Health and Human Services' Office of Refugee Resettlement (ORR), which will find the least restrictive housing option or shelter for the UAC. For accompanied juveniles, ERO Boston engages with ERO Headquarters, which will review

the case history and find appropriate housing. ERO Boston works diligently to comply with the *Flores* Settlement Agreement regarding housing placements and timing of transfers and would not delay transfer of a juvenile absent an emergency. The September 22, 2026, Order restricts the timely transfer of juveniles because it mandates ERO Boston to hold them for at least an additional 72 hours before transferring them to a facility that is properly equipped to accommodate their needs. It is not equipped or intended to support long-term detention.

17. Additionally, individuals with certain medical or behavioral issues may need to be placed in detention facilities outside of this area of responsibility. Local ICE-contracted detention facilities may reject the bedspace requests for a detainee with medical or behavioral needs because the local detention facility cannot accommodate their medical or behavioral needs. For detainees with medical needs, ERO Boston diligently works in conjunction with the ICE Health Services Corps (IHSC), which must approve the housing placement as well. Once IHSC and the detention facility approve a housing placement for a detainee with medical needs, ERO Boston would not delay transfer for any amount of time because it is imperative that the detainee timely receives the necessary medical care in the approved housing placement. The September 22, 2026, Order prevents ERO Boston from timely transferring individuals with urgent medical needs or behavioral issues, because it mandates ERO Boston to hold them for at least an additional 72 hours before transferring them to a facility that is properly equipped to accommodate their needs. This places an operational burden on ERO Boston and the local detention facilities to delay transfer of a class member in a placement where local detention facilities have identified a medical need or behavioral concern that jeopardizes the safety of the detainee, local correctional officers, and/or the rest of the detained population.

18. As explained, ERO Boston conducts transfers of detainees out of this area of responsibility as needed after review of operational needs, local bedspace demands, and case-by-case reviews of individual detainees' circumstances. Based on the foregoing, transfers out of this area of

responsibility fluctuate. The week identified in the Sackton Declaration was an outlier because it coincided with both an immigration-enforcement operation and a cyberattack affecting operations at the Plymouth County Correctional Facility (PCCF) in Plymouth, Massachusetts. During the timeframe identified in the Sackton Declaration from August 24 to August 28, 2026, there was a marked increase in ICE-contracted flights out of Massachusetts. This increase was attributable to an immigration-enforcement operation conducted in the State of Connecticut during the same period, combined with a temporary and significant loss of local detention capacity. Specifically, PCCF operations were detrimentally affected due to a cyberattack. PCCF was unable to accept any new ICE detainees approximately from August 13, 2026, through September 1, 2026. Because PCCF is ERO Boston's largest detention facility, the loss of that facility materially affected ERO Boston's available bedspace within this area of responsibility. As a result, ERO Boston had to rely on partners throughout the ERO network to accept bedspace transfers in order to decompress local detention capacity and support ongoing operations, which included an increased amount of immigration arrests in the state of Connecticut, which does not have a detention facility to accommodate ERO bedspace needs. The cyberattack directly affected the immigration-enforcement operation during the week of August 24, 2026, because many individuals arrested during that operation in Connecticut could not be housed locally and were therefore transferred out of ERO Boston's area of responsibility shortly after arrest.

19. The airport activity cited in the Sackton Declaration would have included the movement of both pre-removal-order detainees (some of whom could be Guerrero Orellana class members) and post-removal-order detainees. ERO Boston's increased use of ICE-contracted flights during that week directly correlated to operational needs created by both the temporary loss of PCCF bedspace and an increased ICE enforcement activity in Connecticut. Such transfers were not related to the First Circuit's decision in this matter nor conducted in an effort to specifically transfer Guerrero Orellana class members out of the First Circuit.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed at Burlington, Massachusetts on October 20, 2026.

J 7484 Charpentier
(A)Deputy Field Office Director - DFOD

Digitally signed by J 7484 Charpentier
Date: 2026.10.20 16:49:06 -04'00'

John Charpentier
Acting Deputy Field Office Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Burlington, Massachusetts