**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSE ARNULFO GUERRERO ORELLANA, on behalf of himself and others similarly situated,<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, et al.,<br><br>Respondents-Defendants. | Case No. 25-12664-PBS |

## DECLARATION OF IRENE C. FREIDEL

I, Irene C. Freidel, state that the following facts are true and correct, based upon my personal knowledge:

1. I have been a member in good standing of the bar of the Commonwealth of Massachusetts since 1991. I am over the age of 18 and am competent to testify regarding the matters described below.

2. I graduated from the University of Michigan Law School in 1991. I was an associate, and thereafter partner, at the law firm of K&L Gates LLP between 1991 and 2017. I began providing pro bono legal services to individuals detained by U.S. Immigration and Customs Enforcement (ICE) in 2017. Since 2018, I have been employed by the Political Asylum/Immigration Representation (PAIR) Project in Boston, Massachusetts. The mission of the PAIR Project is to provide *pro bono* legal services to indigent asylum applicants, noncitizens detained by ICE, and others seeking humanitarian relief. My current role at the PAIR Project is Detention Program Manager.

3. The PAIR Project primarily provides *pro bono* representation to individuals detained by ICE at the Plymouth County Correctional Facility in Plymouth, MA and the

Wyatt Detention Facility in Central Falls, RI. Staff attorneys in our program regularly represent individuals in connection with their requests to be released from custody through the filing of a habeas corpus petition and, if appropriate, by bond granted by the Chelmsford Immigration Court.

4. Beginning in early October 2026, we started receiving referrals from the ACLU of Massachusetts ("ACLUM"), and other organizations, for individuals primarily detained at Plymouth or Wyatt who had received a Detainee Transfer Notification ("72-hour notice"). The 72-hour notices typically state that ICE intends to transfer the detainee "outside of the First Circuit no fewer than 72 hours from the completion of service" of the notice on class counsel in *Guerrero Orellana v. Moniz*.

5. When we receive such a referral, we endeavor to intake the person within 24 hours to determine whether they are eligible for, and interested in obtaining, release from custody on bond.

6. In our experience, some people who receive the 72-hour notice are interested in voluntary departure. There are different ways to request voluntary departure. For example, ICE typically presents new arrestees with various paperwork. People who are processed following their ICE arrest typically receive the Notice of Custody Determination while at Burlington. People are also typically presented with a form that represents an agreement to voluntary departure. My understanding is that in most cases, that is, when someone has already been placed in removal proceedings, voluntary departure must then be approved by an Immigration Judge. Based on my experience and observation, after voluntary departure is granted to a person in ICE custody, the person typically has to wait a number of weeks, if not months, before they are returned to their home country by ICE. Consequently,

there is generally ample time to serve the 72-hour notice prior to their scheduled departure. As far as I have been able to observe, the 72-hour notice is not prolonging time in ICE custody for people who are seeking or have been granted voluntary departure.

7. In our experience, some people who receive the 72-hour notice would like a bond hearing. In some cases, we learn that the person may have initially signed a voluntary departure request form while being processed by ICE at the ICE/ERO Boston Field Office in Burlington, MA following their arrest by ICE. In some cases, we have learned that people have signed for voluntary departure feeling under pressure and not understanding what they were signing. However, after an opportunity to consult with counsel, they decide to seek a bond hearing instead having not understood that was a possibility. This is not unexpected to the extent that the forms that are presented to an individual processed at Burlington are only presented in English and the person likely did not have access to an interpreter and would not have had access to counsel.

8. For those interested in and eligible for bond whose cases we can accept, we typically file a habeas petition to request a federal court order that they receive a bond hearing. We also typically file a motion in the Immigration Court to request a custody redetermination hearing.

9. Based on a review of our records, we have received approximately 21 referrals for people who have received a 72-hour notice.

10. Of those:

- We believe four people were transferred before we were able to conduct an intake.
- Approximately nine people stated during intake that they would like voluntary departure, and we took no further action in their cases.
- Seven people requested that we help them secure a bond hearing, and we (or other legal services organizations) then filed habeas petitions on their behalf.

Some of those habeas petitions are still pending, and others have resulted in orders that the person receive a bond hearing.

11. Where bond hearings have been ordered:

- Four bond hearings have been completed. One person proceeded pro se and was denied bond. Another who we represented was denied bond, but we intend to file a motion to enforce the habeas court's judgment requiring a constitutionally sufficient bond hearing. One bond case was taken under advisement and we have not yet received the decision. In the fourth case, bond was granted in the amount of $15,000.
- One bond request was withdrawn by the detainee.
- One bond hearing has not yet occurred.

12. Based on my experience and observations, we have not seen people who received 72-hour notices detained for significant periods of time at the Burlington, Massachusetts ICE booking facility due to limited bed space in the First Circuit. We have seen only one person who received a 72-hour notice detained for an extended period of time at Burlington, but that person in fact had been placed at a facility in New Hampshire. The person was housed in New Hampshire, but was later sent back to Burlington after the New Hampshire facility reportedly rejected them due to an alleged behavioral issue (the person appears to have significant mental health complications).

13. Based on my experience, transfers are often serial. Once a person is transferred from the First Circuit, they may be transferred within hours or days to a different jurisdict ion, and potentially different jurisdictions afterward.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed this 3rd day of November 2026.

Irene C. Freidel

Irene C. Freidel